**FILED**

FEB - 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **SERVICEMEMBERS LEGAL DEFENSE NETWORK**<br>P.O. Box 65301<br>Washington, D.C. 20035-53016,<br><br>Plaintiff,<br><br>v.<br><br>**DEPARTMENT OF DEFENSE**<br>The Pentagon<br>Washington, D.C. 20301,<br><br>and<br><br>**DEPARTMENT OF JUSTICE**<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20530,<br><br>Defendants. | CASE NUMBER 1:06CV00200<br><br>JUDGE: Rosemary M. Collyer<br><br>DECK TYPE: FOIA/Privacy Act<br><br>DATE STAMP: 02/06/2006 |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff Servicemembers Legal Defense Network seeks injunctive and other appropriate relief for the expedited processing and release of agency records requested by Plaintiff from various components of the Department of Defense and the Department of Justice. As set forth in more detail below, the FOIA requests that are the subject of this action were prompted by recent news reports that federal government agencies have engaged in illegal surveillance of United States citizens opposed to the military's anti-gay policy known as "Don't Ask, Don't Tell." Although federal courts have recognized that

...
...

FOIA guarantees the right of every American "to know what their government is up to," Defendants have chosen to stonewall in the face of Plaintiff's FOIA requests, thereby necessitating the instant suit.

## JURISDICTION AND VENUE

2.    This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties thereto pursuant to 5 U.S.C. § 552(a)(4)(B), (E)(iii). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

3.    Plaintiff Servicemembers Legal Defense Network ("SLDN") is a non-profit watchdog and public interest organization dedicated to ending discrimination against, and harassment of, United States military personnel under the anti-gay policy enacted by Congress in 1993, more commonly known as "Don't Ask, Don't Tell." *See* National Defense Authorization Act for Fiscal Year 1994, Pub. L. No. 103-160, § 571(a), 107 Stat. 1547, 1670-73 (1993) (codified at 10 U.S.C. § 654). As the most prominent organization in the United States dedicated to protecting the rights of lesbian, gay and bisexual servicemembers, SLDN primarily is engaged in educating and informing the general public and federal policymakers about the shortcomings of "Don't Ask, Don't Tell." For example, SLDN publishes periodic "action alerts" that are distributed electronically to over 50,000 persons. These "action alerts" apprise SLDN members of developments in the fight to overturn "Don't Ask, Don't Tell." SLDN also maintains a website on the World Wide Web (http://www.sldn.org) that includes resources for servicemembers and

the press explaining in detail the history and shortcomings of "Don't Ask, Don't Tell." In addition, SLDN hosts a weblog, or "blog," that allows individuals to follow SLDN's efforts to end discrimination in the United States armed forces. The official SLDN blog (http://www.sldn.org/templates/blog/index.html) includes articles by SLDN staff, supporters and clients impacted by "Don't Ask, Don't Tell." SLDN also disseminates numerous informational releases to the public and the press on the aforementioned issues via its website and publications, and is a frequent source of information on these issues for both the news media and the federal government. *See, e.g.*, U.S. Gov't Accountability Office, *Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated* 6 n.17 (2005) (citing SLDN statistics for the number of servicemembers separated from military service under "Don't Ask, Don't Tell" and directing readers to SLDN's website).

4.  Defendant Department of Defense ("DOD") is a Department of the Executive Branch of the United States Government and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DOD is comprised of several component agencies. DOD is responsible for its component agencies' compliance with FOIA. Three DOD components are at issue in this proceeding: (1) the Counterintelligence Field Activity ("CIFA"), (2) the Defense Intelligence Agency ("DIA") and (3) the National Security Agency ("NSA").

5.  Defendant Department of Justice ("DOJ") is a Department of the Executive Branch of the United States Government and is an "agency" within the meaning of 5 U.S.C. § 552(f)(1). DOJ is comprised of several component agencies. DOJ is

responsible for its component agencies' compliance with FOIA. Three DOJ components are at issue in this proceeding: (1) the Federal Bureau of Investigation ("FBI"), (2) the Office of Information and Privacy ("OIP") and (3) the Office of Intelligence Policy and Review ("OIPR").

