# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-200 (RMC) |
| DEPARTMENT OF DEFENSE, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Pursuant to Federal Rule of Civil Procedure 65, Plaintiff Servicemembers Legal Defense Network hereby moves for entry of a preliminary injunction to enjoin Defendants Department of Defense and Department of Justice from impeding Plaintiff's access to agency records concerning the surveillance of individuals and organizations opposed to the congressional policy on gays and lesbians in the military, more commonly known as "Don't Ask, Don't Tell." Plaintiff seeks an order requiring Defendants to expedite their processing of Plaintiff's requests for records under the Freedom of Information Act. In addition, Plaintiff seeks an order requiring Defendants to waive all fees associated with processing Plaintiff's requests for records.

The grounds for this motion are set forth in the accompanying memorandum of points and authorities. Pursuant to Local Rule 65.1(d), Plaintiff asks that the Court

schedule a hearing on this application for a preliminary injunction at the Court's earliest convenience.

Dated: February 24, 2006                                    Respectfully submitted,

                                        _____/s/_____
                                        Christopher Wolf
                                        (D.C. Bar No. 335885)


                                        _____/s/_____
                                        James F. Segroves
                                        (D.C. Bar No. 480360)
                                        Meredith C. Bailey
                                        (D.C. Bar No. 494476)[*]
                                        PROSKAUER ROSE LLP
                                        1001 Pennsylvania Avenue, N.W.
                                        Suite 400 South
                                        Washington, D.C. 20004-2533
                                        202.416.6800
                                        202.416.6899 (fax)

                                        Jerry L. Dasti
                                        (Not Admitted in D.C.)
                                        PROSKAUER ROSE LLP
                                        1585 Broadway
                                        New York, N.Y. 10036-8299
                                        212.969.3000
                                        212.969.2900 (fax)

                                        *Attorneys for Plaintiff Servicemembers*
                                        *Legal Defense Network*

---

[*]     Application for admission to the United States District Court for the District of Columbia pending.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 06-200 (RMC) |
| DEPARTMENT OF DEFENSE, *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

Christopher Wolf
(D.C. Bar No. 335885)
James F. Segroves
(D.C. Bar No. 480360)
Meredith C. Bailey
(D.C. Bar No. 494476)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533
202.416.6800
202.416.6899 (fax)

Jerry L. Dasti
(Not Admitted in D.C.)
PROSKAUER ROSE LLP
1585 Broadway
New York, N.Y. 10036-8299
212.969.3000
212.969.2900 (fax)

*Attorneys for Plaintiff Servicemembers Legal Defense Network*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ..............................................................................................2

   I.   RECENT REVELATIONS REGARDING DOMESTIC SURVEILLANCE
       OF UNITED STATES CITIZENS BY FEDERAL AUTHORITIES ....................2

     A.  Domestic Surveillance by the Counterintelligence Field Activity ...................... 2

     B.  Domestic Surveillance by the National Security Agency and the Federal
        Bureau of Investigation ...................................................................... 3

     C.  Public Reaction, Political Fallout and Ongoing Legal Debate ........................... 4

  II.  PLAINTIFF'S FOIA REQUESTS .............................................................6

     A.  Records Requested ............................................................................ 6

     B.  Requests for Expedited Processing .................................................... 7

     C.  Requests for a Fee Waiver ................................................................ 12

 III.  INITIAL GOVERNMENT RESPONSES AND PLAINTIFF'S
       RESPONSES THERETO ......................................................................14

     A.  CIFA and DOD .............................................................................. 14

     B.  DIA ............................................................................................ 16

     C.  OIP ............................................................................................ 16

     D.  FBI ............................................................................................ 18

STANDARD OF REVIEW ...........................................................................................20

ARGUMENT ..............................................................................................................21

   I.   THIS COURT HAS JURISDICTION TO GRANT THE
       REQUESTED RELIEF .......................................................................21

     A.  Jurisdiction and Exhaustion of Administrative Remedies ................................ 21

     B.  Relief Requested ............................................................................ 23

  II.  PLAINTIFF IS ENTITLED TO ENTRY OF A
       PRELIMINARY INJUNCTION .............................................................24

     A.  Plaintiff is Likely to Prevail on the Merits ........................................... 25

     B.  Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested
        Injunctive Relief ............................................................................ 33

     C.  Granting Injunctive Relief Will Not Substantially Injure Other
        Interested  Parties .......................................................................... 34

D.  The Public Interest Favors the Requested Relief.................................................. 35

III.  THE COURT SHOULD ORDER DEFENDANTS DOD AND DOJ TO PROCESS PLAINTIFF'S FOIA REQUESTS IMMEDIATELY ..........................36

CONCLUSION....................................................................................................................37

# **TABLE OF AUTHORITIES**

## **CASES**

*ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004)................................23, 35

\* *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004) ................ 9, 22, 27, 29, 36

*Aguilera v. FBI*, 941 F. Supp. 144 (D.D.C. 1996) ...................................................... 23

*Al-Fayed v. CIA*, 254 F.3d 300 (D.C. Cir. 2001) .................................. 20, 21, 22, 23, 28

*Al-Fayed v. CIA*, No. 00-2092, 2000 WL 34342564
    (D.D.C. Sept. 20, 2000) ...................................................................................... 22

*Atl. Coast Airlines Holdings, Inc. v. Mesa Air Group, Inc.*,
    295 F. Supp. 2d 75 (D.D.C. 2003) ...................................................................... 24

*Cherokee Nat'l of Okla. v. Babbitt*, 117 F.3d 1489 (D.C. Cir. 1997) ........................... 35

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738
    (D.C. Cir. 1995)................................................................................................... 24

*Cleaver v. Kelley*, 427 F. Supp. 80 (D.D.C. 1976)...................................................... 23

*Edmonds v. FBI*, C.A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578
    (D.D.C. Dec. 3, 2002)......................................................................................... 35

\* *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 06-96 (HHK), slip op.
    (D.D.C. Feb. 16, 2006) ...............................................................................1, 23, 24

*Jacksonville Port Authr. v. Adams*, 556 F.2d 52 (D.C. Cir. 1977)............................... 35

*Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138
    (D.D.C. 2002)..................................................................................................... 36

*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309 (D.C. Cir. 2003) ............................... 22

\* *Leadership Conference on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246
    (D.D.C. 2005)..................................................................................................... 27

---

\*       In accordance with Local Rule 7(a), Plaintiff chiefly relies on those sources marked with an asterisk.

*Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276 (7th Cir. 1981) .................................................. 34

*Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558 (6th Cir. 1982) ....................... 33

*Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998) ................................. 24

*NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 352 (1976)......................................... 24

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004) ............................. 35

\* *Natural Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41 (D.D.C. 2002)........................................................................................29, 34, 36

*Oglesby v. Department of the Army*, 920 F.2d 57 (D.C. Cir. 1990)............................. 22

*Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976)................................................................................................ 37

*Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1 (D.D.C. 2003) ....................... 22

*Serono Labs., Inc. v. Shalala*, 158 F.3d 1313 (D.C. Cir. 1998).................................... 24

*United States v. BNS, Inc.*, 858 F.2d 456 (9th Cir. 1988)............................................. 33

*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) ......................................................... 2

*Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1 (D.D.C. 1999)...................... 25

**STATUTES**

5 U.S.C. § 552(a) ..................................................................13, 20, 21, 22, 25, 32, 36

5 U.S.C. § 552(a)(6)............................................................................ 7, 22, 26, 30, 36,

31 U.S.C. § 702 note ...................................................................................................... 9

Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, § 1804(b)(1), 100 Stat. 3207.......................................................................................... 31

GAO Human Capital Reform Act of 2004, § 8(a), Pub. L. No. 108-271, 118 Stat. 811............................................................................................... 9

iv

## LEGISLATIVE MATERIALS

132 Cong. Rec. S14,298 (daily ed. Sept. 30, 1986) ...................................................... 32

132 Cong. Rec. S16,496 (daily ed. Oct. 15, 1986)...................................................... 31

1996 U.S.C.C.A.N. 3448 ........................................................................................... 27

H.R. Rep. No. 104-795 (1996) .................................................................................. 27

*Intelligence Activities and the Rights of Americans, Book II, Final Report of the
Select Committee to Study Governmental Operations With Respect to
Intelligence Activities*, S. Rep. No. 94-755............................................................. 28

## REGULATIONS

28 C.F.R. § 16.5(d) .................................................................................. 11, 12, 17, 31

32 C.F.R. § 286.4(d) .............................................................................................10, 30

32 C.F.R. § 286.24...............................................................................................15, 22

## PERIODICALS

Peter Baker, *President Says He Ordered NSA Domestic Spying*,
Wash. Post, Dec. 18, 2005…………………………………………………………..5

Anthony Glassman, *The Pentagon is spying on 'don't ask' protestors*, Gay
People's Chron., Dec. 23, 2005…………………………………………………..3

Charles Hurt, *Democrats to hit White House, Republicans on privacy issues*,
Wash. Times, Jan. 3, 2006…………………………………………………………..5

Andrew Keegan, *Peeping Pentagon?*, Wash. Blade,
Dec. 23, 2005…………………………………………………………………………..3

Carol D. Leonnig, *Surveillance Court Is Seeking Answers*,
Wash. Post, Jan. 5, 2006…………………………………………………………..5

Eric Lichtblau, *Officials Want to Expand Review of Domestic Spying*,
N.Y. Times, Dec. 25, 2005……………………………………………………..6

Eric Lichtblau, *Bush Defends Spy Program and Denies Misleading Public*, N.Y.
Times, Jan. 2, 2006……………………………………………………..4

Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times,
Dec. 20, 2005…………………………………………………………...4

Eric Lichtblau & James Risen, *Defense Lawyers in Terror Cases Plan
Challenges Over Spy Efforts*, N.Y. Times, Dec. 28, 2005………………………….5

Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*,
N.Y. Times, Jan. 1, 2006……………………………………………………5

Eric Lichtblau & James Risen, *Spy Agency Mined Vast Data Trove, Officials
Report*, N.Y. Times, Dec. 24, 2005……………………………………………5

Eric Lichtblau & Scott Shane, *Files Say Agency Initiated Growth of Spying
Effort*, N.Y. Times, Jan. 4, 2006……………………………………………5

Dafna Linzer, *Secret Surveillance May Have Occurred Before Authorization*,
Wash. Post, Jan. 4, 2006……………………………………………………5

Lisa Meyers et al., *Is the Pentagon spying on Americans?*, MSNBC.com,
Dec. 14, 2005, http://msnbc.msn.com/id/10454316…………………………….2

Lisa Myers et al., *Senator Demands Investigation of Spy Database*, MSNBC.com,
Dec. 15, 2005, http://www.msnbc.msn.com/id/10481600…...…..……………….3

Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity*,
Wash. Post, Dec. 11, 2005……………………………………………………...2

Walter Pincus, *Pentagon Expanding Its Domestic Surveillance Activity*,
Wash. Post, Nov. 27, 2005……………………………………………………2

Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*, Wash. Post,
Dec. 15, 2005……………………………………………………………...3

Lisa Rein, *Bush Defends Spying Program As 'Necessary' to Protect U.S.*,
Wash. Post, Jan. 2, 2006……………………………………………………..4

James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*,
N.Y. Times, Dec. 16, 2005……………………………………………………4

James Risen & Eric Lichtblau, *Rice Defends Domestic Eavesdropping*,
N.Y. Times, Dec. 19, 2005………………………………………………………..5

Sheryl Gay Stolberg & Eric Lichtblau, *Senators Thwart Bush Bid to Renew
Law on Terrorism*, N.Y. Times, Dec. 17, 2005………………………………...4

David Taffett, *Pentagon calls gay student groups 'credible threat'*,
Dallas Voice, Dec. 23, 2005……………………………………………………3

United Press Int'l, *DOD admits 'inappropriate' info collected*, washtimes.com,
Feb. 7, 2006, http://washtimes.com/upi/20060207-023532-6042r.htm…………38

**MISCELLANEOUS**

U.S. Gov't Accountability Office, *Military Personnel: Financial Costs and Loss
of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be
Completely Estimated* (2005)..................................................................... 9

## PRELIMINARY STATEMENT

Plaintiff Servicemembers Legal Defense Network ("Plaintiff" or "SLDN") recently initiated this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the expedited processing and release of agency records concerning the surveillance of individuals and groups opposed to the congressional policy on gays and lesbians in the military, more commonly known as "Don't Ask, Don't Tell."  Direct evidence of such surveillance came to light shortly before recent revelations regarding the National Security Agency's program of warrantless domestic surveillance.  *See Elec. Privacy Info. Ctr. v. DOJ*, No. 06-96 (HHK), slip op. (D.D.C. Feb. 16, 2006).  Various components of Defendants Department of Defense ("DOD") and Department of Justice ("DOJ") have failed to process Plaintiff's requests—or to even identify a date by which they expect to complete their processing—thereby violating both the letter and spirit of FOIA.

Because timeliness is essential to Plaintiff's rights and Defendants' obligations, and because the information at issue concerns an important matter of public interest (i.e., domestic surveillance by the federal government), Plaintiff seeks the Court's expedited consideration of this matter and entry of an order compelling Defendants to process Plaintiff's FOIA requests within twenty (20) days of the Court's order.  In addition, Plaintiff seeks an order compelling Defendants to waive all fees associated with processing Plaintiff's FOIA requests.

## STATEMENT OF FACTS

**I.     RECENT REVELATIONS REGARDING DOMESTIC SURVEILLANCE OF UNITED STATES CITIZENS BY FEDERAL AUTHORITIES**

The federal government has been caught spying on Americans opposed to the congressional policy on gays and lesbians in the military, popularly known as "Don't Ask, Don't Tell." Yet, when presented with requests to determine the scope and extent of this improper activity, the government has stonewalled, ignoring its obligations under FOIA. Just as this Court recently ordered the expedited processing of FOIA requests concerning the National Security Agency's domestic surveillance program, Plaintiff's FOIA requests concern a matter of current exigency and therefore require expedited processing.

### A.     Domestic Surveillance by the Counterintelligence Field Activity

On December 13, 2005, the *NBC Nightly News* reported that it had received a secret 400-page DOD document describing surveillance of peaceful anti-war and counter-military-recruitment groups by a little-known DOD component, the Counterintelligence Field Activity ("CIFA").[2] According to the *NBC Nightly News* report, which was later posted on the MSNBC.com website, Lisa Meyers et al., *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005, http://msnbc.msn.com/id/10454316 [copy

---

[2]     On November 27, 2005, an article published in the *Washington Post* first reported that Defendant DOD had implemented an expansive program of domestic surveillance following the terrorist attacks of September 11, 2001. Walter Pincus, *Pentagon Expanding Its Domestic Surveillance Activity*, Wash. Post, Nov. 27, 2005, at A6 [copy attached as Exhibit 1]. Although its exact size and budget remained classified, the article stated that CIFA was created in 2002 and that it was responsible for gathering and analyzing information collected by DOD and other sources. *See id.* Moreover, according to the article, the White House was considering the expansion of CIFA's power to allow for even greater domestic intelligence collection. *See id.* A follow-up article published a few days later in the Washington Post described how reports of "suspicious activity" flowed to CIFA from defense facilities throughout the United States. Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity*, Wash. Post, Dec. 11, 2005, at A12 [copy attached as Exhibit 2].

attached as Exhibit 3], the 400-page DOD document listed more than 1500 "suspicious incidents" that had occurred inside the United States during a recent 10-month period. According to an eight-page excerpt from the DOD document, included among these "suspicious incidents" were protests by various groups opposed to "Don't Ask, Don't Tell," including protests on the campuses of New York University ("NYU") and the University of California-Santa Cruz ("UC-Santa Cruz"), both of which were listed as "threats." *Id.*; *see also* Anthony Glassman, *The Pentagon is spying on 'don't ask' protestors*, Gay People's Chron., Dec. 23, 2005 [copy attached as Exhibit 4]; David Taffett, *Pentagon calls gay student groups 'credible threat'*, Dallas Voice, Dec. 23, 2005 [copy attached as Exhibit 5]; Andrew Keegan, *Peeping Pentagon?*, Wash. Blade, Dec. 23, 2005 [copy attached as Exhibit 6].

The day after the *NBC Nightly News* broadcast, Undersecretary of Defense for Intelligence Stephen A. Cambone reportedly ordered a review of CIFA's domestic surveillance activities. *See* Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*, Wash. Post, Dec. 15, 2005, at A1 [copy attached as Exhibit 7]. Members of Congress also began to demand an inquiry into the CIFA program. *See id.*; *see also* Lisa Myers et al., *Senator Demands Investigation of Spy Database*, MSNBC.com, Dec. 15, 2005, http://www.msnbc.msn.com/id/10481600 [copy attached as Exhibit 8].

### B.    Domestic Surveillance by the National Security Agency and the Federal Bureau of Investigation

On December 16, 2005, an article published in the *New York Times* revealed yet another clandestine program of domestic surveillance conducted by a component of

Defendant DOD. *See* James Risen & Eric Lichtblau, *Bush Lets U.S. Spy on Callers Without Courts*, N.Y. Times, Dec. 16, 2005, at A1 [copy attached as Exhibit 9]. According to the article, President George W. Bush had authorized eavesdropping on American citizens inside the United States by the National Security Agency ("NSA"), a component of Defendant DOD. *Id.* Most troublingly, the NSA program had been carried out without the benefit of judicial oversight, as no warrants were ever obtained. *Id.*; *see also* Sheryl Gay Stolberg & Eric Lichtblau, *Senators Thwart Bush Bid to Renew Law on Terrorism*, N.Y. Times, Dec. 17, 2005, at A1 [copy attached as Exhibit 10].

On December 20, 2005, the *New York Times* reported on yet another clandestine program of domestic surveillance; however, this time the program at issue was not conducted by a component of Defendant DOD, but by a component of Defendant DOJ. *See* Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times, Dec. 20, 2005, at A1 [copy attached as Exhibit 11]. According to the report, the FBI had conducted surveillance of activist groups within the United States following the terrorist attacks of September 11, 2001. *Id.* Included among the groups surveilled were Greenpeace and People for the Ethical Treatment of Animals. *Id.*

### C.    Public Reaction, Political Fallout and Ongoing Legal Debate

The foregoing news reports created a level of public concern so great that the Bush Administration was forced to acknowledge and to defend these programs. *See, e.g.*, Lisa Rein, *Bush Defends Spying Program As 'Necessary' to Protect U.S.*, Wash. Post, Jan. 2, 2006, at A2 [copy attached as Exhibit 12]; Eric Lichtblau, *Bush Defends Spy Program and Denies Misleading Public*, N.Y. Times, Jan. 2, 2006, at A11 [copy attached as

4

Exhibit 13]; James Risen & Eric Lichtblau, *Rice Defends Domestic Eavesdropping*, N.Y. Times, Dec. 19, 2005, at A28 [copy attached as Exhibit 14]; Peter Baker, *President Says He Ordered NSA Domestic Spying*, Wash. Post, Dec. 18, 2005, at A1 [copy attached as Exhibit 15].

