# Exhibit 16

Page 1
Surveillance Court Is Seeking Answers; Judges Were Unaware of Eavesdropp

Copyright 2006 The Washington Post
The Washington Post

January 5, 2006 Thursday
Final Edition

**SECTION:** A Section; A02

**LENGTH:** 630 words

**HEADLINE:** Surveillance Court Is Seeking Answers;
Judges Were Unaware of Eavesdropping

**BYLINE:** Carol D. Leonnig, Washington Post Staff Writer

**BODY:**

The members of a secret federal court that oversees government surveillance in espionage and terrorism cases are scheduled to receive a classified briefing Monday from top Justice Department and intelligence officials about a controversial warrantless-eavesdropping program, according to sources familiar with the arrangements.

Several judges on the Foreign Intelligence Surveillance Court said they want to hear directly from administration officials why President Bush believed he had the authority to order, without the court's permission, wiretapping of some phone calls and e-mails after the Sept. 11, 2001, attacks. Of serious concern to several judges is whether any information gleaned from intercepts by the National Security Agency was later used to gain their permission for wiretaps without the source being disclosed.

The court is made up of 11 judges who, on a rotating basis, hear government applications for surveillance warrants. But only the presiding judge, currently Colleen Kollar-Kotelly, was notified of the government eavesdropping program. One judge, James Robertson, who also serves on the federal bench in Washington, resigned his seat on the surveillance court in protest shortly after the wiretapping was revealed by the New York Times in mid-December.

Kollar-Kotelly began pressing for a closed government briefing for the remaining members of the court on Dec. 19, the day she learned of Robertson's concerns. Other judges wanted to know, as Robertson had, whether the administration had misled their court about its sources of information on possible terrorism suspects.

Kollar-Kotelly had privately raised concerns in 2004 about the risk that the government could taint the integrity of the court's work by using information it gained via wiretapping to obtain warrants from judges under the Foreign Intelligence Surveillance Act.

On Friday, an attorney for Seifullah Chapman, one of the men convicted as part of the "Virginia jihad network," formally asked federal prosecutors in Virginia to determine whether warrantless NSA wiretaps were used to gain information about his client. Chapman, who is serving a 65-year sentence for conspiring to provide material support to a foreign terrorist group, was the subject of a secret FISA warrant.

"My feeling is they are a very professional organization. They would be equally concerned that my client's rights are protected, and they'll want to find out themselves," said John Zwerling, Chapman's attorney.

Some judges who spoke on the condition of anonymity yesterday said they want to know whether warrants they signed were tainted by the NSA program. Depending on the answers, the judges said they could demand some proof that wiretap applications were not improperly obtained. Defense attorneys could have a valid argument to suppress evidence against their clients, some judges said, if information about them was gained through warrantless eavesdropping that was not revealed to the defense.

Yesterday, Rep. Jane Harman (Calif.), the ranking Democrat on the House intelligence committee, sent a letter to Bush charging that the limited nature of congressional briefings on the monitoring program violated the National Security Act. The White House informed the chairmen of the House and Senate intelligence oversight committees and the two ranking Democrats about the program.

The National Security Act requires the president to keep all members of the two committees fully informed of intelligence activities with the exception of those conducted covertly overseas. "In my view, failure to provide briefings to the full congressional intelligence committees is a continuing violation of the National Security Act," Harman wrote.

Staff writer Dafna Linzer contributed to this report.

**LOAD-DATE:** January 5, 2006