# Exhibit 18

Copyright 2006 The New York Times Company
The New York Times

January 4, 2006 Wednesday
Late Edition - Final

**SECTION:** Section A; Column 6; National Desk; Pg. 1

**LENGTH:** 1095 words

**HEADLINE:** Files Say Agency Initiated Growth Of Spying Effort

**BYLINE:** By ERIC LICHTBLAU and SCOTT SHANE

**DATELINE:** WASHINGTON, Jan. 3

**BODY:**

The National Security Agency acted on its own authority, without a formal directive from President Bush, to expand its domestic surveillance operations in the weeks after the Sept. 11 attacks, according to declassified documents released Tuesday.

The N.S.A. operation prompted questions from a leading Democrat, Representative Nancy Pelosi of California, who said in an Oct. 11, 2001, letter to a top intelligence official that she was concerned about the agency's legal authority to expand its domestic operations, the documents showed.

Ms. Pelosi's letter, which was declassified at her request, showed much earlier concerns among lawmakers about the agency's domestic surveillance operations than had been previously known. Similar objections were expressed by Senator John D. Rockefeller IV, Democrat of West Virginia, in a secret letter to Vice President Dick Cheney nearly two years later.

The letter from Ms. Pelosi, the House minority leader, also suggested that the security agency, whose mission is to eavesdrop on foreign communications, moved immediately after the Sept. 11 attacks to identify terror suspects at home by loosening restrictions on domestic eavesdropping.

The congresswoman wrote to Lt. Gen. Michael V. Hayden, then head of the N.S.A., to express her concerns after she and other members of the House and Senate Intelligence Committees received a classified briefing from General Hayden on Oct. 1, 2001, about the agency's operations.

Ms. Pelosi, then the ranking Democrat on the House Intelligence Committee, said, "I am concerned whether, and to what extent, the National Security Agency has received specific presidential authorization for the operations you are conducting."

The answer, General Hayden suggested in his response to Ms. Pelosi a week later, was that it had not. "In my briefing," he wrote, "I was attempting to emphasize that I used my authorities to adjust N.S.A.'s collection and reporting."

It is not clear whether General Hayden referred at the briefing to the idea of warrantless eavesdropping. Parts of the letters from Ms. Pelosi and General Hayden concerning other specific aspects of the spy agency's domestic operation were blacked out because they remain classified. But officials familiar with the uncensored letters said they referred to other aspects of the domestic eavesdropping program.

Bush administration officials said on Tuesday that General Hayden, now the country's No. 2 intelligence official, had acted on the authority previously granted to the N.S.A., relying on an intelligence directive known as Executive Order 12333, issued by President Ronald Reagan in 1981. That order set guidelines for the collection of intelligence, including by the N.S.A.

"He had authority under E.O. 12333 that had been given to him, and he briefed Congress on what he did under those authorities," said Judith A. Emmel, a spokeswoman for the Office of the Director of National Intelligence. "Beyond that, we can't get into details of what was done."

In 2002, President Bush signed an executive order specifically authorizing the security agency to eavesdrop without warrants on the international communications of Americans inside the United States who the agency believed were connected to Al Qaeda. The disclosure of the domestic spying program last month provoked an outcry in Washington, where Congressional hearings are planned.

General Hayden's October 2001 briefing was one of the first glimpses into the expanded but largely hidden role that the N.S.A. would assume in combating terrorism over the last four years.

In the briefing, Ms. Pelosi wrote to General Hayden, "you indicated that you had been operating since the Sept. 11 attacks with an expansive view of your authorities" with respect to electronic surveillance and intelligence-gathering operations.

"You seemed to be inviting expressions of concern from us, if there were any," Ms. Pelosi wrote, but she said that the lack of specific information about the agency's operations made her concerned about the legal rationale used to justify it.

One step that the agency took immediately after the Sept. 11 attacks, Ms. Pelosi wrote in her letter, was to begin forwarding information from foreign intelligence intercepts to the F.B.I. for investigation without first receiving a specific request from the bureau for "identifying information."

In the past, under so-called minimization procedures intended to guard Americans' privacy, the agency's standard practice had been to require a written request from a government official who wanted to know the name of an American citizen or a person in the United States who was mentioned or overheard in a wiretap.

In the weeks after the Sept. 11 attacks, the agency began monitoring telephone calls and e-mail messages between the United States and Afghanistan to track possible terror suspects. That program led to the broader eavesdropping operation on other international communications, officials have said.

The agency has also tapped into some of the nation's main telecommunications arteries to trace and analyze large volumes of phone and e-mail traffic to look for patterns of possible terrorist activity.

Marc Rotenberg, director of the Electronic Privacy Information Center, said the new documents, along with previous reports of objections to the program from Senator Rockefeller and James B. Comey, the former deputy attorney general, underscored the need for a comprehensive investigation.

"There's an increasing picture of concern, if not outright opposition, within the government," Mr. Rotenberg said. "But we can't second-guess anyone's actions on a document-by-document basis," particularly if the documents are released only in part, he added.

The way the N.S.A.'s role has expanded has prompted concern even from some of its former leaders, like Bobby R. Inman, a retired admiral who was N.S.A. director from 1977 to 1981. Admiral Inman said that while he supported the decision to step up eavesdropping against potential terrorists immediately after the 2001 attacks, the Bush administration should have tried to change the Foreign Intelligence Surveillance Act to provide explicit legal authorization for what N.S.A. was doing.

"What I don't understand is why when you're proposing the Patriot Act, you don't set up an oversight mechanism for this?" Admiral Inman said in an interview. "I would have preferred an approach to try to gain legislation to try to operate with new technology and with an audit of how this technology was used."

URL: http://www.nytimes.com

GRAPHIC: Photos: Representative Nancy Pelosi expressed misgivings about Lt. Gen. Michael V. Hayden's spying. (pg. A11)

LOAD-DATE: January 4, 2006