# Exhibit 20

Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts The New

Copyright 2005 The New York Times Company
The New York Times

December 28, 2005 Wednesday
Late Edition - Final

**SECTION:** Section A; Column 3; National Desk; Pg. 1

**LENGTH:** 1521 words

**HEADLINE:** Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts

**BYLINE:** By ERIC LICHTBLAU and JAMES RISEN

**DATELINE:** WASHINGTON, Dec. 27

**BODY:**

Defense lawyers in some of the country's biggest terrorism cases say they plan to bring legal challenges to determine whether the National Security Agency used illegal wiretaps against several dozen Muslim men tied to Al Qaeda.

The lawyers said in interviews that they wanted to learn whether the men were monitored by the agency and, if so, whether the government withheld critical information or misled judges and defense lawyers about how and why the men were singled out.

The expected legal challenges, in cases from Florida, Ohio, Oregon and Virginia, add another dimension to the growing controversy over the agency's domestic surveillance program and could jeopardize some of the Bush administration's most important courtroom victories in terror cases, legal analysts say.

The question of whether the N.S.A. program was used in criminal prosecutions and whether it improperly influenced them raises "fascinating and difficult questions," said Carl W. Tobias, a law professor at the University of Richmond who has studied terrorism prosecutions.

"It seems to me that it would be relevant to a person's case," Professor Tobias said. "I would expect the government to say that it is highly sensitive material, but we have legal mechanisms to balance the national security needs with the rights of defendants. I think judges are very conscientious about trying to sort out these issues and balance civil liberties and national security."

While some civil rights advocates, legal experts and members of Congress have said President Bush did not have authority to order eavesdropping by the security agency without warrants, the White House and the Justice Department continued on Tuesday to defend the legality and propriety of the program.

Trent Duffy, a spokesman for the White House, declined to comment in Crawford, Tex., when asked about a report in The New York Times that the security agency had tapped into some of the country's main telephone arteries to conduct broader data-mining operations in the search for terrorists.

But Mr. Duffy said: "This is a limited program. This is not about monitoring phone calls designed to arrange Little League practice or what to bring to a potluck dinner. These are designed to monitor calls from very bad people to very bad people who have a history of blowing up commuter trains, weddings and churches."

He added: "The president believes that he has the authority -- and he does -- under the Constitution to do this limited program. The Congress has been briefed. It is fully in line with the Constitution and also protecting American civil liberties."

Disclosure of the N.S.A. program has already caused ripples in the legal system, with a judge resigning in protest from the Foreign Intelligence Surveillance Court last week. The surveillance court, established by Congress in 1978 to grant warrants in terrorism and espionage cases, wants a briefing from the Bush administration on why it bypassed the court and ordered eavesdropping without warrants.

Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts The New

At the same time, defense lawyers in terrorism cases around the country say they are preparing letters and legal briefs to challenge the N.S.A. program on behalf of their clients, many of them American citizens, and to find out more about how it might have been used. They acknowledge legal hurdles, including the fact that many defendants waived some rights to appeal as part of their plea deals.

Government officials, in defending the value of the security agency's surveillance program, have said in interviews that it played a critical part in at least two cases that led to the convictions of Qaeda associates, Iyman Faris of Ohio, who admitted taking part in a failed plot to bring down the Brooklyn Bridge, and Mohammed Junaid Babar of Queens, who was implicated in a failed plot to bomb British targets.

David B. Smith, a lawyer for Mr. Faris, said he planned to file a motion in part to determine whether information about the surveillance program should have been turned over. Lawyers said they were also considering a civil case against the president, saying that Mr. Faris was the target of an illegal wiretap ordered by Mr. Bush. A lawyer for Mr. Babar declined to comment.

Government officials with knowledge of the program have not ruled out the possibility that it was used in other criminal cases, and a number of defense lawyers said in interviews that circumstantial evidence had led them to question whether the security agency identified their clients through wiretaps.

