# Exhibit 25B

**PROSKAUER ROSE LLP**

1233 Twentieth Street NW
Suite 800
Washington, DC 20036-2396
Telephone 202.416.6800
Fax 202.416.6899

NEW YORK
LOS ANGELES
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Christopher Wolf**
Member of the Firm

Direct Dial 202.416.6818
cwolf@proskauer.com

January 5, 2006

**Via Telecopy & Certified Mail, Return Receipt Requested**

Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

Re:   **Freedom of Information Act Request (Expedited Processing Requested)**

Dear Sir or Madam:

This letter constitutes a request for records on behalf of the Servicemembers Legal Defense Network pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and regulations promulgated thereunder by the Department of Defense, 32 C.F.R. part 286. In addition, other organizations have asked that the Servicemembers Legal Defense Network submit this request on their behalf. These groups include Gay & Lesbians Against Defamation; the Gay and Lesbian Medical Association; the International Gay and Lesbian Human Rights Commission; the LA Lesbian & Gay Center; the Lambda Legal Defense and Education Fund; Lambdas, Chicago–Kent College of Law; the Mautner Project; the National Coalition of Anti-Violence Projects; the National Youth Advocacy Coalition; Outlaws, University of Michigan School of Law; Pride at Work, AFL-CIO; QLaw, University of Wisconsin School of Law; OUTLAW, Stanford Law School; and the Human Rights Campaign.

I.   **DEFINITIONS**

   As used throughout this request:

   1.   "CIFA" means the Counterintelligence Field Activity, a component of the Department of Defense;

   2.   "Document" and/or "record" includes all handwritten, typed or printed material, and all magnetic, electronic or other records or documentation of any kind or description including, without limitation, agreements, contracts, correspondence, issuances, instructions, ledger entries or non-ledger bookkeeping documentation, letters, memoranda, e-mails, notations of telephone conversations, notes, and any other records, including drafts and copies not identical to the originals, however

PROSKAUER ROSE LLP

Office of Freedom of Information
January 5, 2006
Page 2

produced or reproduced, and all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your possession, custody or control, including those in the possession, custody or control of any and all Department of Defense personnel, administrators, attorneys, agents or contractors, whether or not prepared by Department of Defense personnel, administrators, attorneys, agents or contractors;

3.  "DoD" means the Department of Defense;

4.  "Don't Ask, Don't Tell" means the homosexual conduct policy enacted by Congress in 1993, which is currently codified at 10 U.S.C. § 654 and implemented through DoD Directives 1304.26, 1332.14, 1332.30 and 1332.40;

5.  "FOIA" means the Freedom of Information Act, 5 U.S.C. § 552;

6.  "LGBT organizations" means organizations representing the interests of lesbians, gay men, bisexuals and/or transgendered people;

7.  "Meeting(s)" includes meetings, symposia, conferences, demonstrations and/or rallies, whether in-person or conducted via electronic or other means;

8.  "SLDN" means the Servicemembers Legal Defense Network;

9.  "TALON reports" means Threat and Local Observation Notice reports; and

10. "VoIP" means Voice over Internet Protocol.

## II.  RECORDS REQUESTED

1.  Any and all documents concerning DoD's surveillance[1] of:

    A.  meetings involving people and/or organizations discussing, considering or stating opposition to "Don't Ask, Don't Tell";

    B.  SLDN meetings, including, but not limited to, TALON reports, video recordings, audio recordings and photographs;

---

[1] This request includes surveillance conducted, directed or supervised by DoD personnel, as well as surveillance conducted, directed or supervised by non-DoD personnel (e.g., Federal Bureau of Investigation personnel or local law enforcement), the products of which were forwarded to DoD. This request also includes any and all documents concerning proposed surveillance of the groups listed in paragraph 1.

**PROSKAUER ROSE LLP**

Office of Freedom of Information
January 5, 2006
Page 3

      C.    communications involving, but not necessarily between, SLDN directors, staff, clients, prospective clients, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

      D.    meetings involving LGBT organizations, which include the following:

            i.    a February 2005 protest at New York University involving the LGBT organization known as "OUTlaw"; and

            ii.    an April 2005 demonstration at the University of California-Santa Cruz.

