

**OFFICE OF THE UNDER SECRETARY OF DEFENSE**
5000 DEFENSE PENTAGON
WASHINGTON, DC 20301-5000

INTELLIGENCE

MAR 0 8 2006

The Honorable Patrick J. Leahy
Ranking Member
Committee on the Judiciary
United States Senate
Washington, DC 20510

Dear Senator Leahy:

I appreciate the opportunity to provide you with additional information pursuant to your December 21, 2005 and February 17, 2006 requests for information about Department of Defense (DoD) collection of information on U.S. persons within the United States. Your inquiry refers to recent NBC News reporting, which focused on DoD's TALON Reporting System; the NBC report was not completely accurate. I would like to address your specific concerns about DoD and peaceful anti-war and counter-military groups in Vermont.

The TALON Reporting System was created in May 2003 to document, share, and ultimately analyze unfiltered information about suspicious incidents related to possible foreign terrorist threats to DoD. TALON reports are housed in the Cornerstone database maintained by Counterintelligence Field Activity (CIFA). The recent review of the TALON Reporting System, directed by the Under Secretary of Defense for Intelligence (USD(I)), identified a small number of reports that did not meet the TALON reporting criteria. Those reports dealt with domestic anti-military protests or demonstrations potentially impacting DoD facilities or personnel. Such information was provided by concerned citizens, DoD personnel, or law enforcement organizations. While the information was of value to military commanders, it should not have been retained in the Cornerstone database. The TALON Reporting System was never intended to serve a general force protection or security function, such as warning commanders of non-terrorist threats to their personnel or installations.

Answers to the specific questions posed in your letter are as follows:

**1. What is the process for determining that a domestic group may be a threat to Defense Department installations, interests and personnel?**

Whether a group constitutes a threat is determined by an evaluation of the group's capability to impact the security of DoD installations or the safety of DoD affiliated personnel and its intent to do so.



If the Department receives information indicating there is a threat to the physical security of DoD personnel, installations or activities, the affected units would be warned and the information is then processed in either law enforcement or intelligence channels depending on the nature of the threat. If, for example, there is evidence indicating that a group is engaging in activities on behalf of a foreign power or international terrorists, our intelligence components would retain that information and disseminate it to other agencies for action. If the report indicates that the nature of the threat is criminal, the Department refers it to civilian law enforcement agencies or the installation security office for action.

**2. Please fully describe the Department's efforts to collect intelligence in Vermont, including the dates of collection, the individuals or groups targeted in the collection, and the basis for determining that the target was a threat to Defense Department installations, interests and personnel.**

DoD did not conduct any investigations of the domestic activities of persons in Vermont, nor did it target any groups in Vermont for the collection of intelligence. However, the Department received two reports from the Department of Homeland Security (DHS) about protests against DoD recruiters by Vermont groups. Subsequently Army personnel generated TALON reports based on the DHS information and placed them in the Cornerstone database. The first TALON report contained information about a potential protest action against military recruiters attending a Career Fair function on March 8, 2005 in an unidentified Vermont town. Two participating groups were named in the TALON. The second TALON report focused on a protest at an Army recruiting office in Washington, DC and also noted that another protest was planned that day at the Armed Forces Recruitment Center in Williston, Vermont. No group was mentioned in the TALON report.

Receiving this type of force protection information and disseminating it within DoD is well within DoD authorities and was necessary to ensure the safety of the military recruiters. Nonetheless, these reports did not meet TALON reporting criteria as they did not pertain to potential foreign terrorist activity and thus should never have been entered into the Cornerstone database. These reports have since been removed from the Cornerstone database and refresher training on intelligence oversight and database management is being given to all CI and intelligence personnel.

The Cornerstone database also contained 15 additional TALON reports relating to suspicious activity in Vermont that had been reported to DoD by concerned citizens, DoD personnel or civilian law enforcement agencies. These activities involved:

- Possible surveillances of DoD facilities
- Suspected electronic monitoring of military air operations
- Reported penetrations of perimeter security
- The attempted removal of a DoD decal from a military dependent's privately owned vehicle
- Fence cutting at the Burlington airport
- Illegal alien border crossing activities
- A telephone threat directed against a senior Vermont Air National Guard officer
- An arson attack on a USAF recruiting station's government vehicle
- Theft of government license plates.

Three of these reports were removed from the database as a result of subsequent information or analysis indicating there was no link to possible terrorist activity.

