UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
SERVICEMEMBERS LEGAL DEFENSE          )
NETWORK,                                            )
                                                    )
                    Plaintiff,                      )
                                                    )
            v.                                      )          06-cv-200 (RMC)
                                                    )
DEPARTMENT OF DEFENSE,                   )
*et al.*                                            )
                                                    )
                    Defendants.                     )
_____ )


**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION**

## INTRODUCTION

Plaintiff the Servicemembers Legal Defense Network ("SLDN" or "plaintiff") asks this Court to enter a preliminary injunction ordering expedited processing of its Freedom of Information Act ("FOIA") request. By seeking expedited processing, plaintiff is asking that its request be processed ahead of previously submitted FOIA requests. By asking for the extraordinary relief of a preliminary injunction, which is generally inappropriate in FOIA cases for reasons discussed below, plaintiff seeks priority over other litigants (FOIA and otherwise). Because neither request has merit, this motion must be denied.

Expedited processing is a narrow exception to the processing of FOIA requests on a first-in, first-out basis, and plaintiff does not meet its requirements. The Servicemembers Legal Defense Network's name and web-site both make clear that it is not *primarily* engaged in the dissemination of information, but rather is a "legal defense network" that also lobbies Congress and disseminates information related to its cause on its web-site. Moreover, there is no immediate exigency justifying expedited processing. Based on the information provided by the plaintiff to the agencies, the "TALON" program – the primary subject of plaintiff's FOIA requests – has been the subject of only limited media interest and has not been the subject of a significant ongoing debate. This lack of urgency is presumably why plaintiff continually attempts to link the subject of its request with the unrelated and far more widely covered debate over the NSA activities as described by the President ("the NSA Activities") (a subject for which defendant DOJ has granted expedited processing).

Other than its evident lack of merit, the only remarkable aspect of plaintiff's motion is the lack of necessity for it. All but one of the agency components have completed processing or

made significant progress in their processing of plaintiff's requests.[1]  The denial of plaintiff's

request for expedition thus has made little to no difference in the processing of its requests, and it

is quite possible that this motion could have been avoided if plaintiff had simply complied with

the meet-and-confer requirements in Local Rule 7(m).  Further, as in most FOIA cases, plaintiff

is only speculating that its requests will produce responsive, non-exempt documents that will

significantly contribute to the public debate and whose value will be lost if the normal rules of

civil procedure were to apply.  If anything, the opposite is likely given the few documents that

the searches have revealed to date, and given the recent resolution of any lingering controversy

regarding the TALON program.  Plaintiff has therefore made no showing that the denial of its

request for expedition will result in certain and great irreparable harm if this motion is not

granted.  The normal process for litigating FOIA lawsuits should govern this proceeding, and

plaintiff's motion should be denied.

## STATUTORY AND REGULATORY BACKGROUND

The Freedom of Information Act offers requestors two potential avenues for processing

their requests.  The one that applies to all but a narrow set of requests requires agencies to

process requests within 20 days, 5 U.S.C. § 552(a)(6)(A)(i)-(ii), allows for a delay of an

additional ten days in "unusual circumstances" defined in section 552(a)(6)(B)(iii), and allows

for longer processing periods in cases of "exceptional circumstances" defined in section

552(a)(6)(C)(i).  The other avenue for processing FOIA requests, known as "expedited

---

[1]  The Defense Intelligence Agency has a significant backlog of requests that could necessitate a motion for an "Open America" stay, *see infra* at 9, but given the results of the other agencies' searches to date, there is no reason to believe that the DIA will have an appreciable number of responsive documents.

processing," requires agencies to process requests that are granted this status "as soon as

practicable."  5 U.S.C. § 552(a)(6)(E)(iii).  Thus, in cases where an agency has no backlog of

requests, there is no significant difference between standard and expedited processing – *i.e.*, 20

days except in "exceptional circumstances" versus "as soon as practicable."  Rather than

requiring requests to be processed within a certain period of time, expedited processing requires

the agency to prioritize later-filed requests over earlier-filed ones and, in general, requires

agencies to depart from their normal administrative processes for determining the priority of

FOIA requests they receive.[2]

Congress determined that this deviation from an agency's standard procedures should

occur only "in cases where the person requesting the records demonstrates a compelling need"

and "in other cases determined by the agency."  5 U.S.C. § 552(a)(6)(E)(i)(ii).  FOIA defines

"compelling need" to mean:

> (I) that a failure to obtain requested records on an expedited basis under this
> paragraph could reasonably be expected to pose an imminent threat to the life or
> physical safety of an individual; or
>
> (II) with respect to a request made by a person primarily engaged in disseminating
> information, urgency to inform the public concerning actual or alleged Federal
> Government activity.

5 U.S.C. § 552(a)(6)(E)(v).  In addition to the statutory definition, the Department of Defense

provides for "expedited processing" in cases of an "imminent loss of substantial due process

rights" and in situations where "disclosing the information will promote the welfare and interest

---

[2]  As stated in the Senate Report for the FOIA amendments that added the expedited processing
requirements, the goal "is not to get the request for expedited access processed within a specific time
frame, but to give the request priority for processing more quickly than otherwise would occur."  S. Rep.
104-272, 1996 WL 262861, *17 (May 15,  1996); *see also* H. R. Rep. No. 104-795, *reprinted at* 1996
U.S.C.C.A.N. 3448, 3461 (Sept. 17, 1996).

of mankind." 32 C.F.R. § 286.4(d)(3)(iv).  The Department of Justice additionally provides for expedited processing in situations involving a "loss of substantial due process rights" and matters of "widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence."  28 C.F.R. § 16.5(d)(iii)-(iv).

Both Congress and the Court of Appeals have recognized that the "'specific categories for compelling need are intended to be narrowly applied'" because, "'[g]iven the finite resources generally available for fulfilling FOIA requests, unduly generous use of the expedited processing procedure would unfairly disadvantage other requestors who do not qualify for its treatment.'" *Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 310 (D.C. Cir. 2001) (quoting H.R. Rep. No. 104-795, at 26, *reprinted at* 1996 U.S.C.C.A.N. 3448, 3469 (Sept. 17, 1996)).  The requestor bears the burden of showing that expedition is appropriate.  *See Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 305 n.4 (D.C. Cir. 2001).

