# EXHIBIT 5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 1:06CV00200 Honorable Rosemary M. Collyer |
| v. | ) ) | |
| DEPARTMENT OF DEFENSE and DEPARTMENT OF JUSTICE, | ) ) ) | |
| Defendants. | ) ) ) | |

## DECLARATION OF BRIAN S. KINSEY
### CHIEF OF THE FREEDOM OF INFORMATION ACT STAFF
### DEFENSE INTELLIGENCE AGENCY

I, Brian S. Kinsey, Chief of the Freedom of Information Act Staff, Defense Intelligence Analysis Center, Bolling Air Force Base, Washington, D.C. 20340, do hereby declare the following to be true and correct:

1.      I am the Chief of the Freedom of Information Act Staff, for the Defense Intelligence Agency ("DIA" or "Agency"). I have served as the Chief of the Freedom of Information Act (FOIA) Staff since October 2004, and prior to that as an administrative officer processing FOIA requests at DIA from May 1992. I supervise the branch of DIA's Public Access Branch (DAN-1A) that receives, processes, and responds to requests for DIA records under the FOIA and the Privacy Act, and I am the initial denial authority for this Agency. At my direction, DIA personnel search Agency records systems under their control to identify documents and other information which may be responsive to individual requests. They forward any potentially responsive records located to my office, to determine whether responsive records should be withheld under any applicable statutory FOIA or Privacy Act exemptions. The

1

activities of my Branch are governed by the Department of Defense, "*DOD Freedom of Information Act Program Regulation*," found as 32 C.F.R Part 286, as supplemented by the "*Defense Intelligence Agency (DIA) Freedom of Information Act*," regulation found as 32 C.F.R.Part 292. Prior to holding my current position, I worked directly for Robert Richardson, who previously held the same position. I replaced Mr. Richardson when he left DIA. In the course of my official duties at DIA, I have become personally familiar with the Servicemembers Legal Defense Network's (hereinafter, plaintiff) request.

2. The statements made herein are based upon my personal knowledge, upon information made available to me in my official capacity, and upon determinations made by me in accordance therewith.

3. By letter dated 5 January 2006, plaintiff, through its attorneys, requested information pertaining to DIA's alleged surveillance of plaintiff and other organizations opposed to the "Don't Ask, Don't Tell" policy of the Department of Defense. I received plaintiff's letter via certified mail and placed the request in the FOIA request queue. I assigned this request case number 0151-2006. It was determined that the request did not meet the standards for expedited processing.

4. By letter dated 12 January 2006, my supervisor Ms. Margaret Bestrain, Chief of the Public Access Branch, advised plaintiff's counsel, Mr. Wolf, by return letter that we received his request letter and that based on the justification provided in the request letter, the Agency was denying the request for expedited processing. Ms. Bestrain's letter further advised Mr. Wolf that

2

there would be a delay in processing his request due to DIA's substantial backlog and solicited his patience in that DIA could not provide a projected time of completion.

5. The FOIA Branch of DIA is comprised of fifteen people; specifically, two staff assistants, myself, and twelve FOIA specialists who conduct the line-by-line reviews of records to determine if they can be released.

6. The reason for the Agency's inability to respond to the plaintiff's FOIA request within the statutory time is because of the large number of FOIA and Privacy Act requests received by DIA. This Agency has received approximately 1,000 requests per year for the last several years. However, this figure is not representative of the size and complexity of the requests and our resources have not been sufficient in processing as many requests as were received each year. Therefore, the backlog continues to grow to its present size of approximately 2,300 cases awaiting assignment to a FOIA specialist, resulting in substantial delays in processing.

7. As previously stated above, DIA's backlog of requests on hand totaled approximately 2,300 cases as of 20 March 2006. The current FOIA/PA workload encompasses the review of over 300,000 estimated pages, consisting of a line-by-line review, with constant attention being given to matters which involve, the privacy and confidentiality of third parties as well as other information that is exempt from release pursuant to the FOIA and Privacy Act statutes. Great care is taken to ensure that no material to which the requester is entitled is erroneously withheld and that no material that should be withheld is inadvertently released.

8.     My office takes its responsibilities in the administration of the FOIA program very seriously, and would be more than pleased to be able to comply with the twenty-day deadline if it were possible with the resources available to this Agency to do so. However, the personnel resources allotted to the FOIA Section are simply unable to keep up with the number of requests received. Based on DIA's experience in these matters, the only fair way of ensuring that each request receives its fair share of the resources it deserves is to process these requests based on the date of receipt according to sound administrative practices in the two-tiered system.

