# EXHIBIT 7

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)
(Cite as: 2000 WL 34342564 (D.D.C.))

Page 1

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
District of Columbia.
Mohamed AL-FAYED, et al., Plaintiffs,
v.
CENTRAL INTELLIGENCE AGENCY, et al.,
Defendants.
**No. Civ.A. 00-2092(CKK).**

Sept. 20, 2000.

Mark Steven Zaid, Krieger & Zaid, PLLC, Washington, DC, for Plaintiffs.

Alan Stuart Modlinger, Anne L. Weismann, Diane Kelleher, U.S. Department of Justice, Washington, DC, for Defendants.

MEMORANDUM OPINION

KOLLAR-KOTELLY, J.

*1 This case comes before the Court on Plaintiffs' Motion for a **Temporary Restraining Order and Preliminary Injunction**. Plaintiffs, Mohamed Al Fayed and Punch Limited, a British magazine of political satire that Mr. Al Fayed owns and publishes, seek expedited processing of their requests for agency records which they submitted in July and August, 2000, pursuant to the Freedom of Information Act ("**FOIA**"), 5 U.S.C. § 552. These requested records pertain to the tragic deaths of Diana Francis Spencer, Princess of Wales, Emad "Dodi" Al Fayed, and Henri Paul, all of whom were killed in an automobile crash in Paris on August 31, 1997, and subsequent related events. When Plaintiffs filed their Complaint and motion in this Court, certain of the agencies had issued denials of their application for expedited processing, and others had not responded at all to these requests. Since Plaintiffs initiated this lawsuit, though, all of the agencies have responded with denials. Therefore, Plaintiffs now ask this Court to grant emergency relief by compelling some or all of the agencies to engage in expedited processing and release of the desired records. For the reasons elaborated below, the Court finds that such emergency relief is not warranted.

I BACKGROUND

The facts surrounding the deaths of Princess Diana, Dodi, and their driver Henri Paul have received extensive coverage in the international and national media, and require little elaboration here. The three died while driving through a tunnel under the Place d'Alma in Paris, France, leaving bodyguard Trevor Rees-Jones as the sole survivor of the crash. *See* Compl. ¶ 14. Plaintiffs' Complaint describes the ensuing French investigation, which concluded that Mr. Paul's intoxication and excessive speed on a dangerous stretch of road were responsible for the crash, *see id.* ¶ 15, the testimony of a former British foreign intelligence officer and member of MI6 in the course of the investigation, *see id.* ¶ 18, and a subsequent scheme to defraud Mr. Al Fayed out of millions of dollars in exchange for bogus CIA document. *See id.* 24-51.

In particular, Plaintiffs detail the alleged involvement of Oswald LeWinter, who claims connections to United States intelligence operations, in the scheme to sell Mr. Al Fayed fabricated CIA documents suggesting that the crash represented a successful assassination of the Princess and her companion by British intelligence (MI6). *See id.* ¶¶ 21-23. Legal representatives of Mr. Al Fayed alerted the FBI and the CIA to the proposed transaction, whereby putative former CIA agents and others would exchange various documents pointing to MI6 involvement in the crash, and American knowledge of this involvement, for a large sum of money. Subsequently, Mr. Al Fayed's representatives proceeded to arrange the transaction with the knowledge of American law enforcement officials, ultimately designating Vienna, Austria as the site for the exchange, which was to take place on April 22, 1998.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 2
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)
(Cite as: 2000 WL 34342564 (D.D.C.))

*See id.* ¶ 39. Austrian authorities apprehended LeWinter in the course of the transaction, and he has since remained incarcerated there. *See id.* ¶ 45. At the time of his arrest, Mr. LeWinter was in possession of a variety of forged materials purporting to be CIA documents, and he allegedly implicated one or more actual CIA employees in the fraud scheme. *See id.* ¶¶ 46, 48.

*2 Since these events, Mr. Al-Fayed has sought the prosecution of other participants in the fraud scheme, and has attempted unsuccessfully to procure additional information by subpoena in actions filed in the United States Court for the District of Columbia and the United States District Court for the District of Maryland. *See id.* ¶¶ 52-58. Mr. Al Fayed engaged former Senator George W. Mitchell to pursue any information in the possession of the CIA or the Department of Defense concerning the crash and related events. *See id.* 59-67. After failing to secure information through all of these venues, Mr. Al Fayed and Punch Limited submitted FOIA requests to twenty one (21) separate branches of ten federal agencies, seeking information pertaining to the crash. Plaintiffs divided their requests into twenty categories of names and events relating to these events. *See* Zaid Aff. ¶ 4. Shortly after submitting these FOIA requests, they filed a Complaint in this Court, asking for judicial review of the various agencies' failure to respond to, or denial of, their application for expedited processing of their FOIA requests. Plaintiffs bring their action under FOIA and under the Administrative Procedure Act, 5 U.S.C. § 702 *et seq.*

