IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SERVICEMEMBERS LEGAL<br>  DEFENSE NETWORK,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, *et al.*,<br><br>Defendants. | Civil Action No. 06-200 (RMC) |

## REPLY MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Defendants' proffered progress in complying with Plaintiff's FOIA requests does not, as they suggest, render the instant preliminary injunction motion "meritless," but indeed compels granting it. In their opposition, Defendants set forth the steps taken by certain agencies in responding to Plaintiff's FOIA requests. (*See* Opp'n at 7-9.) Defendants then make the baseless argument that the supposed "progress" of these agencies—much of which was apparently made only after Plaintiff filed this lawsuit and the instant motion—somehow renders Plaintiff's motion "meritless." Defendants ignore the fact that most of the DOD and DOJ components have not yet even "determined" Plaintiff's FOIA requests. *See* 5 U.S.C. § 552(a)(6)(A)(i) (requiring determination of non-expedited FOIA requests within twenty days of receipt). Moreover, even if they are accurate, Defendants' contentions support Plaintiff's argument that the preliminary injunction it seeks will be of minimal burden to Defendants.

Defendants represent that certain DOD and DOJ components to which Plaintiff submitted FOIA requests have completed their searches in response to portions of those requests. (*See* Opp'n at 7-9.) However, DOD's principal FOIA office and DIA have yet to complete (or in the

case of DIA, even to begin) their searches in response to Plaintiff's requests.[1] In addition, the FBI—after what can only be described as a rearguard action to delay Plaintiff's access to records by challenging the sufficiency of Plaintiff's FOIA request (*see* Pl.'s Mem. P. & A. at 18-20)—has only completed its processing of certain aspects of Plaintiff's request. Defendants' reflexive labeling of Plaintiff's motion as "meritless" or "moot" does nothing to erase the legitimate reasons for granting the motion.

Even as to CIFA and OIP, Plaintiff's motion remains urgent as there has been no formal notification concerning the results of their searches or whether responsive documents will be provided to Plaintiff. As a result, these agencies have not complied with their statutory duties under FOIA. In fact, Defendants' opposition provided Plaintiff with the very first indication that CIFA had uncovered two TALON reports responsive to Plaintiff's FOIA request. It should also be remembered that the recent confirmation that searches have been completed by these two agencies has come nearly three months after Plaintiff filed its FOIA requests, nearly two months after Plaintiff filed this lawsuit, and a month after Plaintiff filed the instant motion.

Given the unwarranted delay in receiving information concerning these agencies' searches, Plaintiff has no confidence (and neither should this Court) that Defendants suddenly will alter their behavior and fully comply with their statutory duties in a timely manner absent a court order. Therefore, the instant motion is necessary, is warranted, and should be granted by this Court.

---

[1] Defendants cite the fact that DIA is currently processing approximately 2,300 FOIA requests as justification for that agency's violation of the statute. (*See* Opp'n at 9.) However, Congress has expressly rejected such arguments. *See* 5 U.S.C. § 552(a)(6)(C)(ii) ("exceptional circumstances" justifying an extension of FOIA's time requirements do not include "a delay that results from a predictable agency workload of requests under this section, unless the agency demonstrates reasonable progress in reducing its backlog of pending requests"). Defendants have made no showing regarding what progress (if any) DIA's has made in reducing its backlog of pending requests.

In truth, Defendants' representations as to the progress of the relevant agencies in processing Plaintiff's requests and the allegedly small number of responsive documents discovered thus far only serve to support Plaintiff's motion.  If it is true that two of the five relevant component agencies have completed most of their searches, and that completion by the rest of the component agencies will be relatively easy, then a preliminary injunction from this Court will impose no burden on Defendants.  *See Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1066 (D.C. Cir. 1998) (favoring issuance of a preliminary injunction where it would not substantially injure the affected party) (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)).  Although Plaintiff believes that it has satisfied all four factors for the issuance of a preliminary injunction, because Defendants themselves argue that it will be, at worst, a minor inconvenience for them to comply with the relief sought by Plaintiff, Plaintiff's motion should be granted.

