## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|                                          |   |                                  |
|------------------------------------------|---|----------------------------------|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK,    | ) |                                  |
|                                          | ) |                                  |
| Plaintiff,                               | ) |                                  |
|                                          | ) |                                  |
| v.                                       | ) | Civil Action No. 06-200 (RMC)    |
|                                          | ) |                                  |
| DEPARTMENT OF DEFENSE, *et al.*,         | ) |                                  |
|                                          | ) |                                  |
| Defendants.                              | ) |                                  |

### BRIEF OF NEW YORK UNIVERSITY SCHOOL OF LAW AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

New York University School of Law ("NYU SOL"), by and through its undersigned

counsel, respectfully submits this brief as *amicus curiae* in support of Plaintiff Servicemembers

Legal Defense Network's Motion for a Preliminary Injunction. We also submit the Affidavit of

Clayton Gillette sworn to March 28, 2006 in support of our request to be permitted to file this

brief and in support of Plaintiff's motion. The instant suit involves Plaintiff's effort under the

Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to obtain information regarding the

federal government's surveillance of groups opposed to the congressional policy on gays and

lesbians in the military, more commonly known as "Don't Ask, Don't Tell." Because the timely

disclosure of such records would greatly serve the public interest, the Court should grant

Plaintiff's motion and order Defendants Department of Defense ("DOD") and Department of

Justice ("DOJ") to expedite their processing of Plaintiff's FOIA requests.

## INTEREST OF AMICUS CURIAE

On December 13, 2005, the *NBC Nightly News* reported that it had received a secret DOD document describing surveillance of peaceful counter-military-recruitment groups by a DOD component known as the Counterintelligence Field Activity ("CIFA"). The *NBC Nightly News* report was later posted on the MSNBC.com website. Lisa Meyers et al., *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005, http://msnbc.msn.com/id/10454316. According to the report, the 400-page DOD document listed more than 1500 "suspicious incidents" that had recently occurred inside the United States. Included among these "suspicious incidents" were protests by various groups opposed to "Don't Ask, Don't Tell." Because one such "suspicious incident" was a February 2005 protest on NYU's campus, *amicus* is uniquely situated to speak to whether the public interest favors granting Plaintiff's motion.

## ARGUMENT

Plaintiff notes that, *inter alia*, it must demonstrate that the public interest would be furthered by an injunction. (*See Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj.* at 24-25 (citing *Elec. Privacy Info. Ctr. v. Dep't of Justice*, No. 06-96 (HHK), 2006 WL 357831, at *3 (D.D.C. Feb. 16, 2006) ("*EPIC*").) NYU submits this *amicus* brief in furtherance of Plaintiff's argument that the public interest would be served by the timely disclosure of records requested in Plaintiff's FOIA requests.

Plaintiff's several FOIA requests were drafted to include documents that refer or relate to incidents said to have occurred at NYU SOL. NYU SOL has long been recognized as an institution which trains lawyers who often serve in public interest legal positions. One of the mottos of New York University is "A private university in the

2

public service." If the government has been conducting surveillance on the University or

its law school, this is a matter that raises issues of which the institutions, their students,

the public and Congress should be aware. Prompt disclosure under the Freedom of

Information Act is a means by which such covert activity can be disclosed for public

scrutiny and comment.

The special place of universities – even more particularly of law schools – in

society has been acknowledged by the Supreme Court. As stated in <u>Grutter</u> v. <u>Bollinger</u>,

539 U.S. 306, (2003).

> "We have long recognized that, given the important purpose of public education
> and the expansive freedoms of speech and thought associated with the university
> environment, universities occupy a special niche in our constitutional tradition.
> See, *e.g. Wieman v. Updegraff,* 344 U.S. 183, 195 (1952) (Frankfurter, J.,
> concurring); *Sweezy v. New Hampshire,* 354 U.S. 234, 250 (1957); *Shelton v.
> Tucker,* 364 U.S. 479, 487 (1960); *Keyishian v. Board of Regents of Univ. of State
> of N.Y.,* 385 U.S., at 603." 539 U.S. at 329.

