UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| SERVICEMEMBERS LEGAL DEFENSE ) | |
| NETWORK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 06-cv-200 (RMC) |
| ) | |
| DEPARTMENT OF DEFENSE, ) | |
| *et al.* ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS THE UNITED STATES DEPARTMENT OF JUSTICE AND UNITED STATES DEPARTMENT OF DEFENSE

Defendants the U.S. Department of Justice and U.S. Department of Defense, by and through counsel, respectfully move for summary judgment pursuant to Fed. R. Civ. P. 56. As set forth herein, there is no genuine issue of material fact in dispute, and defendants are entitled to judgment as a matter of law. In support of this motion, defendants refer the Court to the attached memorandum of points and authorities and attached declarations.

Dated: June 28, 2006                     Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         KENNETH L. WAINSTEIN
                                         United States Attorney

                                         ELIZABETH J. SHAPIRO
                                         Assistant Branch Director

/s/
_____
SAMUEL C. KAPLAN (D.C. Bar No. 463350)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Rm. 7302
Washington, D.C.  20044
(202) 514-4686 phone
(202) 616-8202 fax
samuel.kaplan@usdoj.gov
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
                                            )
SERVICEMEMBERS LEGAL DEFENSE  )
NETWORK,                          )
                                            )
          Plaintiff,             )
                                            )
         v.                     )        06-cv-200 (RMC)
                                            )
DEPARTMENT OF DEFENSE,      )
*et al.*                                )
                                            )
         Defendants.          )
_____)

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

       Pursuant to Local Rule of Civil Procedure 7(h), defendants submit this statement of material facts as to which there is no genuine issue:

       1.       On January 5, 2006, plaintiff sent FOIA requests to the Department of Justice ("DOJ") and Department of Defense ("DOD") and components of those agencies requesting documents concerning the recipient agency or component's purported "surveillance of" meetings involving the plaintiff and other groups "representing the interests of lesbians, gay men, bisexuals, and/or transgendered people."  Exhibits to Plaintiff's Motion for Preliminary Injunction ("Pl. PI Exs.") 25(A)-(H).

       2.       The Initial Request Staff of the Office of Information and Privacy ("OIP") is responsible for searching for and reviewing records within the Offices of the Attorney General ("OAG"), Deputy Attorney General ("ODAG"), Associate Attorney General ("OASG"), Legislative Affairs ("OLA"), Legal Policy ("OLP"), Intergovernmental and Public Liaison

("OIGPL"), Public Affairs ("PAO") and OIP itself.  Third Declaration of Melanie Ann Pustay ("Third Pustay Dec.") ¶ 1.

3.    By memoranda sent to each office, OIP initiated records searches in the eight offices for which OIP processes requests.  *Id.* at ¶ 16.

4.    The standard practice of all of the offices other than the OLA and OIP is the same: all staff members in the office are notified when the office receives an OIP memorandum.  *Id.* at ¶ 16.  Based on their experience and knowledge of the files, the individuals then determine whether they might have records.  *Id.*  If a staffer determined that he or she might have records, the staffer searches his or her electronic and paper files.  *Id.*

5.    With respect to OLA, each staff member was advised by electronic mail concerning plaintiff's request and was asked to respond as to whether they had responsive records.  *Id.* at ¶ 17.  OLA subsequently forwarded records to OIP, which OIP determined not to be responsive.  *Id.*

6.    OIP also reviewed the search terms used by the OLA representative who has responsibility for searching that component's electronic database, which is used to track legislative history files and correspondence.  *Id.*  The search terms initially used were "don't ask," "don't tell," "gay," "lesbian," and "homosexual."  *Id.*  The OIP analyst subsequently asked the OLA representative to conduct an additional search using the terms "silberman" and "robb" to make sure that any records responsive to plaintiff's seventh request were located.  *Id.*  The additional search did not locate any responsive records.  *Id.*

7.    OIP also searched its own office and electronic database.  *Id.* at ¶ 18.  The searches of the various offices did not locate any responsive records.  *Id.* at ¶¶ 15, 16-18.

