# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL )
DEFENSE NETWORK )
)
Plaintiff, )
)
v. ) Civil Action No. 1:06CV00200(RMC)
)
DEPARTMENT OF DEFENSE, et al. )
)
Defendants. )
)

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)    I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), at the Federal Bureau of Investigation

Headquarters ("FBIHQ") in Washington, D.C.  I have held this position since August 1, 2002.  Prior to

joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of

the Navy for Civil Law.  In that capacity, I had direct oversight of Freedom of Information Act

("FOIA") policy, procedures, appeals, and litigation for the Navy.  From October 1, 1980 to April 30,

2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA

matters.  I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)    In my official capacity as Section Chief of RIDS, I supervise approximately 240

employees who staff a total of ten (10) Units and a field operational service center unit whose collective

mission is to effectively plan, develop, direct and manage responses to requests for access to FBI

records and information pursuant to FOIA; Privacy Act; Executive Order 12958, as amended;

Presidential, Attorney General and FBI policies and procedures, judicial decisions, and other

Presidential and Congressional directives. The statements contained in this declaration are based upon

my personal knowledge, upon information provided to me in my official capacity and upon conclusions

and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the

FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5

U.S.C. § 552 and the Privacy Act of 1974, 5 U.S.C. § 552a. Specifically, I am aware of the treatment

which has been afforded the January 5, 2006, FOIA request of plaintiff, Servicemembers Legal

Defense Network ("SLDN"). I am also aware of the referral from the Department of Justice (DOJ),

Office of Information and Privacy (OIP) concerning this request. The FOIA request has been sub-

divided as FOIA Request Number 1037963, FOIA Request Number 1037964, FOIA Request

Number 1037965, and FOIA Request Number 1041231.

(4)     This declaration provides an explanation of the procedures used to search for records

responsive to plaintiff's request.

### CORRESPONDENCE RELATED TO PLAINTIFF'S REQUEST

(5)     By facsimile letter dated January 5, 2006, Christopher Wolf, on behalf of plaintiff,

submitted a FOIA request to FBIHQ for:

> 1.     Any and all documents concerning the FBI's surveillance of:
>
> > A.     meetings involving people and/or organizations discussing, considering
> > or stating opposition to "Don't Ask, Don't Tell";

B.  SLDN meetings, including, but not limited to, reports, video recordings, audio recordings and photographs;

C.  communications involving, but not necessarily between, SLDN directors, staff, clients, prospective clients, members and /or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

D.  meetings involving LGBT organizations, which include the following:

i.  a February 2005 protest at New York University involving the LGBT organization known as "OUTlaw"; and

ii.  an April 2005 demonstration at the University of California-Santa Cruz.

E.  communications involving, but not necessarily between, LGBT organizations and/or their employees, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

2.  Any and all documents related to or concerning how the FBI selected the targets of surveillance described in paragraph 1 above;

3.  Any and all documents related to or concerning what entities or personnel the FBI distributed information gathered under the surveillance described in paragraph 1 above;

4.  Any and all documents related to or concerning in any way the FBI's actual or supposed authority to engage in the surveillance described in paragraph 1 above, including, but not limited to, presidential orders, statutes, regulations or legal reviews conducted by DOJ or any other government agency;

5.  Any policies, procedures or manuals related to the surveillance described in paragraph 1 above;

6.  Any and all documents related to or concerning in any way investigations, inquiries or disciplinary proceedings initiated in response to any actual or potential violations of, or deviations from, any policy, procedure or manual

-3-

related to the surveillance described in paragraph 1 above; and

7.  Any and all documents related to or concerning a proposal authored by the presidential commission on intelligence chaired by Laurence H. Silberman and former Senator Charles S. Robb (D-VA) urging that the federal government be given greater authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States, and all documents responding or relating thereto.

(footnote omitted) (See **Attachment A.**)

(6)    By letter dated January 6, 2006, FBIHQ returned plaintiff's letter and advised that the FOIA provides for access to "reasonably described" Government records. Plaintiff was further advised that his letter did not contain enough descriptive information to permit a search of the FBI's records. Plaintiff was asked to provide information such as complete names of individuals, organizations or events, dates and places of birth and the approximate time frame of the information sought. (See **Attachment B.**)

(7)    By letter dated January 19, 2006, plaintiff responded to FBIHQ setting forth the reasons plaintiff's FOIA request satisfied the standard of specificity required of a request for records under FOIA. (See **Attachment C.**)

(8)    On February 8, 2006, FBIHQ acknowledged receipt of plaintiff's request in three letters that assigned a FOIA Request Number to three subject areas contained in requests 1 through 6 of plaintiff's request: FOIA Request Number 1037963 concerns the subject "Don't Ask, Don't Tell"; FOIA Request Number 1037964 concerns the subject "OUTlaw/2005 Protest at NY University"; FOIA Request Number 1037965 concerns the subject "University of California Demonstration-Santa Cruz 2005/Gay/Homosexual." (See **Attachments D, F, H.**)

-4-

### SUBSEQUENT CORRESPONDENCE FOR FOIA REQUEST NUMBER 1037963

(9)     By letter dated February 8, 2006, FBIHQ acknowledged receipt of plaintiff's request for information pertaining to the subject "Don't Ask, Don't Tell." Plaintiff was advised that the FBI was searching its indices to the Central Records System ("CRS") at FBIHQ for information pertaining to plaintiff's request and that plaintiff would be informed of the results of this search as soon as possible. Plaintiff was advised that his FOIA request was assigned Request Number 1037963. (See Attachment D.)

(10)     By letter dated February 15, 2006, FBIHQ advised plaintiff that in order to promptly respond to requests, the FBI concentrates on identifying main files in the CRS.  Plaintiff was advised that a search of the automated indices to the CRS at FBIHQ had located no responsive records for his request for information pertaining to "Don't Ask, Don't Tell." Plaintiff was advised that a search of the automated indices was also conducted for "Servicemembers Legal Defense Network (SLDN)" and no records were located.  Plaintiff was advised that it could file an administrative appeal by writing to the Office of Information and Privacy ("OIP") at the United States Department of Justice. (See Attachment E.)

### SUBSEQUENT CORRESPONDENCE FOR FOIA REQUEST NUMBER 1037964

(11)     By letter dated February 8, 2006, FBIHQ acknowledged receipt of plaintiff's request for information pertaining to the subject of "OUTlaw/2005 Protest at NY University," that is designated as FOIA Request Number 1037964.  Plaintiff was advised that the FBI was searching the indices to its CRS at FBIHQ for information pertaining to plaintiff's request and that plaintiff would be informed of the results as soon as possible. (See Attachment F.)

-5-

(12)    By letter dated February 17, 2006, FBIHQ advised plaintiff that in order to promptly respond to requests, the FBI concentrates on identifying main files in the CRS. Plaintiff was advised that no records responsive to his request were located by a search of the automated indices. Plaintiff was advised that it could file an administrative appeal by writing to OIP. (See **Attachment G.**)

### SUBSEQUENT CORRESPONDENCE FOR FOIA REQUEST NUMBER 1037965

(13)    By letter dated February 8, 2006, FBIHQ acknowledged receipt of plaintiff's FOIA request for information pertaining to the subject "University of California/April 2005 Demonstration/Gay/Homosexual," that is designated as FOIA Request Number 1037965. Plaintiff was advised that the FBI was searching the indices to its CRS at FBIHQ for information pertaining to plaintiff's request and that plaintiff would be informed of the results as soon as possible. (See **Attachment H.**)

(14)    By letter dated February 9, 2006, FBIHQ advised plaintiff that in order to promptly respond to requests, the FBI concentrates on identifying main files in the CRS. Plaintiff was advised that no records responsive to its request were located through a search of the automated indices. Plaintiff was advised that it could file an administrative appeal by writing to OIP. (See **Attachment I.**)

### SUBSEQUENT CORRESPONDENCE FOR FOIA REQUEST NUMBER 1041231

(15)    Request for records designated as #7 in plaintiff's January 5, 2006 letter was inadvertently overlooked by the FBI. Accordingly, by letter dated March 20, 2006, FBIHQ acknowledged receipt of plaintiff's FOIA request for information pertaining to the subject "Presidential Commission on Intelligence/Specific Documents," that is designated as FOIA Request Number 1041231. (See **Attachment J.**)

(16)  In a letter dated May 11, 2006, FBIHQ provided plaintiff an update on the status of his request for records. **(See Attachment K.)**

(17)  In a letter dated June 12, 2006, and hand-delivered on June 13, 2006, FBIHQ released 3 pages out of 7 pages reviewed from documents containing information responsive to plaintiff's request. **(See Attachment L.)** Certain information on the released pages, however, was determined to be not responsive to the request. That information was redacted, and designated "Misc. outside the scope." Information was also withheld under FOIA Exemption 5, 5 U.S.C. § 552(b)(5). The FBI stated that "[t]his is the first release of documents responsive to your request. There is other material to be reviewed, and any additional documents that can be released will be made available to you."