## FACTS

### Recent Revelations Regarding Domestic Surveillance by Federal Authorities

6. On November 27, 2005, an article published in the *Washington Post* reported that Defendant DOD had implemented an expansive program of domestic surveillance following the terrorist attacks of September 11, 2001. Walter Pincus, *Pentagon Expanding Its Domestic Surveillance Activity*, Wash. Post, Nov. 27, 2005, at A6. The article described a little-known DOD component, the Counterintelligence Field Activity or "CIFA," that was created in 2002 and whose exact size and budget remained classified. CIFA was described in the article as being responsible for gathering and analyzing information collected by DOD and other sources. Moreover, according to the article, the White House was considering the expansion of CIFA's power to allow for even greater domestic intelligence collection. At the same time, the article quoted Senator Ron Wyden (D-OR), a member of the Senate Select Committee on Intelligence, as expressing concerns about threats to civil liberties upon learning of the new program. A follow-up article published a few days later in the *Washington Post* described how reports of "suspicious activity" flowed to CIFA from defense facilities throughout the United States. Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity*, Wash. Post, Dec. 11, 2005, at A12.

4

7. On December 13, 2005, the *NBC Nightly News* reported that the news network had received a secret 400-page DOD document describing CIFA's surveillance of peaceful anti-war and counter-military recruitment groups. According to the *NBC Nightly News* report, which was later posted on the MSNBC.com website, Lisa Meyers et al., *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005, http://msnbc.msn.com/id/10454316, the 400-page DOD document listed more than 1500 "suspicious incidents" that had occurred inside the United States during a recent 10-month period. Included among these "suspicious incidents" were protests by various groups opposed to "Don't Ask, Don't Tell," including protests on the campuses of New York University and the University of California-Santa Cruz, both of which were listed as "threats." *See id.*; *see also* Anthony Glassman, *The Pentagon is spying on 'don't ask' protestors*, Gay People's Chron., Dec. 23, 2005; David Yaffett, *Pentagon calls gay student groups 'credible threat'*, Dallas Voice, Dec. 23, 2005; Andrew Keegan, *Peeping Pentagon?*, Wash. Blade, Dec. 23, 2005.

8. The day after the *NBC Nightly News* broadcast, Undersecretary of Defense for Intelligence Stephen A. Cambone reportedly ordered a review of CIFA's domestic surveillance activities. *See* Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*, Wash. Post, Dec. 15, 2005, at A1. Members of Congress also began to demand an inquiry into the CIFA program. *See id.*; *see also* Lisa Myers et al., *Senator Demands Investigation of Spy Database*, MSNBC.com, Dec. 15, 2005, http://www.msnbc.msn.com/id/10481600.

9. On December 16, 2005, an article published in the *New York Times* revealed yet another clandestine program of domestic surveillance conducted by a component of Defendant DOD. *See* James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005, at A1. According to the article, President George W. Bush had secretly authorized eavesdropping on American citizens inside the United States by Defendant DOD's NSA component. Most troublingly, the NSA program had been carried out without the benefit of judicial oversight, as no warrants were ever obtained by NSA.

10. The December 16, 2005 *New York Times* report had an immediate political impact and was credited with helping stall reauthorization of the USA PATRIOT Act. *See* Sheryl Gay Stolberg & Eric Lichtblau, *Senators Thwart Bush Bid to Renew Law on Terrorism*, N.Y. Times, Dec. 17, 2005, at A1.

11. On December 20, 2005, the *New York Times* reported on yet another clandestine program of domestic surveillance; however, this time the program at issue was conducted, not by a component of Defendant DOD, but by a component of Defendant DOJ. *See* Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times, Dec. 20, 2005, at A1. According to the report, the FBI had conducted surveillance of activist groups within the United States following the terrorist attacks of September 11, 2001.

12. The foregoing news reports created a level of public concern so great that the Bush Administration was forced to publicly acknowledge and defend these programs. *See, e.g.*, Lisa Rein, *Bush Defends Spying Program As 'Necessary' to Protect U.S.*,

6

Wash. Post, Jan. 2, 2006, at A2; Eric Lichtblau, *Bush Defends Spy Program and Denies Misleading Public*, N.Y. Times, Jan. 2, 2006, at A11; James Risen & Eric Lichtblau, *Rice Defends Domestic Eavesdropping*, N.Y. Times, Dec. 19, 2005, at A28; Peter Baker, *President Acknowledges Approving Secretive Eavesdropping*, Wash. Post, Dec. 18, 2005, at A1.