The legality of these domestic surveillance programs also became a topic of debate and discussion. *See, e.g.*, Carol D. Leonnig, *Surveillance Court Is Seeking Answers*, Wash. Post, Jan. 5, 2006, at A2 [copy attached as Exhibit 16]; Dafna Linzer, *Secret Surveillance May Have Occurred Before Authorization*, Wash. Post, Jan. 4, 2006, at A3 [copy attached as Exhibit 17]; Eric Lichtblau & Scott Shane, *Files Say Agency Initiated Growth of Spying Effort*, N.Y. Times, Jan. 4, 2006, at A1 [copy attached as Exhibit 18]; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*, N.Y. Times, Jan. 1, 2006, at A1 [copy attached as Exhibit 19]; Eric Lichtblau & James Risen, *Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts*, N.Y. Times, Dec. 28, 2005, at A1 [copy attached as Exhibit 20]; Eric Lichtblau & James Risen, *Spy Agency Mined Vast Data Trove, Officials Report*, N.Y. Times, Dec. 24, 2005, at A1 [copy attached as Exhibit 21].

In addition, members of the Senate Judiciary Committee soon made clear their intention to hold hearings on the issue of domestic surveillance. *See* Charles Hurt, *Democrats to hit White House, Republicans on privacy issues*, Wash. Times, Jan. 3, 2006, at A1 [copy attached as Exhibit 22]; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*, N.Y. Times, Jan. 1, 2006, at A1 [copy attached as Exhibit

23]; Eric Lichtblau, *Officials Want to Expand Review of Domestic Spying*, N.Y. Times, Dec. 25, 2005, at A28 [copy attached as Exhibit 24].

## II.    PLAINTIFF'S FOIA REQUESTS

### A.    Records Requested

On January 5, 2006, Plaintiff submitted FOIA requests to CIFA, DOD, NSA, DOD's Defense Intelligence Agency ("DIA"), DOJ's Office of Information and Privacy ("OIP"), DOJ's Office of Intelligence Policy and Review ("OIPR"), the FBI and to the Central Intelligence Agency ("CIA").[3]   (Declaration of Christopher Wolf ¶ 3 (Feb. 24, 2006) ("Wolf Decl.") [copy attached as Exhibit 25]; Wolf Decl. Ex. A-H.)  However, only those FOIA requests submitted to CIFA, DOD, DIA, OIP and the FBI are at issue in the instant motion.[4]

At the beginning of each request, Plaintiff informed the recipient agency that fourteen prominent public interest organizations supported Plaintiff's FOIA requests. (Wolf Decl. Ex. A at 1, Ex. B at 1, Ex. D at 1, Ex. E at 1, Ex. G at 1.)[5]  Among other things, Plaintiff's FOIA requests sought any and all documents in the recipient agency's

---

[3]      In addition to sending these FOIA requests by certified mail, counsel for Plaintiff transmitted Plaintiff's FOIA requests to the recipient agencies by facsimile on January 5, 2006.  (Wolf Decl. ¶ 3.)  Plaintiff's counsel received transmission confirmations indicating that of all of the above-referenced letters were received by the designated recipients on that day.  (*See* Wolf Decl. Ex. A-H.)

[4]      Plaintiff's FOIA requests submitted to NSA, CIA and OIPR currently are the subject of administrative appeals.  (Wolf Decl. ¶ 4.)

[5]      The groups listed were as follows: Gay & Lesbians Against Defamation; the Gay and Lesbian Medical Association; the International Gay and Lesbian Human Rights Commission; the LA Lesbian & Gay Center; the Lambda Legal Defense and Education Fund; Lambdas, Chicago–Kent College of Law; the Mautner Project; the National Coalition of Anti-Violence Projects; the National Youth Advocacy Coalition; Outlaws, University of Michigan School of Law; Pride at Work, AFL-CIO; QLaw, University of Wisconsin School of Law; OUTLAW, Stanford Law School; and the Human Rights Campaign.  (Wolf Decl. Ex. A at 1, Ex. B at 1, Ex. D at 1, Ex. E at 1, Ex. G at 1.)

possession or control concerning the surveillance of "meetings involving people and/or organizations discussing, considering or stating opposition to 'Don't Ask, Don't Tell.'" (Wolf Decl. Ex. A at 2, Ex. B at 2, Ex. D at 2, Ex. E at 2, Ex. G at 2.)  As specific examples of the foregoing, Plaintiff cited the February 2005 protest at NYU and the April 2005 demonstration at UC-Santa Cruz, both of which had been identified as "threats" in the 400-page DOD document provided to the *NBC Nightly News*.  (Wolf Decl. Ex. A at 3, Ex. B at 3, Ex. D at 3, Ex. E at 3, Ex. G at 3.)  Plaintiff also requested any and all documents concerning the surveillance of "communications involving, but not necessarily between, SLDN directors, staff, clients, prospective clients, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, [Voice over Internet Protocol] or other Internet-based technologies."  (Wolf Decl. Ex. A at 3, Ex. B at 3, Ex. D at 3, Ex. E at 3, Ex. G at 3.)

### B.    Requests for Expedited Processing

In each of its FOIA requests, Plaintiff also requested expedited processing and set forth in detail why SLDN qualified for such treatment under FOIA and regulations promulgated thereunder by each recipient agency.  (Wolf Decl. Ex. A at 4-8, Ex. B at 4-8, Ex. D at 4-8, Ex. E at 4-7, Ex. G at 4-7.)

#### 1.    *Statutory Entitlement to Expedited Processing*

FOIA requires that an agency expedite its processing of a request for records when there exists a "compelling need" for the records requested.  5 U.S.C. § 552(a)(6)(E)(i)(I). A "compelling need" exists when (1) a request is made by a person primarily engaged in

7

disseminating information and (2) there exists an urgency to inform the public concerning

actual or alleged federal government activity.  § 552(a)(6)(E)(v)(II).

As to the first element, Plaintiff explained how SLDN qualified as an organization

"primarily engaged in disseminating information."  (Wolf Decl. Ex. A at 6-7, Ex. B at 6-

7, Ex. D at 6-7, Ex. E at 6, Ex. G at 6.)  In doing so, Plaintiff informed each recipient

agency that SLDN was a national, non-profit watchdog and policy organization dedicated

to ending discrimination against, and harassment of, United States military personnel

under "Don't Ask, Don't Tell."  (Wolf Decl. Ex. A at 6, Ex. B at 6, Ex. D at 6, Ex. E at 6,

Ex. G at 6.)  Plaintiff then described SLDN's multifaceted communications network,

which was used to inform the general public, federal policymakers and SLDN members

of the policy's shortcomings and developments in SLDN's fight to overturn the policy.

(Wolf Decl. Ex. A at 6-7, Ex. B at 6-7, Ex. D at 6-7, Ex. E at 6, Ex. G at 6.)  Specifically,

Plaintiff informed each recipient agency that SLDN's communications network included:

- a highly trafficked website on the World Wide Web that contained resources for servicemembers and the press explaining the history of "Don't Ask, Don't Tell" and SLDN's legal and lobbying efforts to see it overturned;

- a weblog, or "blog," that allowed individuals to follow SLDN's efforts to end discrimination against lesbian, gay and bisexual servicemembers, which also included articles by SLDN staff, supporters and clients impacted by "Don't Ask, Don't Tell";

- electronic "action alerts" distributed to over 50,000 persons communicating the most recent developments in SLDN's campaign to overturn "Don't Ask, Don't Tell";

- informational releases disseminated to the public and the press on the aforementioned issues through various means, including SLDN's website; and

- quarterly reports, more than 6,000 copies of which were distributed to SLDN members and sponsors detailing the organization's progress in overturning "Don't Ask, Don't Tell."

(Wolf Decl. Ex. A at 6-7, Ex. B at 6-7, Ex. D at 6-7, Ex. E at 6, Ex. G at 6.)  In addition, as evidence that SLDN was a respected resource on issues related to "Don't Ask, Don't Tell," Plaintiff noted that the U.S. Government Accountability Office had cited statistics compiled by SLDN in a recent report addressing taxpayer costs attributable to the military's implementation of the policy.  (Wolf Decl. Ex. A at 6, Ex. B at 6, Ex. D at 6, Ex. E at 6, Ex. G at 6.)[6]

On the urgency to inform the public concerning actual or alleged federal government activity, Plaintiff cited news articles revealing the federal government's domestic surveillance of persons and groups opposed to "Don't Ask, Don't Tell."  (Wolf Decl. Ex. A at 4-6, Ex. B at 4-6, Ex. D at 4-6, Ex. E at 4-5, Ex. G at 4-6.)  Plaintiff showed how the requested records were urgently needed in order to determine whether the constitutional rights of individuals and groups had been violated.  (Wolf Decl. Ex. A at 6, Ex. B at 6, Ex. D at 6, Ex. E at 6, Ex. G at 6-7.)

In support of this assertion, Plaintiff noted that in *American Civil Liberties Union v. Department of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004) ("*ACLU*"), this Court found that concerns regarding federal government surveillance justified ordering an agency to expedite its processing of a FOIA request similar to that submitted by Plaintiff.  (Wolf

---

[6]     The U.S. Government Accountability Office, or "GAO," was formerly known as the "United States General Accounting Office."  *See* GAO Human Capital Reform Act of 2004, § 8(a), Pub. L. No. 108-271, 118 Stat. 811, 814 (codified at 31 U.S.C. § 702 note) (renaming agency); *see also* U.S. Gov't Accountability Office, *Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated* 6 n.17 (2005) (citing SLDN statistics for the number of servicemembers separated from military service under "Don't Ask, Don't Tell" and directing readers to SLDN's website).

Decl. Ex. A at 4-5, Ex. B at 4-5, Ex. D at 5, Ex. E at 4, Ex. G at 4.)  Plaintiff also noted

that the records sought by its FOIA requests were needed in a timely manner to be useful

in the ongoing policy debate regarding the proper scope of domestic surveillance by

federal actors.  (Wolf Decl. Ex. A at 6, Ex. B at 6, Ex. D at 6, Ex. E at 5, Ex. G at 5-6.)