The first challenge is likely to come in Florida, where lawyers for two men charged with Jose Padilla, who is jailed as an enemy combatant, plan to file a motion as early as next week to determine if the N.S.A. program was used to gain incriminating information on their clients and their suspected ties to Al Qaeda. Kenneth Swartz, one of the lawyers in the case, said, "I think they absolutely have an obligation to tell us" whether the agency was wiretapping the defendants. In a Virginia case, Edward B. MacMahon Jr., a lawyer for Ali al-Timimi, a Muslim scholar in Alexandria who is serving a life sentence for inciting his young followers to wage war against the United States overseas, said the government's explanation of how it came to suspect Mr. Timimi of terrorism ties never added up in his view.

F.B.I. agents were at Mr. Timimi's door days after the Sept. 11 attacks to question him about possible links to terrorism, Mr. MacMahon said, yet the government did not obtain a warrant through the foreign intelligence court to eavesdrop on his conversations until many months later.

Mr. MacMahon said he was so skeptical about the timing of the investigation that he questioned the Justice Department about whether some sort of unknown wiretap operation had been conducted on the scholar or his young followers, who were tied to what prosecutors described as a "Virginia jihad" cell.

"They told me there was no other surveillance," Mr. MacMahon said. "But the fact is that the case against a lot of these guys just came out of nowhere because they were really nobodies, and it makes you wonder whether they were being tapped."

John Zwerling, a lawyer for one of Mr. Timimi's followers, Seifullah Chapman, who is serving a 65-year sentence in federal prison in the case, said he and lawyers for two of the other defendants in the case planned to send a letter to the Justice Department to find out if N.S.A. wiretaps were used against their clients. If the Justice Department declines to give an answer, Mr. Zwerling said, they plan to file a motion in court demanding access to the information.

"We want to know, Did this N.S.A. program make its way into our case, and how was it used?" Mr. Zwerling said. "It may be a difficult trail for us in court, but we're going to go down it as far as we can."

Defense lawyers in several other high-profile terrorism prosecutions, including the so-called Portland Seven and Lackawanna Six cases, said they were also planning to file legal challenges or were reviewing their options.

"Given what information has come out, with the president admitting that they had avoided the courts, then the question becomes, do you try to learn whether something like that happened in this case?" said Patrick Brown, a Buffalo lawyer in the Lackawanna case. "I would have to talk to my client about whether that's a road we want to go down."

Gerry Spence, who is the lead counsel representing Brandon Mayfield, a Portland lawyer who was arrested in error last year in connection with the Madrid bombings and is now suing the government, said of the security agency program: "We are going to look into that. The calmest word I can use to describe how I feel about this is that I am aghast."

Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts The New

Because the program was so highly classified, government officials say, prosecutors who handled terrorism cases apparently did not know of the program's existence. Any information they received, the officials say, was probably carefully shielded to protect the true source.

But defense lawyers say they are eager to find out whether prosecutors -- intentionally or not -- misled the courts about the origins of their investigations and whether the government may have held on to N.S.A. wiretaps that could point to their clients' innocence.

Stanley Cohen, a New York lawyer who represented Patrice Lumumba Ford in the Portland Seven case, said many defendants would face significant obstacles in mounting legal challenges to force the government to reveal whether material obtained through the security agency's program was used in their cases.

"You really could have standing problems" for many of the defendants, Mr. Cohen said.

But some Justice Department prosecutors, speaking on condition of anonymity because the program remains classified, said they were concerned that the agency's wiretaps without warrants could create problems for the department in terrorism prosecutions both past and future.

"If I'm a defense attorney," one prosecutor said, "the first thing I'm going to say in court is, 'This was an illegal wiretap.' "

**URL:** http://www.nytimes.com

**GRAPHIC:** Photos: Officials defending the wiretap program have pointed to its use in terrorism cases against Iyman Faris, left, and Mohammed Junaid Babar. (Photo by Independent Television News)
(Photo by Justice Department)
 Patrick Brown, a lawyer in the Lackawanna Six case, said he planned to discuss and assess potential challenges with his client. (Photo by Doug Benz for The New York Times)(pg. A14)

**LOAD-DATE:** December 28, 2005