      E.    communications involving, but not necessarily between, LGBT organizations and/or their employees, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

2. Any and all documents related to or concerning how DoD selected the targets of surveillance described in paragraph 1 above;

3. Any and all documents related to or concerning what entities or personnel DoD distributed information gathered under the surveillance described in paragraph 1 above;

4. Any and all documents related to or concerning in any way DoD's actual or supposed authority to engage in the surveillance described in paragraph 1 above, including, but not limited to, presidential orders, DoD directives, statutes, regulations or legal reviews conducted by the United States Department of Justice or any other government agency;

5. Any policies, procedures or manuals related to the surveillance described in paragraph 1 above;

6. Any and all documents related to or concerning in any way investigations, inquiries or disciplinary proceedings initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or manual related to the surveillance described in paragraph 1 above;

PROSKAUER ROSE LLP

Office of Freedom of Information
January 5, 2006
Page 4

7. A memorandum dated December 1, 2005, authored by Acting Deputy Undersecretary of Defense for Counterintelligence and Security Robert W. Rogalski, regarding CIFA's authority to assign specific missions to the counterintelligence units of the United States military services, and all documents responding or relating thereto;

8. A letter from Undersecretary of Defense for Intelligence Stephen A. Cambone to Senate Armed Services Committee Chairman John Warner (R-VA) written in December of 2005 directing CIFA to review its policies regarding receipt and retention of information about United States citizens and/or residents, and all documents responding or relating thereto;

9. A memorandum written by then-Deputy Secretary of Defense Paul D. Wolfowitz regarding the use of TALON reports, believed to be written in 2003, including any and all attachments, and all documents responding or relating thereto; and

10. Any and all documents related to or concerning a proposal authored by the presidential commission on intelligence chaired by Laurence H. Silberman and former Senator Charles S. Robb (D-VA) urging that DoD be given authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States, and all documents responding or relating thereto.

### III. EXPEDITED PROCESSING REQUEST

Expedited processing of this FOIA request is warranted because (1) the records being requested are urgently needed and (2) SLDN is an organization "primarily engaged in disseminating information to inform the public concerning actual or alleged Federal Government activity." *See* 5 U.S.C. § 552(a)(6)(E)(i)(II), (v)(II); 32 C.F.R. § 286.4(d)(3)(ii). In addition, expedited processing should be granted because failure to do so may result in an imminent loss of due process rights, while granting expedited processing will further a humanitarian need. *See* 32 C.F.R. § 286.4(d)(3)(iv).

#### A. The Records Requested Are Urgently Needed

Under DoD regulations, this FOIA request implicates an urgent matter of public concern—namely, the federal government's warrantless surveillance of citizens and activist groups within the United States. *See* 32 C.F.R. § 286.4(d)(3)(ii)(A) ("urgently needed" means that the information requested has a particular value that will be lost if not disseminated quickly, such as a breaking news story of general public interest); *see also ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (finding that section 215 of the Patriot Act, which substantially

**PROSKAUER ROSE LLP**

Office of Freedom of Information
January 5, 2006
Page 5

expanded the powers of the FBI under the Foreign Intelligence Surveillance Act of 1978, "unquestionably implicates important individual liberties and privacy concerns which are of immediate public interest"). Such surveillance has not only included LGBT organizations, *see, e.g.*, Anthony Glassman, *The Pentagon is spying on 'don't ask' protestors*, Gay People's Chron., Dec. 23, 2005; David Yaffett, *Pentagon calls gay student groups 'credible threat'*, Dallas Voice, Dec. 23, 2005; Andrew Keegan, *Peeping Pentagon?*, Wash. Blade, Dec. 23, 2005, it also appears to have encompassed other types of organizations critical of federal government policies, *see, e.g.*, Kevin Deutsch, *Activist group plans to sue over spying*, Miami Herald, Dec. 23, 2005, at B8; Mike Clary, *Target of Spying Demands Inquiry*, Sun-Sentinel (Fort Lauderdale, Fla.), Dec. 21, 2005, at 1B; Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times, Dec. 20, 2005, at A1; *Pentagon May Be Tracking Activists*, L.A. Times, Dec. 14, 2005, at A22.