Concerning the additional questions you asked in your letter of February 17, 2006, answers are as follows:

1. **What rules regarding collection and retention of information were being followed and when? When did the Under Secretary of Defense or another Pentagon official realize that staff were following multiple rules? When will guidance be issued to standardize practices? Will you share this guidance with the Armed Services and Defense Appropriations Committees of the U.S. Senate?**

DoD intelligence and counterintelligence entities have followed, since its promulgation, the rules on the collection and retention of information on U.S. persons spelled out in DoD 5240.1-R, "Activities that Affect United States Persons," December 1982. Other non-intelligence and law enforcement DoD organizations involved with TALON reports used DoD Directive 5200.27, Acquisition of Information Concerning Persons and Organizations not Affiliated with the DoD", January 7, 1980 as their guide for the collection and retention of TALON information. CIFA follows DoD 5240.1-R but interpreted Deputy Secretary of Defense Memorandum "Collection, Reporting, and Analysis of Terrorist Threats to DoD Within the United States," May 2, 2003 as an exception to the retention guidance contained in DoD 5240.1-R for the Cornerstone database. This interpretation came to light in December 2005 in the course of our review of the TALON reporting system.

By memorandum on February 2, 2006, The USD(I) directed CIFA to use DoD 5240.1-R without exception for maintaining the Cornerstone database. Pursuant to

DoD 5240.1-R, the Acting Deputy Under Secretary of Defense for
Counterintelligence and Security and the Deputy General Counsel for Intelligence
also provided CIFA with guidance on the collection and retention of US person
information in the Cornerstone database. This guidance was shared with the Army
Provost Marshal, the Army's Intelligence and Security Command, the Naval
Criminal Investigative Service and the Air Force Office of Special Investigations.
These four organizations are the designated TALON lead components for their
Departments. Reinforcing guidance for the Department concerning the exclusive
use of DoD 5240.1-R for TALON reports is being staffed and will be issued soon.
We will share the guidance with our Congressional oversight committees.

2. **When will policy documents be prepared regarding the collection and
   retention of data concerning U.S. persons? The January 27 letter indicated
   these documents will include a standard to be applied to the TALON
   database, and will include oversight procedures. Will you share these
   standards and oversight procedures with the Armed Services and Defense
   Appropriations Committees of the U.S. Senate?**

DoD 5240.1-R remains the authoritative statement of DoD policy on the
collection and retention of data on U.S. persons. Policy documents to ensure those
who use the TALON reporting system are in compliance with the provisions of
DoD 5240.1-R are required. As noted above, several specific organizations have
received that direction and Department-wide guidance is forthcoming. We will
share the guidance with our Congressional oversight committees. Oversight of the
TALON reporting system will be provided by the Assistant to the Secretary of
Defense for Intelligence Oversight, the DoD components and my staff, as well as
the Department's Office of Inspector General.

3. **Have you completed a review of the TALON database to ensure that it
   does not include names that have no connection to terrorism? If so, how
   many such names were identified? Were any of those named persons
   residents of Vermont? Have those names been purged?**

CIFA has completed its review of the TALON database to identify those
reports that concerned demonstrations and protest activities. That review
identified 186 protest related reports that should not have been entered into the
database. A total of 43 named individuals were mentioned in those reports. There
was only one report concerning an anti-war protest in Vermont in which a person
was named. However, there is insufficient information contained in the report to
determine whether or not that person is a Vermont resident. All reports
concerning demonstrations, protests or other anti-war related activities, including
those that contained US person names, have been purged. CIFA is reviewing
2821 TALON reports containing U.S. person information that were properly

reported as having a potential connection to foreign terrorism to determine what information can be retained in the Cornerstone data base pursuant to DoD 5240.1-R. That review will be completed by 31 March and we will advise you of the results.

**4. How many names have been improperly added to the TALON database since it was created? Have all of these names been purged? Were any of these names shared with other government agencies? If so, which agencies?**

The only names that were improperly added to the TALON database were the 43 names that were included in the protest related reports. CIFA is currently examining the remaining reports in the database that did meet the reporting criteria established by the 2 May 2003 DEPSECDEF memo (i.e., activities within seven established categories that are potentially related to foreign terrorist activity) to ensure that US person information is retained only in accordance with the policies established by DoD 5240.1-R, (Procedures Governing the DoD Intelligence Components that Affect United States Persons). The USD(I) has ordered that review to be completed by 31 March 2006. As stated in the response to the previous question all reports concerning protest activities have been purged from the Cornerstone database. TALON reports are routinely shared by the DoD reporting element, at the local level, with civilian law enforcement and other DoD agencies having a need to know. Non-DoD agencies could also have accessed the reports if they had registered accounts in the Cornerstone database. The Department of Homeland Security, Coast Guard, National Space and Aeronautics Administration and the Federal Bureau of Investigation comprise the non-DoD agencies which have access to the Cornerstone database. CIFA has posted information on its Cornerstone database informing account holders of the reports which have been purged and also instructing recipients on the need to purge such records from their respective systems. CIFA is reinforcing these corrective measures with an official memorandum to the directors of all concerned DoD and non-DoD agencies.

Sincerely,

Robert W. Rogalski
Deputy Under Secretary of Defense, Acting
(Counterintelligence and Security)