## FACTUAL BACKGROUND

On January 15, 2006, plaintiff sent FOIA requests to the Department of Justice ("DOJ") and Department of Defense ("DOD") and various components of those agencies requesting documents concerning the recipient agency or component's purported "surveillance of" meetings involving the plaintiff and other groups "representing the interests of lesbians, gay men, bisexuals, and/or transgendered people."  Plaintiff's Exhibits ("Pl. Exs.") 25(A)-(H), Declaration of Christopher Wolf ("Wolf Dec.").  As to all of the requests, plaintiff requested expedited processing of the requests, asserting that the requested records were "urgently needed" and that it was "primarily engaged in disseminating information to the public."  *Id*.  In support of the latter assertion, plaintiff asserted that it was "a national non-profit watchdog and policy organization

dedicated to ending discrimination against, and harassment of, United States military personnel under 'Don't Ask, Don't Tell.'"  *See*, *e.g.*, Pl. Ex. 25A at 6.  This description omitted key language from the SLDN web-site's description of the group as a "national non-profit *legal services*, watchdog and policy organization."  *See* Defendant's Exhibit ("Def. Ex.") 1, Excerpt from Plaintiff's Web-Site ("SLDN Web-Site") at 1 (found at http://www.sldn.org/templates/ about/record.html?section=10&record=15) (emphasis added).

        In support of its assertion of urgency, plaintiff cited various articles, the vast majority of which dealt with the unrelated NSA activities, which have been the subject of widespread media attention.  *See*, *e.g.*, Pl. Ex. 25A at 5-6; Pl Exs. 9-10, 12-24.  All but one of the remaining articles (Pl. Ex. 11) addressed the TALON Program, administered by CIFA ("Counterintelligence Field Activity") in the Department of Defense.  *See* Pl. Exs. 1-8.[3]  According to one article, under the program, which was described by some officials "as a sort of neighborhood watch for the military," "civilians and military personnel at defense installations are encouraged to file reports if they believe they have come across people or information that could be part of a terrorist plot or threat, either at home or abroad."  Pl. Ex. 7, Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*; *Protests Among Acts Labeled* "*Suspicious*," Washington Post, Dec. 15, 2005.  According to the article, three percent of a sample of 1,500 suspicious incidents in the database were anti-war meetings.  *Id*.  The article further stated that the Undersecretary of Defense had

---

        [3]  Moreover, three of those eight articles, Pl. Exs. 4-6, were published in special-interest publications of much lower circulation.  Of the five articles that were published in publications of wider circulation, the most recent (Pl. Exs. 7-8) were published over three weeks prior to the date of plaintiff's request.  By contrast, the most recent article on the NSA that plaintiff cited was published the day before plaintiff's request.  *See*, *e.g.*, Pl. Ex. 25A at 5 (citing *Surveillance Court is Seeking Answers*, Wash. Post, Jan. 5, 2006, at A2).

ordered a review to determine whether information that was not validated as threatening had been kept in the database for longer than the 90-day limit prescribed by military regulations. *Id*.

The Office of Information and Privacy at DOJ ("OIP"), the Office of Freedom and Information at the Department of Defense ("OFOI DOD"), and the Defense Intelligence Agency ("DIA") denied plaintiff's request for expedited processing, all for similar reasons. Pl. Exs. 25(I)-(J), (L) and 26(I); *see also* Declaration of David M. Hardy ¶¶ 18-19 and Att. K. The Office of Information and Privacy ("OIP"), notified plaintiff that based on a review of the information that the plaintiff had provided, the "primary activity" of the plaintiff "does not appear to be information dissemination." Pl. Ex. 25J, Letter from Melanie Ann Pustay, Deputy Director OIP, to Christopher Wolf, January 26, 2006, at 1; Def. Ex. 2, Declaration of Melanie Ann Pustay ("Pustay Dec.") ¶ 8, Att. D. OIP subsequently notified the plaintiff that the DOJ Director of Public Affairs determined that there was not "widespread and exceptional media interest" in the subject of the request. Pl. Ex. 25L, Letter from Melanie Ann Pustay to Christopher Wolf, at 1; Pustay Dec. ¶ 10, Att. E. Similarly, noting that the plaintiff's stated mission is that "that of a legal services, watchdog and policy organization," the Department of Defense stated it had not found that "the plaintiff's primary activity involves publishing or disseminating information to the public." Pl. Ex. 26I, Letter from Will Kammer, Chief of the Office of Freedom of Information at DOD, to Christopher Wolf, January 12, 2006, at 1.

Notwithstanding the denial of expedited processing, all but one agency component has either completed or made substantial progress in searching for documents responsive to plaintiff's request.

A.  <u>The Office of Information and Privacy at the Department of Justice</u>:  OIP and the
Office of the Attorney General have completed searches of their offices.  Pustay Dec. ¶ 15.  In
addition, OIP has twice searched the electronic database of the Departmental Executive
Secretariat, which is the "official records repository for the Offices of the Attorney General,
Deputy Attorney General, and Associate Attorney General." *Id*. at ¶ 12.  The Offices of the DAG
and AAG are completing the searches of their offices, and searches in the remaining components
(the Office of Legal Policy, Public Affairs Office, Office of Legislative Affairs, and
Intergovernmental and Public Liaison) are also underway.[4]  *Id*. at ¶¶ 14-15.  OIP also notified
plaintiff that it was deferring decision on plaintiff's fee request until such time as it determined
that any of the searches would exceed the amount of free search time to which plaintiff is entitled
as a non-commercial requestor.  *Id*. at ¶ 9, Att. D.