9.     The time necessary to process a request cannot be significantly reduced without taking shortcuts that could threaten the legitimate interests of both the government and the requester. DIA is much more than a document repository; although it collects its documents for the public good, it does not collect foreign intelligence information for public disclosure. DIA is bound by law and national security responsibilities to protect its documents from unauthorized disclosure which might reasonably be expected to harm national security. Personal privacy must be protected as well as the categories of classified information defined through the provisions of Executive Order 13292.

10.    The Defense Intelligence Agency is a component of the Department of Defense. Its mission is to collect, analyze, and provide intelligence on the military capabilities of foreign military forces to the Secretary of Defense, the Joint Chiefs of Staff, and the other components of the Department of Defense. The Defense Intelligence Agency also manages the Defense Attache System for the Department of Defense. The DIA organization and mission is more fully set out at 32 C.F.R. Part 385, "*Defense Intelligence Agency*." Because of its mission to collect, analyze and provide foreign intelligence, the vast majority of Agency records are classified in the

interests of national security in accordance with Executive Order 13292 of March 28, 2003, "*Classified National Security Information.*"

11. When the FOIA office receives a FOIA or Privacy Act request, or a referral of documents from a third agency, or the appeal of an initial denial of information, a case number is assigned to the request, referral, or appeal. Appeals are given their originally assigned case number. Referred documents are assigned a new case number, unless DIA also has previously assigned a case number to that FOIA or Privacy Act request. I then decide which Directorate or Directorates within the Agency would most likely have the requested records; or in the case of an appeal or referral of documents, which Directorate or Directorates created the appealed or referred documents, so that a search or document review, as appropriate, can be initiated.

12. With respect to plaintiff's request, the FOIA office Staff Assistant will send out an internal tasker to the Analytic Support Division (previously known as the Research and Reference Library), and if appropriate, to other Directorates determined by me to be potential repositories of responsive documents, to search for, copy, and provide me any responsive documents located by their search. New requests are tasked only to the Analytic Support Division for search, unless the new request should properly be directed to a specific office within the Agency, such as the Personnel Office, Office of the Inspector General, or the Contracting Office.

13. The Analytic Support Division is the Defense Intelligence Agency's principal records repository for intelligence records. It maintains automated databases and paper files and can search indexes of paper files retired to the records storage repository. The Analytic Support

Division does not review documents or messages to determine their releasability. Declassification review of classified documents is performed by the Agency's office or activity that originated the classified information. This ensures that proper consideration is given to national security interests and to the confidential sources and collections methods used to obtain the information by the intelligence activity that produced the document as required by Executive Order 13292 and implementing Department of Defense regulations. Section 3.6(b) of Executive Order 13292 requires the Defense Intelligence Agency to refer documents containing classified information that was obtained from another agency to that originating agency for its declassification review.

14.     After the Analytic Support Division or other tasked Directorates respond to the initial search tasker by providing a compilation of responsive documents, I designate the response as being either a Track One or Track Two response for further processing, based on the number of potentially responsive documents located. The responsive documents are then placed in the FOIA/PA queue for subsequent processing for release. Responses involving only a limited number of documents, typically less than 100 pages, and not containing complex or especially sensitive intelligence matters, are placed in Track One. Track Two consists of responses of a more voluminous, complex, or especially sensitive intelligence matters than those in Track One. Within the Tracks, the responses are processed for release or withholding in order of their receipt. What this means is that a FOIA/PA request, referral, or appeal that involves a voluminous number of responsive documents is not worked continuously to its completion to the exclusion of all other requests, referrals, or appeals. Instead, while the voluminous or complex Track Two responses are being processed for release, time is set aside during their processing to also process the Track One cases which can be more quickly closed. This procedure permits

6

requests to be answered in the order in which they are received, without delaying a response to requesters whose interests relate only to a small number of documents.

15. Once a Track One or Track Two response or referral comes up next for processing, I task the Directorates who produced the located documents or information to conduct a declassification review of the classified information originated by them. To assist them in this review, I provide the Directorates with a copy of the FOIA or Privacy Act request, a list of the statutory FOIA exemptions, a summary of the classification categories listed in the Executive Order 13292, and instruct them to identify any information they believe the FOIA office should withhold. Furthermore, I ask them to identify for me, in writing, any statutory FOIA exemptions they believe may be applicable, and in the case of unclassified information, an explanation as to what specific harm will be caused if the requested information is released, and why the anticipated harm can be reasonably expected to occur.

16. As discussed above, plaintiff's request remains backlogged at this time. It will be assigned a Track number and processed expeditiously as soon as it is tasked for search and processing.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Brian S. Kinsey
Chief, Freedom of Information Act Staff

Executed 20 March 2006