II. DISCUSSION

For Plaintiffs to obtain the injunctive relief they seek, [FN1] they must establish (1) that they possess a substantial likelihood of success on the merit; (2) that they would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction. *See Serono Lab v. Shalala,* 158 F.3d 1313, 1317-18 (D.C.Cir.1998); *CityFed Fin. v. Office of Thrift Supervision,* 58 F.3d 738, 746 (D.C.Cir.1995); *Sea Containers Ltd. v. Stena AB,* 890 F.2d 1205, 1208 (D.C.Cir.1989); *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). No single factor is dispositive; rather the Court "must balance the strengths of the requesting party's arguments in each of the four required areas." *CityFed,* 58 F.3d at 747. This calculus reflects a sliding-scale approach in which an injunction may issue if the arguments for one factor are particularly strong "even if the arguments in other areas are rather weak." *Id.* Thus, this Circuit has held that "[a]n injunction may be justified, for example, where there is a particularly strong likelihood of success on the merits even if there is a relatively slight showing of irreparable injury." *Id.*

> FN1. The same factors apply to a temporary restraining order ("T.R.O.") as to a preliminary injunction. *See Vencor Nursing Ctr. v. Shalala,* 63 F.Supp.2d 1, 7 n. 5.

A. *Ripeness*

Defendants argue first that Plaintiffs' claim challenging the denial of expedited processing is not yet ripe for judicial review because Plaintiffs have not exhausted their administrative remedies. *See* Defs.' Opp'n to Mot. for T.R.O. at 5. Specifically, the statute provides for "expeditious consideration of administrative appeals of such determinations of whether to provide expedited processing." *Id.* § 552(a)(6)(E)(ii)(II). In Defendants' view, this provision mandates administrative appeals for all denials of expedited processing before an applicant may seek judicial review. Nothing in the statute or its legislative history, however, points to such a reading. Instead, the statute authorizes judicial review for challenges to "Agency action *to deny or affirm denial of* a request for expedited processing pursuant to this subparagraph...." *Id.* § 552(a)(6)(E)(iii) (emphasis added). This language of alternatives clearly indicates that judicial review is appropriate at either of two moments: when the agency has denied a request for expedited processing, or when the agency has, upon administrative appeal, affirmed the denial of such a request.

*3 Moreover, as Plaintiffs aptly argue, the statute further specifies that "judicial review shall be based on the record before the agency at the time of the determination." *Id; see also* Pl.'s Reply to Defs.' Opp'n at 5-6. "[T]he determination," in this provision, signifies the agency's decision to deny expedited

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)
(Cite as: 2000 WL 34342564 (D.D.C.))

Page 3

processing, whether that decision is based on the applicant's initial request, or on the applicant's supplemental materials submitted in anticipation of an administrative appeal. Accordingly, the Court finds that judicial review of an agency's denial of a request for expedited processing is appropriate, under the statute, either at the point when the agency denies the request, or after the applicant has failed in its administrative appeal.

B. *Substantial likelihood of success on the merits*

The Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires agencies to "make available to the public information." *Id.* FOIA provides public access to government documents in order "to ensure an informed citizenry, vital to the functioning of a democratic society...." *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978). Although FOIA does not apply to information that falls within one or more of nine exemptions, *see* § 552(b)(1-9), "these limited exemptions do not obscure the basic policy that disclosure, not secrecy is the dominant objective of the Act." *Department of the Air Force v. Rose,* 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Not only does FOIA promote the dissemination of information, but the Electronic Freedom of Information Act Amendments of 1996, Pub.L. 104-231, 110 Stat. 3046, added to FOIA an expedited processing provision which prioritizes expediency where warranted. *See* 5 U.S.C. § 552 ((a)(6)(E). As amended, the statute provides, in relevant part, that:

(E)(i) Each agency shall promulgate regulations, pursuant to notice and receipt of public comment, providing for expedited processing of requests for records--
(I) in cases in which the person requesting the records demonstrates a compelling need; and
(II) in other cases determined by the agency.
....
(v) For purposes of this subparagraph, the term 'compelling need' means--
(I) that a failure to obtain requested records on an expedited basis under this paragraph could reasonably be expected to pose an imminent threat to the life or physical safety of an individual; or

(II) with respect to a request made by a person primarily engaged in disseminating information, urgency to inform the public concerning actual or alleged Federal Government activity.
5 U.S.C. § 552(a)(6)(E). Agencies may therefore find compelling need based on the statutorily prescribed conditions, or on conditions enumerated under the agencies' own regulations.