    1.    **Preliminary Injunctive Relief Indeed is Appropriate**

Defendants proclaim that preliminary injunctive relief is "generally inappropriate" in FOIA cases.  (*See* Opp'n at 1, 12-17.)  Defendants suggest that the range of judicial remedies in FOIA cases somehow is limited.  However, "FOIA imposes no limits on courts' equitable powers in enforcing its terms."  *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988) (citing *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 19-20 (1974)).  As explained in Plaintiff's memorandum of points and authorities (*see* Pl.'s Mem. P. & A. at 23-24) courts have held that preliminary injunctive relief is appropriate where a requester entitled to expedited processing is refused such treatment by a federal agency.  Moreover, Defendants' contention that preliminary injunctive relief is inappropriate in FOIA cases such as this one was specifically rejected by this Court last month in *Electronic Privacy Information Center v. Department of Justice*, No. 06-96 (HHK), 2006 WL 357831 (D.D.C. Feb. 16, 2006) ("*EPIC*")—

3

a fact that exists no matter if the government has filed a motion seeking relief from *other* portions of the court order in that case, (*see* Opp'n at 13 n.7).[2] The cases cited by Defendants in support of their sweeping assertion regarding the propriety of preliminary injunctive relief either support Plaintiff's position[3] or are easily distinguishable.[4]

### 2. Plaintiff has Established a Likelihood of Success on the Merits

#### a. *Plaintiff has Shown that it Qualifies as an Entity "Primarily Engaged in Disseminating Information"*

Defendants first allege that Plaintiff is not entitled to expedited processing because it is not "primarily engaged in disseminating information." (*See* Opp'n at 16-17.) Defendants posit that because Plaintiff's mission *includes* providing legal services to servicemembers impacted by "Don't Ask, Don't Tell," Plaintiff cannot be *primarily* engaged in disseminating information. *Id.* Contrary to Defendants' contention, however, Plaintiff is not disqualified from receiving

---

[2] The motion referenced by Defendants does not ask the Court to reconsider its determination that preliminary injunctive relief is appropriate in FOIA cases. *See* Defs.' Expedited Mot. for Relief from the Court's Order of February 16, 2006, Docket No. 13-1, *EPIC v. Dep't of Justice*, No. 06-96 (HHK) (D.D.C.) [copy attached as Exhibit 1]. Moreover, the fact that the plaintiff in *EPIC* was initially granted expedited processing by the defendant-agency is irrelevant to the underlying question of whether preliminary injunctive relief is appropriate in the context of a FOIA suit seeking expedited processing. (*See* Pl.'s Mem. of P. & A. at 23-24.) This factual distinction simply means that the Court in this matter must also examine whether Plaintiff is entitled to expedited processing, a fact conceded by the defendant-agency in *EPIC*.

[3] Defendants cite *Al-Fayed v. CIA*, No. 00-2092, 2000 WL 34342564 (D.D.C. Sept. 20, 2000) and *Assassination Archives & Research Ctr. v. CIA*, No. 88-2600, 1988 U.S. Dist. LEXIS 18606 (D.D.C. Sept. 29, 1988)). (*See* Opp'n at 12 n.6.) Neither of theses cases stand for the proposition that preliminary injunctive relief is wholly inappropriate in FOIA cases. Rather, they show that in certain cases preliminary injunctive relief *is* appropriate, as in both opinions this Court reached the merits of the preliminary injunction issue in applying the familiar four-factor test applicable to requests for preliminary injunctive relief. *See Al-Fayed*, 2000 WL 34342564, at *6; *Assassination Archives*, 1988 U.S. Dist. LEXIS 18606, at *2; *see also Al-Fayed v. CIA*, 254 F.3d 300, 303-4 (D.C. Cir. 2001) (affirming district court's use of four-part analysis in FOIA case).