*     *     *

> "We have repeatedly acknowledged the overriding importance of preparing
> students for work and citizenship, describing education as pivotal to "sustaining
> our political and cultural heritage" with a fundamental role in maintaining the
> fabric of society. *Plyler v. Doe,* 457 U.S. 202, 221 (1982). This Court has long
> recognized that "education...is the very foundation of good citizenship." *Brown v.
> Board of Education,* 347 U.S. 483, 493 (1954)." 539 U.S. at 331.

*     *     *

> "Moreover, universities, and in particular, law schools, represent the training
> ground for a large number of our Nation's leaders. *Sweatt v. Painter,* 339 U.S.
> 629, 634 (1950) (describing law school as a "proving ground for legal learning and
> practice"). Individuals with law degrees occupy roughly half the state
> governorships, more than half the seats in the United States Senate, and more than
> a third of the seats in the United States House of Representatives. See Brief for
> Association of American Law Schools as *Amicus Curiae* 5-6. The pattern is even
> more striking when it comes to highly selective law schools. A handful of these

3

schools accounts for 25 of the 100 United States Senators, 74 United States Courts of Appeals judges, and nearly 200 of the more than 600 United States District Court judges. *Id.,* at 6." 539 U.S. at 332.

As discussed in the affidavit of Vice Dean Clayton Gillette, NYU SOL had expected to receive important information from plaintiff's FOIA requests. It is of increasing urgency that the information concerning surveillance at NYU SOL be disclosed as another military recruiting visit is slated for April 19, 2006. Students who are opposed to the "Don't Ask Don't Tell" policy and the military's discrimination may have their First Amendment rights of free speech chilled by the specter of surveillance occurring on the campus. Moreover, the public interest will be served by the prompt disclosure of the documents concerning past surveillance to open debate about such events on college and law school campuses.

Disclosure will also facilitate the forums held at NYU SOL as part of its amelioration efforts aimed at emphasizing the importance of its non-discrimination policy which it is forced to violate by allowing military recruiters on campus. Disclosure will allow the fulfillment of the Supreme Court's statements in Rumsfeld v. FAIR, 74 U.S. L.W. 4159 at *8 (March 6, 2006):

"The Solomon Amendment neither limits what law schools may say nor requires them to say anything. Law schools remain free under the statute to express whatever views they may have on the military's congressionally mandated employment policy."

4

Once NYU SOL has the information contained in the documents Plaintiff seeks, it can further the

public interest by providing additional views on the military's policy and governmental actions

related to it.

## CONCLUSION

For the foregoing reasons, NYU SOL respectfully requests that the Court grant Plaintiff's

Motion for a Preliminary Injunction.

Respectfully submitted,

HOGAN & HARTSON L.L.P.


By: *Steven J. Routh/se*
    Steven J. Routh

555 Thirteenth Street, N.W.
Washington, D.C. 20004
Ph: (202) 637-6472
Fax: (202) 637-5910
sjrouth@hhlaw.com


*Attorney for Amicus Curiae*
*New York University School of Law*

OF COUNSEL:

Ada Meloy
New York University
70 Washington Square South
New York, NY 10012
Ph: (212) 998-2258
Fax: (212) 995-3048 (fax)
Ada.meloy@nyu.edu


Dated: March 30, 2006

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL )
  DEFENSE NETWORK, )
                   )
          Plaintiff, )
                   )
     v. )        Civil Action No. 06-200 (RMC)
                   )
DEPARTMENT OF DEFENSE, *et al.*, )       Affidavit of Clayton Gillette
                   )
          Defendants. )

STATE OF NEW YORK   )
                   ss.:
COUNTY OF NEW YORK )

Clayton Gillette, being duly sworn, deposes and says:

1.    I am Vice Dean and the Max E. Greenberg Professor of Contract Law at New

York University School of Law. I submit this affidavit in support of the Motion for

Preliminary Injunction and in support of the Motion for Leave to file an amicus brief. I

have personal knowledge of the matters stated herein.