2

8.      On January 23, 2006, and March 13, 2006, the OIP FOIA specialist assigned to process plaintiff's request searched the electronic database of the Departmental Executive Secretariat, which is the official records repository for the OAG, ODAG, and OASG.  *Id*. at ¶ 13. The terms used to search the database included "Silberman and Robb," "Servicemembers and legal and defense," "don't ask and don't tell," "outlaw and protest," "gay and surveillance," "gay and military," "servicemembers," and "SLDN."  *Id*. at ¶ 14.  (The term "outlaw" was used because it is the name of an organization that organized one of the events mentioned by plaintiff in its request).  These searches located two records, which OIP referred to the FBI.  The FBI subsequently determined the records were non-responsive.  *Id*. and note 1.

9.      On March 10, 2006, OIP staff also searched all of the press releases of the Public Affairs office and found no responsive documents.  *Id*. at ¶ 15.

10.     The FBI initially divided plaintiff's requests into three subject areas:  "Don't Ask, Don't Tell," the OUTlaw 2005 Protest at New York University, and the April 2005 demonstration at the University of California at Santa Cruz.  Second Declaration of David M. Hardy ¶ 8.  The FBI subsequently realized it had overlooked Request No. 7, which addressed the Silberman-Robb Commission and assigned a Request Number to that request as well.  *Id*. at ¶ 15.

11.     For each request, the FBI conducted various searches of the indices of its Central Records System for documents responsive to plaintiff's request.  *Id*. at ¶¶ 20-30.  With respect to the first, the FBI searched for documents indexed under the subject "Don't Ask, Don't Tell" "Servicemembers Legal Defense Network," and "SLDN."  *Id*. at ¶ 27.  With respect to the second, it searched for documents indexed under various topics, including "OUTlaws," "homosexual," and "New York University."  *Id*. at ¶ 28.  With respect to the third, it searched for

3

documents indexed under such topics as "University of California" and "homosexual."  *Id.* at ¶ 29.  With respect to the fourth, it searched for such topics as "Presidential Commission on Intelligence" and "Weapons of Mass Destruction."  *Id.* at ¶ 30.  These searches did not locate any responsive documents.

12.     Because the FBI had been involved in developing the recommendations of the Silberman-Robb Commission, the FBI had the eight offices with potentially responsive records search their files for documents related to the Commission's recommendation concerning the expansion of the authority of the Counterintelligence Field Activity ("CIFA").  *Id.* at ¶¶ 31-32.[1] This search located additional documents.  *Id.* at ¶ 33.  The FBI released 11 pages with the names of FBI agents and another government employee redacted pursuant to Exemptions (b)(5), (b)(6) and (b)(7)(C).  *Id.*

13.     Plaintiff does not object to the FBI withholdings.  *See* Ex. 7, E-mail from James Segroves to Samuel C. Kaplan ("Segroves E-mail"), June 20, 2006.

14.     Plaintiff sent FOIA requests to the Office of Freedom of Information at the Department of Defense ("OFOI"), CIFA, and the Defense Intelligence Agency.  *See* Pl. PI Exs. 25A, B, and D.

---

[1]  This request called for documents related to "a proposal authored by the" Silberman-Robb Commission "urging that the federal government be given greater authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States."  *Id.* at ¶ 5.  There is no such proposal.  The FBI, however, determined that plaintiff had based this request on a Washington Post description of one of the Silberman-Robb Commission's recommendations "urg[ing] that *CIFA* be given authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States."  *See id.* at ¶ 33; Exhibit 1 to Plaintiff's Motion for Preliminary Injunction at 2 (emphasis added).

4

15.     OFOI processes requests for components within the Office of the Secretary of Defense, including CIFA.  Ex. 3, Third Declaration of William T. Kammer ("Third Kammer Dec.") ¶ 1.  CIFA conducted a computer search of all of the TALON reports that had been removed from the TALON database pursuant to a January 13, 2006, directive from Deputy Secretary of Defense England.  *Id*. at ¶ 4.  The search resulted in the finding of three TALON reports, which OFOI released, with minor redactions, to the plaintiff.  *Id*. at ¶ 6.  Those reports did not reflect "surveillance" of gay and lesbian groups, but OFOI released them because they referred to specific events identified in plaintiff's request.  *Id*.