(18)  In a letter dated June 13, 2006, FBIHQ released 8 pages out of 13 pages reviewed from documents responsive to plaintiff's request. **(See Attachment M.)** Certain information on the released pages, however, was determined to be not responsive to the request. That information was redacted, and designated "Misc. outside the scope." Information was withheld under FOIA Exemptions 5, 6, and 7, 5 U.S.C. §§ 552(b)(5), (b)(6) and (b)(7)(C). Plaintiff was advised that these document were the remaining documents responsive to his request.

## REFERRAL FROM OFFICE OF INFORMATION AND PRIVACY

(19)  In a memorandum from the OIP to the FBI dated March 16, 2006, OIP referenced receipt of a FOIA request from plaintiff. As a result of plaintiff's request, OIP referred two documents, totaling ten pages, which originated with the FBI for direct response to plaintiff. OIP advised that the documents concern the Silberman-Robb Commission on the Intelligence Capabilities of the United

-7-

States Regarding Weapons of Mass Destruction ("Commission"). OIP advised the requester of this

referral. The FBI subsequently determined that these records were not responsive.

## SEARCH FOR RESPONSIVE RECORDS
## EXPLANATION OF THE FBI'S CENTRAL RECORDS SYSTEM

(20)    The Central Records System ("CRS"), which is used by the FBI to conduct searches in

response to FOIA and Privacy Act requests, enables it to maintain all information which it has acquired

in the course of fulfilling its mandated law enforcement responsibilities. The records maintained in the

CRS consist of administrative, applicant, criminal, personnel, and other files compiled for law

enforcement purposes. This system consists of a numerical sequence of files broken down according to

subject matter. The subject matter of a file may relate to an individual, organization, company,

publication, activity, or foreign intelligence matter. Certain records in the CRS are maintained at

FBIHQ. Records that are pertinent to specific field offices of the FBI are maintained in those field

offices.

(21)    Access to the CRS is obtained through the General Indices, which are arranged in

alphabetical order. The General Indices consist of index cards on various subject matters that are

searched either manually or through the automated indices. The entries in the General Indices fall into

two categories:

> (a)    A "main" entry -- A "main" entry, or "main" file, carries the name
> corresponding with a subject of a file contained in the CRS.

> (b)    A "reference" entry --"Reference" entries, sometimes called "cross-
> references," are generally only a mere mention or reference to an individual,
> organization, or other subject matter, contained in a document located in
> another "main" file on a different subject matter.

-8-

(22)    Access to the CRS files in FBI Field Offices is also obtained through the General

Indices (automated and manual), which are likewise arranged in alphabetical order, and consist of an

index on various subjects, including the names of individuals and organizations.

(23)    Searches made in the General Indices to locate records concerning a particular subject,

such as "Don't Ask, Don't Tell," are made by searching for that subject in the index. The subject-

matter search is literal. A successful subject-matter search therefore depends on the prudent selection

of search terms and the deliberate ordering of selected search terms. For example, a search for

"Homosexual" will identify files indexed with phrases beginning with the word "Homosexual," but not

phrases ending with the word "Homosexual."

(24)    On or about October 16, 1995, the Automated Case Support ("ACS") system was

implemented for all Field Offices, Legal Attaches ("Legats"), and FBIHQ. Over 105 million records

were converted from automated systems previously utilized by the FBI. The ACS consists of three

integrated, yet separately functional, automated applications that support case management functions for

all FBI investigative and administrative cases:

(a)  Investigative Case Management ("ICM") – ICM provides the ability to open,

assign, and close investigative and administrative cases as well as set, assign, and track leads. The

Office of Origin ("OO"), which sets leads for itself and other field offices, as needed, opens a case.

The field offices that receive leads from the OO are referred to as Lead Offices ("LOs") – formerly

known as Auxiliary Offices. When a case is opened, it is assigned a Universal Case File Number

("UCFN"), which is utilized by all FBI field offices, Legats, and FBIHQ that are conducting or assisting

in the investigation. Using a fictitious file number "70-PX-12345" as an example, an explanation of the

UCFN is as follows: "70" indicates the classification for the specific type of investigation, which in this instance is "Crime on a Government Reservation"; "PX" is the abbreviated form used for the OO of the investigation, which in this instance is the Phoenix Field Office; and "12345" denotes the individual case file number for the particular investigation.

(b) Electronic Case File ("ECF") – ECF serves as the central electronic repository for the FBI's official text-based documents. ECF supports the universal serial concept, in that only the creator of a document serializes it into a file. This provides a single-source entry of serials into the computerized ECF system. All _original_ serials are maintained in the OO case file.

(c) Universal Index ("UNI") – UNI continues the universal concepts of ACS by providing a complete subject/case index to all investigative and administrative cases. Only the OO is required to index; however, the LOs may index additional information as needed. UNI, an index of approximately 94.1 million records, functions to index names to cases, and to search names and cases for use in FBI investigations. Names of individuals or organizations are recorded with identifying applicable information such as date or place of birth, race, sex, locality, Social Security number, address, and/or date of event.

(25)     The decision to index names other than subjects, suspects, and victims is a discretionary decision made by the FBI Special Agent ("SA") assigned to work on the investigation, the Supervisory SA ("SSA") in the field office conducting the investigation, and the SSA at FBIHQ. The FBI does not index every name in its files; rather, it indexes only that information considered to be pertinent, relevant, or essential for future retrieval. Without a "key" (index) to this enormous amount of data, information essential to ongoing investigations could not be readily retrieved. The FBI files would thus be merely

archival in nature and could not be effectively used to serve the mandated mission of the FBI, which is

to investigate violations of federal criminal and national security statutes. Therefore, the General Indices

to the CRS files are the means by which the FBI can determine what retrievable information, if any, the

FBI may have in its CRS files on a particular subject matter or individual, i.e., "Don't Ask, Don't Tell."

(26)     The FBIHQ initiated multiple searches of its Automated Indices to the CRS to identify

any investigatory files maintained at FBIHQ.

(27)     With regard to Request # 1037963 ("Don't Ask, Don't Tell), the terms searched were:

"Don't Ask, Don't Tell," "Servicemembers Legal Defense Network," and "SLDN." This search failed

to locate any investigatory files or references responsive to plaintiff's request.

(28).     With regard to Request #1037964 ("OUTlaw/2005 Protest at NY University"), some

of the terms searched were: "New York University," "Homosexual," "OUTlaw/2005 Protest at NY

University," "OUTlaw at NYU," "OUTlaw Meetings New York University," "OUTlaw Surveillance

New York University," "OUTlaw Surveillance NYU," "OUTlaws," "OUTlaw New York University,"

"OUTlaw NY University," "OUTlaw Protest at NY University," "OUTlaw Protest at NYU," "Protest

NY University," "Protest at New York University 2005," "Protests at NYU," "Protest at New York

University," "NY University Protest 2005" "NYU Gays," "NYU Homosexuals," "NYU OUTlaw,"

"NYU February Protest," "NYU Surveillance," "NYU Protest," "SLDN at New York University,"

"SLDN Protest at NYU," "Surveillance at New York University," "Gay Protest at NYU," "2005

Protest at NY University," and "2005 OUTlaw Protest at New York University." This search failed to

locate any investigatory files or references responsive to plaintiff's request.

(29)     With regard to Request #1037965 ("University of California/April 2005

-11-

Demonstration/Gay/Homosexual"), the some of the terms searched were: "University of California,"

"Homosexual," "April 2005 Demonstration at the University of California-Santa Cruz," "2005

Demonstration/Gay/Homosexual," "Demonstrations," "SLDN at University of California Santa Cruz,"

"SLDN Protests at University of California Santa Cruz," "Surveillance at University of California Santa

Cruz," and "Gay Protest at University of California." This search failed to locate any investigatory files

or references responsive to plaintiff's request.