13.     The legality of these secret domestic surveillance programs also became a topic of debate and discussion. *See, e.g.*, Carol D. Leonnig, *Surveillance Court Is Seeking Answers*, Wash. Post, Jan. 5, 2006, at A2; Dafna Linzer, *Secret Surveillance May Have Occurred Before Authorization*, Wash. Post, Jan. 4, 2006, at A3; Eric Lichtblau & Scott Shane, *Files Say Agency Initiated Growth of Spying Effort*, N.Y. Times, Jan. 4, 2006, at A1; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*, N.Y. Times, Jan. 1, 2006, at A1; Eric Lichtblau & James Risen, *Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts*, N.Y. Times, Dec. 28, 2005, at A1; Eric Lichtblau & James Risen, *Spy Agency Mined Vast Data Trove, Officials Report*, N.Y. Times, Dec. 24, 2005, at A1.

14.     In addition, members of the Senate Judiciary Committee made clear their intention to hold hearings on the issue of domestic surveillance. *See* Charles Hurt, *Democrats to hit White House, Republicans on privacy issues*, Wash. Times, Jan. 3, 2006, at A1; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*, N.Y. Times, Jan. 1, 2006, at A1; Eric Lichtblau, *Officials Want to Expand Review of Domestic Spying*, N.Y. Times, Dec. 25, 2005, at A28.

### Plaintiff's January 5, 2006 FOIA Requests

15.    Prompted by the foregoing media reports of illegal and widespread surveillance, on January 5, 2006, Plaintiff wrote to Defendant DOD's CIFA, NSA and DIA components seeking various categories of records under FOIA related to the surveillance of SLDN and other groups opposed to "Don't Ask, Don't Tell." For example, in its FOIA request submitted to CIFA, Plaintiff requested any and all documents concerning the surveillance of "meetings involving people and/or organizations discussing, considering or stating opposition to 'Don't Ask, Don't Tell.'" Plaintiff also requested any and all documents concerning the surveillance of "communications involving, but not necessarily between, SLDN directors, staff, clients, prospective clients, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, [Voice over Internet Protocol] or other Internet-based technologies."

16.    That same day, Plaintiff submitted similar FOIA requests to Defendant DOD's principal FOIA office; the Central Intelligence Agency ("CIA"); and Defendant DOJ's Office of Information and Privacy ("OIP") and Office of Intelligence Policy and Review ("OIPR"), as well as its FBI component.

17.    Plaintiff transmitted the foregoing FOIA requests by facsimile on January 5, 2006. On information and belief, copies of Plaintiff's FOIA requests were received by the designated recipients on that day.

18.    In each of its January 5, 2006 FOIA requests, Plaintiff requested expedited processing and set forth in detail why SLDN qualified for such treatment under FOIA and

regulations promulgated thereunder by each respective agency. For example, after citing the enormous amount of media coverage over the federal government's surveillance programs, Plaintiff explained that recent revelations of domestic surveillance by federal authorities suggested that persons and/or groups opposed to "Don't Ask, Don't Tell" were subjected to—and were still being subjected to—surreptitious and potentially illegal surveillance by federal authorities. Plaintiff therefore asserted that the records being requested were urgently needed and explained that SLDN was an organization "primarily engaged in disseminating information to inform the public concerning actual or alleged Federal Government activity" as that phrase had been defined by courts interpreting 5 U.S.C. § 552(a)(6)(E)(i).

19. In addition, Plaintiff's January 5, 2006 FOIA requests also included requests for a fee waiver or, in the alternative, "representative of the news media" fee status. As it had done with its expedited processing requests, Plaintiff set forth in detail why SLDN qualified for a fee waiver. For example, Plaintiff explained that disclosure of the information requested (1) was in the public interest because it was likely to contribute significantly to the public understanding of the operations or activities of the federal government and (2) was not primarily in the commercial interest of SLDN.

### Initial Government Responses

20. On January 16, 2006, the statutory deadline for determining Plaintiff's requests for expedited processing expired without a response from the government agencies. Plaintiff therefore transmitted letters to each of the agencies to which it had

submitted FOIA requests and asked to be informed as soon as possible regarding the status of its requests for expedited processing.

21.     On January 17, 2006, Plaintiff received letters from DOJ's OIP and the FBI. In a letter dated January 12, 2006, OIP explained that it processed FOIA requests for the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Legal Policy, Legislative Affairs, Intergovernmental and Public Liaison, and Public Affairs. OIP then asserted that these offices "would not" maintain the records sought by Plaintiff's FOIA request. OIP suggested that Plaintiff submit its FOIA request to the FBI instead. Meanwhile, in a letter also dated January 12, 2006, the FBI claimed that Plaintiff's FOIA request did not contain enough "descriptive information" to permit a search of its records and asked Plaintiff to provide the agency with "[a]ny information that would help locate the records, such as complete names of individuals, organizations or events, dates and places of birth and the approximate time frame of the information sought . . . ."