Plaintiff explained that the *ACLU* court found the potential use of information in such a

debate justified ordering an agency to expedite its processing of a FOIA request similar to

that submitted by Plaintiff.  (Wolf Decl. Ex. A at 6, Ex. B at 6, Ex. D at 6, Ex. E at 5, Ex.

G at 5-6.)

### 2. *Regulatory Entitlement to Expedited Processing*

#### a.    **DOD Regulations**

For those agencies subject to DOD's FOIA regulations (i.e., CIFA, DIA and DOD

itself), Plaintiff explained that 32 C.F.R. § 286.4(d)(3)(iv) required expedited processing

(1) where failure to grant expedited treatment could result in an imminent loss of due

process rights or (2) where granting expedited processing would further a humanitarian

need.  (Wolf Decl. Ex. A at 7, Ex. B at 7, Ex. D at 7.)  As for preventing an imminent loss

of due process rights, Plaintiff asserted that domestic surveillance of individuals and

organizations opposed to "Don't Ask, Don't Tell" infringed upon the free speech, free

association and privacy rights of those individuals or entities that were the subject of such

surveillance.  (Wolf Decl. Ex. A at 7, Ex. B at 7, Ex. D at 7.)  As a result, Plaintiff argued

that any delay in processing its FOIA requests could compromise the significant interests

at stake by delaying Plaintiff, and therefore the public, from understanding the full scope

of any governmental misconduct.  (Wolf Decl. Ex. A at 7, Ex. B at 7, Ex. D at 7.)

Plaintiff therefore asserted that an imminent loss of due process rights would be suffered if its FOIA requests were not processed on an expedited basis.  (Wolf Decl. Ex. A at 7, Ex. B at 7, Ex. D at 7.)

As for "humanitarian need," Plaintiff stated that in accordance with § 286.4(d)(3)(iv), "humanitarian need" meant that disclosing the information would promote the welfare and interest of mankind.  (Wolf Decl. Ex. A at 7, Ex. B at 7, Ex. D at 7.)  Plaintiff then explained that the right to free speech, free association and privacy were protected under the First, Fourth and Fifth Amendments to the United States Constitution, which were themselves designed in part to promote the welfare of mankind through liberty.  (Wolf Decl. Ex. A at 7, Ex. B at 7, Ex. D at 7.)  Because Plaintiff's FOIA requests raised serious concerns about whether these rights had been secretly violated by the federal government, Plaintiff asserted that granting its requests for expedited processing would promote the interest and welfare of mankind, thereby serving a "humanitarian need."  (Wolf Decl. Ex. A at 7-8, Ex. B at 7-8, Ex. D at 7-8.)

### b.    DOJ Regulations

For those agencies subject to DOJ's FOIA regulations (i.e., OIP and the FBI), Plaintiff explained that 28 C.F.R. § 16.5(d)(1)(iv) required expedited processing because Plaintiff's FOIA requests concerned a matter of "widespread and exceptional media interest" in which there existed "possible questions about the government's integrity which affect public confidence."  (Wolf Decl. Ex. E at 6-7, Ex. G at 7.)  After discussing many of the news stories cited above, Plaintiff asserted that the records sought by its FOIA requests concerned a matter of widespread and exceptional media interest—

11

namely, the federal government's surveillance of United States citizens.  (Wolf Decl. Ex.
E at 6-7, Ex. G at 7.)  Furthermore, Plaintiff stated that such surveillance raised numerous
questions about the government's integrity that could significantly affect public
confidence in the federal government since, as noted in the media reports cited in
Plaintiff's FOIA requests, any such surveillance arguably violated existing federal
statutes and/or provisions of the United States Constitution.  (Wolf Decl. Ex. E at 6-7, Ex.
G at 7.)

Plaintiff also explained that 28 C.F.R. § 16.5(d)(1)(iii) required expedited
processing because failure to grant expedited processing could result in an imminent loss
of due process rights.  (Wolf Decl. Ex. E at 7, Ex. G at 7.)  As it had done in its letters to
CIFA, DOD and DIA, Plaintiff asserted that domestic surveillance of individuals or
groups opposed to "Don't Ask, Don't Tell" infringed upon the free speech, free
association and privacy rights of those individuals or entities that were the subject of such
surveillance.  (Wolf Decl. Ex. E at 7, Ex. G at 7.)  An imminent loss of due process rights
would therefore be suffered if Plaintiff's FOIA requests were not processed on an
expedited basis, as evidence needed to stop such surveillance would not become public in
a timely fashion.  (Wolf Decl. Ex. E at 7, Ex. G at 7.)

### C.    Requests for a Fee Waiver

Plaintiff's FOIA requests also included requests for a fee waiver.  (Wolf Decl. Ex.
A at 8-9, Ex. B at 8-9, Ex. D at 7-9, Ex. E at 7-9, Ex. G at 7-9.)  As it had done with its
expedited processing requests, Plaintiff set forth in detail why it qualified for a fee
waiver.  (Wolf Decl. Ex. A at 8-9, Ex. B at 8-9, Ex. D at 7-8, Ex. E at 7-8, Ex. G at 7-8.)

Plaintiff explained that in accordance with 5 U.S.C. § 552(a)(4)(A)(iii), disclosure of the information requested (1) was in the public interest because it was likely to contribute significantly to the public understanding of the operations or activities of the federal government and (2) was not primarily in the commercial interest of SLDN.  (Wolf Decl. Ex. A at 8-9, Ex. B at 8-9, Ex. D at 7-8, Ex. E at 7-8, Ex. G at 7-8.)

As evidence that it satisfied the first criterion for a fee waiver, Plaintiff noted that its FOIA requests sought information regarding domestic surveillance conducted by the federal government, which was a topic that had drawn considerable attention and criticism from members of Congress and the media.  (Wolf Decl. Ex. A at 8, Ex. B at 8, Ex. D at 7, Ex. E at 7-8, Ex. G at 8.)  Plaintiff asserted that disclosure of the records requested would help the general public understand the full scope and extent to which the federal government had been collecting information about groups opposed to "Don't Ask, Don't Tell."  (Wolf Decl. Ex. A at 8, Ex. B at 8, Ex. D at 7-8, Ex. E at 7, Ex. G at 8.)  Plaintiff also pledged to use its communication network to disseminate to the general public information collected as a result of its FOIA requests.  (Wolf Decl. Ex. A at 8-9, Ex. B at 8, Ex. D at 8, Ex. E at  Ex. G at 8.)

As evidence that it satisfied the second criterion for a fee waiver, Plaintiff explained that it was a national, non-profit policy organization dedicated to ending discrimination against, and harassment of, United States military personnel under "Don't Ask, Don't Tell."  (Wolf Decl. Ex. A at 9, Ex. B at 9, Ex. D at 8, Ex. E at 8, Ex. G at 8.)  Plaintiff disavowed having any commercial interest in the records sought by its FOIA requests.  (Wolf Decl. Ex. A at 9, Ex. B at 9, Ex. D at 8, Ex. E at 8, Ex. G at 8.)  Plaintiff

then explained that by submitting its FOIA requests, Plaintiff hoped to obtain information in order to educate the general public regarding the extent to which domestic surveillance has been used against organizations opposed to "Don't Ask, Don't Tell." (Wolf Decl. Ex. A at 9, Ex. B at 9, Ex. D at 8, Ex. E at 8, Ex. G at 8.)

## III.    INITIAL GOVERNMENT RESPONSES AND PLAINTIFF'S RESPONSES THERETO

On January 15, 2006, the ten-day statutory deadline for determining Plaintiff's requests for expedited processing expired without Plaintiff receiving a single response. (Declaration of James F. Segroves ¶ 4 (Feb. 23, 2006) ("Segroves Decl.") [copy attached as Exhibit 26].) On January 16, 2006, Plaintiff transmitted letters to each of the agencies to which it had submitted FOIA requests and asked to be informed as soon as possible regarding the status of its requests for expedited processing. (*See* Segroves Decl. Ex. A-H.) For ease of reference, events following the transmission of these letters are organized according to agency.

### A.    CIFA and DOD

On January 17, 2006, Plaintiff received a letter from DOD dated January 12, 2006, in which DOD informed Plaintiff that it was providing an interim response to Plaintiff's "duplicate" FOIA requests sent to CIFA and DOD. (Segroves Decl. Ex. I at 1.) DOD stated that it had denied Plaintiff's request for expedited processing. (*Id.* at 1-2.) Without addressing the substantial arguments made by Plaintiff in favor of being granted expedited processing, DOD concluded that SLDN was not an organization "primarily engaged in disseminating information." (*Id.* at 1.) In addition, DOD concluded that

Plaintiff had not shown that failure to expedite the processing of its FOIA request would result in an imminent loss of due process rights or that granting expedited processing would further a humanitarian need, either of which would have required expedited processing under DOD regulations.  (*Id.* at 2.)  According to DOD, Plaintiff's mere "speculation that certain organizations may have been under surveillance" did not constitute proof of an imminent loss of due process rights.  (*Id.* at 2.)

On February 1, 2006, Plaintiff was informed via telephone that Defendant DOD had denied Plaintiff's request for a fee waiver and that the agency had categorized Plaintiff as an "all other" requester for purposes of fee calculation.  (Wolf Decl. ¶ 5.) Plaintiff informed DOD that although it would agree to pay for search fees up to a given amount, it did not waive its right to appeal the agency's fee waiver and requester category determinations.  (*Id.*)  In order that these decisions could be appealed administratively in a timely manner, Plaintiff asked DOD to place its determinations in writing and to transmit them by facsimile.  (Segroves Decl. ¶ 6.)