Moreover, the recent widespread and sustained media coverage of the federal government's domestic surveillance activities provides further evidence that the information sought by SLDN is "urgently needed" and of current public concern. *See, e.g.*, Carol D. Leonnig, *Surveillance Court Is Seeking Answers*, Wash. Post, Jan. 5, 2006, at A2; Scott Shane, *Key Democrat Says Spying Violated Law*, N.Y. Times, Jan. 5, 2006, at A16; Dafna Linzer, *Secret Surveillance May Have Occurred Before Authorization*, Wash. Post, Jan. 4, 2006, at A3; Eric Lichtblau & Scott Shane, *Files Say Agency Initiated Growth of Spying Effort*, N.Y. Times, Jan. 4, 2006, at A1; Lisa Rein, *Bush Defends Spying Program As 'Necessary' to Protect U.S.*, Wash. Post, Jan. 2, 2006, at A2; Eric Lichtblau, *Bush Defends Spy Program and Denies Misleading Public*, N.Y. Times, Jan. 2, 2006, at A11; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*, N.Y. Times, Jan. 1, 2006, at A1; Eric Lichtblau & James Risen, *Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts*, N.Y. Times, Dec. 28, 2005, at A1; David Ignatius, Op-Ed, *Eavesdropping and Evading the Law*, Wash. Post, Dec. 28, 2005, at A21; Eric Lichtblau & James Risen, *Spy Agency Mined Vast Data Trove, Officials Report*, N.Y. Times, Dec. 24, 2005, at A1; Eric Mink, Editorial, *Who's Listening out there?*, St. Louis Post-Dispatch, Dec. 21, 2005, at C13; Walter Pincus, *Pentagon's Intelligence Authority Widens*, Wash. Post, Dec. 19, 2005, at A10; Lisa Myers et al., *Senator Demands Investigation of Spy Database*, MSNBC.com, Dec. 15, 2005, http://www.msnbc.msn.com/id/10481600; Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*, Wash. Post, Dec. 15, 2005, at A1; Lisa Meyers et al., *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005, http://msnbc.msn.com/id/10454316; Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity*, Wash. Post, Dec. 11, 2005, at A12; Walter Pincus, *Pentagon Expanding Its Domestic Surveillance Activity*, Wash. Post, Nov. 27, 2005, at A6.

Any delay in processing this FOIA request may decrease the value of the information sought. For example, members of the Senate Judiciary Committee have made clear their intention to raise the issue of domestic surveillance in their upcoming hearings on the nomination of Judge Samuel A. Alito to the position of Associate Justice of the United States Supreme Court, which are scheduled to begin on January 9, 2006. *See* Jo Becker & Christopher Lee, *Alito Urged*

PROSKAUER ROSE LLP

Office of Freedom of Information
January 5, 2006
Page 6

*Wiretap Immunity*, Wash. Post, Dec. 24, 2005, at A1 (noting Senate Judiciary Committee Chairman Arlen Specter's (R-PA) intention to "press Alito for his views" on domestic wiretapping); Adam Liptak & David E. Rosenbaum, *Alito Memo in '84 Favored Immunity for Top Officials*, N.Y. Times, Dec. 24, 2005, at A12 (noting Senator Charles Schumer's (D-NY) intention to question Judge Alito on the issue of warrantless domestic wiretapping). This same committee has also indicated that it will hold separate hearings on the issue of domestic surveillance. *See* Charles Hurt, *Democrats to hit White House, Republicans on privacy issues*, Wash. Times, Jan. 3, 2006, at A1; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program*, N.Y. Times, Jan. 1, 2006, at A1; Eric Lichtblau, *Officials Want to Expand Review of Domestic Spying*, N.Y. Times, Dec. 25, 2005, at A28. Therefore, the records sought by this FOIA request are needed in a timely fashion to help produce an informed debate in Congress about the proper scope of domestic surveillance activities by entities such as CIFA. *See ACLU*, 321 F. Supp. 2d at 30-31 (noting that the need for informed congressional debate may justify expedited processing).

### B. SLDN Qualifies as an Organization "Primarily Engaged in Disseminating Information to the Public"

SLDN is a national, non-profit watchdog and policy organization dedicated to ending discrimination against, and harassment of, United States military personnel under "Don't Ask, Don't Tell." As the most prominent organization in the United States dedicated to protecting the rights of LGBT servicemembers, SLDN publishes periodic "action alerts" that are distributed electronically to over 50,000 persons. Among other things, these "action alerts" apprise SLDN members of developments in the fight to overturn "Don't Ask, Don't Tell."

SLDN also maintains a website on the World Wide Web, which is located at http://www.sldn.org. SLDN's website includes resources for servicemembers and the press explaining the history of "Don't Ask, Don't Tell" and its legal and lobbying efforts to see it overturned. For a two-day period following recent revelations regarding DoD's domestic surveillance activities, traffic on SLDN's website swelled to 45,000 "hits," up from normal monthly traffic of 25,000 hits.