Thus far, searches have revealed no documents responsive to plaintiff's requests
concerning gay and lesbian groups and two documents in the Departmental Executive Secretariat
responsive to the final item related to the Silberman-Robb Commission.  *Id*. at ¶ 12 and note 2.
Those documents originated with the F.B.I. and thus have been referred to the F.B.I. for
processing and direct response to the plaintiff.  *Id*. at ¶¶ 12, 16.  OIP notified plaintiff of this
referral in an interim response dated March 16, 2006.  *Id*. at ¶ 16 and Att. H.

B.  <u>CIFA and DOD OFOI</u>:   CIFA has completed its search, which revealed two three-
page TALON reports and three other documents responsive to plaintiff's requests 7, 8, and 9,

---

[4]  The searches of the remaining components would be even further along, if not completed, were
it not for plaintiff's initial failure to clarify the scope of its request to DOJ and plaintiff's
misunderstanding of one of OIP's responses, which led to an exchange of letters that would otherwise
have been unnecessary.  *Id*. at ¶¶ 5, 7-8, 10-11 and Attachments C, E-F.

totaling eleven pages.  Def. Ex. 3, Declaration of William T. Kammer ("Kammer Dec.") at ¶ 6.[5]

The responsive documents originated with other agencies and components of the Department of

Defense and have been referred to those agencies and offices for review.  *Id*. at ¶¶ 5-6.  No fees

were assessed in relation to CIFA's search.  *Id*. at ¶ 4.

Plaintiff also sent a separate request to the Office of Freedom of Information ("OFOI") at

the Department of Defense.  *See* Pl. Ex. 25B.  That search is ongoing; OFOI has tasked the

Office of the Under Secretary of Defense for Intelligence to search its files for responsive

records.  Def. Ex. 3, Kammer Dec. ¶ 7.  With the limited number of documents revealed by

CIFA's search, however, there is little reason to believe that the remaining search will yield a

significant number of responsive documents.  OFOI also does not anticipate that it will be

necessary to assess fees for this search, again rendering plaintiff's fee-waiver request moot.  *Id*. at

¶ 7.

C.  <u>FBI</u>:  With the exception of one item, the F.B.I. has completed the processing of

plaintiff's request.   *See* Def. Ex. 4, Declaration of David M. Hardy ("Hardy Dec.") at ¶¶ 11-16,

25 and  Attachments E, G, and I.  The search revealed no documents in response to the primary

subject of plaintiff' request – *i.e.*, the alleged surveillance of gay and lesbian groups.  Def. Ex. 4,

Hardy Dec. ¶¶ 12, 14, 16 and Atts. E, G, and I.  Plaintiff's request to the F.B.I. for expedited

processing and a fee waiver for the primary subject of its request are therefore irrelevant.  The

F.B.I. is currently searching for documents related to plaintiff's seventh request, which concerns

---

[5]  Most of plaintiff's requests call for documents related to "surveillance" of certain groups.  *See*,
*e.g.*, Pl. Ex. 25B at 2-3, Requests 1-6.  Read in isolation, those requests do not call for TALON reports
because those reports do not reflect "surveillance."  *Id*. at ¶ 5.  Nonetheless, defendants have treated such
documents as responsive because plaintiff's request, read as a whole, suggests that plaintiff is requesting,
among other things, TALON reports related to certain groups.  *Id*.

a specific proposal made to the Silberman-Robb Commission. *See* Pl. Ex. 25G. It is unclear at this point whether it will be necessary to consider plaintiff's fee-waiver request because it is unclear whether the search time and copying costs necessary to respond to request No. 7 will exceed the amount to which plaintiff is entitled automatically as a non-commercial requestor. Def. Ex. 4, Hardy Dec. at ¶ 27.

   D. <u>DIA</u>: The Defense Intelligence Agency ("DIA") currently has a backlog of 2,300 requests with an estimated 300,000 estimated pages requiring careful review. Def. Ex. 5, Declaration of Brian S. Kinsey ¶ 7. DIA is therefore the only agency where plaintiff's expedition request has any significance. In addition to the normal first-in, first-out method of processing, DIA employs a two-track system that allows simpler requests for which DIA has only a limited number of responsive documents to be processed at the same time as previously filed Track Two responses. *Id*. at ¶ 14. The time needed to process plaintiff's request will thus depend in part upon whether its request is assigned to Track One or Two. If necessary, the DIA will move for an Open America stay. However, the results of the other searches described in the prior subsections strongly suggest that the search will produce few if any responsive documents.


   On March 8, 2006, the Office of the Under Secretary of Defense informed Senator Patrick Leahy of Vermont, the ranking member of the Senate Judiciary Committee that a review of the TALON database "identified a small number of reports that did not meet the TALON reporting criteria" dealing with "domestic anti-military protests or demonstrations potentially impacting DoD facilities or personnel." Plaintiff's Motion Requesting Scheduling of Hearing on Motion for Preliminary Injunction ("Pl. Hearing Motion"), Ex. 1, Letter from Robert W. Rogalski,

9

Deputy Under Secretary of Defense, Acting (Counterintelligence and Security) ("Rogalski

Letter") at 1.  The letter further stated that  "[a]ll reports concerning demonstrations, protests, or

other anti-war related activities, including those that contained US person names, have been

purged" from the TALON database.  *Id*. at 4.

## **ARGUMENT**

I.    **PLAINTIFF'S MOTION BORDERS ON THE IRRELEVANT AND IS
      CERTAINLY MERITLESS GIVEN THE ADVANCED STAGE OF THE
      PROCESSING AND THE LIMITED NUMBER OF DOCUMENTS THAT THE
      AGENCIES' SEARCHES HAVE REVEALED**

Most of plaintiff's FOIA requests call for documents related to alleged "surveillance" of

gay and lesbian groups opposed to the "Don't Ask, Don't Tell" policy.  *See*, *e.g.*, Pl. Ex. 25A at

1-6.  As discussed in the Statement of Facts, CIFA, which administers the program that plaintiff

claims prompted its requests, *see* Memorandum of Points of Authorities in Support of Plaintiff's

Motion for Preliminary Injunction ("Pl. Mem.") at 2-3, 37, has completed its search of its files

and the F.B.I. has completed its searches as to Request Nos. 1-6 (*i.e.*, the ones related to gay and

lesbian groups).  The Office of the Attorney General, Office of Information and Privacy, and the

DOJ Departmental Executive Secretariat have also completed their searches.  *See supra* at 7-9.