Pursuant to the statutory mandate, the Department of Justice, the Central Intelligence Agency, the Department of Treasury, and the Department of State have promulgated regulations governing when expedited processing of requests for agency documents is warranted. Within the statutory framework and under these regulations, each of the agencies to which Plaintiffs submitted their request for expedited processing determined that Plaintiffs had not demonstrated a "compelling need" or other basis sufficient to justify such expedited treatment. *See, e.g.,* Exs. to Pls.' Mot. for T.R.O., Nat'l Sec. Agency, Central Sec. Serv. Aug. 11, 2000 letter to Mr. Zaid (denying expedited processing on the grounds that "[t]here is no compelling need to respond to this request in an expeditious manner since there is no threat to life or physical safety and the value of the information would not be lost if not disseminated quickly."); Dep't of Defense Aug. 4, 2000 letter to Mr. Zaid (denying expedited processing under DoD Regulations 5400-7.R because requested information does not involve "breaking news"); Dep't of Justice, Office of Information and Privacy, Aug. 7, 2000 letter to Mr. Zaid (denying expedited processing under DOJ Regulation 28 C.F.R. § 16.5(d)(1)(ii) because there is neither a "particular urgency to inform the public about an actual or alleged federal government activity beyond the public's right to know about government activity generally" nor " 'widespread media interest' regarding the issues raised" by the requests).

*4 Plaintiffs, however, maintain that they have met these criteria. Not only are they "primarily engaged in disseminating information," a status that is not significantly disputed by Defendants, [FN2] but Plaintiffs emphasize that they seek information potentially pointing to Federal Government activity (*e.g.,* knowledge of British intelligence involvement in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:06-cv-00200-RMC    Document 17-8    Filed 03/20/2006    Page 5 of 7

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)  
**(Cite as: 2000 WL 34342564 (D.D.C.))**

Page 4

the crash and of the attempted fraud), information relating to an event that has captured enormous media attention, and information that could possibly impact on the French investigation, which shall reach a final conclusion imminently. *See* Pls.' Mot. for T.R.O. at 13-15; Zaid Aff. ¶ 5 (reproducing the portion of Plaintiffs' submission to the agencies which addresses the reasons for expedited processing).

> FN2. Defendants do, however, raise "questions" about whether Mr. Al Fayed himself can be said to fall into this category. *See* Defs.' Opp'n at 8 n. 6. The Court sees no need to address this issue at this early stage in the litigation, since Punch Limited clearly and undisputedly is "primarily engaged in disseminating information ."

Thus, Plaintiffs challenge the agencies' determinations that the information related to the crash and the subsequent fraud scheme constitutes neither a breaking news story under DoD Regulation 5400-7.R, nor an issue involving "widespread and exceptional media interest in which there exist possible questions about the government's integrity which affect public confidence," under DOJ regulations, 28 C.F.R. § 16.5(d)(1)(iv). *See* Pls.' Reply at 8-9; Defs.' Opp'n at 8-9. Plaintiffs quarrel not with the agency regulations under which the agencies rendered these determinations, but with the agencies' application of their regulations to Plaintiffs' requests. In particular, Count Eleven of Plaintiffs' Complaint maintains that Plaintiffs have "met the requisite requirements as set forth in the respective agency regulations to be entitled to expedited processing of their FOIA requests ...," and that they therefore have "a legal right under the respective regulations of the agency defendants to be granted expedited processing, and there is no legal basis for the denial by [the ten agencies] of said right." Compl. ¶ 185.

The Administrative Procedure Act empowers this Court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although the judiciary bears the responsibility under the APA to set aside agency decisions that meet this description, *see MD Pharmaceutical, Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C.Cir.1998), "[t]he scope of review under the 'arbitrary and capricious standard' is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In particular, an agency's application of its own regulations, such as those at issue here, merits considerable deference. *See DSE, Inc. v. United States*, 169 F.3d 21, 27 (D.C.Cir.1999); *Consarc Corp. v. United States Treasury Dep't*, 71 F.3d 909, 914 (D.C.Cir.1995).

On the limited record before the Court on this motion for emergency relief, the Court cannot say that the agencies' denials of Plaintiffs' applications for expedited processing of their requests violate agency regulations or the statute itself. The agencies involved measured Plaintiffs' applications against their regulatory criteria, and found them wanting. In their denial letters, each agency offers legitimate reasons for why it did not deem Plaintiffs' request to meet the regulatory and statutory guidelines for expedited processing. Thus affording the agencies deference to apply their own regulations interpreting § 552(a)(6)(E), the Court concludes that Plaintiffs have not shown a substantial likelihood of success on the merits of their claims regarding the denial of expedited processing.