[4] For example, Defendants cite and attach an order issued by this Court in *Judicial Watch, Inc. v. Department of Justice*, No. 00-1396 (D.D.C. June 27, 2000), in which Judge Robertson rejected a plaintiff's request for "emergency expedited treatment" of its FOIA request. (*See* Opp'n at 12 n.6; Opp'n Ex. 8.) Defendants fail to point out that the plaintiff in that case did not request expedited treatment in its FOIA request, thereby rendering judicial review of the expedited treatment issue inappropriate. *See Judicial Watch*, slip op. at 2. In reaching his decision, Judge Robertson also relied upon decisions issued well before Congress amended FOIA to provide for judicial enforcement of a requester's right to expedited processing. *See id.* at 1-2; *see also* Electronic Freedom of Information Act Amendments of 1996, Pub. L. No. 104-231, § 8(a), 110 Stat. 3047, 3052-53 (codified at 5 U.S.C. § 552(a)(6)(E)).

expedited processing simply because it engages in activities other than disseminating information, a fact confirmed by two recent decisions Defendants choose to ignore in their opposition. *See ACLU v Dep't of Justice*, 321 F. Supp. 2d 24 (D.D.C. 2004); *Leadership Conf. on Civil Rights v. Gonzalez*, 404 F. Supp. 2d 246 (D.D.C. 2005).

In *ACLU*, this Court ordered the expedited processing of FOIA requests submitted by the ACLU and EPIC. *See ACLU*, 321 F. Supp. 2d at 29 n.5. Like Plaintiff, the ACLU and EPIC also devote significant space on their respective websites publicizing their legal advocacy. Indeed, the ACLU's website currently showcases that organization's lawsuit to compel expedited processing of FOIA requests similar to those submitted by Plaintiff. *See* ACLU Sues Pentagon for Files on University of California Student Groups, http://www.aclu.org/safefree/spying/ 24416prs20060307.html (last visited Mar. 22, 2006); *see also* EPIC Litigation Docket, http://www.epic.org/privacy/litigation (last visited Mar. 23, 2006).

Judge Lamberth's recent decision in *Leadership Conference* provides further support for Plaintiff's assertion that it qualifies as an entity "primarily engaged in disseminating information." In *Leadership Conference*, this Court held that the plaintiff-organization, whose stated mission was to promote effective civil rights laws and ensure their enforcement by DOJ, was "primarily engaged in disseminating information" because it maintained a website very similar to Plaintiff's website. *See Leadership Conference*, 404 F. Supp. 2d at 260. A comparison of both websites reveals: (1) a "press room" used to inform the general public, federal policymakers and organization members about newsworthy events related to each organization's efforts; (2) an ability to subscribe to periodic electronic communications that report developments affecting each organization's stated mission; (3) a calendar listing events and inviting organization members and the general public to participate in a variety of

5

informational and/or political programs; and (4) an "action center" that informs members and the general public on how to get involved in grassroots campaigning. *Compare* http://www.lccr.org (last visited Mar. 22, 2006), *with* http://www.sldn.org (last visited Mar. 22, 2006).

Therefore, the fact that Plaintiff engages in legal advocacy as a part of its comprehensive mission, while at the same time publicizing its legal efforts on its website, does not foreclose the conclusion that Plaintiff is "primarily engaged in disseminating information." Providing legal services is but one part of Plaintiff's overall mission to end discrimination under "Don't Ask, Don't Tell." Ultimately, the broader impact of Plaintiff's lobbying and legal activities is to educate the public and policymakers about the discriminatory impact and questionable wisdom of "Don't Ask, Don't Tell."[5]