2.    New York University School of Law has been in the forefront of the law schools

that have been expressing objection to the "Don't Ask Don't Tell" policy since its

inception. The School has also been open in its disagreements with the Solomon

Amendment and was one of the named plaintiffs in the action denominated as Forum for

Academic and Institutional Rights v. Rumsfeld.

3.    In December 2005, we became aware of reports that the Department of Defense

("DOD") had been monitoring so-called "threats" originating from protests and

demonstrations at New York University, and the School of Law in particular. Published

reports suggested that monitored demonstrations revolved around protests concerning the

"Don't Ask Don't Tell" policy, the Solomon Amendment and the presence of military

recruiters at the School of Law. Those same reports suggested that the surveillance was

directed at the School's students and others participating in peaceful free-speech

protected activities.

4.     Attorneys for Plaintiff in this action advised me that in January, 2006, they had

filed Freedom of Information Act requests that include documents concerning a

demonstration at the School of Law in February 2005. Documents that purported to be

generated by the government indicated that the demonstration was classified as a

"Threat," although it was also classified as "Not Credible." The School of Law

anticipated that the requested documents would reveal whether our students were under

surveillance either to determine the existence of a "Threat" or to reach the conclusion that

it was "Not Credible." We were expecting to receive copies of the documents pursuant to

that request which was requested to be expedited. Upon learning that the documents were

not forthcoming as expected, the School decided to file its own FOIA request, copy

annexed, and to seek to file an amicus submission in support of plaintiff's motion for a

preliminary injunction.

5.     New York University School of Law is a national non-profit school that actively

pursues the University's objective to be a "Private university in the public service." A

significant percentage of our graduates go into public service careers. Our graduates are,

of course, trained as lawyers and aspire to pass the bar and practice law. In bar admission

procedures, which commence in some instances even before formal graduation, questions are posed that seek to ascertain the character and fitness of the applicant. In the event documents exist that identify our students as potential "threats" or portray them as engaged in questionable or potentially illegal activities, these allegations may cause delay or even denial of bar admissions. It is urgent that the School ascertain as soon as possible the content of any documents pertaining to our students so that we can alert them to this potential obstacle and advise them with respect to the possibility that even their legitimate and protected activities could be the subject of government surveillance.

6.      Due to the terms of the Solomon Amendment, the School has been required to allow military recruiters to participate in our Office of Career Services' on-campus recruiting services. Certain military services were present in February 2006 and students engaged in peaceful protest activities at that time. We are not currently aware whether any surveillance occurred, and our FOIA request seeks to learn that fact. Since the report of surveillance concerning the February 2005 recruiting event, students have expressed concern that additional surveillance may be carried out. This has served to chill the desires of some students to express their deeply-held convictions against the "Don't Ask Don't Tell" policy. It is particularly urgent that the documents sought in plaintiff's FOIA request – and ours – be produced promptly as an additional military recruiting visit is scheduled at the School for April 19, as described below.

7.      Although all the military were advised in early January of the general recruiting event held at the School on February 17, 2006, the Navy recruiters did not come on that occasion. It was only on March 3 that the Navy requested to visit our campus to recruit.

3

On March 14, it was agreed that April 19 was a mutually acceptable date for the Navy

recruiter to hold an information session for interested law students. We anticipate that on

April 19, concerned law students will want to engage in free expressions of their views,

but the chilling effect of the unknown content of Department of Defense documents

concerning surveillance could stifle the rights of those students.

8.     Since 1996, the Association of American Law Schools, of which our School is a

member, has required law schools that are required to provide assistance to military

recruiters to take steps to ameliorate any effects with regard to the educational

atmosphere for gay and lesbian students. The School of Law is mandated to take steps to

educate students on the importance of nondiscrimination. We comply with this mandate

by hosting forums and events that illustrate the importance of the nondiscrimination

principle. Other appropriate ameliorative steps include prominently displaying the School

of Law's generally applicable nondiscrimination policy (even though it may not be

enforceable as to military recruiters) and accompanying any circulation of military

recruitment materials within the School of Law with a declaration of the inconsistency

between military employment practice and our generally applicable nondiscrimination

policy. New York University School of Law has taken these requirements very seriously,

hosting forums open to the public and facilitating the free expression of students. It is

also our intention to publicize, by providing to the student paper, The Commentator,

information received under plaintiff's, and our own, FOIA requests. It will be most

effective if this can be accomplished before the April 19 recruitment event which creates

immediacy and urgency surrounding the issue of the "Don't Ask Don't Tell" policy. The