16.     CIFA also searched the Cornerstone database, which is the repository for all TALON reports that had not been removed.  *Id*. at ¶ 4.  Because all TALON reports related to protests had previously been removed, that search revealed no responsive documents.  *Id*.

17.     The head of the CIFA communications offices also searched e-mails and all other documents and internal information for responsive documents, and the Chief of the Enterprise Operations Division conducted a search of three different shared file networks using an automated search based on the FOIA request.  *Id*.

18.     DOD OFOI also forwarded plaintiff's request to the Office of the Under Secretary of Defense for Intelligence ("USD(I)"), which is the office responsible for the implementation, direction, and guidance for DOD's counterintelligence reporting programs.  *Id*. at ¶ 5.  USD(I) searched its files for documents responsive to plaintiff's request and located seven documents, which DOD OFOI subsequently released to the plaintiff.  *Id*. at ¶¶ 5, 7-8.

19.     Counsel for plaintiff subsequently sent a letter to counsel for defendants inquiring as to the scope of the search based on the absence from the response of TALON reports related to

other protests that had been included in a database published by MSNBC.  *See* Ex. 5, Letter from

James F. Segroves to Samuel C. Kaplan, May 13, 2006, at 1.

20.    Counsel for defendants responded that plaintiff had not requested all TALON

reports, but rather had requested only documents concerning "surveillance" of gay and lesbian

groups.  *See* Exhibit 6, Letter from Samuel C. Kaplan ("Kaplan Letter") at 1; Ex. 3, Third

Kammer Dec. ¶ 8.  Because TALON reports do not reflect "surveillance" within any reasonable

meaning of the term, DOD's search had not encompassed all TALON reports addressing events

organized by gay and lesbian organizations, but rather only documents concerning specific events

and groups identified by plaintiff.  *Id*.; Ex. 5, Kaplan Letter at 1.

21.    Rather than require plaintiff to file another FOIA request or litigate the question,

CIFA searched the removed TALON reports for reports containing any of the following terms:

"Albany," "discrimination," "discrim," "don't ask don't tell," "gay," "homosexual," "lesbian,"

lgbt," and "sexual."  *See* Ex. 5, Kaplan Letter at 2; Ex. 3, Third Kammer Dec. at ¶ 8.  (The term

"Albany" was searched because plaintiff had referred to protests at the University of Albany in

its May 13, 2006, letter.)  The search revealed an additional five TALON reports, which OFOI

subsequently released to the plaintiff with, again, minor redactions of sources, coordinating

agencies, and persons briefed locally.  *Id*.

22.    The Defense Intelligence Agency ("DIA") also separately searched for documents

responsive to plaintiff's request.  *See generally* Ex. 4, Second Declaration of Brian S. Kinsey.

Specifically, the Chief of the Freedom of Information Staff for DIA tasked four directorates to

search their files for documents responsive to plaintiff's FOIA requests.  *Id*. at ¶ 4.  In addition

DIA conducted electronic searches of the two electronic correspondence databases that would be

likely to have responsive documents. *Id*. at ¶¶ 5-7. The searches used included terms such as "don't ask, don't Tell," SLDN, homosexual, and "Servicemembers Legal Defense Network." *Id*. The various searches of DIA files revealed no documents responsive to plaintiff's request. *Id*. at 6-7.

23. The only redactions or withholdings that potentially remain at issue in this litigation are the redactions of the source, coordinating agencies, and persons briefed locally in the various TALON reports. Ex. 7, E-mail from James Segroves to Samuel Kaplan, June 20, 2006. ICE has subsequently withdrawn its objection to release of that information. Ex. 3, Kammer Dec. ¶ 11. However, ICE determined that the decision as to a subset of the redactions had to be made by the FBI. *Id*. The FBI had not yet made the determination as of June 28, 2006. *Id*. Accordingly, this memorandum does not address the justification for any redactions or withholdings, and DOD will submit a supplemental declaration through counsel as soon as the FBI makes a determination. *Id*.