(30)    Request #1041231 ("Presidential Commission on Intelligence/Specific Documents")

asked for

> [a]ny and all documents related to or concerning a proposal authored
> by the presidential commission on intelligence chaired by Laurence H.
> Silberman and former Senator Charles S. Robb (D-VA) urging that the
> federal government be given greater authority to carry our domestic
> criminal investigations and clandestine operations against potential
> threats inside the United States, and all documents responding or
> relating thereto.

(See Attachment A.) The FBIHQ conducted a search of its Automated Indices to the CRS for

responsive records. The terms searched for this request were: "Presidential Commission on

Intelligence," "Proposals of Presidential Commission Intelligence," "Presidential Commission on

Intelligence Proposals," "Clandestine Operations Against the United States," and "Weapons of Mass

Destruction." This search failed to locate any main files or references responsive to plaintiff's request.

(31)    In light of the FBI's participation in the work of the Commission on the Intelligence

Capabilities of the United States Regarding Weapons of Mass Destruction ("Commission") chaired by

Laurence H. Silberman and Charles S. Robb, and the referral of two potentially responsive documents

to the FBI from OIP, the FBI determined that potentially responsive information might be found in the

files of certain offices that were involved with the work of the Commission.

(32)    For these reasons, the FBI asked eight offices at FBI Headquarters that would potentially have responsive records to Request #1041231 to search their files. We asked them to search for information related to the <u>Report to the President of the United States</u> issued by the Commission on March 31, 2005. Specifically, we asked the eight offices to search for information concerning the Commission's recommendation that the "Department of Defense's Counterintelligence Field Activity should have operational and investigative authority to coordinate and conduct counterintelligence activities throughout the Defense Department" based on plaintiff's reliance on a November 27, 2005 article in <u>The Washington Post</u> by Walter Pincus concerning the authority of the Counterintelligence Field Activity ("CIFA").[1] (<u>See</u> **Attachment A, p. 5).**

(33)    Eleven pages of responsive material has been released to the plaintiff with redactions made because information is not responsive to the request and pursuant to Exemptions 5, 6, and 7(C), 5 U.S.C. § 552 (b)(5), (b)(6) and (b)(7)(C). Based on my understanding that plaintiff does not object to the redactions, this declaration does not address them in greater detail.

---

[1]    The Pincus article states, in pertinent part:

> CIFA's abilities would increase considerably under the proposal being reviewed by the White House, which was made by a presidential commission on intelligence chaired by retired appellate court judge Laurence H. Silberman and former senator Charles S. Robb (D-Va.). The commission urged that CIFA be given authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States.

(<u>See</u> **Attachment N).**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Attachments A through N attached hereto are true and correct.

Executed this 26ᵗʰ day of June, 2006.

DAVID M. HARDY
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
Washington, D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL          )
DEFENSE NETWORK               )
                              )
          Plaintiff,          )
                              )
          v.                  )          Civil Action No. 1:06CV00200
                              )
DEPARTMENT OF DEFENSE, et al. )
                              )
          Defendants.         )
                              )

# ATTACHMENT   A

JAN 05 2006 12:33 FR PROSKAURE ROSE LLP 202 339 1479 TO 0824#00019#041#3 P.01

# PROSKAUER ROSE LLP

1233 Twentieth Street NW, Suite 800
Washington DC 20036-2396
Telephone 202.416.6800.
Fax 202.416.6899

NEW YORK
LOS ANGELES
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

| | | | | |
|---|---|---|---|---|
| Date | January 5, 2006 | Client-Matter | 00019-041 | **Fax Transmittal** |
| Total Pages (including Cover) | 10 | | | |
| From | | Christopher Wolf | | |
| Sender's Voice Number | 202.416.6818 | | Sender's Room Number | DC |
| Sender's Email Address | cwolf@proskauer.com | | Main Fax Number | 202.416.6899 |
| To: | Service Request Unit, Record Information/Dissemination Section | | Fax No.: | (202) 324-3752 |
| Company: | Federal Bureau of Investigation | | Voice No.: | (202) 324-5520 |

Message

## *FREEDOM OF INFORMATION ACT REQUEST*
## *(EXPEDITED PROCESSING REQUESTED)*

**Confidentiality Note:** This message is confidential and intended only for the use of the addressee(s) named above. It may contain legally privileged material. Dissemination, distribution or copying of this message, other than by such addressee(s), is strictly prohibited. If you have received this message in error, please immediately notify us by telephone and return the original to us at the address above. We will reimburse you for the cost of the telephone call and postage. Thank you.

1233 Twentieth Street NW
Suite 800
Washington, DC 20036-2396
Telephone 202.416.6800
Fax 202.416.6899

NEW YORK
LOS ANGELES
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

# PROSKAUER ROSE LLP

Christopher Wolf
Member of the Firm

Direct Dial 202.416.6818
cwolf@proskauer.com

January 5, 2006

**Via Telecopy & Certified Mail, Return Receipt Requested**

Federal Bureau of Investigation
Record Information/Dissemination Section
Service Request Unit, Room 6359
935 Pennsylvania Avenue, NW
Washington, DC 20535

Re:    Freedom of Information Act Request (Expedited Processing Requested)

Dear Sir or Madam:

This letter constitutes a request for records on behalf of the Servicemembers Legal Defense Network pursuant to the Freedom of Information Act, 5 U.S.C. § 552, and regulations promulgated thereunder by the Department of Justice, 28 C.F.R. part 16. In addition, other organizations have asked that the Servicemembers Legal Defense Network submit this request on their behalf. These groups include Gay & Lesbians Against Defamation; the Gay and Lesbian Medical Association; the International Gay and Lesbian Human Rights Commission; the LA Lesbian & Gay Center; the Lambda Legal Defense and Education Fund; Lambdas, Chicago–Kent College of Law; the Mautner Project; the National Coalition of Anti-Violence Projects; the National Youth Advocacy Coalition; Outlaws, University of Michigan School of Law; Pride at Work, AFL-CIO; QLaw, University of Wisconsin School of Law; OUTLAW, Stanford Law School; and the Human Rights Campaign.

## I.    DEFINITIONS

As used throughout this request:

1.    "FBI" means the Federal Bureau of Investigation, a component of the Department of Justice;

2.    "Document" and/or "record" includes all handwritten, typed or printed material, and all magnetic, electronic or other records or documentation of any kind or description including, without limitation, agreements, contracts, correspondence, issuances, instructions, ledger entries or non-ledger bookkeeping documentation,

JAN 05 2006 12:33 FR PROSKAUER ROSE LLP 202 338 1479 TO 08..#00019#041#3 P.03

## PROSKAUER ROSE LLP

Service Request Unit
January 5, 2006
Page 2

> letters, memoranda, e-mails, notations of telephone conversations, notes, and any other records, including drafts and copies not identical to the originals, however produced or reproduced, and all compilations of data from which information can be obtained, and any and all writings or recordings of any type or nature in your possession, custody or control, including those in the possession, custody or control of any and all Department of Justice personnel, administrators, attorneys, agents or contractors, whether or not prepared by Department of Justice personnel, administrators, attorneys, agents or contractors;

3.  "DOJ" means the Department of Justice;

4.  "Don't Ask, Don't Tell" means the homosexual conduct policy enacted by Congress in 1993, which is currently codified at 10 U.S.C. § 654 and implemented through Department of Defense Directives 1304.26, 1332.14, 1332.30, and 1332.40;

5.  "FOIA" means the Freedom of Information Act, 5 U.S.C. § 552;

6.  "LGBT organizations" means organizations representing the interests of lesbians, gay men, bisexuals and/or transgendered people;

7.  "Meeting(s)" includes meetings, symposia, conferences, demonstrations and/or rallies, whether in-person or conducted via electronic or other means;

8.  "SLDN" means the Servicemembers Legal Defense Network; and

9.  "VoIP" means Voice over Internet Protocol.

## II.    RECORDS REQUESTED

1.  Any and all documents concerning the FBI's surveillance[1] of:

    A.   meetings involving people and/or organizations discussing, considering or stating opposition to "Don't Ask, Don't Tell";

---

[1]    This request includes surveillance conducted, directed, supervised or recommended by FBI personnel, as well as surveillance performed by non-FBI personnel (e.g., military personnel or local law enforcement), the products of which were forwarded to the FBI. This request also includes any and all documents concerning proposed surveillance of the groups listed in paragraph 1.