22.     Also on January 17, 2006, Plaintiff received a letter from Defendant DOD dated January 12, 2006, in which the agency informed Plaintiff that it had combined Plaintiff's FOIA request sent to CIFA with that submitted to DOD's principal FOIA office. DOD also stated that it had denied Plaintiff's request for expedited processing. Without addressing the substantial arguments made by Plaintiff in favor of being granted expedited processing, DOD erroneously concluded that SLDN was not an organization "primarily engaged in disseminating information." In addition, DOD concluded that Plaintiff had failed to show that failure to expedite the processing of its FOIA request

would result in an imminent loss of due process rights or that granting expedited processing would further a humanitarian need, either of which would have required expedited processing under DOD regulations. According to DOD, Plaintiff's "speculation that certain organizations may have been under surveillance" did not constitute proof of an imminent loss of due process rights.

23. On January 19, 2006, Plaintiff responded to OIP's letter by noting recent media reports stating that decisions regarding the legality of recently uncovered domestic surveillance programs had been made at the highest levels of DOJ, including the Office of the Attorney General, thereby strongly suggesting that some form of documentation had accompanied these decisions. Plaintiff asked that if OIP's statement that it "would not" maintain the documents requested meant that no search had yet been conducted, that such a search be carried out as soon as possible as Plaintiff had requested expedited processing of its FOIA request.

24. Also on January 19, 2006, Plaintiff responded to the FBI in a letter setting forth why Plaintiff's FOIA request easily satisfied the liberal standard of specificity required of a request for records under FOIA and reminded the FBI that the statutory deadline for determining Plaintiff's request for expedited processing had long since passed.

25. On January 20, 2006, Plaintiff received a letter from Defendant DOD's NSA component denying Plaintiff's request for records in its entirety. Citing national security concerns, NSA refused to acknowledge the existence or non-existence of records responsive to Plaintiff's FOIA request.

26. On January 23, 2006, Plaintiff received correspondence from DOJ's OIPR component. In a letter dated January 18, 2006, OIPR cited national security concerns in refusing to confirm or deny the existence of documents responsive to Plaintiff's FOIA request.

27. Also on January 23, 2006, Plaintiff received correspondence from the CIA. In a letter dated January 12, 2006, the CIA denied Plaintiff's expedited processing and fee waiver requests. In addition, the CIA denied Plaintiff's request for documents, citing the agency's limited legal authority to collect information about the domestic activities of United States citizens.

28. On January 23, 2006, Plaintiff also received correspondence from Defendant DOD's DIA component. In a letter dated January 12, 2006, DIA denied Plaintiff's request for expedited processing. Moreover, due to a "substantial delay in processing [FOIA] requests," DIA stated that it was "impossible" for DIA to forecast when it might respond to Plaintiff's FOIA request.

29. On January 25, 2006, Plaintiff was informed via telephone that the FBI would begin searching for documents responsive to Plaintiff's January 5, 2006 FOIA request. However, the FBI did not state whether it would in fact disclose documents responsive to Plaintiff's January 5, 2006 FOIA request.

30. On January 31, 2006, Plaintiff filed administrative appeals of the adverse determinations made by NSA, CIA and OIPR.

31. On February 1, 2006, Plaintiff was informed via telephone that Defendant DOD had denied Plaintiff's request for a fee waiver and that the agency had categorized

Plaintiff as an "all other" requester for purposes of fee calculation. Plaintiff informed DOD that although it would agree to pay for search fees up to a given amount, it did not waive its right to appeal the agency's fee determination.

32. The statutory time period for determining Plaintiff's January 5, 2006 FOIA requests ended on February 3, 2006. To date, Plaintiff has not received a substantive determination from Defendant DOD or its DIA component with respect to Plaintiff's January 5, 2006 FOIA requests, nor has Plaintiff received a written determination on its request for a fee waiver from Defendant DOD. In addition, Plaintiff has not received a substantive determination from the FBI with respect to Plaintiff's January 5, 2006 FOIA requests, nor has Plaintiff received a determination from the FBI with respect to Plaintiff's expedited processing and fee waiver requests.