To date, Plaintiff has not received a substantive determination from Defendant DOD or CIFA with respect to the release of records responsive to Plaintiff's FOIA requests.  (Wolf Decl. ¶ 6.)  In addition, Plaintiff has not yet received a written denial of its fee waiver request from Defendant DOD, which is a prerequisite to filing an administrative appeal of that determination in accordance with 32 C.F.R. § 286.24(a). (*Id.*)

**B.    DIA**

On January 23, 2006, Plaintiff received correspondence from DIA dated January 12, 2006.  (Wolf Decl. Ex. I.)  With little explanation, DIA denied Plaintiff's request for expedited processing.  (*Id.* at 1.)  Moreover, because of a "substantial delay in processing [FOIA] requests," DIA stated that it was "impossible" for DIA to forecast when it might respond to Plaintiff's FOIA request.  (*Id.* at 1.)

To date, Plaintiff has not received a substantive determination from DIA with respect to the release of records responsive to Plaintiff's FOIA request, nor has Plaintiff received a determination on its request for a fee waiver.  (Wolf Decl. ¶ 8.)

**C.    OIP**

On January 17, 2006, Plaintiff received a letter from OIP dated January 12, 2006. (Segroves Decl. Ex. J.)  OIP explained that it processed FOIA requests for the Offices of the Attorney General, Deputy Attorney General, Associate Attorney General, Legal Policy, Legislative Affairs, Intergovernmental and Public Liaison, and Public Affairs. (*Id.* at 1.)  OIP then asserted that these offices "would not" maintain the records sought by Plaintiff's FOIA request.  (*Id.*)  OIP suggested that Plaintiff submit its FOIA request to the FBI instead.  (*Id.*)

On January 19, 2006, Plaintiff responded to OIP's letter by citing published accounts stating that decisions regarding the legality of recently uncovered domestic surveillance programs had been made at the highest levels of DOJ, including the Office of the Attorney General, thereby strongly suggesting that some form of documentation had accompanied these decisions.  (Segroves Decl. Ex. K at 1.)  Plaintiff asked that if

16

OIP's statement that it "would not" maintain the documents requested meant that no search had yet been conducted, that such a search be carried out as soon as possible as Plaintiff had requested expedited processing of its FOIA request.  (*Id.* at 2.)

On February 7, 2006, Plaintiff received a letter from OIP dated January 26, 2006. (Wolf Decl. Ex. J.)  In this letter, OIP partially denied Plaintiff's expedited processing request on the grounds that Plaintiff was not primarily engaged in disseminating information.  (*Id.* at 1.)  OIP also concluded that Plaintiff had not shown that its due process rights were at risk by the government's surveillance of persons and groups opposed to "Don't Ask, Don't Tell."  (*Id.*)  OIP then informed Plaintiff that its request for expedited processing based on 28 C.F.R. § 16.5(d)(1)(iv) had been forwarded to DOJ's Director of Public Affairs for evaluation.  (*Id.* at 2.)

OIP's January 26, 2006 letter also attempted to narrow the scope of Plaintiff's FOIA request.  OIP stated: "In your letter [referring to Plaintiff's letter of January 19, 2006 (Segroves Decl. Ex. K)], you identified the Office of the Attorney General as a component that that may have records responsive to your request.  Accordingly, this response is made on behalf of the Office of the Attorney General."  (Wolf Decl. Ex. J at 1.)  OIP then stated, "[P]lease be advised that your request has been assigned to a FOIA Specialist in this Office and a record search is being initiated in the Office of the Attorney General."  (*Id.* at 2.)  Despite the fact that more than a month had passed since Plaintiff first submitted its FOIA request, OIP noted that no decision had yet been made with respect to Plaintiff's request for a fee waiver.  (*Id.*)

On February 14, 2006, Plaintiff responded to OIP's letter of January 19, 2006, clarifying that Plaintiff had not narrowed its FOIA request to only those records maintained by the Office of the Attorney General. (Wolf Decl. Ex. K at 1.)  Plaintiff instructed OIP that all records within its jurisdiction were to be searched for responsiveness to Plaintiff's FOIA request. (*Id.*)  Later that day, Plaintiff received a letter from OIP dated February 7, 2006, in which OIP informed Plaintiff that its last ground for seeking expedited processing had been denied. (Wolf Decl. Ex. L at 1.)  According to OIP, DOJ's Director of Public Affairs had "determined that, while the subject of [Plaintiff's] FOIA request has raised questions about the government's integrity which affect public confidence, there is not widespread and exceptional media interest." (*Id.*)  As a result, Plaintiff's FOIA request had been placed in OIP's "regular processing queue" with no estimated date of completion. (*Id.*)

To date, Plaintiff has not received a substantive determination from OIP regarding the release of documents responsive to Plaintiff's FOIA request, nor has Plaintiff received a determination from OIP regarding Plaintiff's request for a fee waiver. (Wolf Decl. ¶ 12.)

### D.    FBI

On January 17, 2006, Plaintiff received a letter from the FBI dated January 6, 2006. (Segroves Decl. Ex. L.)  The FBI claimed that Plaintiff's FOIA request did not contain enough "descriptive information" to permit a search of its records. (*Id.* at 1.)  As a result, the FBI returned Plaintiff's FOIA request unprocessed. (*Id.* at 2-11.)  Despite the fact that Plaintiff's FOIA request had provided detailed information regarding

18

demonstrations at NYU and UC-Santa Cruz (Wolf Decl. Ex. G at 3) the FBI asked

Plaintiff to provide the agency with "[a]ny information that would help locate the records

[requested], such as complete names of individuals, organizations or events, dates and

places of birth and the approximate time frame of the information sought" (Wolf Decl.

Ex. O at 1). Interestingly, the copy of Plaintiff's FOIA request returned by the FBI

contained green underlining of two phrases: "Don't Ask, Don't Tell" and "SLDN

meeting." (*Id.* at 4-5.)

On January 19, 2006, Plaintiff responded to the FBI in a letter setting forth why

Plaintiff's FOIA request easily satisfied the liberal standard of specificity required of a

request for records under FOIA. (Segroves Decl. Ex. M at 1.) Plaintiff then reminded

the FBI that the statutory deadline for determining Plaintiff's request for expedited

processing had long since passed without Plaintiff receiving a determination of its

request. (*Id.* at 1.) Plaintiff also highlighted the fact that (1) Plaintiff's FOIA request

listed two specific examples to help guide the agency's search (i.e., a February 2005

protest at NYU and an April 2005 protest at UC-Santa Cruz) and (2) the copy of

Plaintiff's FOIA request returned by the FBI bore markings indicating that agency

personnel had recognized specific identifiers within the request that enabled them to

conduct a search. (*Id.* at 2.)

On January 25, 2006, Plaintiff was informed via telephone that the FBI would

begin searching for documents responsive to Plaintiff's FOIA request. (Wolf Decl. ¶ 13;

Segroves Decl. ¶ 11.) However, the FBI did not state whether it would in fact disclose

documents responsive to Plaintiff's FOIA request. (Wolf Decl. ¶ 13; Segroves Decl.

¶ 11.)  On February 14, 2006, Plaintiff received three letters from the FBI, all of which were dated February 8, 2006.  (Wolf Decl. Ex. M-O.)  In these letters, the FBI (1) acknowledged receipt of Plaintiff's FOIA request, (2) notified Plaintiff that FBI records were being searched, and (3) identified three series of keywords that were being used to conduct the aforementioned search.  (Id.)[7]  However, these letters did not state whether records responsive to Plaintiff's FOIA request had been found and whether they would be released by the FBI.  (Id.)

Save for one exception,[8] Plaintiff has not received a substantive determination from the FBI with respect to the release of documents responsive to Plaintiff's FOIA request, nor has it received a determination from the FBI with respect to Plaintiff's expedited processing and fee waiver requests.  (Wolf Decl. ¶ 16.)

## STANDARD OF REVIEW

An agency's denial of a request for expedited processing is to be reviewed using a *de novo* standard.  5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 254 (D.C. Cir. 2001) ("*Al-Fayed*").  An agency's failure to determine a request for expedited processing within the requisite ten-day period is also subject to *de novo* review.  5 U.S.C. § 552(a)(6)(E)(iii).  In either context, the court's review must be based on the record before the agency.  *Id.*  However, no deference is due an agency's decision to deny a

---

[7]     According to the FBI, the following series of keywords were being used to search agency files: "DON'T ASK, DON'T TELL"; "OUTLAW/2005 PROTEST AT NY UNIVERSITY"; and "UNIVERSITY OF CALIFORNIA/APRIL 2005 DEMONSTRATION/GAY/HOMOSEXUAL."  (Wolf Decl. Ex. M-O.)

[8]     On February 22, 2006, Plaintiff received a letter from the FBI dated February 9, 2006, in which the agency stated that a search based on one set of keywords had not produced any documents.  (Wolf Decl. Ex. P.)  According to the FBI, a search using the following keywords had not produced any responsive documents: "UNIVERSITY OF CA Demo 2005/Gay/Homosuxual [sic]."  (Id.)

request for expedited processing that is based on the statutory definition of "compelling

need." *Al-Fayed*, 254 F.3d at 305.  An agency's denial of a fee waiver request or failure

to determine a fee waiver request is also subject to *de novo* review.  *See* 5 U.S.C.

§ 552(a)(4)(A)(vii); *Al-Fayed*, 254 F.3d at 305.

## ARGUMENT

Plaintiff is entitled to expedited processing of its FOIA requests.  Defendants

DOD and DOJ not only have failed to comply with FOIA's provisions for expedited

processing, but they have also failed to comply with the statute's requirements for

responding to standard, non-expedited requests.  The failure of Defendants DOD and

DOJ to process Plaintiff's requests constitutes a continuing impediment to Plaintiff's—

and by extension, the public's—ability to evaluate the propriety of whether the federal

government should be conducting surveillance of individuals or groups opposed to a

particular federal policy, in this case "Don't Ask, Don't Tell."  Second, Plaintiff is

entitled to a waiver of all fees associated with the processing of its FOIA requests.  The

actions (or inactions) of Defendants DOD and DOJ are clearly unlawful and should be

enjoined.