SLDN also hosts a weblog, or "blog," that allows individuals to follow SLDN's efforts to end discrimination in the armed forces. The official SLDN blog includes articles by SLDN staff, supporters and clients impacted by "Don't Ask, Don't Tell." In addition, SLDN disseminates numerous informational releases to the public and the press on the aforementioned issues via its website and otherwise, and is a frequent source of information on these issues for both the news media and the federal government itself. *See* U.S. Gov't Accountability Office, *Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated* 6 n.17 (2005) (citing SLDN statistics for the number of servicemembers separated from military service under "Don't Ask, Don't Tell" and directing

**PROSKAUER ROSE LLP**

Office of Freedom of Information
January 5, 2006
Page 7

readers to SLDN's website). SLDN also publishes more than 6,000 copies of its quarterly reports detailing the organization's progress in overturning "Don't Ask, Don't Tell." The fact that SLDN does not publish a newspaper or broadcast a television news report does not disqualify it from receiving expedited processing. *See ACLU*, 321 F. Supp. 2d at 29 n.5; *cf. Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1385-86 (D.C. Cir. 1989); *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5, 14 (D.D.C. 2003).

### C. Failure to Grant Expedited Processing May Result in an Imminent Loss of Due Process Rights, While Granting Expedited Processing Will Further a Humanitarian Need

DoD regulations also provide that expedited processing should be granted in cases involving a humanitarian need or an imminent loss of substantial due process rights. *See* 32 C.F.R. § 286.4(d)(3)(iv). "Humanitarian need" means that disclosing the information will promote the welfare and interest of mankind. *Id.*

Domestic surveillance of LGBT organizations such as SLDN may have infringed, and may continue to infringe, upon the free speech, free association and privacy rights of those individuals or entities that were, or currently are, the subject of such surveillance. Any delay in processing SLDN's request for documents may compromise the significant interests at stake by delaying SLDN, and therefore the public at large, from understanding the full scope of any government violations of SLDN's and other LGBT organizations' constitutional rights. *See ACLU*, 321 F. Supp. 2d at 30 ("Because the records that plaintiffs seek relate to current surveillance efforts, the potential invasion of the public's privacy interests is of immediate concern, weighing in favor of a finding of expediency."). Therefore, an imminent loss of due process rights may be suffered if the above FOIA request is not processed on an expedited basis.

In addition, the right to free speech, free association and privacy are protected under the First, Fourth and Fifth Amendments to the United States Constitution, which were designed in part to promote the welfare of mankind through liberty. *See, e.g., The Federalist No. 9* (Alexander Hamilton) ("From the disorders that disfigure the annals of those republics [referring to ancient Greece and Italy] the advocates of despotism have drawn arguments, not only against the forms of republican government, but against the very principles of civil liberty. They have decried all free government as inconsistent with the order of society, and have indulged themselves in malicious exultation over its friends and partisans. Happily for mankind, stupendous fabrics reared on the basis of liberty, which have flourished for ages, have, in a few glorious instances, refuted their gloomy sophisms. And, I trust, America will be the broad and solid foundation of other edifices, not less magnificent, which will be equally permanent monuments of their errors."); *cf. Lawrence v. Texas*, 539 U.S. 558, 562 (2003) ("Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct.").

PROSKAUER ROSE LLP

Office of Freedom of Information
January 5, 2006
Page 8

Therefore, granting SLDN's request for expedited processing will promote the interest and welfare of mankind.

## IV.    FEE WAIVER REQUEST

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 32 CFR § 286.28(d), we also request a waiver of all fees associated with responding to this FOIA request. The statute and regulations authorize a waiver of fees where disclosure of the information requested (1) is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of DoD and (2) is not primarily in the commercial interest of the requestor. SLDN's FOIA request satisfies both criteria.

### A.    Disclosure of the Records Sought Is in the Public Interest

SLDN's FOIA request seeks information regarding domestic surveillance conducted by DoD that, as noted above, has drawn considerable attention and criticism in the past few weeks from members of Congress and the media. For example, disclosure of the records requested will help the general public understand the full scope and extent to which CIFA—a little-known DoD component created in the wake of the terrorist attacks of September 11, 2001—has been collecting information against SLDN and other LGBT organizations within the United States. Moreover, many of the documents SLDN seeks were recently created by DoD, which counsels in favor of granting our fee waiver request. *See* § 286.28(d)(3)(i).

SLDN's FOIA request also seeks meaningful information not already in the public domain. *See* § 286.28(d)(3)(i)(B). The general public has shown great interest in recent revelations regarding domestic surveillance conducted by DoD components. As noted above, SLDN will use its electronic communication capabilities to disseminate to the general public information collected as a result of its FOIA request. *See* § 286.28(d)(3)(i)(C). As previously noted, SLDN has also been asked by numerous other organizations to submit this FOIA request on their behalf. Needless to say, should SLDN discover through its FOIA request that these groups have indeed been the target of domestic surveillance, SLDN will forward such information to these respective groups in a timely fashion.