None of these searches cost plaintiff anything in fees, and the denial of plaintiff's expedited

processing request did not hinder the processing of those requests.  *Id*.

The F.B.I. search revealed no documents.  *See supra*  The CIFA search revealed two

three-page TALON reports, and eleven pages responsive to Request Nos. 7-9.  *See supra* at 7 and

note 5. The completed DOJ searches  revealed no documents responsive to the requests on gay

and lesbian groups and two documents related to the Silberman-Robb Commission.  Moreover,

all of the other agencies are proceeding in good faith, and given the limited number of documents

uncovered by CIFA, the F.B.I., and the DOJ components, are unlikely to have a significant

number of documents responsive to plaintiff's request.  Accordingly, before even examining the

specific elements of the preliminary injunction standard, it is clear that plaintiff's motion is

pointless and should be denied.  *See also* Section III, *infra* (discussing plaintiff's failure to meet

and confer prior to filing its motion).

## II.    PLAINTIFF IS NOT ENTITLED TO A PRELIMINARY INJUNCTION

It is well-established that preliminary injunctive relief such as that demanded by plaintiff

is "an extraordinary measure, and that the power to issue such exceptional relief 'should be

sparingly exercised.'"  *Experience Works, Inc. v. Chao*, 267 F. Supp. 2d 93, 96 (D.D.C. 2003)

(quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)); *accord Boivin v. US

Airways, Inc.*, 297 F. Supp. 2d 110, 116 (D.D.C. 2003) ("'It frequently is observed that a

preliminary injunction is an extraordinary and drastic remedy, one that should not be granted

unless the movant, *by a clear showing*, carries the burden of persuasion'") (quoting *Mazurek v.

Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)) (emphasis in original).

In considering a plaintiff's request for a preliminary injunction that preserves the status

quo a court must weigh four factors: "(1) whether the plaintiff has a substantial likelihood of

success on the merits; (2) whether the plaintiff would suffer irreparable injury were an injunction

not granted; (3) whether an injunction would substantially injure other interested parties; and (4)

whether the grant of an injunction would further the public interest."  *Al-Fayed*, 254 F.3d at 303;

*accord Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317-18 (D.C. Cir. 1998).  Plaintiff,

moreover, here seeks a mandatory injunction, which would alter the *status quo* and which merits

an even stricter standard, as several courts in this district have held.  *See Bancoult v. McNamara*, 227 F. Supp. 2d 144, 151 (D.D.C. 2002); *Veitch v. Danzig*, 135 F. Supp. 2d 32, 35 (D.D.C. 2001); *Columbia Hospital for Women Foundation, Inc. v. The Bank of Tokyo-Mitsubishi, Ltd.*, 15 F. Supp. 2d 1, 4 (D.D.C. 1997).

A.    PRELIMINARY INJUNCTIONS ARE GENERALLY INAPPROPRIATE IN FOIA CASES

        Plaintiff's request for a preliminary injunction is even more extraordinary than in the usual case because plaintiff seeks such relief in a FOIA case where, for a variety of reasons, such motions are generally inappropriate.[6]  *First*, absent truly dire emergencies, use of the preliminary injunction mechanism should not be encouraged because it unnecessarily adds an additional layer of procedure to FOIA litigation when available existing procedural mechanisms are entirely adequate for managing that process.[7]  Ideally for the Court and the parties, the parties can agree

---

        [6]  Indeed, courts in this district routinely deny requests for such relief.  *See, e.g., Electronic Privacy Info. Center v. U.S. Dept. of Justice*, slip op., No. 03-2078 (D.D.C., Oct. 20., 2003) (Robertson, J.) (attached as Ex. 6) (denying, *sua sponte*, a request for preliminary injunction "'enjoining defendant Department of Justice from continuing to deny plaintiff expedited processing of plaintiff's Freedom of Information Act request'" because such relief "would effectively grant all the relief plaintiff seeks" and was in the nature of a request for mandamus); *Al-Fayed v. CIA*, 2000 WL 34342564, *6 (D.D.C. 2000) (Kollar-Kotelly, J.) (attached as Ex. 7) (finding that "upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law," emergency relief was not warranted despite the agency's delay in responding to FOIA requests); *Judicial Watch v. U.S. Dept. of Justice*, slip op., No. 00-1396  (D.D.C., June 27, 2000) (Robertson, J.) (attached as Ex. 8) (denying plaintiff's "emergency motion for expedited treatment" to "compel defendant to respond to plaintiff's Freedom of Information Act request"); *Assassination Archives and Research Ctr., Inc. v. CIA*, No. 88-2600, 1988 U.S. Dist. LEXIS 18606, *1 (D.D.C., Sept. 29, 1988) (Revercomb, J.) (attached as Ex. 9) (rejecting motion for preliminary injunction asking the Court to order expedited processing of a FOIA request). The next footnote discusses cases where courts have granted such motions.

        [7]  "The cases finding 'emergency' conditions in a FOIA context have been few, and the claims to 'emergency' status in those cases" are "different from and more focused than the claim presented by this plaintiff." *Judicial Watch*, *Inc. v. U.S. Dept. of Justice*, slip op., No. 00-1396  (D.D.C., June 27, 2000) (Robertson, J.) (attached as Ex. 8).  The cases cited by plaintiff, Pl. Mem. at 23, involved requests by criminal defendants who faced impending criminal trials with the threat of grave punishment, or as in

between themselves as to a reasonable production schedule. If the parties fail to agree, the Court can enter an order setting a production schedule at an initial conference. If more significant delays are necessary, the Court can set a deadline for a defendant agency to move for a stay under the standards set forth in *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976). There is no legitimate reason for complicating these straightforward procedures by resorting to the more drastic preliminary injunction remedy.