C. *Other factors weighing against preliminary relief*

*5 The Court's conclusion that Plaintiffs are "not likely to succeed on the merits effectively decides the preliminary injunction issue." *Serono Lab., Inc. v. Shalala*, 158 F.3d 1313, 1326 (D.C.Cir.1998). Although the calculus for emergency relief reflects a sliding-scale approach in which a strong argument in favor of one factor may excuse a relatively weaker showing on another factor, *see CityFed. Fin. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C.Cir.1995), absent a "substantial indication of probable success [on the merits], there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *Washington Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C.Cir.1977); *see also Demjanjuk v. Meese*,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

784 F.2d 1114, 1117--18 (D.C.Cir.1986) (per Bork, J.) (denying equitable relief where, despite threat of irreparable harm, petitioner failed to demonstrate likelihood of success on the merits). Without any probability of prevailing on the merits, any purported injury Plaintiffs may allege would not justify such injunctive relief.

In any event, not only have Plaintiffs failed to demonstrate a substantial likelihood of success on the merits, but they have similarly failed to make a showing of irreparable injury, should the Court decline to grant the T.R.O. and **preliminary injunction**. In his affidavit attached to Plaintiffs' Motion, Plaintiffs' counsel explains that "any further delay in the processing of Al Fayed and Punch's **FOIA** requests will irreparably harm their ability to engage in informed discussion and debate on the issue of government misconduct or intentional neglect with respect to events and individuals associated with the August 31, 1997 tragedy...." Zaid Aff. ¶ 11. Though impassioned, this statement remains conclusory, never explaining why this information will not retain its value if procured through the normal **FOIA** channels.

In addition, to compel the agencies to provide expedited processing is to place Plaintiffs' requests in front of a whole queue of others. Such a result would inflict injury on others who, according to the agencies' determinations, have presented more meritorious applications for expedited processing. At best, then, the balance of the harms is in equipoise. For the same reasons, it remains unclear whether or not emergency relief would run contrary to the public interest. Although the expedited processing provision prioritizes expediency, it does so only in very limited circumstances, recognizing that agencies cannot possibly give expedited treatment to each and every FOIA request. Accordingly, the public interest is best furthered by channeling the agencies' resources such that only certain urgent requests receive immediate treatment, while the rest are processed in the usual manner. Of course, disclosure of non-exempt material under the FOIA almost always serves the public interest, but in the world of limited resources contemplated by the EFOIA, such material may not in every case receive immediate processing.

*6 Nonetheless, the Court recognizes that many of the agencies to which Plaintiffs submitted their requests did not even meet their statutory and regulatory obligation to respond to Plaintiffs within ten days by either granting or denying their application for expedited processing. [FN3] See 5 U.S.C. § 552(a)(6)(E)(ii)(I) ("regulations under this subparagraph must ensure ... that a determination of whether to provide expedited processing shall be made, and notice of the determination shall be provided to the person making the request, within 10 days after the date of the request ..."). When enacting the EFOIA, Congress identified as one of the purposes of the Act to "ensure agency compliance with statutory time limits...." 142 Cong. Rec. S10713-03, S10714. Neither the FOIA, nor its amendments in the EFOIA, has managed to accomplish this goal. As Senator Patrick Leahy, one of the sponsors of the amendments, remarked, "[t]he current time limits in the FOIA are a joke. Few agencies actually respond to FOIA requests within the 10-day limit required in the law. Such routine failure to comply with the statutory time limits is bad for morale in the agencies and breeds contempt by citizens who expect government officials to abide by, not routinely break, the law." 142 Cong. Rec. at S10715. The Court notes that the agencies' delay in responding to Plaintiffs has done little to boost this morale. Still, upon consideration of the parties' arguments, the statutory and regulatory context, and the applicable case law, the Court determines that it cannot grant the relief Plaintiffs seek.

> FN3. Those agencies which still had not responded to these requests at the time Plaintiffs filed their Complaint eventually produced responses, seemingly under pressure from this litigation.

### III. CONCLUSION

For the foregoing reasons, the Court shall deny Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction. An order accompanies this memorandum opinion.

Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)

**Motions, Pleadings and Filings (Back to top)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2000 WL 34342564 (D.D.C.)  
**(Cite as: 2000 WL 34342564 (D.D.C.))**

Page 6

- 1:00CV02092 (Docket) (Aug. 31, 2000)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.