### b. *Plaintiff has Shown an "Urgency to Inform the Public Concerning Actual or Alleged Federal Government Activity"*

In analyzing whether a requester has satisfied the second prong of the statutory definition of "compelling need," the D.C. Circuit has held that courts should determine whether the request concerns a matter of current exigency to the American public. *Al-Fayed*, 254 F.3d at 310. In support of their argument that Plaintiff's FOIA requests do not concern a matter of current exigency to the American public, Defendants suggest that the public's interest in the CIFA program is minimal, asserting that the "most recent article about the [CIFA] program from a widely read publication was published more than three weeks prior to the date of plaintiff's requests [i.e., January 5, 2006]." (Opp'n at 18.) Defendants are clearly mistaken. *See, e.g.*, *Pentagon admits errors in spying on protesters*, MSNBC.com, Mar. 10, 2006 [copy attached as

---

[5] Defendants make much of the fact that Plaintiff's website supposedly contains the following "slogan": "Say Nothing * Sign Nothing * *Get Legal Help*." (Opp'n at 17.) In fact, this "slogan" appears in a revolving web banner; the actual slogan that appears on every page of Plaintiff's website is "Freedom to Serve," which encapsulates Plaintiff's mission to bring about the end of "Don't Ask, Don't Tell" so that all able-bodied Americans, regardless of sexual orientation, can serve their country in uniform.

Exhibit 2 to Pl.'s Mot. Requesting Scheduling of Hearing on Mot. for Prelim. Inj.]; James Bovard, Op-Ed., *A terrorist on every corner?* L.A. Times, Feb. 8, 2006, at B15 [copy attached as Exhibit 2]; United Press Int'l, *DOD admits 'inappropriate' info collected*, washtimes.com, Feb. 7, 2006 [copy attached as Exhibit 29 to Pl.'s Mem. of P. & A.]; Walter Pincus, *Unverified Reports of Terror Threats Linger*, Wash. Post, Jan. 31, 2006, at A6 [copy attached as Exhibit 3]; Michael Isikoff, *The Other Big Brother: The Pentagon has its own domestic spying program. Even its leaders say the outfit may have gone too far*, Newsweek, Jan. 30, 2006 [copy attached as Exhibit 4]; Editorial, *Bad Targeting*, Wash. Post, Jan. 30, 2006, at A16 [copy attached as Exhibit 5]; Walter Pincus, *Corralling Domestic Intelligence*, Wash. Post, Jan. 13, 2006, at A5 [copy attached as Exhibit 6].

Defendants also accuse Plaintiff of "conflat[ing] the concern of its FOIA requests with recent stories on the NSA's activities." (Opp'n at 19.) Not only is the CIFA program a significant news story on its own, the CIFA program and the NSA program are interrelated in that they are domestic surveillance programs of questionable legality that (1) were created by DOD components in the aftermath of the terrorist attacks of September 11, 2001, and (2) were shrouded in secrecy until the past few months. Moreover, both of these programs teach a common lesson: "domestic intelligence operations by security-conscious government agencies, even when necessary and well-intentioned, can easily get out of hand and violate the fundamental rights of Americans." Editorial, *Bad Targeting*, Wash. Post, Jan. 30, 2006, at A16.[6]

---

[6] In response to Plaintiff's assertion that it has also shown a regulatory entitlement to expedited processing, Defendants do little more than cite *Chevron* and ask this Court to rubberstamp their denials of expedited processing. (*See* Opp'n at 20.) For the reasons set forth in Plaintiff's memorandum of points and authorities, DOD and DOJ regulations provide independent grounds upon which this Court should grant Plaintiff expedited processing. (*See* Pl.'s Mem. P. & A. at 30-31.)

### 3. Plaintiff has Shown that Failure to Grant its Preliminary Injunction Motion Will Cause Irreparable Harm

Defendants claim that Plaintiff has not demonstrated the requisite irreparable harm for an injunction. (Opp'n at 20-24.) Defendants do so by confusing the injury caused by failing to expedite Plaintiff's FOIA requests with the supposed "absence of any apparent constitutional violation" in relation to the surveillance of groups opposed to "Don't Ask, Don't Tell." (*See id.* at 8 n.11.) Any further delay in processing Plaintiff's FOIA requests will not only delay Plaintiff's receipt of vital information regarding the extent to which its or other groups' constitutional rights may have been compromised, it will further postpone Plaintiff's ability to contribute to the ongoing political debate regarding the propriety of the federal government's domestic surveillance activities. As this Court has recognized, any delay in the processing of such FOIA requests "may well result in disclosing the relevant documents after the need for them in the formulation of national . . . policy has been overtaken by events." *Nat'l Res. Def. Council v. Dep't of Energy*, 191 F. Supp. 2d 41, 43 (D.D.C. 2002) ("*NRDC*"); *see also Payne Enterprises*, 837 F.2d at 494 ("stale information is of little value").