Commentator, and to a slightly lesser extent the University's undergraduate student

4

newspaper, the Washington Square News, have disseminated to the public information concerning the protests and demonstrations that have accompanied each military recruiting visit to the School over the past six years.

9.      Interest in this issue continues at a high level, particularly since the March 6 decision of the Supreme Court in Rumsfeld v. FAIR. As it appears the only remaining avenue to seek change in the "Don't Ask Don't Tell" policy and the Solomon Amendment is through legislative change, it is imperative that publicity concerning the free expression of persons opposed to those enactments occur in a timely fashion.

10.     The documents sought in plaintiff's, and in our, FOIA requests are also needed for scholarly research. As part of their academic requirements for graduation, the law students in our School must produce a paper of substantial length (ordinarily at least 30 pages exclusive of footnotes) under the supervision of a faculty member. The paper must be a sustained piece of writing, thorough, well-written, properly documented, and anticipate and address opposing arguments. Students may choose to write papers concerning the "Don't Ask Don't Tell" policy and/or the Solomon Amendment. The documents expected to be received may provide additional material to be used in these scholarly research papers. This use of the materials also increases the urgency of receiving it as students have deadlines for meeting graduation requirements.

11.     It is the view of our law faculty that a clear antidiscrimination policy, including proscription of discrimination based on sexual orientation, is in the public interest, and in the interest of humanity. Similarly, our Student Bar Association has stated that students'

5

interests are best served through non-violent expression of their views on this issue. The public interest will be furthered by the disclosure of surveillance aimed at persons who are engaged in activities protected by the First Amendment and who are attempting to further the public interest. As the Supreme Court stated in Rumsfeld v. FAIR, "Law schools remain free under the statute to express whatever views they may have on the military's congressionally mandated policy…" This freedom, however, is chilled by the covert actions of the government, particularly as they remain undisclosed in the face of a FOIA request. While the Supreme Court observed "nothing in the Solomon Amendment restricts what the law schools may say about the military's policies," the atmosphere created by the surveillance has a restricting effect on words and actions of members of the Law School community.

WHEREFORE, on behalf of New York University School of Law, it is respectfully requested that the court accept this affidavit in support of plaintiff's Motion for a Preliminary Injunction and in support of the Motion for Leave to file an amicus brief.

Sworn to before me
The _28th_ day of March, 2006

_Ada Meloy_
Notary Public

_Clayton Gillette_

ADA MELOY
Notary Public, State of New York
No. 32-02ME4603679
Qualified in New York County
Commission Expires July 31, 200_6_

6

# NEW YORK UNIVERSITY
*A private university in the public service*

Office of Legal Counsel

ELMER HOLMES BOBST LIBRARY
70 WASHINGTON SQUARE SOUTH
NEW YORK, N.Y. 10012-1091

FAX NO. (212) 995-3048

WRITER'S DIRECT DIAL NUMBER
(212) 998-2258

March 28, 2006

**Via UPS Next Day Air**
Office of Freedom of Information
1155 Defense Pentagon
Washington, DC 20301-1155

Re:   Freedom of Information Act Request (Expedited Processing Requested)

Dear Sir or Madam:

This letter constitutes a request for records on behalf of New York University School of Law pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and regulations promulgated thereunder by the Department of Defense, 32 C.F.R. part 286.