Dated: June 28, 2006                      Respectfully submitted,

                                          PETER D. KEISLER
                                          Assistant Attorney General

                                          KENNETH L. WAINSTEIN
                                          United States Attorney

                                          ELIZABETH J. SHAPIRO
                                          Assistant Branch Director


                                          /s/_____
                                          SAMUEL C. KAPLAN (D.C. Bar No.
                                          463350)
                                          Trial Attorney
                                          United States Department of Justice

Civil Division, Federal Programs Branch
P.O. Box 883, Rm. 7302
Washington, D.C.  20044
(202) 514-4686 phone
(202) 616-8202 fax
samuel.kaplan@usdoj.gov
Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| SERVICEMEMBERS LEGAL DEFENSE ) | |
| NETWORK, ) | |
| ) | |
|      Plaintiff, ) | |
| ) | |
|     v. ) | 06-cv-200 (RMC) |
| ) | |
| DEPARTMENT OF DEFENSE, ) | |
| *et al.* ) | |
| ) | |
|     Defendants. ) | |
| _____ ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case involves plaintiff's January 5, 2006, Freedom of Information Act ("FOIA") requests to the Department of Justice ("DOJ") and Department of Defense ("DOD"). Summary judgment should be granted in this case because the defendants have conducted a search reasonably calculated to obtain the documents responsive to plaintiff's FOIA requests, and because any previously redacted information that remains potentially at issue will either soon be released or is exempt from disclosure under 5 U.S.C. § 552(b).

### STATEMENT OF FACTS

On January 5, 2006, plaintiff sent FOIA requests to the Department of Justice ("DOJ") and Department of Defense ("DOD") and various components of those agencies requesting documents concerning the recipient agency or component's purported "surveillance of" meetings involving the plaintiff and other groups "representing the interests of lesbians, gay men,

bisexuals, and/or transgendered people."  Exhibits to Plaintiff's Motion for Preliminary

Injunction ("Pl. PI Exs.") 25(A)-(H).  In addition, plaintiff requested records concerning a

specific recommendation of the Commission on the Intelligence Capabilities of the United States

Regarding Weapons of Mass Destruction, chaired by Judge Laurence H. Silberman and former

senator Charles S. Robb ("the Silberman-Robb Commission").  *Id*.  The following subsections

describe the agencies' responses to those requests.

     A.    **Department of Justice**

         1.    <u>Office of Information and Privacy</u>

The Initial Request Staff of the Office of Information and Privacy ("OIP") is responsible

for searching for and reviewing records within the Offices of the Attorney General ("OAG"),

Deputy Attorney General ("ODAG"), Associate Attorney General ("OASG"), Legislative Affairs

("OLA"), Legal Policy ("OLP"), Intergovernmental and Public Liaison ("OIGPL"), Public

Affairs ("PAO") and OIP itself.  Third Declaration of Melanie Ann Pustay ("Third Pustay Dec.")

¶ 1.  By memoranda sent to each office, OIP initiated records searches in all eight offices.  *Id*. at ¶

16.  The standard practice of all of the offices other than OLA and OIP is the same: all staff

members in the office are notified when the office receives an OIP memorandum and are

provided with a copy of the request.  *Id*. at ¶ 16.  Based on their experience and knowledge of

their files, the individuals then determine whether they might have records.  *Id*.  If a staffer

determines that he or she might have records, the staffer searches his or her electronic and paper

files.  *Id*.  All of these offices advised OIP that they had no responsive records.  *Id.* at ¶¶ 19, 20,

21, 22, 23.

With respect to OLA, each staff member was advised by electronic mail concerning plaintiff's request and was asked to respond as to whether they had responsive records. *Id*. at ¶ 17. OLA subsequently forwarded records to OIP, which OIP determined not to be responsive. *Id*. OIP also reviewed the search terms used by the OLA representative who has responsibility for searching that component's electronic database, which is used to track legislative history files and correspondence. *Id*. The search terms initially used were "don't ask, "don't tell," "gay," "lesbian," and "homosexual." *Id*. The OIP analyst subsequently asked the OLA representative to conduct an additional search using the terms "silberman" and "robb" to make sure that any records responsive to plaintiff's seventh request were located. *Id*. The additional search did not locate any responsive records. *Id*.