JAN 05 2006 12:34 FR PROSKAU..2 ROSE LLP 202 338 1479 TO 08. /00019#041#3 P.04

**PROSKAUER ROSE LLP**

Service Request Unit
January 5, 2006
Page 3

    B.    SLDN meetings, including, but not limited to, reports, video recordings, audio recordings and photographs;

    C.    communications involving, but not necessarily between, SLDN directors, staff, clients, prospective clients, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

    D.    meetings involving LGBT organizations, which include the following:

        i.    a February 2005 protest at New York University involving the LGBT organization known as "OUTlaw"; and

        ii.    an April 2005 demonstration at the University of California-Santa Cruz.

    E.    communications involving, but not necessarily between, LGBT organizations and/or their employees, members and/or prospective members, including, but not limited to, in-person communications, letters or communications carried out via telephone, e-mail, instant messaging, VoIP or other Internet-based technologies;

2.    Any and all documents related to or concerning how the FBI selected the targets of surveillance described in paragraph 1 above;

3.    Any and all documents related to or concerning what entities or personnel the FBI distributed information gathered under the surveillance described in paragraph 1 above;

4.    Any and all documents related to or concerning in any way the FBI's actual or supposed authority to engage in the surveillance described in paragraph 1 above, including, but not limited to, presidential orders, statutes, regulations or legal reviews conducted by DOJ or any other government agency;

5.    Any policies, procedures or manuals related to the surveillance described in paragraph 1 above;

6.    Any and all documents related to or concerning in any way investigations, inquiries or disciplinary proceedings initiated in response to any actual or

JAN 05 2006 12:34 FR PROSKAU.... ROSE LLP 202 338 1479 TO .082 .00019#041#3 P.05

## PROSKAUER ROSE LLP

Service Request Unit
January 5, 2006
Page 4

> potential violations of, or deviations from, any policy, procedure or manual
> related to the surveillance described in paragraph 1 above; and

7. Any and all documents related to or concerning a proposal authored by the
   presidential commission on intelligence chaired by Laurence H. Silberman and
   former Senator Charles S. Robb (D-VA) urging that the federal government be
   given greater authority to carry out domestic criminal investigations and
   clandestine operations against potential threats inside the United States, and all
   documents responding or relating thereto.

## III.   EXPEDITED PROCESSING REQUEST

Expedited processing of this FOIA request is warranted because (1) the records being requested
are urgently needed and (2) SLDN is an organization "primarily engaged in disseminating
information." *See* 5 U.S.C. § 552(a)(6)(E)(i)(II), (v)(II); 28 C.F.R. § 16.5(d)(1)(ii). In addition,
expedited processing should be granted because this FOIA request concerns a matter of
widespread and exceptional media interest in which there exist possible questions about the
government's integrity which affect public confidence, and because failure to grant expedited
processing may result in an imminent loss of due process rights. *See* 28 C.F.R. § 16.5(d)(1)(iii)-
(iv).

### A.   The Records Requested Are Urgently Needed

Under DOJ regulations, this FOIA request implicates an urgent matter of public concern about
activity of the federal government—namely, the federal government's warrantless surveillance
of citizens and activist groups within the United States. *See ACLU v. U.S. Dep't of Justice*, 321
F. Supp. 2d 24, 29 (D.D.C. 2004) (finding that section 215 of the Patriot Act, which substantially
expanded the powers of the FBI under the Foreign Intelligence Surveillance Act of 1978,
"unquestionably implicates important individual liberties and privacy concerns which are of
immediate public interest"). Such surveillance has not only included LGBT organizations, *see*,
*e.g.*, Anthony Glassman, *The Pentagon is spying on 'don't ask' protestors*, Gay People's Chron.,
Dec. 23, 2005; David Yaffett, *Pentagon calls gay student groups 'credible threat'*, Dallas Voice,
Dec. 23, 2005; Andrew Keegan, *Peeping Pentagon?*, Wash. Blade, Dec. 23, 2005, it also appears
to have encompassed other types of organizations critical of federal government policies, *see*.
*e.g.*, Kevin Deutsch, *Activist group plans to sue over spying*, Miami Herald, Dec. 23, 2005, at
B8; Mike Clary, *Target of Spying Demands Inquiry*, Sun-Sentinel (Fort Lauderdale, Fla.), Dec.
21, 2005, at 1B; Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times,
Dec. 20, 2005, at A1.

Moreover, the recent widespread and sustained media coverage of the federal government's
domestic surveillance activities provides further evidence that the information sought by SLDN

JAN 05 2006 12:35 FR PROSKAU... ROSE LLP 202 338 1479 TO 082. J0019#041#3 P.06

**PROSKAUER ROSE LLP**

Service Request Unit
January 5, 2006
Page 5

is "urgently needed" and of current public concern. *See, e.g.,* Carol D. Leonnig, *Surveillance Court Is Seeking Answers,* Wash. Post, Jan. 5, 2006, at A2; Scott Shane, *Key Democrat Says Spying Violated Law,* N.Y. Times, Jan. 5, 2006, at A16; Dafna Linzer, *Secret Surveillance May Have Occurred Before Authorization,* Wash. Post, Jan. 4, 2006, at A3; Eric Lichtblau & Scott Shane, *Files Say Agency Initiated Growth of Spying Effort,* N.Y. Times, Jan. 4, 2006, at A1; Lisa Rein, *Bush Defends Spying Program As 'Necessary' to Protect U.S.,* Wash. Post, Jan. 2, 2006, at A2; Eric Lichtblau, *Bush Defends Spy Program and Denies Misleading Public,* N.Y. Times, Jan. 2, 2006, at A11; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program,* N.Y. Times, Jan. 1, 2006, at A1; Eric Lichtblau & James Risen, *Defense Lawyers in Terror Cases Plan Challenges Over Spy Efforts,* N.Y. Times, Dec. 28, 2005, at A1; David Ignatius, Op-Ed, *Eavesdropping and Evading the Law,* Wash. Post, Dec. 28, 2005, at A21; Eric Lichtblau & James Risen, *Spy Agency Mined Vast Data Trove, Officials Report,* N.Y. Times, Dec. 24, 2005, at A1; Eric Mink, Editorial, *Who's Listening out there?,* St. Louis Post-Dispatch, Dec. 21, 2005, at C13; Walter Pincus, *Pentagon's Intelligence Authority Widens,* Wash. Post, Dec. 19, 2005, at A10; Lisa Myers et al., *Senator Demands Investigation of Spy Database,* MSNBC.com, Dec. 15, 2005, http://www.msnbc.msn.com/id/10481600; Walter Pincus, *Pentagon Will Review Database on U.S. Citizens,* Wash. Post, Dec. 15, 2005, at A1; Lisa Meyers et al., *Is the Pentagon spying on Americans?,* MSNBC.com, Dec. 14, 2005, http://msnbc.msn.com/id/10454316; *Pentagon May Be Tracking Activists,* L.A. Times, Dec. 14, 2005, at A22; Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity,* Wash. Post, Dec. 11, 2005, at A12; Walter Pincus, *Pentagon Expanding Its Domestic Surveillance Activity,* Wash. Post, Nov. 27, 2005, at A6.

Any delay in processing this FOIA request may decrease the value of the information sought. For example, members of the Senate Judiciary Committee have made clear their intention to raise the issue of domestic surveillance in their upcoming hearings on the nomination of Judge Samuel A. Alito to the position of Associate Justice of the United States Supreme Court, which are scheduled to begin on January 9, 2006. *See* Jo Becker & Christopher Lee, *Alito Urged Wiretap Immunity,* Wash. Post, Dec. 24, 2005, at A1 (noting Senate Judiciary Committee Chairman Arlen Specter's (R-PA) intention to "press Alito for his views" on domestic wiretapping); Adam Liptak & David E. Rosenbaum, *Alito Memo in '84 Favored Immunity for Top Officials,* N.Y. Times, Dec. 24, 2005, at A12 (noting Senator Charles Schumer's (D-NY) intention to question Judge Alito on the issue of warrantless domestic wiretapping). This same committee has also indicated that it will hold separate hearings on the issue of domestic surveillance. *See* Charles Hurt, *Democrats to hit White House, Republicans on privacy issues,* Wash. Times, Jan. 3, 2006, at A1; Eric Lichtblau & James Risen, *Justice Deputy Resisted Parts of Spy Program,* N.Y. Times, Jan. 1, 2006, at A1; Eric Lichtblau, *Officials Want to Expand Review of Domestic Spying,* N.Y. Times, Dec. 25, 2005, at A28. Therefore, the records sought by this FOIA request are needed in a timely fashion to help produce an informed debate in Congress about the proper scope of domestic surveillance activities by entities such as the FBI.