## CAUSES OF ACTION

### First Cause of Action:

*Violation of the Freedom of Information Act
for Failure to Grant Plaintiff's Requests for Expedited Processing*

33. Plaintiff repeats and realleges paragraphs 1-32.

34. The failure of Defendant DOD and its DIA component to grant Plaintiff's requests for expedited processing violates FOIA, 5 U.S.C. § 552(a)(6)(E)(i), and Defendant DOD's own regulation promulgated thereunder, 32 C.F.R. § 286.4(d)(3)(i)–(ii)(A).

35. In accordance with 5 U.S.C. § 552(a)(6)(E)(iii), Plaintiff need not exhaust its administrative remedies with respect to the denial of its requests for expedited processing by Defendant DOD and its DIA component.

36. The failure of the FBI to grant Plaintiff's requests for expedited processing violates FOIA, 5 U.S.C. § 552(a)(6)(E)(i), and Defendant DOJ's own regulation promulgated thereunder, 28 C.F.R. § 16.5(d)(1)(ii)-(iv).

37. In accordance with 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff has constructively exhausted its administrative remedies with respect to the FBI's failure to determine Plaintiff's request for expedited processing.

38. Defendant DOD, DIA and the FBI have wrongfully denied Plaintiff's requests for expedited processing.

39. Plaintiff is entitled to injunctive relief with respect to the expedited processing of its January 5, 2006 FOIA requests.

## Second Cause of Action:

### *Violation of the Freedom of Information Act for Failure to Grant Plaintiff's Requests for a Fee Waiver*

40. Plaintiff repeats and realleges paragraphs 1-32.

41. The FBI and DIA have failed to comply with the statutory time limits contained in 5 U.S.C. § 552(a)(6)(A) for determining Plaintiff's January 5, 2006 fee waiver requests.

42. In accordance with 5 U.S.C. § 552(a)(6)(A), (C), Plaintiff has constructively exhausted its administrative remedies.

14

43. Plaintiff is entitled to a waiver of all fees associated with the processing of its January 5, 2006 FOIA request submitted to the FBI and DIA.

44. Alternatively, Plaintiff is entitled to "representative of the news media" fee status.

### Third Cause of Action:

### *Violation of the Freedom of Information Act for Failure to Determine Plaintiff's Requests for Agency Records*

45. Plaintiff repeats and realleges paragraphs 1-32.

46. Defendant DOD, DIA and the FBI have failed to comply with the statutory time limits contained in 5 U.S.C. § 552(a)(6)(A)(i) with respect to Plaintiff's January 5, 2006 FOIA requests.

47. In accordance with 5 U.S.C. § 552(a)(6)(C)(i), Plaintiff has constructively exhausted its administrative remedies.

48. Defendant DOD, DIA and the FBI have wrongfully withheld agency records responsive to Plaintiff's January 5, 2006 FOIA requests.

49. Plaintiff is entitled to injunctive relief with respect to the release of agency records described in Plaintiff's January 5, 2006 FOIA requests.

### REQUESTED RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.   Provide for expeditious proceedings in this action;

B.   Order Defendant DOD, DIA and the FBI to expedite their processing of Plaintiff's January 5, 2006 FOIA requests;

C.  Establish a date certain by which such expedited processing must be completed by Defendant DOD, DIA and the FBI;

D.  Order the FBI and DIA to waive all fees associated with processing Plaintiff's January 5, 2006 FOIA requests;

E.  Order Defendant DOD, DIA and the FBI to disclose the requested records in their entirety and make copies available to Plaintiff;

F.  Establish a date certain by which such disclosure must be made by Defendant DOD, DIA and the FBI;

G.  Award Plaintiff its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E) and/or 28 U.S.C. § 2412(d); and

H.  Grant such other relief as the Court may deem just and proper.

Dated: February 6, 2006

Respectfully submitted,

Christopher Wolf
(D.C. Bar No. 335885)
James F. Segroves
(D.C. Bar No. 480360)
Meredith C. Bailey
(D.C. Bar No. 494476)[*]
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533
202.416.6800
202.416.6899 (fax)

---

[*] Application for admission to the United States District Court for the District of Columbia pending.

Jerry L. Dasti
(Not Admitted in D.C.)
PROSKAUER ROSE LLP
1585 Broadway
New York, N.Y. 10036-8299
212.969.3000
212.969.2900 (fax)

*Attorneys for Plaintiff Servicemembers Legal Defense Network*