## I.     THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF

### A.     Jurisdiction and Exhaustion of Administrative Remedies

FOIA provides, in pertinent part:

On complaint, the district court of the United States . . . in the District of
Columbia, has jurisdiction to enjoin the agency from withholding agency
records and to order the production of any agency records improperly
withheld from the complainant.

5 U.S.C. § 552(a)(4)(B).  Agency action to deny a request for expedited processing is also subject to judicial review.  § 552(a)(6)(E)(iii).  Therefore, with respect to the denial of Plaintiff's requests for expedited processing by DOD, DIA and OIP, Plaintiff need not exhaust its administrative remedies.  *See id.*; *see also ACLU*, 321 F. Supp. 2d at 28-29 (finding administrative exhaustion not required under plain language of § 552(a)(6)(E)(iii)); *Al-Fayed v. CIA*, No. 00-2092, 2000 WL 34342564, at *8 (D.D.C. Sept. 20, 2000) (same), *aff'd on other grounds*, 254 F.3d 300.

FOIA also provides that a person shall be deemed to have exhausted his administrative remedies if the agency fails to comply with the statute's applicable time limits.  5 U.S.C. § 552(a)(6)(C), (E)(iii); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) ("If the agency has not responded within the statutory time limits, then . . . the requester may bring suit.").  An agency has ten calendar days in which to determine a request for expedited processing.  5 U.S.C. § 552(a)(6)(C)(i).  The FBI's continued failure to determine Plaintiff's request for expedited processing means that the issue of expedited processing related to the FBI is properly before this Court.

As for the fee waiver issue, because DIA, OIP and the FBI have failed to respond to Plaintiff's fee waiver requests within twenty days, Plaintiff has constructively exhausted its administrative remedies.  *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1311 (D.C. Cir. 2003); *Pub. Citizen, Inc. v. Dep't of Educ.*, 292 F. Supp. 2d 1, 4 (D.D.C. 2003).  Moreover, because DOD has not provided Plaintiff with a written denial of its request for a fee waiver, Plaintiff is estopped from filing an administrative appeal per DOD regulations.  *See* 32 C.F.R. § 286.24(a) (requiring that a requester include a

copy of the agency's denial letter when filing an administrative appeal).  As a result,

DOD's "denial" of Plaintiff's request for a fee waiver is also properly before this Court.

### B.    Relief Requested

The relief Plaintiff seeks—a preliminary injunction—is wholly appropriate in a

FOIA case such as this one.  *See, e.g.*, *ACLU v. Dep't of Def.*, 339 F. Supp. 2d 501, 503

(S.D.N.Y. 2004) (granting preliminary injunction motion in FOIA case and requiring

production of documents within one month); *Aguilera v. FBI*, 941 F. Supp. 144, 152–53

(D.D.C. 1996) (granting preliminary injunction in FOIA case and requiring expedited

processing to be completed within approximately one month); *Cleaver v. Kelley*, 427 F.

Supp. 80, 81–82 (D.D.C. 1976) (granting preliminary injunction in FOIA case and

requiring expedited processing to be completed within approximately twenty days); *see

also Al-Fayed*, 254 F.3d at 303-4 (affirming district court's use of four-part analysis in

deciding preliminary injunction motion in FOIA case).

For example, another judge of this Court recently issued a preliminary injunction

requiring the expedited processing of FOIA requests seeking documents related to the

NSA's program of warrantless domestic surveillance.  *See Elec. Privacy Info. Ctr. v.

DOJ*, No. 06-96 (HHK), slip op. (D.D.C. Feb. 16, 2006) ("*EPIC*") [copy attached as

Exhibit 27].  District Judge Henry Kennedy expressly rejected the government's

argument that a preliminary injunction is "extraordinary and draconian emergency relief"

in a FOIA case.  *EPIC*, slip op. at 5.  Instead, he recognized such relief could be

appropriate because "[t]he purpose of providing information to the public [under FOIA]

is 'to ensure an informed citizenry, vital to the functioning of a democratic society,

needed to check against corruption and to hold governors accountable to the governed.'" *Id.* at 7 (quoting *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 352, 361 (1976)).  In ordering the government to identify documents responsive to the plaintiff's FOIA requests within twenty days of his order, Judge Kennedy found that a *prima facie* showing of agency delay exists when an agency fails to process an expedited FOIA request within the time limit applicable to standard FOIA requests (i.e., within twenty working days of receipt).  *Id.* at 13.  Plaintiff respectfully submits that the rationale for disclosure currently before this Court is identical to that before Judge Kennedy in *EPIC*.[9]

## II.    PLAINTIFF IS ENTITLED TO ENTRY OF A PRELIMINARY INJUNCTION

Issuance of a preliminary injunction is proper when the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction is not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction.  *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1066 (D.C. Cir. 1998) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)); *see also EPIC*, slip op. at 6.  "These factors interrelate on a sliding scale and must be balanced against each other."  *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998).  However, a particularly strong showing on one factor may compensate for a weak showing on another.  *CityFed*, 58 F.3d at 747; *Atl. Coast Airlines Holdings, Inc. v.*

---

[9]        The only distinction between the matter before this Court and that before Judge Kennedy in *EPIC* is that the requester in *EPIC* had been granted expedited processing by DOJ, who later failed to honor its promise to expedite the requester's FOIA requests.  This is a distinction without a difference, however, as Plaintiff is also entitled to expedited processing of its FOIA requests.

*Mesa Air Group, Inc.*, 295 F. Supp. 2d 75, 81 (D.D.C. 2003) (Collyer, J.) (citing *Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 7 (D.D.C. 1999)).

### A.    Plaintiff is Likely to Prevail on the Merits

As explained below, the administrative record demonstrates that Plaintiff is entitled to expedited processing and a waiver of all fees associated with the processing of its FOIA requests.  As a result, Plaintiff is likely to prevail on the merits of its claims for expedited processing and fee waivers.

### 1.    *Plaintiff Is Entitled to Expedited Processing*

Upon receiving a request for records under FOIA, an agency normally must determine within twenty working days whether it will release the requested records.  5 U.S.C. § 552(a)(6)(A)(i).  In "unusual circumstances," an agency can extend the twenty-day time limit if it tells the requester in writing why an extension is needed and when it will make a determination on the request.  § 552(a)(6)(B)(i).

On the other hand, Congress has recognized that certain requests deserve special treatment.  FOIA requires that an agency expedite its processing of a request for records when there exists a "compelling need" for the records being requested. § 552(a)(6)(E)(i)(I).  A "compelling need" exists when (1) a request is made by a person primarily engaged in disseminating information and (2) the information is relevant to a subject of public urgency concerning actual or alleged federal government activity. § 552(a)(6)(E)(v)(II).  Federal agencies may also promulgate regulations creating additional categories of requests that deserve expedited processing.  § 552(a)(6)(E)(i)(II). In either case, FOIA requires that an agency determine a request for expedited processing

within ten calendar days of receipt.  § 552(a)(6)(E)(ii)(I).  If an agency grants a request for expedited processing, it must process the underlying request for records "as soon as practicable."  § 552(a)(6)(E)(iii).

### a.    Statutory Entitlement to Expedited Processing

As set forth below, the administrative record reflects that Plaintiff has a "compelling need" for the information requested in its FOIA requests, thereby entitling it to expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I).

### i.    SLDN Is as an Entity Primarily Engaged in Disseminating Information

In its FOIA requests, Plaintiff went to great lengths to explain how it qualified as an entity "primarily engaged in disseminating information."  First, Plaintiff explained in detail how its communications network was used to inform the general public, federal policymakers and SLDN members about "Don't Ask, Don't Tell," the policy's shortcomings and Plaintiff's effort to see it overturned.  (*See* Wolf Decl. Ex. A at 6-7, Ex. B at 6-7, Ex. D at 6-7, Ex. E at 6, Ex. G at 6.)  For example, Plaintiff described its highly trafficked website and its electronic "action alerts" that we distributed to over 50,000 persons.  (*See* Wolf Decl. Ex. A at 6-7, Ex. B at 6-7, Ex. D at 6-7, Ex. E at 6, Ex. G at 6.)

In further support of its assertion that SLDN qualified as an entity "primarily engaged in disseminating information," Plaintiff cited judicial decisions in which entities similar to SLDN were granted expedited processing.  (*See* Wolf Decl. Ex. A at 4-5, Ex. B at 4-5, Ex. D at 5, Ex. E at 4, Ex. G at 4.)  For example, Plaintiff cited the *ACLU* decision in which this Court concluded that an organization with a significant web presence, the

26

Electronic Privacy Information Center ("EPIC"), was an entity "primarily engaged in disseminating information." *See ACLU*, 321 F. Supp. 2d at 29 n.5. Other decisions issued by this Court reinforce Plaintiff's assertion that it is an entity "primarily engaged in disseminating information." For example, in *Leadership Conference on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246 (D.D.C. 2005), Judge Lamberth addressed a request for expedited processing filed by an organization whose stated mission was to promote effective civil rights laws and ensure their enforcement by DOJ. *Id.* at 260. The plaintiff accomplished this goal by maintaining a website providing information regarding voting rights, which was designed to educate the public and policymakers. *Id.* Judge Lamberth held that this was sufficient and found that the plaintiff was "primarily engaged in disseminating information." *Id.*

It is important to remember that Plaintiff is not disqualified from receiving expedited processing simply because it engages in activities other than disseminating information. *See* H.R. Rep. No. 104-795, at 26 (1996) ("The standard of 'primarily engaged' requires that information dissemination be the main activity of the requestor, although it need not be their sole occupation."), *as reprinted in* 1996 U.S.C.C.A.N. 3448, 3469. As set forth above, the administrative record reflects that Plaintiff is an entity "primarily engaged in disseminating information" as required by § 552(a)(6)(E)(v)(II).

ii.    **SLDN's FOIA Requests Seek Information Relevant to a Subject of Public Urgency Concerning Actual or Alleged Federal Government Activity**

In analyzing whether a requester has satisfied the second prong of the statutory definition of "compelling need," the D.C. Circuit has held that courts should examine

27

three factors: (1) whether the request concerns a matter of current exigency to the American public; (2) whether the consequences of delaying a response would compromise a significant recognized interest; and (3) whether the request concerns federal government activity. *Al-Fayed*, 254 F.3d at 310. As Plaintiff's FOIA requests seek information regarding the federal government's surveillance of persons and groups opposed to "Don't Ask, Don't Tell," Plaintiff easily satisfies the third factor enunciated in *Al-Fayed*. As a result, Plaintiff will focus its discussion on the first and second factors.