The public currently understands very little about the extent to which DoD components such as CIFA have observed groups and individuals in the United States critical of federal government policies. Indeed, this lack of understanding apparently includes members of Congress. *See, e.g.*, Lisa Myers et al., *Senator Demands Investigation of Spy Database*, MSNBC.com, Dec. 15, 2005, http://www.msnbc.msn.com/id/10481600; Eric Lichtblau, *Officials Want to Expand Review of Domestic Spying*, N.Y. Times, Dec. 25, 2005, at A28. SLDN's FOIA request, and the subsequent dissemination of the information obtained as a result of that request, counsels in favor of granting a fee waiver. *See* § 286.28(d)(3)(i)(D).

**PROSKAUER ROSE LLP**

Office of Freedom of Information
January 5, 2006
Page 9

### B. Disclosure of the Records Sought is Not Primarily in SLDN's Commercial Interest

In order to qualify for a fee waiver, disclosure of the information sought cannot be "primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 32 C.F.R. § 286.28(d)(3)(ii). In making this determination, DoD regulations provide that two factors are to be considered: (1) the existence and magnitude of the requestor's commercial interest, and (2) the primary interest in disclosure. 32 C.F.R. § 286.28(d)(3)(ii)(A)-(B). As noted above, SLDN is a national, non-profit policy organization dedicated to ending discrimination against, and harassment of, United States military personnel under "Don't Ask, Don't Tell." SLDN has no commercial interest in the records sought by this FOIA request. Instead, by submitting this FOIA request, SLDN hopes to obtain information in order to educate the general public regarding the extent to which domestic surveillance has been used against LGBT organizations and other organizations that disagree with policies of the federal government.

### V. REQUEST FOR "REPRESENTATIVE OF THE NEWS MEDIA" FEE STATUS

In the event that DoD determines that SLDN's FOIA request does not qualify for a fee waiver, we would request the SLDN be afforded "representative of the news media" fee status pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 32 C.F.R. § 286.28(e). A "representative of the news media" is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *Nat'l Sec. Archive*, 880 F.2d at 1387. SLDN qualifies as a "representative of the news media" because it uses multiple channels, including its website, email lists, newsletters and print media, to educate the general public and federal policymakers about "Don't Ask, Don't Tell" and its shortcomings. The fact that its principal means of educating persons is via the Internet has no bearing on whether SLDN qualifies as a "representative of the news media." *See EPIC*, 241 F. Supp. 2d at 14 (explaining that the fact that an entity distributes its publication "via Internet to subscribers' email addresses does not change the [news media] analysis").

\* \* \*

I thank you for your prompt attention to this matter. In accordance with 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 32 C.F.R. § 286.4(d), we expect your determination of our request for expedited processing within ten (10) calendar days and your determination of our request for records within twenty (20) days. We also expect the release of all segregable portions of otherwise exempt material. If our request for documents is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions under FOIA.

PROSKAUER ROSE LLP

Office of Freedom of Information
January 5, 2006
Page 10

If you have any questions, please feel free to call me at (202) 416-6818. I hereby certify that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully yours,

Christopher Wolf

cc:   C. Dixon Osburn, SLDN Executive Director

```
** JOB STATUS REPORT **                    AS OF  JAN 05 2006 12:38    PAGE. 01

                                                     PROSKAUER ROSE LLP

       JOB #696

       DATE   TIME        TO/FROM              MODE    MIN/SEC    PGS    STATUS
001    1/05   12:35   19#041#17036964506,,#   EC--S    01' 46"    011    OK
```

---

# PROSKAUER ROSE LLP

1233 Twentieth Street NW, Suite 800
Washington DC  20036-2396
Telephone 202.416.6800
Fax 202.416.6899

NEW YORK
LOS ANGELES
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

**Fax Transmittal**

| | | | |
|---|---|---|---|
| Date | January 5, 2006 | Client-Matter | 00019-041 |
| Total Pages (Including Cover) | 11 | | |
| From | Christopher Wolf | | |
| Sender's Voice Number | 202.416.6818 | Sender's Room Number | DC |
| Sender's Email Address | cwolf@proskauer.com | Main Fax Number | 202.416.6899 |
| To: | Office of Freedom of Information | Fax No.: | (703) 696-4506 |
| Company: | Department of Defense | Voice No.: | (703) 696-4495 |

Message

*FREEDOM OF INFORMATION ACT REQUEST*
*(EXPEDITED PROCESSING REQUESTED)*

Confidentiality Note: This message is confidential and intended only for the use of the addressee(s) named above. It may contain legally privileged material. Dissemination, distribution or copying of this message, other than by such addressees(s), is strictly prohibited. If you have received this message in error, please immediately notify us by telephone and return the original to us at the address above. We will reimburse you for the cost of the telephone call and postage. Thank you.