*Second*, FOIA plaintiffs will seldom meet the standard for irreparable harm. *See infra* at 20-24. As discussed *infra*, it is the plaintiff's burden to make a "clear showing" that denial of the requested relief will result in harm that is "certain and great" rather than "speculative." In cases where a plaintiff purports to be seeking documents to contribute to a public debate, that plaintiff frequently (if not by definition) does not know whether the request will produce responsive, non-exempt documents that will significantly contribute to a public debate. Thus, even assuming that the inability to use certain documents in a public debate constitutes irreparable harm, the typical FOIA plaintiff will generally only be guessing as to whether such irreparable harm exists because the plaintiff will not know whether there will be responsive, non-exempt documents and whether, if so, the response will contribute in any meaningful way to the public debate. *See The Nation Magazine v. Dep't of State*, 805 F. Supp. 68, 74 (D.D.C. 1992) (finding no irreparable harm

---

*American Civil Liberties Union v. Dept. of Defense*, 339 F. Supp. 2d 501 (S.D.N.Y. 2004), significant delay approaching one year in the processing of the request. These cases are thus wholly unlike this one, where plaintiff demands processing at an artificial pace and priority over earlier filed requests despite the fact that plaintiff filed its motion less than two months after the submission of their requests. This case is also unlike the recent decision in *EPIC v. Dep't of Justice*, No. 06-00096, 2006 WL 357831, **1, 6 (D.D.C. Feb. 16, 2006), where the agencies had themselves determined that expedited processing was proper and where, according to the Court, the Agency had not provided satisfactory assurances as to when the processing would be completed. Defendants further note that the Department of Justice has filed a motion for relief in the EPIC case that is currently under consideration by the Court.

because even if the Court "were to direct the speed up of the *processing* of their requests," plaintiffs had not shown that they were "entitled to *release* of the documents they" were seeking) (emphasis in original). Accordingly, the preliminary injunction procedure is generally incompatible with FOIA lawsuits.

In addition, the assumption that a document will lose its value to the public debate if the Federal Rules of Civil Procedure other than Rule 65 govern the proceedings will seldom be justified. It is just as likely that significant new information will reinvigorate a story. It is, again, the plaintiff's burden to establish (rather than merely assert) that failure to grant a preliminary injunction will have this effect, and the requestor's inability to do anything other than offer conclusory assertions is another reason why preliminary injunctions will seldom be appropriate in FOIA cases. This analysis applies equally to cases where (unlike here) the plaintiff has a right to expedited processing. As stated above, the standard for requests that are entitled to expedited processing is "as soon as practicable," not a specific time period. The purpose is to ensure that certain requests are prioritized over others. Nothing in the Electronic FOIA Amendments suggest that Congress believed that the normal rules of civil procedure were inadequate to the task of ensuring that agencies prioritize certain requests over others.

*Third*, it is generally inappropriate to seek, purportedly by way of a "preliminary" remedy, the relief which it will ultimately seek on the merits, *i.e.* the grant of plaintiff's requests for expedition and a fee waiver and the disclosure of non-exempt documents. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 397 (1981) ("[I]t is generally inappropriate for a federal court at the preliminary injunction stage to give a final judgment on the merits").

14

Apart from plaintiff's failure to meet the basic preliminary injunction requirements, discussed in the next several subsections, this case provides a particularly apt example of the poor fit between the preliminary injunction procedure and the Freedom of Information Act. Plaintiff's proposed order, for example, asks that the Court order defendants to provide *Vaughn* indexes within 30 days of the Court's order even though courts generally do not require *Vaughn* indexes until dispositive motions are filed.[8]  Pl. Ex. 30, Proposed Order at 2.  Plaintiff does not even attempt to explain why, for example, the failure to obtain a *Vaughn* index would result in irreparable harm.

There is also no indication in this case of significant delay in the processing of plaintiff's request.  To the contrary, many of the agencies have completed the processing of the request, and the remaining agencies have made significant progress in doing so.  Had plaintiff met and conferred with defendant, the parties could potentially have agreed (and still can agree) upon a schedule for completing the processing of the request.  Use of the preliminary injunction procedure has accomplished nothing that could not have been achieved through the standard procedures that generally apply in FOIA cases.

---

[8]  *See, e.g., Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) (The "early attempt in litigation of this kind to obtain a *Vaughn* index . . . is inappropriate until the government has first had the chance to provide the court with the information necessary to make a decision on the applicable exemptions."); *United States Committee on Refugees v. Department of State*, No. 91-3303, 1992 WL 35089, *1 (D.D.C. Feb. 7, 1992) ("the preparation of a *Vaughn* index is unwarranted before the filing of dispositive motions in FOIA actions because the filing of a dispositive motion, along with detailed affidavits, may obviate the need for indexing the withheld documents") (internal quotation marks and citation omitted); *Stimac v. U.S. Dep't of Justice*, 620 F. Supp. 212, 213 (D.D.C. 1985) ("the preparation of a *Vaughn* Index would be premature before the filing of dispositive motions"); *Pyne v. Commissioner*, No. 98-00253, 1999 WL 112532 (D. Hawaii Jan. 6, 1999) (denying motion to compel preparation of a *Vaughn* index as premature when the agency had not yet presented any affidavits as to why the documents withheld could not be released).

B.      PLAINTIFF HAS FAILED TO ESTABLISH A LIKELIHOOD OF SUCCESS

Plaintiff has no likelihood of success because plaintiff has not established its entitlement to expedited processing.  5 U.S.C. § 552(a)(6)(E)(i)(I) provides that FOIA requests shall be subject to expedited processing in cases of "compelling need."  Compelling need exists under the statute when (1) failure to obtain the records quickly "could reasonably be expected to pose an imminent threat to the life or physical safety of an individual" or (2) the requestor is a person "primarily engaged in disseminating information," and demonstrates an "urgency to inform the public concerning actual or alleged Federal Government activity."  5 U.S.C. § 552(a)(6)(E)(v).  Plaintiff does not contend that an imminent threat to an individual's life or physical safety exists, but wrongly asserts that the second set of criteria applies.