Defendants' repeatedly reference agency recordkeeping as though it has some bearing on whether Plaintiff meets the standard of irreparable harm. (*See* Opp'n 21-22.) That the agencies may have found only a "few" documents related to the surveillance of groups opposed to "Don't Ask, Don't Tell" is irrelevant to the determination of whether irreparable harm may occur if those existing documents are not disclosed on a timely[7] basis. (*See id.* at 21.) Moreover,

---

[7] Defendants would have this Court believe that "there is no significant difference between standard and expedited processing—*i.e.*, 20 days except in 'exceptional circumstances' versus 'as soon as practicable.'" (Opp'n at 3.) Anyone with any experience dealing with FOIA knows this to be preposterous; Defendants' own statistics speak volumes in this regard. *See* Dep't of Def., *Freedom of Information Act Report for Fiscal Year (FY) 2005* § VII.A (reporting eighty-five day average for processing so-called "complex" requests under standard processing) [copy attached as Exhibit 7]; Dep't of Justice, *Freedom of Information Act (FOIA) Report for Fiscal Year 2005* § VII.A (reporting, *inter alia*, that the Office of the Attorney General took an average of 362 days to process

(continued)

8

Defendants' reference to DOD's recent "purging" of a database containing information about peaceful protestors belies their argument that Plaintiff has made no showing of irreparable harm. (*Id.*)  The agencies cannot be left to their own devices, improperly limiting access to, and potentially eliminating the existence of, information about their activities, particularly when those activities may have violated existing statutes and/or constitutional principles.  *See Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 34 F. Supp. 2d 28, 46 (D.D.C. 1998) (condemning agency's illegal destruction and removal of records subsequent to plaintiff's FOIA request).

      Moreover, in cases where plaintiffs have shown the threat of continued civil liberty violations, federal courts have recognized that irreparable harm inherently exists.  *See, e.g.*, *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary.").  The *ACLU* decision, discussed above, is also instructive on the issue of irreparable harm.  The plaintiffs in *ACLU* filed FOIA requests seeking information regarding DOJ's use of powers granted it under the USA PATRIOT Act.  *See ACLU*, 321 F. Supp. 2d at 25.  The organizations brought suit after their requests for expedited processing were denied.  *See id.* at 28.  The district court ordered expedited processing of the plaintiffs' FOIA requests because they sought information implicating "important individual liberties and privacy concerns" that were of immediate public interest in view of the ongoing debate regarding reauthorization of the statute.  *Id.* at 29.  Moreover, the district court found that the potential invasion of the public's privacy interest was of immediate concern, which weighed in favor of a finding of expediency.  *Id.* at 30.

---

"complex" requests under standard processing and ninety-six days to process requests granted expedited processing) [copy attached as Exhibit 8].

Plaintiff's well-founded belief that domestic surveillance program(s) may have violated its First, Fourth and Fifth Amendment rights are sufficient to establish a presumption of irreparable harm. Plaintiff filed its FOIA requests only after direct evidence provided to the *NBC Nightly News* revealed that the federal government had engaged in surveillance of persons and groups opposed to "Don't Ask, Don't Tell." (*See* Pl.'s Mem. P. & A. at 37.) The harm alleged by Plaintiff is real and concrete in the sense that the reported surveillance effectively chills the free speech rights of Plaintiff and other groups opposed to "Don't Ask, Don't Tell," which are rights the existence of which a unanimous Supreme Court recently acknowledged related to this very issue. *See Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 74 U.S.L.W. 4159, at *8 (Mar. 6, 2006) ("Law schools remain free . . . to express whatever views they may have on [Don't Ask, Don't Tell], all the while retaining eligibility for federal funds."). Plaintiff is therefore entitled to have its FOIA requests processed as soon as possible.[8]