## I.    DEFINITIONS

As used throughout this request:

1.    "Document" and/or "record" includes all handwritten, typed or printed material, and all electronic or other records or documentation of any kind including, without limitation, agreements, correspondence, instructions, letters, memoranda, e-mails, notations of telephone conversations, notes, calendars, schedules and any other records, including drafts and copies not identical to the originals, however produced or reproduced, and all compilations of data, and any and all writings or recordings of any type or nature including video and audio in your possession, custody or control, including those in the possession, custody or control of any and all Department of Defense personnel, administrators, attorneys, agents or contractors, whether or not prepared by Department of Defense personnel, administrators, attorneys, agents or contractors;

2.    "DoD" means the Department of Defense and its component the Counterintelligence Field Activity ("CIFA");

{00004294;1}

Office of Freedom of Information
March 28, 2006
Page 2

3. "Don't Ask, Don't Tell" means the homosexual conduct policy enacted by Congress in 1993, which is currently codified at 10 U.S.C. § 654 and implemented through DoD Directives 1304.26, 1332.14, 1332.30 and 1332.40;

4. "FOIA" means the Freedom of Information Act, 5 U.S.C. § 552;

5. "LGBT organizations" means organizations representing the interests of lesbians, gay men, bisexuals and/or transgendered people;

6. "Meeting(s)" includes meetings, conferences, demonstrations and/or rallies, whether in-person or conducted via electronic or other means;

7. "NYU" means New York University and New York University School of Law and its faculty, students and administrators;

8. "TALON reports" means Threat and Local Observation Notice reports; and

9. "VoIP" means Voice over Internet Protocol.

## II. RECORDS REQUESTED

1. Any and all documents concerning DoD's actual or proposed surveillance[1] of:

   A. meetings involving people and/or organizations at or related to colleges and universities including NYU discussing, considering or stating opposition to "Don't Ask, Don't Tell";

   B. communications involving, but not necessarily with, colleges and universities including NYU, including but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

   C. a February 2005 protest at NYU involving the LGBT organization known as "OUTlaw" however described in the document, including "Outlaws" or "the Outlaws;"

---

[1] This request includes surveillance proposed, conducted, directed or supervised by DoD personnel, as well as surveillance proposed, conducted, directed or supervised by non-DoD personnel (e.g., Federal Bureau of Investigation personnel or local law enforcement), the products of which were forwarded to DoD. {00004294;1}

Office of Freedom of Information
March 28, 2006
Page 3

      D.    any rallies, protests, or gatherings at colleges and universities including NYU from 1997 to the present; and

      E.    communications involving, but not necessarily between, OUTlaw and/or its employees, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

2. Any and all documents related to or concerning how DoD selected colleges and universities including NYU as a target of surveillance;

3. Any and all documents related to or concerning what entities or personnel DoD distributed information gathered under the surveillance described in paragraph 1 above;

4. Any and all documents related to or concerning in any way DoD's actual or supposed authority to engage in the surveillance described in paragraph 1 above, including, but not limited to, presidential orders, DoD directives, statutes, regulations or legal reviews conducted by the United States Department of Justice or any other government agency;

5. Any policies, procedures or manuals related to the surveillance described in paragraph 1 above;

6. Any and all documents related to or concerning in any way investigations, inquiries or disciplinary proceedings initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or manual related to the surveillance described in paragraph 1 above;

7. Any and all documents containing, referring or relating to legal advice prepared by or provided to legal counsel to DoD, Department of Justice, or any other legal advisor pertaining to surveillance described in paragraph 1 above; and

8. Any and all documents referring or relating to NYU, its faculty, students or employees and campus visits by recruiters seeking applicants for employment in the armed forces.

{00004294;1}

Office of Freedom of Information
March 28, 2006
Page 4


## III.    EXPEDITED PROCESSING REQUEST

Expedited processing of this FOIA request is warranted because the records being
requested are urgently needed and failure to expedite may result in an imminent loss of due
process rights. *See* 5 U.S.C. § 552(a)(6)(E)(i)(I); 32 C.F.R. § 286.4(d)(3)(iv).