In addition, on January 23, 2006, and March 13, 2006, the OIP FOIA specialist assigned to process plaintiff's request searched the electronic database of the Departmental Executive Secretariat, which is the official records repository for the OAG, ODAG, and OASG. *Id*. at ¶ 13. The terms used to search the database included "Silberman and Robb," "Servicemembers and legal and defense," "don't ask and don't tell," "outlaw and protest," "gay and surveillance," "gay and military," "servicemembers," and "SLDN." *Id*. at ¶ 14. (The term "outlaw" was used because it is the name of an organization that organized one of the events mentioned by plaintiff in its request). These searches located two records, which OIP referred to the FBI; the FBI subsequently determined the records were non-responsive. *Id*. and note 1. On March 10, 2006, OIP staff also searched all of the press releases of the Public Affairs office and found no responsive documents. *Id*. at ¶ 15.

2.    Federal Bureau of Investigation

The FBI initially divided plaintiff's requests into three subject areas: "Don't Ask, Don't Tell," the OUTlaw 2005 Protest at New York University, and the April 2005 demonstration at the University of California at Santa Cruz.  Second Declaration of David M. Hardy ¶ 8.  The FBI subsequently realized it had overlooked Request No. 7, which addressed the Silberman-Robb Commission and assigned a Request Number to that request as well.  *Id*. at ¶ 15.

For each request, the FBI conducted various searches of the indices of its Central Records System for documents responsive to plaintiff's request.  *Id*. at ¶¶ 20-32.  With respect to the first, the FBI searched for documents indexed under the subject "Don't Ask, Don't Tell" "Servicemembers Legal Defense Network," and "SLDN."  *Id*. at ¶ 27.  With respect to the second, it searched for documents indexed under various topics, including "OUTlaws," "homosexual," and "New York University."  *Id*. at ¶ 28.  With respect to the third, it searched for documents indexed under such topics as "University of California" and "homosexual."  *Id*. at ¶ 29.  With respect to the fourth, it searched for such topics as "Presidential Commission on Intelligence" and "Weapons of Mass Destruction."  *Id*. at ¶ 30.  These searches did not locate any responsive documents.

In addition, because the FBI had been involved in developing the recommendations of the Silberman-Robb Commission, the FBI had the eight offices with potentially responsive records search their files for documents related to the Commission's recommendation concerning the expansion of the authority of the Counterintelligence Field Activity ("CIFA").  *Id*. at ¶¶ 31-32.[2]

---

[2]  This request called for documents related to "a proposal authored by the" Silberman-Robb Commission "urging that the federal government be given greater authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the

This search located additional documents. *Id*. at ¶¶ 32-33. The FBI released 11 pages with certain information withheld pursuant to Exemptions (b)(5), (b)(6) and (b)(7)(C). *Id*. at ¶ 33. Plaintiff does not object to the FBI withholdings. *See* Ex. 7, E-mail from James Segroves to Samuel C. Kaplan, June 20, 2006.

### B.    **Department of Defense**

Plaintiff sent FOIA requests to the Office of Freedom of Information at the Department of Defense ("OFOI"), CIFA, and the DIA. *See* Pl. PI Exs. 25A, B, and D. The Department of Defense Office of Freedom of Information ("OFOI") processes requests for components within the Office of the Secretary of Defense, including CIFA. Ex. 3, Third Declaration of William T. Kammer ("Third Kammer Dec.") ¶ 1. CIFA conducted a computer search of all of the TALON reports that had been removed from the TALON database pursuant to a January 13, 2006 directive from Deputy Secretary of Defense England. *Id*. at ¶ 4. The search resulted in the finding of three TALON reports, which OFOI released, with minor redactions, to the plaintiff. *Id*. at ¶ 6.