PROSKAUER ROSE LLP

Service Request Unit
January 5, 2006
Page 6

*See ACLU*, 321 F. Supp. 2d at 30-31 (noting that the need for informed congressional debate may justify expedited processing).

### B.    SLDN Qualifies as an Organization "Primarily Engaged in Disseminating Information to the Public"

SLDN is a national, non-profit watchdog and policy organization dedicated to ending discrimination against, and harassment of, United States military personnel under "Don't Ask, Don't Tell." As the most prominent organization in the United States dedicated to protecting the rights of LGBT servicemembers, SLDN publishes periodic "action alerts" that are distributed electronically to over 50,000 persons. Among other things, these "action alerts" apprise SLDN members of developments in the fight to overturn "Don't Ask, Don't Tell."

SLDN also maintains a website on the World Wide Web, which is located at http://www.sldn.org. SLDN's website includes resources for servicemembers and the press explaining the history of "Don't Ask, Don't Tell" and its legal and lobbying efforts to see it overturned. For a two-day period following recent revelations regarding the federal government's domestic surveillance activities, traffic on SLDN's website swelled to 45,000 "hits," up from normal monthly traffic of 25,000 hits.

SLDN also hosts a weblog, or "blog," that allows individuals to follow SLDN's efforts to end discrimination in the armed forces. The official SLDN blog includes articles by SLDN staff, supporters and clients impacted by "Don't Ask, Don't Tell." In addition, SLDN disseminates numerous informational releases to the public and the press on the aforementioned issues via its website and otherwise, and is a frequent source of information on these issues for both the news media and the federal government itself. *See* U.S. Gov't Accountability Office, *Military Personnel: Financial Costs and Loss of Critical Skills Due to DOD's Homosexual Conduct Policy Cannot Be Completely Estimated* 6 n.17 (2005) (citing SLDN statistics for the number of servicemembers separated from military service under "Don't Ask, Don't Tell" and directing readers to SLDN's website). SLDN also publishes more than 6,000 copies of its quarterly reports detailing the organization's progress in overturning "Don't Ask, Don't Tell." The fact that SLDN does not publish a newspaper or broadcast a television news report does not disqualify it from receiving expedited processing. *See ACLU*, 321 F. Supp. 2d at 29 n.5; *cf. Nat'l Sec. Archive v. Dep't of Defense*, 880 F.2d 1381, 1385-86 (D.C. Cir. 1989); *EPIC v. Dep't of Defense*, 241 F. Supp. 2d 5, 14 (D.D.C. 2003).

**PROSKAUER ROSE LLP**

Service Request Unit
January 5, 2006
Page 7

    **C.**    **The Records Requested Concern a Matter of Widespread and Exceptional Media Interest in Which There Exist Possible Questions About the Government's Integrity**

As evidenced by the numerous media reports cited above, the records sought by this FOIA request concern a matter of widespread and exceptional media interest—specifically, the federal government's alleged warrantless surveillance of United States citizens, residents and domestic organizations. These alleged surveillance activities taken by the federal government raise numerous questions about the government's integrity that could significantly affect public confidence in the federal government, since, as again noted in the media reports cited above, any such warrantless surveillance may have been carried out in violation of federal law and in violation of rights guaranteed by the United States Constitution. The existence of widespread media interest, and the questions these issues raise about the integrity of the federal government, provide another independent basis upon which our request for expedited processing should be granted. *See* 28 C.F.R. § 16.5(d)(1)(iv).

    **D.**    **Failure to Grant Expedited Processing May Result in an Imminent Loss of Due Process Rights**

DOJ regulations also provide that expedited processing should be granted in cases involving a loss of substantial due process rights. *See* § 16.5(d)(1)(iii). Domestic surveillance of LGBT organizations such as SLDN may have infringed, and may continue to infringe, upon the free speech, free association and privacy rights of those individuals or entities that were, or currently are, the subject of such surveillance. Any delay in processing SLDN's request for documents may compromise the significant interests at stake by delaying SLDN, and therefore the public at large, from understanding the full scope of any government violations of SLDN's and other LGBT organizations' constitutional rights. *See ACLU*, 321 F. Supp. 2d at 30 ("Because the records that plaintiffs seek relate to current surveillance efforts, the potential invasion of the public's privacy interests is of immediate concern, weighing in favor of a finding of expediency."). Therefore, an imminent loss of due process rights may be suffered if the above FOIA request is not processed on an expedited basis.

## IV.   FEE WAIVER REQUEST

Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 28 C.F.R. § 16.11(k), we also request a waiver of all fees associated with responding to this FOIA request. The statute and regulations authorize a waiver of fees where disclosure of the information requested (1) is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of DOJ and (2) is not primarily in the commercial interest of the requestor. SLDN's FOIA request satisfies both criteria.

JAN 05 2006 12:37 FR PROSK+  .E ROSE LLP 202 336 1479 TO 08L #00019#041#J P.09

**PROSKAUER ROSE LLP**

Service Request Unit
January 5, 2006
Page 8


A.    **Disclosure of the Records Sought Is in the Public Interest**

SLDN's FOIA request seeks information regarding domestic surveillance conducted by the federal government that, as noted above, has drawn considerable attention and criticism in the past few weeks from members of Congress and the media. Disclosure of the records requested will help the general public understand the full scope and extent to which the FBI has been collecting information against SLDN and other LGBT organizations within the United States.

SLDN's FOIA request also seeks meaningful information not already in the public domain. *See* 28 C.F.R. § 16.11(k)(2)(ii). The general public has shown great interest in recent revelations regarding domestic surveillance conducted by the federal government. SLDN will use its electronic communication capabilities to disseminate to the general public information collected as a result of its FOIA request. *See* § 16.11(k)(2)(iii). As previously noted, SLDN has been asked by numerous other organizations to submit this FOIA request on their behalf. Needless to say, should SLDN discover through its FOIA request that these groups have indeed been the target of domestic surveillance, SLDN will forward such information to these respective groups in a timely fashion.

The public currently understands very little about the extent to which DOJ and its components, such as the FBI, have observed groups and individuals in the United States critical of federal government policies. SLDN's FOIA request, and the subsequent dissemination of the information obtained as a result of that request, counsels in favor of granting a fee waiver. *See* § 16.11(k)(2)(iv).

B.    **Disclosure of the Records Sought Is Not Primarily in SLDN's Commercial Interest**

In order to qualify for a fee waiver, disclosure of the information sought cannot be "primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11(k)(1)(ii). In making this determination, DOJ regulations provide that two factors are to be considered: (1) the existence and magnitude of the requestor's commercial interest, and (2) the primary interest in disclosure. 28 C.F.R. § 16.11(k)(3)(ii). As noted above, SLDN is a national, non-profit policy organization dedicated to ending discrimination against, and harassment of, United States military personnel under "Don't Ask, Don't Tell." SLDN has no commercial interest in the records sought by this FOIA request. Instead, by submitting this FOIA request, SLDN hopes to obtain information in order to educate the general public regarding the extent to which domestic surveillance has been used against LGBT organizations and other organizations that disagree with policies of the federal government.

JAN 05 2006 12:37 FR PROSKAUER ROSE LLP 202 338 1479 TO 0824=00019#041#3 P.10

**PROSKAUER ROSE LLP**

Service Request Unit
January 5, 2006
Page 9

### V.    REQUEST FOR "REPRESENTATIVE OF THE NEWS MEDIA" FEE STATUS

In the event that the FBI determines that SLDN's FOIA request does not qualify for a fee waiver, we would request the SLDN be afforded "representative of the news media" fee status pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and 28 C.F.R. § 16.11(d)(1). A "representative of the news media" is an entity that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn raw materials into a distinct work, and distributes that work to an audience." *Nat'l Sec. Archive*, 880 F.2d at 1387. SLDN qualifies as a "representative of the news media" because it uses multiple channels, including its website, email lists, newsletters and print media, to educate the general public and federal policymakers about "Don't Ask, Don't Tell" and its shortcomings. The fact that its principal means of educating persons is via the Internet has no bearing on whether SLDN qualifies as a "representative of the news media." *See EPIC*, 241 F. Supp. 2d at 14 (explaining that the fact that an entity distributes its publication "via Internet to subscribers' email addresses does not change the [news media] analysis").