Plaintiff's FOIA requests concern a matter of current exigency to the American public, namely the issue of domestic surveillance by the federal government. At perhaps no time since the mid-1970's, when the so-called "Church Committee" examined and condemned conduct strikingly similar to that at issue in the instant matter,[10] has the issue of domestic surveillance and the proper bounds of presidential authority been so prevalent in public discourse. For the past two months, the front-pages of major American newspapers have been filled with development after development in this ever-evolving story. In addition, the Senate Judiciary Committee has begun hearings on the issue of domestic surveillance and plans to hold more.

Moreover, unlike in *Al-Fayed*, where the requester sought documents relating to the death of Princess Diana several years after the fact, here Plaintiff seeks information regarding government conduct that first came to light less than two months ago following a report on the *NBC Nightly News*. Plaintiff's FOIA requests are much more akin to

---

[10]    *See, e.g., Intelligence Activities and the Rights of Americans, Book II, Final Report of the Select Committee to Study Governmental Operations With Respect to Intelligence Activities*, S. Rep. No. 94-755, at 1-20 (1976) (describing illegal domestic surveillance by federal government agencies) [copy attached as Exhibit 28].

those at issue in *Natural Resources Defense Council v. Department of Energy*, 191 F. Supp. 2d 41 (D.D.C. 2002) ("*NRDC*"). In *NRDC*, a public interest organization filed FOIA requests seeking information a few months after the creation of an energy task force chaired by Vice-President Richard Cheney. *See id.* at 42. The plaintiff later sought a judicial order to have its requests expedited. *See id.* The district court issued the order, finding that the material sought was of extraordinary public interest and that any delay in producing the material could result in disclosure of relevant documents "*after* need for them in formulation of national energy policy was overtaken by events." *Id.* at 43. Here, the very same concerns that existed in *NRDC* apply to Plaintiff's FOIA requests.

As for the second *Al-Fayed* factor, delaying a response to Plaintiff's FOIA requests will compromise a significant recognized interest, namely the constitutionally protected interest of persons and groups to peacefully disagree with the policies of their federal government without fear of intimidation. In *ACLU*, for example, two public interest organizations filed FOIA requests seeking information regarding DOJ's use of powers granted it under the USA PATRIOT Act. *See ACLU*, 321 F. Supp. 2d at 25. The organizations brought suit after their requests for expedited processing were denied. *See id.* at 28. The district court ordered expedited processing of the plaintiffs' FOIA requests because they sought information implicating "important individual liberties and privacy concerns" which were of immediate public interest in view of the ongoing debate regarding reauthorization of the statute. *Id.* at 29. Moreover, the district court found that the potential invasion of the public's privacy interest was of immediate concern, which weighed in favor of a finding of expediency. *Id.* at 30.

For the above reasons, the administrative record shows that Plaintiff is statutorily entitled to expedited processing of its FOIA requests.

### b.    Regulatory Entitlement to Expedited Processing

Even if Plaintiff were not entitled to expedited processing under 5 U.S.C. § 552(a)(6)(E)(i)(I), DOD and DOJ regulations provide Plaintiff with independent grounds upon which to claim such treatment.  For those FOIA requests submitted to DOD, CIFA and DIA, Plaintiff is entitled to expedited processing pursuant to 32 C.F.R. § 286.4(d)(3)(iv).  Section 286.4(d)(3)(iv) requires expedited processing (1) where failure to grant expedited treatment could result in an imminent loss of due process rights or (2) where granting expedited processing would further a humanitarian need. "Humanitarian need" means that disclosing the information would promote the welfare and interest of mankind.  *Id.*  As reflected in the administrative record (Wolf Decl. Ex. A at 5, Ex. B at 5, Ex. D at 4) a DOD document provided to the *NBC Nightly News* suggests that organizations opposed to "Don't Ask, Don't Tell" have been, and may continue to be, the subject of surveillance by the federal government.  *See also* Ex. 3-6.  Because serious questions exist as to whether such surveillance is appropriate under existing statutes and/or constitutional principles, expedited processing of Plaintiff's FOIA requests is necessary in order to prevent an imminent loss of due process rights.  As also reflected in the administrative record (Wolf Decl. Ex. A at 7-8, Ex. B at 7, Ex. D at 7) showing respect for individuals' privacy interests by expediting a FOIA request seeking information regarding the alleged violation of these interest furthers a humanitarian need.

For those FOIA requests submitted to OIP and the FBI, Plaintiff is entitled to expedited processing pursuant to 28 C.F.R. § 16.5(d)(1)(iii), (iv). Section 16.5(d)(1)(iii) requires expedited processing where failure to grant expedited processing could result in an imminent loss of due process rights. As explained above and in Plaintiff's FOIA requests (Wolf Decl. Ex. E at 7, Ex. G at 7) failure to grant Plaintiff expedited processing could result in an imminent loss of due process rights. Section 16.5(d)(1)(iv), on the other hand, requires expedited processing of FOIA requests concerning a matter of widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence. OIP has admitted that Plaintiff's FOIA request raises possible questions about the government's integrity which affect public confidence. (*See* Wolf Decl. Ex. N at 1.) As reflected in the media articles cited in the administrative record (Wolf Decl. Ex. E at 6-7, Ex. G at 7) the issue of domestic surveillance by the federal government has also been a matter of widespread and exceptional media interest over the past two months. As a result, Plaintiff is entitled to expedited processing of its FOIA requests submitted to OIP and the FBI pursuant to 28 C.F.R. § 16.5(d)(1)(iv).

### 2.    *Plaintiff Is Entitled to the Waiver of Fees Associated With the Processing its FOIA Requests*

Congress amended FOIA in 1986 "to remove the roadblocks and technicalities which ha[d] been used by various Federal agencies to deny waivers or reductions of fees." 132 Cong. Rec. S16,496 (daily ed. Oct. 15, 1986) (statement of Sen. Leahy); *see also* Freedom of Information Reform Act of 1986, Pub. L. No. 99-570, § 1804(b)(1), 100

Stat. 3207, 3250 (codified at 5 U.S.C. § 552(a)(4)(A)(iii)).  Because fee waivers play a

significant role in the effective use of FOIA, Congress intended that waivers would be

liberally granted to all requesters other than those who are commercial users.  *See* 132

Cong. Rec. S14,298 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy).  Congress

recognized that a liberal standard was necessary because it knew agencies were "most

resistant to granting fee waivers when they suspect that the information sought may cast

them in a less than flattering light or may lead to proposals to reform their practices."

132 Cong. Rec. S14,298 (daily ed. Sept. 30, 1986) (statement of Sen. Leahy).

As amended, FOIA establishes a two-part test for awarding a fee waiver.  A

requester must show that disclosure of the information being requested is (1) in the public

interest because it is likely to contribute significantly to public understanding of the

operations or activities of the government and (2) is not primarily in the commercial

interest of the requester.  5 U.S.C. § 552(a)(4)(A)(iii).

Plaintiff explained to each recipient agency that its FOIA request sought

information regarding domestic surveillance conducted by the federal government, which

was a topic that had drawn considerable attention and criticism from members of

Congress and the media.  (Wolf Decl. Ex. A at 8, Ex. B at 8, Ex. D at 7, Ex. E at 7-8, Ex.

G at 8.)  Plaintiff asserted that disclosure of the records requested would help broaden the

general public's understanding of the federal government's surveillance activities, which

to this day remains woefully incomplete.  (Wolf Decl. Ex. A at 8, Ex. B at 8, Ex. D at 7-

8, Ex. E at 7, Ex. G at 8.)  Plaintiff also explained to each recipient agency that Plaintiff

would use its communications network to disseminate any information learned as a result

32

of its FOIA requests.  (Wolf Decl. Ex. A at 8-9, Ex. B at 8, Ex. D at 8, Ex. E at  Ex. G at

8.)  Finally, Plaintiff disclaimed any commercial interest in the information requested.

(Wolf Decl. Ex. A at 9, Ex. B at 9, Ex. D at 8, Ex. E at 8, Ex. G at 8.)  Accordingly, the

administrative record shows that Plaintiff is entitled to a fee waiver.

### B.    Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunctive Relief

Unless the unlawful failure of Defendants DOD and DOJ to comply with their

obligation to expedite the processing of Plaintiff's FOIA requests is immediately

enjoined, Plaintiff will suffer irreparable harm.  The very nature of the right that Plaintiff

seeks to vindicate in this action—expedited processing—depends upon timeliness.