Plaintiff is not entitled to expedited processing, as an initial matter, because plaintiff is not a person "primarily engaged in disseminating information."  Instead, as its name suggests and as defendant DOD noted in response to the request for expedition, the "stated mission" of the group "is that of a legal services, watchdog and policy organization," and therefore its "*primary* activity does not involve "publishing or disseminating information to the public."  Pl. Ex. 26I, Letter from Will Kammer to Christopher Wolf, January 12, 2006, at 1.  Plaintiff describes itself on its web-site, which plaintiff referred to in its request for expedition, *see*, *e.g.*, Pl. Ex. 25A at 6, as a "national non-profit *legal services*, watchdog and policy organization" dedicated to ending discrimination against and harassment of gay and lesbian servicemembers.  *See* Def. Ex. 1, SLDN Web-Site at 1, http://www.sldn.org/templates/ about/record.html?section=10&record=15

16

(emphasis added).[9]  The slogan that is prominently displayed on every page of its web-site admonishes servicemembers to "Say Nothing * Sign Nothing * *Get Legal Help*," and each page contains a link enabling servicemembers to e-mail the organization to obtain such help. Elsewhere on its web-site, SLDN refers to itself as "the nation's sole legal aid and advocacy organization assisting military members harmed by 'Don't Ask Don't Tell,'" and reports that it has provided legal assistance to more than 4,200 servicemembers since 1993.  *See id*. at 3 (found at http://www.sldn.org/templates/about/record.html?section=87&record=722).  Its web-site further announces SLDN's fourth annual "lobby day" on May 14-16, 2006, during which time "veterans, allies and activists" are invited to join the organization to lobby Congress concerning the "Don't Ask Don't Tell" policy.  *Id*. at 4 (found at http://www.sldn.org/templates/events/ record.html?section=&record=107).  Thus, while SLDN may provide information to the public on its web-site about the "Don't Ask, Don't Tell" policy and SLDN's efforts to fight that policy, its own name and web-site reflects that it is primarily a lobbying and legal services organization and that, in any event, the provision of information to the public is certainly not its "primary" activity.

Plaintiff also failed to meet its burden of demonstrating an "urgency to inform the public concerning actual or alleged Federal Government activity."  This determination requires examination of "whether the request concerns a matter of exigency to the American public" and "whether the consequences of delaying a response would compromise a significant recognized interest."  *Al-Fayed v. Central Intelligence Agency*, 254 F.3d at 310.  Plaintiff's request in no

---

[9]  Evincing its awareness of how this role undermines its claim to expedition, plaintiff omitted the words "legal services" from its description of its mission in its letters to the various agencies requesting expedited processing.  *See* Pl. Exs. 25A-H.

way established that the subject of its request rose to the level of an "exigency to the American

public." At most, plaintiff's request established a limited amount of media interest from

December of last year in the TALON program, which gathered reports from military installations

around the country on threats to military installations and personnel.[10]  The most recent article

about the program from a widely read publication was published more than three weeks prior to

the date of plaintiff's requests, and that article indicated that the military was already reviewing

the program to determine whether information had been retained in the database that should not

have been retained.[11]  *See* Pl. Ex. 7, Walter Pincus, *Pentagon Will Review Database on U.S.*

*Citizens; Protests Among Acts Labeled* "*Suspicious*," Washington Post, Dec. 15, 2005.  Even

plaintiff could only assert in its requests that a delay in processing "*may* decrease the value of the

information."  Pl. Ex. 25A at 5 (emphasis added).[12]

---

[10]  This program as described in the articles relied on by plaintiff is not "strikingly similar" to those described in the Church Committee report excerpt that plaintiff attaches an exhibit.  Pl. Ex. 28, Excerpt from *Intelligence Activities and the Rights of Americans, Book II, Final Report of the Select Committee to Study Government Operations With Respect to Intelligence Activities*, S. Rep. 94-755, at 1-20 (1976).  The allegations concerning the TALON program bear no resemblance to the practices described by the Church Committee:  *i.e.*, "intelligence collection–such as infiltrating groups with informants, wiretapping, or opening letters," "dissemination of such information which has been collected," and "covert action designed to disrupt and discredit the activities of groups and individuals deemed a threat to the social order."  *See id.* at 1.

[11]  Plaintiff asserts in the conclusion to its motion that "the subject of this suit is not whether the federal government's surveillance of individuals or groups opposed to 'Don't Ask, Don't Tell' violates existing statutes and/or constitutional principles."  Pl. Mem. at 37.  The absence of any apparent constitutional violation, however, is an additional factor establishing the lack of any exigency justifying expedited processing.

[12]  In support of this weak assertion, plaintiff offered the then-pending confirmation hearings for Justice Alito (which had concluded by the statutory deadline for making a determination on the expedited processing request), and the desire of members of the Judiciary Committee to hold hearings on the issue of "domestic surveillance," citing articles referring only to the NSA activities, not the TALON program. *Id.* at 5-6.

Failing to establish the exigent nature of the story on its own, plaintiff attempts to conflate the concern of its FOIA requests with recent stories on the NSA activities. Thus, plaintiff refers to both stories under the general, imprecise rubric of "domestic surveillance," Pl. Mem. at 2, and states that the "front-pages of major American newspapers have been filled with development after development in this ever-evolving story." *Id*. at 28. In reality, the NSA activities and the subject of plaintiff's FOIA requests present different issues, and the high-profile public debate that plaintiff identifies has related exclusively to the NSA activities. Thus, when plaintiff asserts that (1) "news reports created a level of public concern so great that the Bush Administration was forced to acknowledge and to defend these programs;" (2) "The legality of these domestic surveillance programs also became a topic of debate and discussion;" and (3) "members of the Senate Judiciary Committee soon made clear their intention to hold hearings on the issue of domestic surveillance," each of the articles cited for these propositions addressed the NSA activities, not the programs that are the subject of plaintiff's FOIA requests. Pl. Mem. at 4-5.