Finally, Plaintiff has learned for the first time via Defendants' opposition that CIFA has discovered documents responsive to Plaintiff's request. CIFA's failure to promptly notify Plaintiff of this fact only serves to strengthen Plaintiff's argument that a court order is necessary in order to prevent further delay by Defendants in responding to Plaintiff's FOIA requests. In short, Plaintiff has made a clear showing that failure to provide Plaintiff with preliminary injunctive relief will cause irreparable harm.

---

[8] Defendants also point to the supposed "resolution of any lingering controversy regarding the TALON program" in support of their claim that the documents Plaintiff seeks will not add to the ongoing debate regarding the proper bounds of domestic surveillance by federal authorities. (Opp'n at 2.) There has been no resolution of this controversy. In fact, until very recently, even members of Congress had difficulty obtaining simple answers from DOD regarding CIFA and the TALON program. *See, e.g.*, Press Release, Office of Sen. Patrick Leahy, Rumsfeld Finally Yields Some Answers To Leahy's Questions On Pentagon's Database Entries About Vermonters (Mar. 9, 2006) [copy attached as Exhibit 9].

### 4. Plaintiff's Motion, if Granted, Will Serve the Public Interest

As reflected in this Court's recent *EPIC* decision, public awareness of federal government action—especially in the context of secret surveillance programs of questionable legality—is a "structural necessity in a real democracy." *EPIC*, 2006 WL 357831, at *6 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). Not only is public awareness a necessity, but so too is timely public awareness. *Id.*; *see also NRDC*, 191 F. Supp. at 43. Therefore, granting Plaintiff's preliminary injunction motion will serve the public interest by ensuring that the public receives timely information regarding a surveillance program that may very well violate existing statutes and constitutional principles.

Moreover, Congress has recognized that certain FOIA requests are entitled to processing ahead of others. In providing for expedited processing of qualifying FOIA requests, Congress intended that such requests would take precedence over those that did not qualify for such treatment. Fulfillment of this legislative command cannot be characterized as injuring other parties' interests.[9]

---

[9] Defendants relegate to the last two pages of their opposition an argument that Plaintiff's motion should be denied because counsel for Plaintiff did not confer with opposing counsel before filing the instant motion. (*See* Opp'n at 25-26.) In relevant part, Local Rule 7(m) provides that counsel must confer before the filing of any "nondispositive" motions, a term left undefined. The D.C. Circuit has held that a motion need not obviate the need for a trial in order to be "dispositive." *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1215 (D.C. Cir. 1997). Rather, the term "dispositive motion" includes a motion that, if granted, "would result *either* in the determination of a particular claim on the merits *or* elimination of such a claim from the case." *Id.* at 1215 (emphasis added). Among other things, Plaintiff's motion seeks an order compelling Defendants to expedite their processing of Plaintiff's FOIA requests, an order that if issued and obeyed would eliminate the need to address the issue of expedited processing any further. Although research has revealed no decision of this Court or the D.C. Circuit specifically on point, Plaintiff believes that its motion meets the D.C. Circuit's definition of a "dispositive motion" and was not subject to Local Rule 7(m). *Cf. Half Street Corp. v. Warehouse Concepts, Inc.*, No. Civ.A. 99-1174 SSH, 1999 WL 1212885, at *1 n.2 (D.D.C. 1999) (holding that absence of binding precedent on whether motion to remand was dispositive motion counseled against denying motion for failure to comply with earlier version of Local Rule 7(m)). Assuming, *arguendo*, that Plaintiff's motion did fall within the purview of Local Rule 7(m), the Court should see Defendants' final argument for what it is—a diversion from the central issues of this case—and decide Plaintiff's motion on the merits. *See Niedermeier v. Office of Sen. Max Baucus*, 153 F. Supp. 2d 23, 27 (D.D.C. 2001) (rejecting request to deny motion to reconsider based on earlier version of Local Rule 7(m) because of judicial preference to resolve motions on their merits and not based on "technicalities"); *Gray v. Poole*, No. Civ.A. 99-2233(LFO), 2000 WL 33301796, at *2 (D.D.C. 2000) (refusing to deny motion based on failure to