### A.    The Records Requested Are Urgently Needed

Under DoD regulations, this FOIA request implicates an urgent matter of public concern—
namely, the federal government's warrantless surveillance of students and groups at NYU.
*See* 32 C.F.R. § 286.4(d)(3)(ii)(A) ("urgently needed" means that the information
requested has a particular value that will be lost if not disseminated quickly), *see also*
*ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 29 (D.D.C. 2004) (finding that section
215 of the Patriot Act, which substantially expanded the powers of the FBI under the
Foreign Intelligence Surveillance Act of 1978, "unquestionably implicates important
individual liberties and privacy concerns which are of immediate public interest"). Such
surveillance has not only included events at New York University School of Law, it also
appears to have encompassed other types of organizations critical of federal government
policies. *See,* Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y.
Times, Dec. 20, 2005, at A1.

The recent widespread and sustained media coverage of the federal government's domestic
surveillance activities provides further evidence that the information sought is "urgently
needed" and of current public concern. *See, e.g., Michael Isikoff, The Other Big Brother:
The Pentagon has its own domestic spying program. Even its leaders say the outfit may
have gone too far, Newsweek, Jan. 30, 2006.*

Delay in processing this FOIA request may decrease the value of the information sought.
Current students and recent graduates of New York University School of Law are applying
for membership in the bars of various states. Those applicants need to know if they may
be hindered in gaining admission to practice due to governmental surveillance.
Therefore, the records sought by this FOIA request are needed in a timely fashion to allow
persons named therein to prepare responses or take action in order to have their names
cleared.

Also, as noted below, a military recruiter is scheduled to come on campus on April 19,
2006, adding palpable urgency to this request.

{00004294;1}

Office of Freedom of Information
March 28, 2006
Page 5

### B.    Failure to Grant Expedited Processing May Result in an Imminent Loss of Due Process Rights

DoD regulations[2] provide that expedited processing should be granted in cases involving an imminent loss of substantial due process rights. *See* 32 C.F.R. § 286.4(d)(3)(iv).

Domestic surveillance of New York University School of Law organizations and students may have infringed, and may continue to infringe, upon the free speech, free association and privacy rights of those individuals or entities that were, or currently are, the subject of such surveillance. Any delay in processing the request for documents may compromise the significant interests at stake by delaying the requester, and the public at large, from understanding the full scope of any government violations of the organizations' and students' constitutional rights. *See ACLU*, 321 F. Supp. 2d at 30 ("Because the records that plaintiffs seek relate to current surveillance efforts, the potential invasion of the public's privacy interests is of immediate concern, weighing in favor of a finding of expediency."). Therefore, an imminent loss of due process rights may be suffered if the above FOIA request is not processed on an expedited basis because students and recent graduates are engaged in seeking bar admissions.

Moreover, a campus visit by a military recruiter has just been scheduled and announced for April 19, 2006, some three weeks after this request is being filed. The records being sought may reveal plans for additional surveillance at NYU on that occasion. Students who wish to exercise their First Amendment rights by demonstrations or protests have a right to know if surveillance has been planned or is likely to occur based upon disclosures found in the records being sought. Given past publicity of surveillance, failure to have disclosure of the recorded details could chill the Constitutionally protected rights of students and others to demonstrate at the April 19 event.

The right to free speech, free association and privacy are protected under the First, Fourth and Fifth Amendments to the United States Constitution, which were designed in part to promote the welfare of the citizenry through liberty. *cf. Lawrence v. Texas*, 539 U.S. 558, 562 (2003) ("Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct."). Therefore, granting the request for expedited processing will promote the interest and welfare of the students and others who have been subjects of surveillance.

---

[2]    It is also arguable that New York University School of Law Qualifies as an Organization "Engaged in Disseminating Information to the Public." New York University School of Law is a national, non-profit educational institution deeply interested in discrimination against and harassment of United States military personnel under "Don't Ask Don't Tell." It conducts an amelioration program as required by the American Association of Law Schools, presenting forums on these important issues to the NYU community and the public.
{00004294;1}

Office of Freedom of Information
March 28, 2006
Page 6

## IV.    FEE WAIVER REQUEST

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 32 CFR § 286.28(d), we also request a waiver
of all fees associated with responding to this FOIA request. The statute and regulations
authorize a waiver of fees where disclosure of the information requested (1) is in the public
interest because it is likely to contribute significantly to the public understanding of the
operations or activities of DoD and (2) is not primarily in the commercial interest of the
requestor. This FOIA request satisfies both criteria.