CIFA also searched the Cornerstone database, which is the repository for all TALON reports that had not been removed. *Id*. at ¶ 4. Because all TALON reports related to protests had previously been removed, that search revealed no responsive documents. *Id*. The head of the

---

United States." *Id*. at ¶ 5. There is no such proposal. The F.B.I., however, determined that plaintiff had based this request on a Washington Post description of one of the Silberman-Robb recommendations "urg[ing] that *CIFA* be given authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States." *See* Exhibit 1 to Plaintiff's Motion for Preliminary Injunction at 2 (emphasis added). Rather than provide a no-records response to the inaccurate initial request, the F.B.I. determined that plaintiff must have been referring to the recommendation cited in the article and conducted additional searches based on that assumption. Ex. 2, Hardy Dec. at ¶¶ 31-32.

CIFA communications offices also searched e-mails and all other documents and internal

information for responsive documents, and the Chief of the Enterprise Operations Division

conducted a search of three different shared file networks using an automated search based on the

FOIA request. *Id*. DOD OFOI also forwarded plaintiff's request to the Office of the Under

Secretary of Defense for Intelligence ("USD(I)"), which is the office responsible for the

implementation, direction, and guidance for DOD's counterintelligence reporting programs. *Id*.

at ¶ 5. USD(I) searched its files for documents responsive to plaintiff's request and located seven

documents, which DOD OFOI subsequently released to the plaintiff. *Id*. at ¶¶ 5, 7-8.

Plaintiff subsequently sent a letter to counsel for defendants inquiring as to the scope of

the search based on the absence from the response of TALON reports related to other protests

that had been included in a database published by MSNBC. *See* Ex. 5, Letter from James F.

Segroves to Samuel C. Kaplan, May 13, 2006, at 1. Counsel for defendants responded that

plaintiff had not requested all TALON reports, but rather had requested only documents

concerning "surveillance" of gay and lesbian groups. *See* Ex. 6, Letter from Samuel C. Kaplan

("Kaplan Letter") at 1; Ex. 3, Third Kammer Dec. ¶ 8. Because TALON reports do not reflect

"surveillance" within any reasonable meaning of the term, DOD's search had not encompassed

all TALON reports addressing events organized by gay and lesbian organizations, but rather only

documents concerning specific events and groups identified by plaintiff. *Id*.; Ex. 5, Kaplan

Letter at 1. However, rather than require plaintiff to file another FOIA request or litigate the

question, CIFA searched the removed TALON reports for reports containing any of the following

terms: "Albany," "discrimination," "discrim," "don't ask don't tell," "gay," "homosexual,"

"lesbian," lgbt," and "sexual." *See* Ex. 5, Kaplan Letter at 2; Ex. 3, Third Kammer Dec. at ¶ 8.

(The term "Albany" was searched because plaintiff had referred to protests at the University of

Albany in its May 13, 2006, letter.)  The search revealed an additional five TALON reports,

which OFOI subsequently released to the plaintiff with, again, minor redactions of sources,

coordinating agencies, and persons briefed locally.  *Id*.  The agency that requested those

redactions, however, subsequently withdrew its request, but determined that the decision as to a

subset of the redactions had to be made by the FBI.  *Id*. at ¶ 11.  The FBI had not yet made the

determination as of the date of filing this memorandum.  *Id*.  Defendants will soon supplement

this motion either with notification that the information has been released or with an explanation

as to the justification for withholding the information.

      The DIA also separately searched for documents responsive to plaintiff's request.  *See*

*generally* Ex. 4, Second Declaration of Brian S. Kinsey.  Specifically, the Chief of the Freedom

of Information Staff for the Defense Intelligence Agency ("DIA") tasked four directorates to

search their files for documents responsive to plaintiff's FOIA requests.  *Id*. at ¶ 4.  In addition

DIA conducted electronic searches of the two electronic correspondence databases that would be

likely to have responsive documents.  *Id*. at ¶ 6.  The searches used included terms such as "don't

ask, don't tell," SLDN, homosexual, and "Servicemembers Legal Defense Network."  *Id*. at ¶ 6.