* * *

I thank you for your prompt attention to this matter. In accordance with 5 U.S.C. § 552(a)(6)(E)(ii)(I) and 28 C.F.R. § 16.5(d)(4), we expect your determination of our request for expedited processing within ten (10) calendar days and your determination of our request for records within twenty (20) days. We also expect the release of all segregable portions of otherwise exempt material. If our request for documents is denied in whole or in part, we ask that you justify all deletions by reference to specific exemptions under FOIA.

If you have any questions, please feel free to call me at (202) 416-6818. I hereby certify that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully yours,

Christopher Wolf

cc:     C. Dixon Osburn, SLDN Executive Director

** TOTAL PAGE.10 **

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICEMEMBERS LEGAL<br>DEFENSE NETWORK<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   Civil Action No. 1:06CV00200<br>)<br>)<br>)<br>)<br>)<br>) |

# ATTACHMENT  B



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

January 6, 2006

Mr. Christopher Wolf
Proskauer Rose LLP
Suite 800
1233 Twentieth Street Northwest
Washington, D. C.  200036-2396

Dear Mr. Wolf:

This is in further response to your Freedom of Information Act (FOIA).

The FOIA provides for access to Government records where the records sought are "reasonably described" [Title 5, United States Code, Section 552(a)(3)(A)].  Your letter does not contain enough descriptive information to permit a search of our records. In accordance with Title 28, Code of Federal Regulations, Part 16.3(b), please provide us more specific information.  Any information that would help locate the records, such as complete names of individuals, organizations or events, dates and places of birth and the approximate time frame of the information sought, would be appreciated.

Your letter is being returned to you.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL          )
DEFENSE NETWORK               )
                              )
          Plaintiff,          )
                              )
          v.                  )          Civil Action No. 1:06CV00200
                              )
DEPARTMENT OF DEFENSE, et al. )
                              )
          Defendants.         )
                              )


# ATTACHMENT   C



**PROSKAUER ROSE LLP**

1233 Twentieth Street NW
Suite 800
Washington, DC 20036-2396
Telephone 202 416 6800
Fax 202 416,6899

NEW YORK
LOS ANGELES
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS

Christopher Wolf
Member of the Firm

Direct Dial 202 416 6818
cwolf@proskauer.com

January 19, 2006

<u>**Via Telecopy & Certified Mail, Return Receipt Requested**</u>

David M. Hardy
Section Chief
Record/Information Dissemination Section
Records Management Division
Federal Bureau of Investigation
935 Pennsylvania Avenue, NW
Washington, DC 20535-0001

Re:    <u>January 5, 2006 Freedom of Information Act Request</u>

Dear Mr. Hardy:

On January 5, 2006, we submitted to your office a request for records on behalf of the
Servicemembers Legal Defense Network ("SLDN") pursuant to the Freedom of Information Act
("FOIA"), 5 U.S.C. § 552, and regulations promulgated thereunder by the Department of Justice
(the "Department"), 28 C.F.R. part 16. On January 17, 2006, we received a letter from you dated
January 6, 2006, in which you informed us that our FOIA request did not contain enough
"descriptive information" to permit a search of your records. You therefore returned our FOIA
request in its entirety and suggested that we provide you with "[a]ny information that would help
locate the records, such as complete names of individuals, organizations or events, dates and
places of birth and the approximate time frame of the information sought . . . ."

As your letter correctly states, a FOIA request must "reasonably describe" the records sought.
*See* 5 U.S.C. § 552(a)(3)(A). However, a FOIA request need not specify in exacting detail the
records sought in order to satisfy § 552(a)(3)(A), for the "reasonably describes" requirement is a
liberal standard that was not intended to obstruct public access to agency records. *See Truitt v
Dep't of State*, 897 F.2d 540, 545 n.35 (D.C. Cir. 1990) (citing S. Rep. No. 93-854, at 10 (1974)).
To that end, a description of requested documents is sufficient if it enables a professional
employee of the agency who is familiar with the subject area of the request to locate the records
with a reasonable amount of effort. *Id.* at 545 n.36 (citing H.R. Rep. No. 93-876, at 5-6 (1974),
reprinted in 1974 U.S.C.C.A.N. 6267, 6271); *see also* 28 C.F.R. § 16.3(b) (instructing that a

**PROSKAUER ROSE LLP**

David M. Hardy
January 19, 2006
Page 2

request must "describe the records [sought] in enough detail to enable Department personnel to locate them with a reasonable amount of effort").

Among other things, our FOIA request sought documents relating to the Federal Bureau of Investigation's ("FBI's") surveillance of meetings and communications involving SLDN and other persons or organizations opposed to the homosexual conduct policy enacted by Congress in 1993, more commonly known as "Don't Ask, Don't Tell." By identifying a specific organization (SLDN) and a well-known political issue (opposition to "Don't Ask, Don't Tell"), our FOIA request contained the requisite specificity to allow the FBI to search its records. In fact, the copy of our FOIA request you returned bears markings indicating that your staff recognized these specific identifiers, as the phrase "Don't Ask, Don't Tell" and "SLDN meeting" were both underlined in green ink. Moreover, in requesting documents related to the FBI's surveillance of organizations representing the interest of lesbians, gay men, bisexuals and/or transgendered persons, our FOIA request listed two specific examples to help guide your search: (1) a February 2005 protest at New York University by a group known as "OUTlaw" and (2) an April 2005 protest at the University of California-Santa Cruz. In light of the foregoing, your assertion that we did not include enough "descriptive information" is truly puzzling.

We believe that our FOIA request satisfied § 552(a)(3)(A) by providing your office with sufficient information to enable a professional employee of the FBI who is familiar with the subject area of our request to locate the records sought with a reasonable amount of effort. We therefore ask that you process our request for records as soon as possible. Enclosed please find a copy of the FOIA request you returned. In addition, because our FOIA request included a request for expedited processing, we also ask that you advise us as soon as possible regarding your determination of that request.

If you have any questions, please feel free to call me at (202) 416-6818. Please be advised that effective January 23, 2006, our offices will be moving to 1001 Pennsylvania Avenue, NW, Suite 400 South, Washington, DC 20004-2533. Our telephone and facsimile numbers will remain the same. We look forward to learning your decision.

Sincerely,

Christopher Wolf

cc:    C. Dixon Osburn, SLDN Executive Director

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) | |
| Defendants. | ) ) ) | |

# ATTACHMENT   D



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

*February 8, 2006*

CHRISTOPHER WOLF ESQ
PROSKAUER ROSE LLP
SUITE 800
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036 2396

Request No.: 1037963- 000
Subject: DON'T ASK, DON'T TELL

Dear Mr. Wolf:

☒   This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI. The FOIA number listed above has been assigned to your request.

☐   For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐   To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐   If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒   We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐   Processing delays have been caused by the large number of requests received by the FOIA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
    Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:06CV00200 ) |
| DEPARTMENT OF DEFENSE, et al. | ) ) |
| Defendants. | ) ) ) |

# ATTACHMENT   E



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 15, 2006

CHRISTOPHER WOLF ESQ
PROSKAUER ROSE LLP
SUITE 800
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036 2396

Request No.: 1037963- 000
Subject: DON'T ASK, DON'T TELL

Dear Mr. Wolf:

This is in response to your Freedom of Information Act (FOIA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the Central Records System at FBI Headquarters. No records responsive to your FOIA request were located by a search of the automated indices. A search was also conducted on Servicemembers Legal Defense Network (SLDN) and no records were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530, within sixty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) ) |
| Defendants. | ) ) |

# ATTACHMENT  F



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

*February 8, 2006*

CHRISTOPHER WOLF ESQ
PROSKAUER ROSE LLP
SUITE 800
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036 2396

Request No.: 1037964- 000
Subject: OUTLAW/2005 PROTEST AT NY
UNIVERSITY

Dear Mr. Wolf:

☒    This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI. The FOIA number listed above has been assigned to your request.

☐    For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒    We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the FOIA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) |
| Defendants. | ) ) ) |

# ATTACHMENT   G



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

February 17, 2006

CHRISTOPHER WOLF ESQ
PROSKAUER ROSE LLP
SUITE 800
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036 2396

Request No.: 1037964- 000
Subject: OUTLAW/2005 PROTEST AT NY
UNIVERSITY

Dear Mr. Wolf:

This is in response to your Freedom of Information-Act (FOIA) request noted above.