Federal courts have recognized that the requisite injury is present, and preliminary

injunctive relief is appropriate, in cases where "time is of the essence."  *See, e.g.*, *United

States v. BNS, Inc.*, 858 F.2d 456, 465 (9th Cir. 1988); *Martin-Marietta Corp. v. Bendix

Corp.*, 690 F.2d 558, 568 (6th Cir. 1982).  Under the statutory scheme Congress

established in FOIA, it is clear that "time is of the essence" here and that any further

delay in the processing of Plaintiff's requests will cause irreparable injury.  In other

words, unless Defendants DOD and DOJ are ordered to process Plaintiff's requests

immediately, Plaintiff's right to expedited processing will be rendered a nullity.  In

addition, unless Defendants DOD and DOJ are ordered to waive all fees in responding to

Plaintiff's FOIA requests, they will likely charge Plaintiff an exorbitant amount to

process its FOIA requests, thereby rendering ineffective Plaintiff's right to expedited

processing.

In addition to the loss of its clearly established right to expedited processing, any further delay in processing Plaintiff's FOIA requests will irreparably harm Plaintiff's ability, and therefore that of the public, to obtain in a timely fashion information vital to the current and ongoing debate surrounding the legality of domestic surveillance by the federal government. If there is to be meaningful public debate on these and other related issues, the examination cannot be based solely upon information that the federal government chooses to disseminate on its own volition.

It is clear that the information Plaintiff seeks, if it is to contribute to the public debate on domestic surveillance by the federal government, must be disclosed expeditiously. Because time is of the essence in this matter, Plaintiff will be irreparably harmed unless the Court acts now, "when it [is] still possible to grant effective relief," and before "all opportunity to grant the requested relief [is] foreclosed." *Local Lodge No. 1266, Int'l Ass'n of Machinists & Aerospace Workers v. Panoramic Corp.*, 668 F.2d 276, 290 (7th Cir. 1981); *see also NRDC*, 191 F. Supp. 2d at 43 (recognizing importance of processing FOIA requests in order to inform national policy debate).

### C.     Granting Injunctive Relief Will Not Substantially Injure Other Interested Parties

Defendants cannot be said to be "burdened" by a requirement that they comply with the law. *See EPIC*, slip op. at 17. The immediate relief Plaintiff seeks will require nothing more of the government than what the law already mandates—the expedited processing of Plaintiff's FOIA requests and a waiver of all fees associated therewith. Nor will the requested relief burden the interests of other parties who have submitted FOIA

requests to Defendants in any manner beyond that foreseen by Congress.  In providing for expedited processing of qualifying requests, Congress intended that such requests would take precedence over those that did not qualify for such treatment.  Fulfillment of the legislative intent cannot be characterized as a burden on any party's interests.

### D.    The Public Interest Favors the Requested Relief

The final criterion for the issuance of a preliminary injunction is clearly satisfied in this case.  The D.C. Circuit has long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Authr. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *see also ACLU v. Dep't of Def.*, 339 F. Supp. 2d at 502 ("Ours is a government of laws, laws duly promulgated and laws duly observed.  No one is above the law: not the executive, not the Congress, and not the judiciary.  One of our laws is [FOIA].  That law, no less than any other, must be duly observed.") (citing *Youngstown Sheet & Tube v. Sawyer (Steel Seizure)*, 343 U.S. 579 (1952)).  Likewise, it is "axiomatic that an 'agency is required to follow its own regulations.'" *Edmonds v. FBI*, C.A. No. 02-1294, 2002 U.S. Dist. LEXIS 26578, at *9 n.3 (D.D.C. Dec. 3, 2002) (quoting *Cherokee Nat'l of Okla. v. Babbitt*, 117 F.3d 1489, 1499 (D.C. Cir. 1997)).  Such adherence is all that Plaintiff seeks here.

Moreover, judicial enforcement of FOIA is central to open and democratic debate on critical policy issues such as domestic surveillance by the federal government.  As the Supreme Court has observed, FOIA is "a means for citizens to know what the Government is up to.  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v.*

*Favish*, 541 U.S. 157, 171-172 (2004) (citations omitted). The public interest therefore favors the issuance of an order directing Defendants DOD and DOJ to immediately process Plaintiff's FOIA requests.

## III.    THE COURT SHOULD ORDER DEFENDANTS DOD AND DOJ TO PROCESS PLAINTIFF'S FOIA REQUESTS IMMEDIATELY

Plaintiff submits that preliminary injunctive relief is appropriate when, as in this case, an agency has failed to grant a well-founded request for expedited processing. Congress expressly required agencies to make determinations on requests for expedited processing within ten calendar days, 5 U.S.C. § 552(a)(6)(E)(ii)(I), and provided for immediate judicial review of adverse determinations, 5 U.S.C. § 552(a)(6)(E)(iii), thereby demonstrating an intent that the courts should act quickly to vindicate the right to expedition. *See, e.g., ACLU*, 321 F. Supp. 2d at 28-29; *EPIC*, slip op. at 5.

Preliminary injunctive relief has also been granted in cases where the FOIA request did not even seek expedited processing. *See, e.g.*, *Judicial Watch, Inc. v. Dep't of Energy*, 191 F. Supp. 2d 138, 141 (D.D.C. 2002) (ordering two agencies to process, respectively, 9000 and 6000 pages of material; to complete the processing within 60 days; and to provide the requester with a *Vaughn* index within 72 days); *NRDC*, 91 F. Supp. 2d at 43-44 (ordering agency to process 7500 pages of material; to complete the processing of the "vast majority" of the material within 32 days; to complete all processing within 48 days; and to provide the requester with a *Vaughn* index within 63 days).

Recognizing the extraordinary public interest in the records at issue here, and in order to facilitate the informed participation of the American people in the current and ongoing debate on the propriety of domestic surveillance by the federal government, the Court should direct Defendants DOD and DOJ to complete their processing of Plaintiff's requests, and produce or identify all responsive records, within 20 days of the issuance of the order Plaintiff seeks. The Court should further order Defendant DOD and DOJ to serve upon Plaintiff a *Vaughn* index ten days later and to waive all fees associated with processing Plaintiff's FOIA requests.[11]

## <u>CONCLUSION</u>

It is important to remember that the subject of this suit is not whether the federal government's surveillance of individuals or groups opposed to "Don't Ask, Don't Tell" violates existing statutes and/or constitutional principles; rather, the subject of this suit is whether the American people and federal policymakers will have the information they need to make informed decisions regarding the propriety of such surveillance. It must also be remembered that Plaintiff filed it FOIA requests not on the basis of innuendo or rumor; rather, Plaintiff filed its FOIA requests only after direct evidence provided to the *NBC Nightly News* revealed that the federal government had engaged in surveillance of persons and groups opposed to "Don't Ask, Don't Tell." In fact, the day *after* Plaintiff filed the instant suit, DOD admitted in a letter to the Senate Armed Services Committee

---

[11]    Judicial resolution of the expedited processing and fee waiver issues would not resolve all issues raised in Plaintiff's Complaint for Injunctive Relief. Once the question of processing time and fees are resolved, the Court would retain jurisdiction to review the completeness of Defendants' search for documents and Defendants' withholding of material believed to be exempt from FOIA. *See Open Am. v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976).

that it had inappropriately collected information on demonstrators.  United Press Int'l,

*DOD admits 'inappropriate' info collected*, washtimes.com, Feb. 7, 2006,

http://washtimes.com/upi/20060207-023532-6042r.htm [copy attached as Exhibit 29].

For the reasons set forth above, Plaintiff's Motion for a Preliminary Injunction

should be granted.  A proposed order to this effect is attached hereto as Exhibit 30.

Plaintiff asks that the Court, pursuant to Local Rule 65.1(d), schedule a hearing on

Plaintiff's motion at the Court's earliest convenience.

Dated: February 24, 2006                                Respectfully submitted,


                                              _____/s/_____
                                              Christopher Wolf
                                              (D.C. Bar No. 335885)


                                              _____/s/_____
                                              James F. Segroves
                                              (D.C. Bar No. 480360)
                                              Meredith C. Bailey[*]
                                              (D.C. Bar No. 494476)
                                              PROSKAUER ROSE LLP
                                              1001 Pennsylvania Avenue, N.W.
                                              Suite 400 South
                                              Washington, D.C. 20004-2533
                                              202.416.6800
                                              202.416.6899 (fax)

                                              Jerry L. Dasti
                                              (Not Admitted in D.C.)
                                              PROSKAUER ROSE LLP
                                              1585 Broadway
                                              New York, N.Y. 10036-8299
                                              212.969.3000

---

[*]     Application for admission to the United States District Court for the District of Columbia pending.

212.969.2900 (fax)

*Attorneys for Plaintiff Servicemembers Legal Defense Network*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this 24th day of February, 2006, a copy of Plaintiff's Motion for a Preliminary Injunction, Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for a Preliminary Injunction, and all exhibits thereto was served upon the following via certified mail, return receipt requested:

> Department of Defense
> The Pentagon
> Washington, DC 20301;
>
> Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001;
>
> Civil Process Clerk
> United States Attorney's Office
> for the District of Columbia
> 555 4th Street, NW
> Washington, DC 20530;
>
> and
>
> Attorney General of the United States
> Office of the Attorney General
> Department of Justice
> 950 Pennsylvania Avenue, NW
> Washington, DC 20530-0001.

The undersigned does also certify that a copy of the foregoing was submitted via electronic mail to the following, who upon information and belief will serve as counsel of record for Defendants:

> Rupa Bhattacharyya
> Trial Attorney, Civil Division

40

Civil Division
U.S. Department of Justice
20 Massachusetts Ave., N.W., Room 7338
Washington, D.C. 20001
(202) 514-3146
(202) 318-7593 (fax)
rupa.bhattacharyya@usdoj.gov



_____/s/_____
James F. Segroves
(D.C. Bar No. 480360)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533
202.416.6800
202.416.6899 (fax)

*Attorney for Plaintiff Servicemembers*
*Legal Defense Network*

41