Plaintiff also fails to meet the DOD and DOJ regulatory requirements for establishing an entitlement to expedited processing. The few stories from more than two months ago that plaintiffs identify on this subject do not establish a "matter of widespread and exceptional media interest," *see* 28 C.F.R. § 16.5(d)(iii), which is presumably why plaintiff has attempted to conflate the subject of this case with the far more widely covered NSA story. Similarly, plaintiff has offered nothing but conclusory assertions to show that the requests involve an imminent loss of substantial due process rights, 28 C.F.R. § 16.5(d)(iii), 32 C.F.R. § 286.4(d)(3)(iv), or humanitarian need. *Id*. The program at issue involved little more than the decentralized

19

gathering of information about public events.  *See* Pl. Ex. 3 at 5-12.  Further, as noted in the OIP

response to plaintiff's request, courts are reluctant to grant expedited processing on such a basis

unless, unlike here, a requester can show he is facing "'grave punishment in a criminal

proceeding'" and "'there is reason to believe information will be produced to aid the individual's

defense.'"  Pl. Ex. 25J, Letter from Melanie Pustay to Christopher Wolf, at 2 (internal brackets

omitted) (quoting *Freeman v. U.S. Department of Justice*, No. 92-0557, slip op. at 4 (D.D.C. Oct.

2, 1992); *see also Aguilera v. F.B.I.*, 941 F. Supp. 144, 149-50 (D.D.C. 1996) (applying *Freeman*

and other cases).  The plain language of these regulations thus makes clear that the denial of

expedition was appropriate.  Further, while this Circuit has held that agencies are not entitled to

*Chevron* deference with respect to their interpretation of the *statutory* expedited processing

provisions, *Al-Fayed*, 254 F.3d at 304-307, it should be noted that defendants would be entitled

to deference in their interpretation of their own regulatory standards in the event of any

ambiguity.  *Id*. at 307 n.7.

C.     PLAINTIFF HAS FAILED TO ESTABLISH A THREAT OF IRREPARABLE
       HARM

"'The basis of injunctive relief in the federal courts has always been irreparable harm.'"

*CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir.1995) (quoting

*Sampson v. Murray*, 415 U.S. 61, 88 (1974)) (brackets omitted); *see Experience Works, Inc. v.

Chao*, 267 F. Supp. 2d at 96 ("The *sine qua non* of granting any preliminary injunctive relief is a

clear and convincing showing of irreparable injury to the plaintiff"). In order for a plaintiff to

meet its burden of demonstrating irreparable harm sufficient to warrant the entry of preliminary

injunctive relief, "the injury must be both certain and great; it must be actual and not theoretical."

*Wisc. Gas. Co. v. Federal Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985).

Injunctive relief "will not be granted against something merely feared as liable to occur at some

indefinite time." *Id*. (citation and internal quotation marks omitted). Instead, the party seeking

injunctive relief must show that "[t]he injury complained of [is] of such imminence that there is a

'clear and present' need for equitable relief to prevent irreparable harm." *Id*. (citation and

internal quotation marks omitted) (brackets in original). A plaintiff's failure to meet its burden

of establishing irreparable harm is sufficient, in itself, to deny emergency relief. *CityFed Fin.*

*Corp.*, 58 F.3d at 747.

      Plaintiff has failed to make any showing, let alone a "clear showing," of "certain and

great" harm. *First*, there is no "clear showing" of irreparable harm for the same reason that

plaintiff could not establish the lower threshold of urgency that is required to justify expedition.

Plaintiff itself has undermined its claim to urgency by submitting a recent article stating that the

Department of Defense recently eliminated all information about peaceful protesters from the

database at issue and stated that the information should not have been retained. Pl. Hearing

Motion, Ex. 1, Rogalski Letter.

      *Second*, as stated *supra*, plaintiff can only speculate as to whether its requests will obtain

documents that will be "vital to the current and ongoing debate surrounding the legality of

domestic surveillance by the federal government." Pl. Mem. at 34. Because mere speculation

does not establish the "clear showing" of "certain and great" harm, plaintiff has failed to meet its

burden to show irreparable harm. Moreover, the fact that the various agencies have found so few

documents in their searches to date only further heightens the speculative nature of plaintiff's

claim of urgency. Moreover, the fact that the contours and details of the TALON program have

21

been publicized and that it has not been the subject of significant debate only makes it even more certain that allowing the normal rules of civil procedure to govern this case will not somehow irreparably harm the public debate.

*Third*, plaintiff has failed to show irreparable harm because CIFA, OAG, OIP, and the DOJ Departmental Executive Secretariat have completed their searches, the F.B.I. has completed its search as to all but one request, the remaining agencies and components have made substantial progress, and all agencies are proceeding in good faith. The advanced stage of the processing for the various agencies, and the fact that the searches have not revealed a substantial number of documents, also thwarts plaintiff's ability to establish a "clear showing" of irreparable harm and the lack of necessity for a preliminary injunction ordering expedited processing.

*Fourth*, plaintiff argues that the denial of its motion for preliminary injunction would cause irreparable harm because it purportedly would render their "right to expedited processing" a "nullity." Pl. Mem. at 33. Plaintiff is incorrect on several levels. As an initial matter, loss of an abstract statutory right does not establish "certain and great" harm if the consequences of the loss of that right are not "certain and great." Courts have therefore rejected this argument, which if credited would mean that every request for preliminary injunction in the expedited processing context – or indeed, in the FOIA context as a whole given that the normal FOIA procedures contain statutory deadlines – could amount to irreparable harm. *See Al-Fayed v. C.I.A.*, 2000 WL 34342564 at *5 (finding that denial of expedited processing did not constitute irreparable harm); *see also* note 6, *supra*.