(continued)

11

## CONCLUSION

The recent words of a lieutenant colonel in the United States Army eloquently describe another reason why Plaintiff's FOIA requests deserve expedited treatment:

> Yes, I took an oath to defend the United States against all enemies "foreign and domestic," but the implication of domestic intelligence-gathering by the military, even by a limited number of soldiers, should be sufficiently disturbing for American citizens in and out of uniform that we think long and hard about crossing the line, even a little.

Grant Doty, Op-Ed., *I'm a Soldier, Not a Spy*, Wash. Post., Dec. 30, 2005, at A27. Defendants have asked Plaintiff to take comfort in the fact that the CIFA program and the use of TALON reports "involved little more than the decentralized gathering of information about public events." (Opp'n at 19-20.) Fortunately for Plaintiff, Congress enacted FOIA so that Americans could confirm the veracity of such statements for themselves. For the foregoing reasons, and for those reasons set forth in the memorandum of points and authorities in support of Plaintiff's motion, Plaintiff respectfully requests that the Court order Defendants to expedite their processing of Plaintiff's FOIA requests and to waive all fees associated with the processing of said requests.

Dated: March 24, 2006                                                      Respectfully submitted,

                                                                                      /s/
                                                    Christopher Wolf
                                                    (D.C. Bar No. 335885)

                                                                                       /s/
                                                  James F. Segroves

---

comply with earlier version of Local Rule 7(m) in favor of resolving matter on the merits), *rev'd on other grounds*, 275 F.3d 1113 (D.C. Cir. 2002); *see also Hager v. Bluefield Reg'l Med. Ctr.*, 170 F.R.D. 70, 75 n.4 (D.D.C. 1997) (rejecting plaintiff's request to deny motion to compel production of documents for failure to comply with an earlier version of Local Rule 7(m) after finding it clear from the record that the plaintiff would not voluntarily produce the requested documents).

(D.C. Bar No. 480360)
Meredith C. Bailey
(D.C. Bar No. 494476)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533
202.416.6800
202.416.6899 (fax)

Jerry L. Dasti
(Not Admitted in D.C.)
PROSKAUER ROSE LLP
1585 Broadway
New York, N.Y. 10036-8299
212.969.3000
212.969.2900 (fax)

*Attorneys for Plaintiff Servicemembers Legal Defense Network*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March, 2006, a true and correct copy of the foregoing Reply Memorandum in Support of Plaintiff's Motion for Preliminary Injunction and all exhibits thereto was served on the following using the Court's Electronic Case Filing System:

>Rupa Bhattacharyya, Senior Trial Counsel
>Samuel C. Kaplan, Trial Attorney
>Federal Programs Branch, Civil Division
>U.S. DEPARTMENT OF JUSTICE
>20 Massachusetts Ave., N.W.
>Washington, D.C. 20001
>rupa.bhattacharyya@usdoj.gov
>samuel.kaplan@usdoj.gov
>
>*Attorneys of Record for Defendants*
>*Department of Defense and Department of Justice*

>                /s/
>James F. Segroves
>(D.C. Bar No. 480360)
>PROSKAUER ROSE LLP
>1001 Pennsylvania Avenue, N.W.
>Suite 400 South
>Washington, D.C. 20004-2533
>202.416.6800
>202.416.6899 (fax)
>jsegroves@proskauer.com
>
>*Attorney for Plaintiff*
>*Servicemembers Legal Defense Network*