### A.    Disclosure of the Records Sought Is in the Public Interest

This FOIA request seeks information regarding domestic surveillance conducted by DoD
that, as noted above, has drawn considerable attention and criticism from members of
Congress and the media. For example, disclosure of the records requested will help the
general public understand the full scope and extent to which CIFA—a little-known DoD
component created in the wake of the terrorist attacks of September 11, 2001—has been
collecting information against students and academic organizations within the United
States. Moreover, many of the documents were recently created by DoD, which counsels
in favor of granting our fee waiver request. *See* § 286.28(d)(3)(i).

This FOIA request also seeks meaningful information not already in the public domain.
*See* § 286.28(d)(3)(i)(B). The general public has shown great interest in recent revelations
regarding domestic surveillance conducted by DoD components. New York University
School of Law will use its capabilities to disseminate information collected as a result of
its FOIA request. *See* § 286.28(d)(3)(i)(C). Should NYU discover through its FOIA
request that students have indeed been the target of domestic surveillance, NYU will
forward such information to them in a timely fashion so that they can take appropriate
action to address the concerns. New York University School of Law will provide
information to the students who publish the student paper "The Commentator" and expect
it to be disseminated to the public. New York University School of Law will also address
and disclose its findings in the amelioration forum it is required to conduct.

The public currently understands very little about the extent to which DoD components
such as CIFA have observed groups and individuals in the United States critical of federal
government policies. Indeed, this lack of understanding apparently includes members of
Congress who have sent written inquiries to the Secretary and the Department. This FOIA
request, and the subsequent dissemination of the information obtained as a result of that
request, counsels in favor of granting a fee waiver. *See* § 286.28(d)(3)(i)(D).

Office of Freedom of Information
March 28, 2006
Page 7

**B.    Disclosure of the Records Sought is Not Primarily in NYU's
Commercial Interest**

In order to qualify for a fee waiver, disclosure of the information sought cannot be
"primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 32
C.F.R. § 286.28(d)(3)(ii). In making this determination, DoD regulations provide that two
factors are to be considered: (1) the existence and magnitude of the requestor's commercial
interest, and (2) the primary interest in disclosure. 32 C.F.R. § 286.28(d)(3)(ii)(A)-(B). As
noted above, New York University School of Law is a national, non-profit educational
institution with an interest in ending discrimination against, and harassment of, United
States military personnel under "Don't Ask, Don't Tell." NYU has no commercial interest
in the records sought by this FOIA request. Instead, by submitting this FOIA request,
NYU hopes to obtain information in order to educate its students and the general public
regarding the extent to which domestic surveillance has been used against students and
organizations that disagree with policies of the federal government.

**V.    REQUEST FOR "EDUCATIONAL INSTITUION REQUESTER" FEE
STATUS**

In the event that DoD determines that this FOIA request does not qualify for a fee waiver,
we would request that NYU be afforded "educational institution requester" fee status
pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 32 C.F.R. § 286.28(e)(4). Students at New
York University School of Law are currently engaged in preparing scholarly papers, some
of which may concern "Don't Ask, Don't Tell" and the Solomon Amendment. The
documents requested will be integral to scholarly research on such topics.

* * *

We thank you for your prompt attention to this matter. In accordance with 5 U.S.C.
§ 552(a)(6)(E)(ii)(I) and 32 C.F.R. § 286.4(d), we expect your determination of our request
for expedited processing within ten (10) calendar days and your determination of our
request for records within twenty (20) days. We also expect the release of all segregable
portions of otherwise exempt material. If our request for documents is denied in whole or
in part, we ask that you justify all deletions by reference to specific exemptions under
FOIA.

{00004294;1}

Office of Freedom of Information
March 28, 2006
Page 8


If you have any questions, please feel free to call me at (212) 998-2258. I hereby certify
that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully yours,

Ada Meloy
Deputy General Counsel

{00004294;1}