The various searches of DIA files revealed no documents responsive to plaintiff's request.  *Id*.

**STANDARD OF REVIEW**

      Summary judgment is the procedural vehicle by which most FOIA actions are resolved.

*See  Miscavige v. IRS*, 2 F.3d 366, 369 (11th Cir. 1993) ("Generally, FOIA cases should be

handled on motions for summary judgment, once the documents in use are properly identified.");

*see also Matthews v. U.S. Dep't of Justive Executive Office for U.S. Attorneys*, No. 04-1689,

7

2006 WL 1194277, *2 (D.D.C. May 4, 2006) (same) (citing *Miscavige*, 2 F.3d at 368).  Summary

judgment is to be freely granted where, as here, there are no material facts genuinely at issue, and

the agency is entitled to judgment as a matter of law.  *See Alyeska Pipeline Serv. Co. v. EPA*, 856

F.2d 309, 314-15 (D.C. Cir. 1988); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir.

1981).

       To obtain summary judgment in the context of a lawsuit under the Freedom of

Information Act, an agency must "demonstrate that it 'conducted a search reasonably calculated

to uncover all relevant documents' and that any withheld material falls within a statutory

exemption." *Judicial Watch, Inc. v. DOJ*, 306 F. Supp. 2d 58, 64 (D.D.C. 2004) (quoting

*Weisberg v. Department of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)); *see also Oglesby v.*

*Department of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary

judgment the agency must show that it made a good faith effort to conduct a search for the

requested records, using methods which can be reasonably expected to produce the information

requested.").  A "'search need not be perfect, only adequate, and adequacy is measured by the

reasonableness of the effort in light of the specific request.'" *Gallace v. U.S. Dep't of*

*Agirculture*, 273 F. Supp. 2d 53, 57 (D.D.C. 2003) (quoting *Merropol v. Meese*, 790 F.2d 942,

956 (D.D.C. 2003)).  "There is no requirement that an agency search every record system, but the

agency must conduct a good faith, reasonable search of those systems of records likely to possess

the requested information."  *Brophy v. U.S. Dep't of Defense*, No. 05-360, 2006 WL 571901, *5

(D.D.C. March 8, 2006).  "The question is not whether other responsive documents may exist,

but whether the search itself was adequate." *Id*.  "An agency is not required to undertake a

search that is so broad as to be unduly burdensome." *See id*. at *6.

8

"To demonstrate the adequacy of the search, an agency 'may rely on reasonably detailed nonclusory affidavits submitted in good faith.'" *Judicial Watch, Inc. v. F.D.A.*, 407 F. Supp. 2d 70, 73 (D.D.C. 2005) (quoting *Weisberg*, 745 F.2d at 1485). The "affidavits, however, need not 'set forth with meticulous documentation the details of an epic search.'" *Judicial Watch v. F.D.A.*, 407 F. Supp. 2d at 73 (quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). Rather, the agency need only provide affidavits "that explain in reasonable detail the scope and method of the search conducted." *Id*. Agency "'affidavits are accorded a presumption of good faith . . . .'" *Judicial Watch v. F.D.A.*, 405 F. Supp. 2d at 5 (quoting *SafeCard Servs*, *Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

Under the FOIA, the court conducts a *de novo* review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions. *See* 5 U.S.C. § 552(a)(4)(B). The government bears the burden of justifying non-disclosure. *See McCutchen v. United States Dep't of Health & Human Servs.*, 30 F.3d 183, 185 (D.C. Cir. 1994). It may satisfy that burden through submission of an agency declaration that describes the withheld material with reasonable specificity as well as the reasons for non-disclosure, and, if necessary, a *Vaughn* index. *See United States Dep't of Justice v. Reporters' Comm. for Freedom of the Press*, 489 U.S. 749, 753 (1989).