To promptly respond to our requests, we concentrate on identifying main files in the Central Records System at FBI Headquarters. No records responsive to your FOIA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, Northwest, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIA number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL                    )
DEFENSE NETWORK                         )
                                        )
            Plaintiff,                  )
                                        )
        v.                              )        Civil Action No. 1:06CV00200
                                        )
DEPARTMENT OF DEFENSE, et al.           )
                                        )
            Defendants.                 )
                                        )

# ATTACHMENT   H



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

*February 8, 2006*

CHRISTOPHER WOLF ESQ
PROSKAUER ROSE LLP
SUITE 800
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036 2396

Request No.: 1037965- 000
Subject: UNIVERSITY OF CALIFORNIA/
APRIL 2005 DEMONSTRATION/ GAY/
HOMOSEXUAL

Dear Mr. Wolf:

☒     This acknowledges receipt of your Freedom of Information Act (FOIA) request to the FBI. The FOIA number listed above has been assigned to your request.

☐     For an accurate search of our records, please provide the complete name, alias, date and place of birth for the subject of your request. Any other specific data you could provide such as prior addresses, or employment information would also be helpful. If your subject is deceased, please include date and proof of death.

☐     To make sure information about you is not released to someone else, we require your notarized signature or, in place of a notarized signature, a declaration pursuant to Title 28, United States Code 1746. For your convenience, the reverse side of this letter contains a form which may be used for this purpose.

☐     If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for your arrest record, please follow the enclosed instructions in Attorney General Order 556-73. You must submit fingerprint impressions so a comparison can be made with the records kept by CJIS. This is to make sure your information is not released to an unauthorized person.

☒     We are searching the indices to our central records system at FBI Headquarters for the information you requested, and will inform you of the results as soon as possible.

☐     Processing delays have been caused by the large number of requests received by the FOIA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL )
DEFENSE NETWORK )
)
        Plaintiff, )
)
        v. )      Civil Action No. 1:06CV00200
)
DEPARTMENT OF DEFENSE, et al. )
)
        Defendants. )
)

# ATTACHMENT  I



U.S. Department of Justice

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

February 9, 2006

CHRISTOPHER WOLF ESQ
PROSKAUER ROSE LLP
SUITE 800
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036 2396

Request No.: 1037965- 000
Subject: UNIVERSITY OF CA
Demo 2005/Gay/Homosuxual

Dear Mr. Wolf:

This is in response to your Freedom of Information Act (FOIA) request noted above.

To promptly respond to requests, we concentrate on identifying main files in the Central Records System at FBI Headquarters. No records responsive to your FOIA request were located by a search of the automated indices.

You may file an administrative appeal by writing to the Co-Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Avenue, NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from receipt of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIA number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

Enclosure

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) |  |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) | |
| Defendants. | ) ) ) | |

# ATTACHMENT   J



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

March 20, 2006

MR. CHRISTOPHER WOLF
PROSKAUER ROSE LLP.
SUITE 800.
1233 TWENTIETH STREET, NORTHWEST
WASHINGTON, DC 20036

Request No.: 1041231- 000
Subject: PRESIDENTIAL COMMISSION ON
INTELLIGENCE/SPECIFIC DOCUMENTS

Dear Mr. Wolf:

☒    This acknowledges receipt of your Freedom of Information-Privacy Acts (FOIPA) request
to the FBI. The FOIPA number listed above has been assigned to your request.

☐    For an accurate search of our records, please provide the complete name, alias, date
and place of birth for the subject of your request. Any other specific data you could
provide such as prior addresses, or employment information would also be helpful. If
your subject is deceased, please include date and proof of death.

☐    To make sure information about you is not released to someone else, we require your
notarized signature or, in place of a notarized signature, a declaration pursuant to Title
28, United States Code 1746. For your convenience, the reverse side of this letter
contains a form which may be used for this purpose.

☐    If you want the FBI's Criminal Justice Information System (CJIS) to perform a search for
your arrest record, please follow the enclosed instructions in Attorney General Order
556-73. You must submit fingerprint impressions so a comparison can be made with
the records kept by CJIS. This is to make sure your information is not released to an
unauthorized person.

☐    We are searching the indices to our central records system at FBI Headquarters for the
information you requested, and will inform you of the results as soon as possible.

☐    Processing delays have been caused by the large number of requests received by the
FOIPA. We will process your request(s) as soon as possible.

Your request has been assigned the number indicated above. Please use this number in all
correspondence with us. Your patience is appreciated.

Sincerely yours,

David M. Hardy
Section Chief,
Record/Information
  Dissemination Section
Records Management Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) ) |
| Defendants. | ) ) ) |

# ATTACHMENT   K



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

May 11, 2006

<u>VIA FACSIMILE AND FIRST CLASS MAIL</u>
(202) 416-6899

Mr. Christopher Wolf
Proskauer Rose LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C. 20004-2533

     Re:   <u>Servicemembers Legal Defense Network v. Department of Defense</u>
           <u>and Department of Justice</u>, Civil Action No. 06-200 (RMC)

Dear Mr. Wolf:

        We are writing to update you on the status of your January 5, 2006 request for records
under the Freedom of Information Act, 5 U.S.C. § 552, on behalf of the Servicemembers Legal
Defense Network (SLDN). Specifically, you requested seven enumerated categories of records. As
we advised you previously, we have processed your requests for records numbered one through six,
and have identified no records responsive to your requests.

We are continuing to search for records responsive to request number seven, which seeks access to the
following information:

                Any and all documents related to or concerning a proposal authored by
                the presidential commission on intelligence chaired by Laurence H.
                Silberman and former Senator Charles S. Robb (D-VA) urging that the
                federal government be given greater authority to carry out domestic
                criminal investigations and clandestine operations against potential
                threats inside the United States, and all documents responding or
                relating thereto.

To search for records responsive to this request, we asked the eight offices at FBI Headquarters that
would possibly have potentially responsive records to search their files. To date, three offices have
replied that they have located certain potentially responsive records; one office replied that it has no
responsive records; and four offices have not yet replied.

As soon as we have completed this search, including review and processing of any responsive documents, we will notify you.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
    Dissemination Section
Records Management Division

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SERVICEMEMBERS LEGAL )
DEFENSE NETWORK )
)
Plaintiff, )
)
v. )     Civil Action No. 1:06CV00200
)
DEPARTMENT OF DEFENSE, et al. )
)
Defendants. )
)

# ATTACHMENT  L



U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

MR. CHRISTOPHER WOLF
PROSKAUER ROSE LLP.
SUITE 400 SOUTH
1001 PENNSYLVANIA AVE, NORTHWEST
WASHINGTON, DC 20004-2533

JUNE 12, 2006

*Hand Delivered* 6-13-06

Subject: PRESIDENTIAL COMMISSION ON
INTELLIGENCE/SPECIFIC DOCUMENTS

FOIPA No. 1041231- 000

Dear Requester:

      The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| □(b)(1) | □(b)(7)(A) | □(d)(5) |
| □(b)(2) | □(b)(7)(B) | □(j)(2) |
| □(b)(3)_____ | □(b)(7)(C) | □(k)(1) |
| _____ | □(b)(7)(D) | □(k)(2) |
| _____ | □(b)(7)(E) | □(k)(3) |
| _____ | □(b)(7)(F) | □(k)(4) |
| □(b)(4) | □(b)(8) | □(k)(5) |
| ⊠(b)(5) | □(b)(9) | □(k)(6) |
| □(b)(6) | | □(k)(7) |

7 page(s) were reviewed and 3 page(s) are being released.

□  Document(s) were located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

    □  referred to the OGA for review and direct response to you.

    □  referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

□ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

□ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
   Dissemination Section
Records Management Division

Enclosure(s)

This is the first release of documents responsive to your request. There is other material to be reviewed, and any additional documents that can be released will be made available to you.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) ) |
| Defendants. | ) ) ) |

# ATTACHMENT M



**U.S. Department of Justice**

**Federal Bureau of Investigation**

*Washington, D.C. 20535*

JUNE 13, 2006

MR. CHRISTOPHER WOLF
PROSKAUER ROSE LLP.
SUITE 400 SOUTH
1001 PENNSYLVANIA AVE, NORTHWEST
WASHINGTON, DC 20004 2533

Subject: PRESIDENTIAL COMMISSION ON
INTELLIGENCE/SPECIFIC DOCUMENTS

FOIPA No. 1041231- 000

Dear Requester:

The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5, United States Code, Section 552/552a. Deletions have been made to protect information which is exempt from disclosure, with the appropriate exemptions noted on the page next to the excision. In addition, a deleted page information sheet was inserted in the file to indicate where pages were withheld entirely. The exemptions used to withhold information are marked below and explained on the enclosed Form OPCA-16a:

| Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☐(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☒(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☐(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☒(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☒(b)(6) | | ☐(k)(7) |

13 **page(s)** were reviewed and 8 **page(s)** are being released.