In addition, as explained *supra*, the right to expedited processing is the right to move to the front of the queue and the right to have one's request completed "as soon as practicable," a

standard that differs little from the time limits of normal FOIA processing.  It is not a right to have a request processed within a certain period of time.  As a practical matter, given that several agencies have completed the processing of plaintiff's requests, and that others are well under way, the denial of expedited processing will only make any appreciable difference with respect to the DIA, which has a queue of 2,300 requests.  In the event that the Court were later to overrule the denial of the request outside of the preliminary injunction context, there would still be an appreciable value in moving to the front of that line, and the statutory right would not, in any sense, be a "nullity."

Plaintiff also asserts that "any further delay in processing Plaintiff's FOIA requests will irreparably harm Plaintiff's ability, and therefore that of the public, to obtain in a timely fashion information vital to the current and ongoing debate surrounding the legality of domestic surveillance by the federal government."  Pl. Mem. at 34.  The conclusory statement does nothing to satisfy plaintiff's burden to make a "clear showing" of irreparable harm.  As another court in this district stated in reference to an identical argument, "Though impassioned, this statement remains conclusory, never explaining why this information will not retain its value if procured through the normal FOIA channels."  *See Al-Fayed v. C.I.A.*, 2000 WL 34342564 at *5.  This observation is particularly apt in this instance where the processing of plaintiff's requests in proceeding apace "through the normal FOIA channels."  Meanwhile, plaintiff is perfectly capable of participating in the public debate and, based upon the results of the searches that have been done to date, it does not appear likely that plaintiff's requests will generate a significant number of responsive documents to be used in future debates.

23

Two additional points merit brief comment. Plaintiff asserts that if defendants are not ordered to grant plaintiff's fee request, defendants "will likely charge Plaintiff an exorbitant amount to process its FOIA requests . . . ." Pl. Mem. at 33. Again, plaintiff is incorrect. None of the agencies have limited or have stated an intention to limit their searches based on defendant's failure to pay fees. The failure to grant plaintiff's fee waiver requests, in other words, has caused no harm at all, let alone "great" harm.

In addition, plaintiff's prayer for relief asks the Court to order defendants to produce a *Vaughn* index within 30 days. Pl. Ex. 30, Proposed Order, at 2. Plaintiff, however, offers no justification for this request, and there is none. Specifically, plaintiff identifies no harm that would result from a delay in producing a *Vaughn* index – an event that normally occurs at the same time as a summary judgment motion.

### D.    PLAINTIFF'S MOTION IF GRANTED WOULD SIGNIFICANTLY INJURE OTHER FOIA REQUESTERS AND THE PUBLIC INTEREST

The interest of other FOIA requesters and the public interest favor the orderly processing of FOIA requests, and disfavor short-circuiting the process with meritless requests for expedition. The public interest also disfavors the filing of meritless preliminary injunction requests. The Court should also take into account the institutional harms that would result from encouraging the filing of preliminary injunctions in FOIA cases. Widespread use of the procedure could clog federal court dockets, interfere with the administrative process, create additional incentives to litigate, and complicate FOIA litigation by adding an unnecessary procedural layer to the process when well-established and adequate remedies for addressing the denial of expedited processing requests are available.

24

Moreover, requests for expedition, by definition, injure others by prioritizing later-filed requests over earlier-filed ones. *See Al-Fayed v. C.I.A.*, 2000 WL 34342564 at *5 ("to compel the agencies to provide expedited processing is to place Plaintiffs' requests in front of a whole queue of others"); *Nation Magazine v. Dep't of State*, 805 F. Supp. at 74 ("any expedited treatment of plaintiffs' requests will delay the processing of many other requests made ahead of plaintiffs by persons or entities not parties to this suit."); Def. Ex. 9, *Assassination Archives and Research Ctr. v. CIA*, 1988 U.S. Dist. LEXIS 18606 at *1 ("Clearly, granting plaintiff expedited treatment would injure others who have filed FOIA requests ahead of plaintiff"). The public interest therefore also favors the denial of plaintiff's motion.

## III.    PLAINTIFF'S MOTION SHOULD BE DENIED BECAUSE PLAINTIFF FAILED TO MEET AND CONFER WITH DEFENDANTS PRIOR TO FILING THEIR MOTION IN VIOLATION OF LOCAL RULE 7(m)

Plaintiff's motion should also be denied because of its failure to comply with Local Rule 7(m). That rule requires that:

> Before filing any nondispositive motion in a civil action, counsel shall discuss the anticipated motion with opposing counsel, either in person or by telephone, in a good-faith effort to determine whether there is any opposition to the relief sought and, if there is opposition, to narrow the areas of disagreement. A party shall include in its motion a statement that the required discussion occurred, and a statement as to whether the motion is opposed.

As the absence of the required statement makes clear, plaintiff failed to discuss this motion with defendants prior to filing it, and it should therefore be denied for this reason alone. *See Alexander v. F.B.I.*, 186 F.R.D. 185, 187 (D.D.C. 1999) ("Any nondispositive motion filed by either side must comply with Local Rule 108(m) [the predecessor to Local Rule 7(m)], or it will be denied").

While the failure to meet the requirements of the rule is sufficient, it bears emphasis that this case is a prime example of why such a rule is important.  As the rule states, its purpose is to narrow or eliminate "areas of disagreement" without resort to unnecessary motion practice.  In this case, the various defendants have either completed or will soon complete the processing of plaintiff's requests.  *See* Statement of Facts and Section I*, supra*.  As a result, this motion has served no productive purpose.  Had plaintiff taken the time to discuss its motion in advance, rather than rush to accuse defendants (unjustifiably) of "stonewall[ing]," Pl. Mem. at 2,  plaintiff could have avoided occupying time that could have been better spent in agreeing upon a reasonable production schedule and then, if necessary, a reasonable summary judgment briefing schedule.

## CONCLUSION

For the foregoing reasons, plaintiff's motion should be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


/s/_____
SAMUEL C. KAPLAN (D.C. Bar No.
463350)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Rm. 7302

Washington, D.C.  20044
(202) 514-4686 phone
(202) 616-8202 fax
samuel.kaplan@usdoj.gov
Attorneys for Defendants