<u>**ARGUMENT**</u>

**I.    DEFENDANTS CONDUCTED ADEQUATE SEARCHES**

    A.    <u>DOJ Conducted an Adequate Search</u>

DOJ's search for responsive documents satisfied its obligations under the Freedom of Information Act.  Pursuant to the standard practices of OIP and the seven other offices for which it processes requests, all staffers in the various offices were notified of the request and asked to search their files for responsive documents.  Pustay III Dec. ¶¶ 16-18.  OIP also reinforced these searches with two separate electronic searches of the official records repository of the OAG, ODAG, and OASG, which contains incoming and outgoing correspondence for those offices.  *Id.* at ¶ 14.  OLA also conducted an electronic search of its own database used to track legislative history files and related correspondence using various terms.  *Id.* at ¶ 17.  OIP also conducted an electronic search of its own database using a variety of search terms.  *Id.* at ¶ 18.

The FBI likewise conducted a thorough search of its files that was reasonably calculated to uncover all responsive documents.  *See generally* Ex. 2, Hardy Dec.  It used a variety of search terms related to plaintiff's request to search the subject indices of its Central Records System, which contains millions of records related to its law-enforcement responsibilities.  *Id.* at ¶¶ 23-32.  In addition, because of the FBI's participation in the work of the Silberman-Robb Commission, it conducted additional searches in eight offices based on the determination that those offices might contain records responsive to item number seven of plaintiff's request.  *Id.* at ¶¶ 31-32.  That search revealed additional responsive documents.  *Id.* at ¶ 33.

B.     DOD Conducted an Adequate Search

DOD's search also satisfied its obligations under the FOIA.  *See generally* Ex. 3,

Kammer Dec.  CIFA initially searched its database of TALON reports for documents related to

events specifically identified in plaintiff's request.  *Id*. at ¶ 4.  As a result of this search,

defendants produced three TALON reports, which, while not "surveillance," referred to the

specifically identified events.  *Id*. at ¶ 6.  Once plaintiff clarified that it viewed its request as

calling for all TALON reports addressing gay and lesbian groups, as opposed to all documents

related to "surveillance" of such groups, CIFA conducted an electronic search for all TALON

reports containing terms that were calculated to locate all reports addressing such organizations,

including  the words "discrimination," "discrim," "don't ask don't tell," "gay," "homosexual,"

"lesbian," lgbt," "sexual," and Albany.  *Id*. at ¶ 9.  USD(I), which is the organization responsible

for the implementation, direction, and guidance for DOD's counterintelligence reporting

programs, also searched its files for documents responsive to plaintiff's request as did the

director of the CIFA Communications office and the Chief of the Enterprise Operations Division.

*Id*. at ¶ 11.

## II.     PLAINTIFF WILL SHORTLY SUBMIT A SUPPLEMENTAL DECLARATION EXPLAINING WHETHER THERE ARE ANY CONTESTED WITHHOLDINGS AND, IF THERE ARE, THE BASIS FOR THE WITHHOLDINGS

Plaintiff has informed defendants that it does not object to the information withheld by

defendants, except that it is reserving judgment pending the filing of this motion as to DOD's

redaction of the source, coordinating agencies, and persons briefed locally from the TALON

reports pursuant to 5 U.S.C. § 552(b)(7)(D)-(E).  *See* Ex. 7, E-mail from James Segroves to

Samuel C. Kaplan, June 20, 2006.  The third-party agency that initially requested the redactions

has withdrawn its request.  *See* Ex. 3, Kammer Dec. at ¶ 11.   However, that agency determined

that the decision as to a subset of the redactions had to be made by the FBI.  *Id*.  The FBI had not

yet made the determination as of June 28, 2006.  *Id*.  Because there may be no contested

withholdings, this brief does not address the justification for any redactions or withholdings, and

DOD will submit a supplemental declaration through counsel when the FBI makes a final

determination.  *Id*.

**CONCLUSION**

For the foregoing reasons, defendants' motion should be granted.

Dated: June 28, 2006                                    Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

KENNETH L. WAINSTEIN
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


/s/ _____
SAMUEL C. KAPLAN (D.C. Bar No.
463350)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883, Rm. 7302
Washington, D.C.  20044
(202) 514-4686 phone
(202) 616-8202 fax
samuel.kaplan@usdoj.gov
Attorneys for Defendants