☐ Document(s) located which originated with, or contained information concerning other Government agency(ies) [OGA]. This information has been:

☐ referred to the OGA for review and direct response to you.

☐ referred to the OGA for consultation. The FBI will correspond with you regarding this information when the consultation is finished.

☐ You have the right to appeal any denials in this release. Appeals should be directed in writing to the Co-Director, Office of Information and Privacy, U.S. Department of Justice,1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001 within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request was the focus of the investigation. Our search located additional references, in files relating to other individuals, or matters, which may or may not be about your subject(s). Our experience has shown, when ident, references usually contain information similar to the information processed in the main file(s). Because of our significant backlog, we have given priority to processing only the main investigative file(s). If you want the references, you must submit a separate request for them in writing, and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

Enclosure(s)

Enclosed are the remaining documents responsive to your request.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)  (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)  related solely to the internal personnel rules and practices of an agency;

(b)(3)  specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)  trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)  inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)  personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)  records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)  contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)  geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)  information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)  material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)  information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)  investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)  material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)  required by statute to be maintained and used solely as statistical records;

(k)(5)  investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)  testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)  material used to determine potential for promotion in the armed services; the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 1:06CV00200 |
| DEPARTMENT OF DEFENSE, et al. | ) ) ) | |
| Defendants. | ) ) | |

# ATTACHMENT   N

Pentagon Expanding Its Domestic Surveillance Activity; Fears of Post-9/1

Copyright 2005 The Washington Post
The Washington Post

November 27, 2005 Sunday
Final Edition

SECTION: A Section; A06

LENGTH: 1496 words

HEADLINE: Pentagon Expanding Its Domestic Surveillance Activity;
Fears of Post-9/11 Terrorism Spur Proposals for New Powers

BYLINE: Walter Pincus, Washington Post Staff Writer

BODY:

The Defense Department has expanded its programs aimed at gathering and analyzing intelligence within the United States, creating new agencies, adding personnel and seeking additional legal authority for domestic security activities in the post-9/11 world.

The moves have taken place on several fronts. The White House is considering expanding the power of a little-known Pentagon agency called the Counterintelligence Field Activity, or CIFA, which was created three years ago. The proposal, made by a presidential commission, would transform CIFA from an office that coordinates Pentagon security efforts — including protecting military facilities from attack — to one that also has authority to investigate crimes within the United States such as treason, foreign or terrorist sabotage or even economic espionage.

The Pentagon has pushed legislation on Capitol Hill that would create an intelligence exception to the Privacy Act, allowing the FBI and others to share information gathered about U.S. citizens with the Pentagon, CIA and other intelligence agencies, as long as the data is deemed to be related to foreign intelligence. Backers say the measure is needed to strengthen investigations into terrorism or weapons of mass destruction.

The proposals, and other Pentagon steps aimed at improving its ability to analyze counterterrorism intelligence collected inside the United States, have drawn complaints from civil liberties advocates and a few members of Congress, who say the Defense Department's push into domestic collection is proceeding with little scrutiny by the Congress or the public.

"We are deputizing the military to spy on law-abiding Americans in America. This is a huge leap without even a [congressional] hearing," Sen. Ron Wyden (D-Ore.), a member of the Senate Select Committee on Intelligence, said in a recent interview.

Wyden has since persuaded lawmakers to change the legislation, attached to the fiscal 2006 intelligence authorization bill, to address some of his concerns, but he still believes hearings should be held. Among the changes was the elimination of a provision to let Defense Intelligence Agency officers hide the fact that they work for the government when they approach people who are possible sources of intelligence in the United States.

Modifications also were made in the provision allowing the FBI to share information with the Pentagon and CIA, requiring the approval of the director of national intelligence, John D. Negroponte, for that to occur, and requiring the Pentagon to make reports to Congress on the subject. Wyden said the legislation "now strikes a much fairer balance by protecting critical rights for our country's citizens and advancing intelligence operations to meet our security needs."

Kate Martin, director of the Center for National Security Studies, said the data-sharing amendment would still give the Pentagon much greater access to the FBI's massive collection of data, including information on citizens not connected to terrorism or espionage.

The measure, she said, "removes one of the few existing privacy protections against the creation of secret dossiers on Americans by government intelligence agencies." She said the Pentagon's "intelligence agencies are quietly expanding their domestic presence without any public debate."

Pentagon Expanding Its Domestic Surveillance Activity; Fears of Post-9/1

Lt. Col. Chris Conway, a spokesman for the Pentagon, said that the most senior Defense Department intelligence officials are aware of the sensitivities related to their expanded domestic activities. At the same time, he said, the Pentagon has to have the intelligence necessary to protect its facilities and personnel at home and abroad.

"In the age of terrorism," Conway said, "the U.S. military and its facilities are targets, and we have to be prepared within our authorities to defend them before something happens."

Among the steps already taken by the Pentagon that enhanced its domestic capabilities was the establishment after 9/11 of Northern Command, or Northcom, in Colorado Springs, to provide military forces to help in reacting to terrorist threats in the continental United States. Today, Northcom's intelligence centers in Colorado and Texas fuse reports from CIFA, the FBI and other U.S. agencies, and are staffed by 290 intelligence analysts. That is more than the roughly 200 analysts working for the State Department's Bureau of Intelligence and Research, and far more than those at the Department of Homeland Security.

In addition, each of the military services has begun its own post-9/11 collection of domestic intelligence, primarily aimed at gathering data on potential terrorist threats to bases and other military facilities at home and abroad. For example, Eagle Eyes is a program set up by the Air Force Office of Special Investigations, which "enlists the eyes and ears of Air Force members and citizens in the war on terror," according to the program's Web site.

The Marine Corps has expanded its domestic intelligence operations and developed internal policies in 2004 to govern oversight of the "collection, retention and dissemination of information concerning U.S. persons," according to a Marine Corps order approved on April 30, 2004.

The order recognizes that in the post-9/11 era, the Marine Corps Intelligence Activity will be "increasingly required to perform domestic missions," and as a result, "there will be increased instances whereby Marine intelligence activities may come across information regarding U.S. persons." Among domestic targets listed are people in the United States who it "is reasonably believed threaten the physical security of Defense Department employees, installations, operations or official visitors."

Perhaps the prime illustration of the Pentagon's intelligence growth is CIFA, which remains one of its least publicized intelligence agencies. Neither the size of its staff, said to be more than 1,000, nor its budget is public, said Conway, the Pentagon spokesman. The CIFA brochure says the agency's mission is to "transform" the way counterintelligence is done "fully utilizing 21st century tools and resources."

One CIFA activity, threat assessments, involves using "leading edge information technologies and data harvesting," according to a February 2004 Pentagon budget document. This involves "exploiting commercial data" with the help of outside contractors including White Oak Technologies Inc. of Silver Spring, and MZM Inc., a Washington-based research organization, according to the Pentagon document.

For CIFA, counterintelligence involves not just collecting data but also "conducting activities to protect DoD and the nation against espionage, other intelligence activities, sabotage, assassinations, and terrorist activities," its brochure states.

CIFA's abilities would increase considerably under the proposal being reviewed by the White House, which was made by a presidential commission on intelligence chaired by retired appellate court judge Laurence H. Silberman and former senator Charles S. Robb (D-Va.). The commission urged that CIFA be given authority to carry out domestic criminal investigations and clandestine operations against potential threats inside the United States.

The Silberman-Robb panel found that because the separate military services concentrated on investigations within their areas, "no entity views non-service-specific and department-wide investigations as its primary responsibility." A 2003 Defense Department directive kept CIFA from engaging in law enforcement activities such as "the investigation, apprehension, or detention of individuals suspected or convicted of criminal offenses against the laws of the United States."

The commission's proposal would change that, giving CIFA "new counterespionage and law enforcement authorities," covering treason, espionage, foreign or terrorist sabotage, and even economic espionage. That step, the panel said, could be taken by presidential order and Pentagon directive without congressional approval.

White House spokeswoman Dana Perino said the CIFA expansion "is being studied at the DoD [Defense Department] level," adding that intelligence director Negroponte would have a say in the matter. A Pentagon spokesman said, "The [CIFA] matter is before the Hill committees."