## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK,<br><br>Plaintiff,<br><br>v.<br><br>DEPARTMENT OF DEFENSE, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No. 06-200 (RMC)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OF POINTS AND AUTHORITIES IN
### OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Christopher Wolf
(D.C. Bar No. 335885)
James F. Segroves
(D.C. Bar No. 480360)
Meredith C. Bailey
(D.C. Bar No. 494476)
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue, NW
Suite 400 South
Washington, DC 20004-2533
202.416.6800
202.416.6899 (fax)

Jerry L. Dasti
(Not Admitted in D.C.)
PROSKAUER ROSE LLP
1585 Broadway
New York, NY 10036-8299
212.969.3000
212.969.2900 (fax)

*Attorneys for Plaintiff Servicemembers*
*Legal Defense Network*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL BACKGROUND ..................................................................... 2

STANDARD OF REVIEW ........................................................................ 14

ARGUMENT ............................................................................................ 16

    I.     DEFENDANT DOD HAS FAILED TO MEET ITS BURDEN OF
          PROVING BEYOND MATERIAL DOUBT THAT CIFA AND
          DOD-OFOI CONDUCTED SEARCHES REASONABLY
          CALCULATED TO UNCOVER ALL DOCUMENTS
          RESPONSIVE TO PLAINTIFF'S FOIA REQUESTS ............................ 16

          A.     Defendant DOD's Supporting Declaration Is Inadequate
                 As A Matter Of Law .................................................................. 16

          B.     The Record Reflects That CIFA And DOD-OFOI Narrowly
                 Construed Plaintiff's FOIA Request In Violation Of Well-
                 Established Precedent ................................................................ 21

    II.    DEFENDANT DOJ HAS FAILED TO MEET ITS BURDEN OF
          PROVING BEYOND MATERIAL DOUBT THAT THE FBI
          CONDUCTED A SEARCH REASONABLY CALCULATED TO
          UNCOVER ALL DOCUMENTS RESPONSIVE TO PLAINTIFF'S
          FOIA REQUEST .................................................................................. 23

CONCLUSION ......................................................................................... 26

i

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Am. Civil Liberties Union v. FBI*, 429 F. Supp. 2d 179 (D.D.C. 2006)........................... 14

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 15

*Campbell v. U.S. Dep't of Justice*, 164 F.3d 20 (D.C. Cir. 1998) ................................... 16

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................. 15

*Citizens for Responsibility & Ethics in Wash. v. Nat'l Indian Gaming
    Comm'n*, No. 05-0806 (RMC), 2006 WL 1371682 (D.D.C. May 17, 2006) .....20, 21, 22

*Forum for Academic & Institutional Rights v. Rumsfeld*, 390 F.3d 219 (3d Cir.
    2004), *rev'd*, 126 S. Ct. 1297 (2006)............................................................................. 9

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770 (D.C. Cir. 1981) ............................... 16

*Hemenway v. Hughes*, 601 F. Supp. 1002 (D.D.C. 1985)................................................ 23

*Jackson v. U.S. Attorney's Office, Dist. of N.J.*, 362 F. Supp. 2d 39 (D.D.C.
    2005) .......................................................................................................................... 17

* *LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345 (D.C. Cir.
    2003) .....................................................................................................22, 23, 24, 25

*McGhee v. CIA*, 697 F.2d 1095 (D.C. Cir. 1983) ........................................................... 16

*Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885 (D.C. Cir. 1995)....................22, 25

* *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57 (D.C. Cir. 1990) ...........................passim

*Peralta v. U.S. Attorney's Office,* 136 F.3d 169 (D.C. Cir. 1998)..................................... 8

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197 (D.C. Cir. 1991)....................................... 16

* *Truitt v. Dep't of State*, 897 F.2d 540 (D.C. Cir. 1990) ................................ 16, 17, 25, 27

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989)........................................... 27

---

* In accordance with Local Civil Rule 7(a), Plaintiff chiefly relies on those sources marked with an asterisk.

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321 (D.C. Cir. 1999)...............16, 25, 27

*Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365 (D.C. Cir. 1980)................................... 17

**STATUTES**

5 U.S.C. § 552 ............................................................................................................. 1

5 U.S.C. § 552(a)(3)(A) ............................................................................................. 24

5 U.S.C. § 552(a)(4)(B) ............................................................................................... 8

5 U.S.C. § 552(b).................................................................................................... 1, 13

10 U.S.C. § 654 ........................................................................................................... 1

**RULES AND REGULATIONS**

Fed. R. Civ. P. 56(c) ................................................................................................ 14

**PERIODICALS**

Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times,
    Dec. 20, 2005, at A1 ............................................................................................ 3

Lisa Meyrs et al., *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14,
    2005, http://msnbc.msn.com/id/10454316 .................................................... 3

Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity*,
    Wash. Post, Dec. 11, 2005, at A12 .................................................................... 3

Walter Pincus, *Pentagon Expanding Its Domestic Surveillance Activity*, Wash.
    Post, Nov. 27, 2005, at A6 .................................................................................. 2

Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*, Wash. Post,
    Dec. 15, 2005, at A1 ............................................................................................ 3

## PRELIMINARY STATEMENT

This action arises out of Plaintiff Servicemembers Legal Defense Network's requests for agency records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. On January 5, 2006, Plaintiff submitted FOIA requests to various component agencies within Defendants Department of Defense ("DOD") and Department of Justice ("DOJ"). Among other things, Plaintiff's FOIA requests sought agency records concerning the surveillance of individuals and groups opposed to the congressional policy on gays and lesbians in the military, more commonly known as "Don't Ask, Don't Tell." *See* 10 U.S.C. § 654. Plaintiff submitted its FOIA requests after press reports in late 2005 indicated that such surveillance had in fact taken place.

After producing a small number of documents in response to Plaintiff's FOIA requests, Defendants DOD and DOJ have moved for summary judgment. Defendants argue that they have conducted adequate searches for documents responsive to Plaintiff's FOIA requests and that they have provided Plaintiff with all material not otherwise exempt from disclosure under 5 U.S.C. § 552(b). Although Plaintiff does not challenge Defendants' decision to withhold certain material under § 552(b), it nonetheless believes that the record in this case now demonstrates that Defendants' searches for documents did not meet standards established by the jurisprudence of this circuit.

First, Defendant DOD has submitted a supporting declaration that, due to its lack of specificity, fails to satisfy that agency's burden of proving beyond material doubt that its component agencies conducted searches reasonably calculated to uncover all relevant documents. Moreover, the record indicates that Defendant DOD's Office of Freedom of

1

Information ("DOD-OFOI") and Counterintelligence Field Activity ("CIFA")
components improperly limited their searches by narrowly interpreting Plaintiff's FOIA
requests.

Second, evidence added to the record *after* Defendants' filed their summary
judgment motion indicates that the Federal Bureau of Investigation ("FBI"), which is a
component agency within Defendant DOJ, did not produce documents responsive to
Plaintiff's FOIA request.  Because the record now contains positive identification of
overlooked materials and leaves substantial doubt as to the sufficiency of the FBI's
search, Defendant DOJ has not met its burden of proving beyond material doubt that the
FBI's search was reasonably calculated to uncover all relevant documents.

As a result of the foregoing and as set forth in more detail below, Defendants'
Motion for Summary Judgment should be denied.

## FACTUAL BACKGROUND

### *Press Reports Reveal Federal Government*
### *Surveillance Of Groups Opposed To "Don't Ask, Don't Tell"*

On November 27, 2005, an article published in the *Washington Post* reported that
Defendant DOD had implemented an expansive program of domestic surveillance
following the terrorist attacks of September 11, 2001.  *See* Walter Pincus, *Pentagon
Expanding Its Domestic Surveillance Activity*, Wash. Post, Nov. 27, 2005, at A6.  The
article stated that CIFA, a new component agency within DOD, was created in 2002 and
that it was responsible for gathering and analyzing information collected by DOD and
other sources.  *See id.*  A follow-up article published a few days later described how

reports of "suspicious activity" flowed to CIFA from defense facilities throughout the United States. *See* Walter Pincus, *Defense Facilities Pass Along Reports of Suspicious Activity*, Wash. Post, Dec. 11, 2005, at A12.

On December 13, 2005, the *NBC Nightly News* reported that it had received a secret 400-page DOD document describing CIFA's surveillance of peaceful anti-war and counter-military-recruitment groups. The *NBC Nightly News* report, which was later posted on MSNBC.com, *see* Lisa Meyrs et al., *Is the Pentagon spying on Americans?*, MSNBC.com, Dec. 14, 2005, http://msnbc.msn.com/id/10454316, described the 400-page DOD document as listing more than 1500 "suspicious incidents" that had occurred inside the United States during a recent ten-month period. According to an eight-page excerpt from the DOD document, included among the "suspicious incidents" surveilled were protests by various groups opposed to "Don't Ask, Don't Tell." For example, the eight-page excerpt listed protests on the campuses of New York University ("NYU"), the State University of New York at Albany ("SUNY Albany") and the University of California-Santa Cruz ("UC-Santa Cruz"). *Id*.

The day after the *NBC Nightly News* broadcast, Undersecretary of Defense for Intelligence Stephen A. Cambone ordered a review of CIFA's domestic surveillance activities. *See* Walter Pincus, *Pentagon Will Review Database on U.S. Citizens*, Wash. Post, Dec. 15, 2005, at A1. Shortly thereafter, the *New York Times* reported that the FBI had also conducted surveillance of activist groups within the United States following the terrorist attacks of September 11, 2001. *See* Eric Lichtblau, *F.B.I. Watched Activist Groups, New Files Show*, N.Y. Times, Dec. 20, 2005, at A1.

### *Plaintiff, Its FOIA Requests And Initial Responses Thereto*

Plaintiff is a non-profit public interest organization dedicated to ending discrimination against, and harassment of, United States military personnel under "Don't Ask, Don't Tell." (Declaration of C. Dixon Osburn ¶ 3 (Feb. 22, 2006) (copy attached as Ex. A to Pl.'s Mot. to Proceed Without Disclosure of Full Residence Address [Dkt. #12]).) As the most prominent organization in the United States dedicated to protecting the rights of lesbian, gay and bisexual servicemembers, Plaintiff uses multiple means of communication to educate and inform the general public and federal policymakers about the shortcomings of "Don't Ask, Don't Tell." (*Id.* ¶ 4.) Plaintiff also provides legal representation to individuals effected by "Don't Ask, Don't Tell." (*Id.* ¶ 5.)

On January 5, 2006, Plaintiff submitted FOIA requests to CIFA, DOD-OFOI and the FBI.[1] (Declaration of Christopher Wolf ¶ 3 (Feb. 24, 2006) ("Wolf Decl.") (copy attached as Ex. 25 to Pl.'s Prelim. Inj. Mem. [Dkt. #4]).) Plaintiff's FOIA requests sought any and all documents in the recipient agency's possession or control concerning the "surveillance of meetings involving people and/or organizations discussing, considering or stating opposition to 'Don't Ask, Don't Tell.'"[2] (Wolf Decl. Ex. A at 2,

---

[1] Plaintiff also submitted FOIA requests to Defendant DOJ's Office of Information and Privacy ("OIP") and the Defense Intelligence Agency ("DIA"), which is a component of Defendant DOD. The processing of Plaintiff's FOIA requests by these particular component agencies was originally at issue in this case; however, based upon the recent representations made to this Court by OIP and DIA personnel, Plaintiff no longer contends that OIP and DIA are in violation of FOIA. (*See* Third Declaration of Melanie Ann Pustay (June 9, 2006) (describing OIP processing of Plaintiff's FOIA request) (copy attached as Ex. 1 to Defs.' Mem.); Second Declaration of Brian S. Kinsey (June 27, 2006) (describing DIA processing of Plaintiff's FOIA request) (copy attached as Ex. 4 to Defs.' Mem.).)

[2] In addition to surveillance-related documents, Plaintiff's FOIA requests sought certain specific memoranda and documents related to a proposal authored by the presidential commission on intelligence chaired by Laurence H. Silberman and former Senator Charles S. Robb. Plaintiff does not challenge the adequacy of searches for documents responsive to these particular components of its FOIA requests.

Ex. B at 2, Ex. G at 2.)  Plaintiff's FOIA requests also asked for any and all documents concerning the surveillance of meetings involving organizations representing the interests of lesbians, gay men, bisexuals and/or transgendered people ("LGBT organizations"). (Wolf Decl. Ex. A at 2, Ex. B at 2, Ex. G at 2.)  Each FOIA request defined the term "meetings" to include "demonstrations or rallies."  (Wolf Decl. Ex. A at 2, Ex. B at 2, Ex. G at 2.)  As specific examples of the foregoing, Plaintiff cited the February 2005 protest at NYU and the April 2005 demonstration at UC-Santa Cruz, both of which had been identified as "threats" in the 400-page DOD document provided to the *NBC Nightly News*.  (Wolf Decl. Ex. A at 3, Ex. B at 3, Ex. G at 3.)

In its FOIA request sent to the FBI, Plaintiff specified that its request included documents related to surveillance that had been "performed by non-FBI personnel (e.g., military personnel or local law enforcement), the products of which were forwarded to the FBI."  (Wolf Decl. Ex. G at 2 n.1.)  Conversely, Plaintiff's FOIA request sent to DOD-OFOI specified that the request included "surveillance conducted, directed or supervised by non-[DOD] personnel (e.g., [FBI] personnel or local law enforcement), the products of which were forwarded to [DOD]."  (Wolf Decl. Ex. B at 2 n.1.)  Each of Plaintiff's FOIA requests included requests for expedited processing and a fee waiver. (*See* Wolf Decl. Ex. A at 4-9, Ex. B at 4-9, Ex. G at 4-9.)

On January 17, 2006, Plaintiff received a letter from DOD-OFOI dated January 12, 2006, in which the agency informed Plaintiff that it was providing an interim response on behalf of CIFA *and* DOD-OFOI.  (Declaration of James F. Segroves Ex. I at 1 (Feb. 23, 2006) ("First Segroves Decl.") (copy attached as Ex. 26 to Pl.'s Prelim. Inj.

5

Mem. [Dkt. #4]).)  DOD-OFOI informed Plaintiff that it had denied Plaintiff's request for

expedited processing.  (*See id.* at 1-2.)  On February 1, 2006, Plaintiff was informed via

telephone that DOD-OFOI had also denied Plaintiff's request for a fee waiver.  (Wolf

Decl. ¶ 5.)

       As for Plaintiff's FOIA request submitted to the FBI, on January 17, 2006,

Plaintiff received a letter from the FBI dated January 6, 2006, in which the FBI claimed

that Plaintiff's FOIA request did not contain enough "descriptive information" to permit a

search of the agency's records.  (First Segroves Decl. Ex. L. at 1.)  As a result, the FBI

claimed that it could not process Plaintiff's FOIA request and returned it in its entirety.

(*Id.*)  Although Plaintiff's FOIA request had provided detailed information regarding

demonstrations at NYU and UC-Santa Cruz (*see* Wolf Decl. Ex. G at 3), the FBI asked

Plaintiff to provide the agency with "[a]ny information that would help locate the records

[requested], such as complete names of individuals, organizations or events, dates and

places of birth and the approximate time frame of the information sought" (Wolf Decl.

Ex. O at 1).  The copy of Plaintiff's FOIA request returned by the FBI contained green

underlining of two phrases: "Don't Ask, Don't Tell" and "SLDN meeting."  (*Id.* at 4-5.)

       On January 19, 2006, Plaintiff responded to the FBI in a letter setting forth why

Plaintiff's FOIA request easily satisfied the liberal standard of specificity required of a

request for records under FOIA.  (First Segroves Decl. Ex. M at 1.)  Plaintiff highlighted

the fact that (1) Plaintiff's FOIA request listed two specific examples to help guide the

agency's search (i.e., a February 2005 protest at NYU and an April 2005 protest at UC-

Santa Cruz) and (2) the copy of Plaintiff's FOIA request returned by the FBI contained

markings indicating that agency personnel had recognized specific identifiers within the

request that enabled them to conduct a search.  (*Id.* at 2.)  On January 25, 2006, Plaintiff

was informed via telephone that the FBI would begin searching for documents responsive

to Plaintiff's FOIA request.  (First Segroves Decl. ¶ 11.)

### *Plaintiff Initiates Legal Proceedings*

Frustrated by the denial of its expedited processing request by DOD-OFOI and

what it perceived as the FBI's unwillingness to process Plaintiff's request in a timely

fashion, Plaintiff initiated this suit on February 6, 2006, asserting that Defendants DOD

and DOJ were in violation of FOIA.[3]  On February 14, 2006, Plaintiff received three

letters from the FBI, all of which were dated February 8, 2006.  (Wolf Decl. Ex. M-O.)

In these letters, the FBI (1) acknowledged receipt of Plaintiff's FOIA request, (2) notified

Plaintiff that FBI records were being searched, and (3) identified three series of keywords

that were being used to begin the aforementioned search.  (*Id.*)  On February 22, 2006,

Plaintiff received a letter from the FBI dated February 9, 2006, in which the agency

stated that a search based on one set of keywords had produced no responsive documents.

(*See* Wolf Decl. Ex. P (explaining that search for records using keywords

"UNIVERSITY OF CA Demo 2005/Gay/Homosuxual [sic]" produced no results).)

---

[3] One might reasonably question why Plaintiff did not name DOD-OFOI and the FBI as the defendants in this action instead of their respective parent agencies.  FOIA specifically provides that an "agency" may be sued in federal district court.  *See* 5 U.S.C. § 552(a)(4)(B).  DOJ has previously taken the litigation position that a component agency such as the FBI is not an "agency" within the meaning of FOIA and that a component agency's parent is the properly named defendant in a FOIA action.  *See, e.g., Peralta v. U.S. Attorney's Office,* 136 F.3d 169, 173 (D.C. Cir. 1998).  Therefore, out of an abundance of caution, Plaintiff named the relevant parent agencies as the defendants in this case.

On February 24, 2006, Plaintiff filed its Motion for a Preliminary Injunction in an effort to quickly resolve the issue of expedited processing. On February 27, 2006, Plaintiff received a letter from the FBI in which the agency stated that it had found no documents using the search terms "Don't Ask, Don't Tell" or "Servicemembers Legal Defense Network." (*See* Second Declaration of David M. Hardy Ex. E (June 26, 2006) ("Second Hardy Decl.") (copy attached as Ex. 2 to Defs.' Mem.).) In a letter received on March 10, 2006, the FBI informed Plaintiff that it found no documents using the search terms "OUTLAW/2005 PROTEST AT NY UNIVERSITY." (*See id.* Ex. G.)

A few days before the scheduled hearing on Plaintiff's preliminary injunction motion, Plaintiff received three, three-page Threat and Local Observation and Notice reports ("TALON reports") from DOD-OFOI. (*See* Supplemental Declaration of James F. Segroves ¶¶ 3, 5-7 (Apr. 14, 2006) ("Second Segroves Decl.") (copy attached as Ex. 1 to Pl.'s Mot. for Leave to File Suppl. Decl. [Dkt. #28]).) The first TALON report described a protest against military recruiters on the campus of UC-Santa Cruz planned for April 5, 2005; the second TALON report described a protest against military recruiters on the campus of NYU's School of Law; and the third TALON report described a protest against military recruiters on the campus of the University of California at Berkley on April 21, 2005. (*See id.* Ex. A.) For example, the NYU TALON report stated:

> Per an Internet posting, on 4 and 10 Feb 05, several homosexual and pro-gay groups are planning to "protest hate & recruiters on NYU campus (NYC)." The targets of the protest are JAG recruiters, who are viewed as "discriminatory military recruiters" on the NYU campus.

(*Id.*)  The report then quoted a portion of the "Internet posting" referenced above,

stating:

> Subject:  FRI 2/4 protest hate & recruiters on NYU campus (NYC)
>
> [F]riday, Feb. 4th support NYU queer groups protesting discriminatory military recruiters on NYU campus.
>
> JAG is coming this week.  And next week.  Despite the Third Circuit's ruling that the Solomon Amendment is unconstitutional [referring to *Forum for Academic & Institutional Rights v. Rumsfeld*, 390 F.3d 219 (3d Cir. 2004), *rev'd*, 126 S. Ct. 1297 (2006)], an injunction has not yet been issued. Until one is issued, NYU will continue to abide by the Solomon Amendment's requirement that JAG recruiters be granted access for recruiting purposes.
>
> JAG will be here on Friday, Feb. 4th for OCI.  We will be protesting in the Furman lobby on Friday morning.
>
> JAG will also be here for the Public Interest Symposium on February 10th. We will have an amelioration panel that day at 12:45.  Look for the details soon.  In addition, we're having a protest that day.  The details have yet to be worked out, as the protest may involve OUTLaws from other schools participating in the symposium.

(*Id.*)  Based on the above, the NYU TALON report concluded:

> The term "Outlaws" is not defined in the posting.  The [redacted] is concerned this is a security issue.  Specifically, the term "Outlaws" is a backhanded way of saying it is all right to commit possible violence and serve as "vigilantes" during the symposium.  Therefore, it is possible that physical harm or vandalism could occur at this event.

(*Id.*)

As evidenced in the last quotation above, various pieces of information had been

redacted from each TALON report at the request of Immigration and Customs

Enforcement, which is an agency within the Department of Homeland Security.  (*See id.*)

Most importantly, information next to the "source," "coordinating agencies" and "persons briefed locally" fields had been redacted on all three TALON reports. (*See id.*)

On April 19, 2006, this Court heard oral argument on Plaintiff's preliminary injunction motion, which had been supported by an amicus submission filed by NYU's School of Law. The Court eventually determined that Plaintiff's motion was moot based on the representations made by opposing counsel regarding the progress made by the recipient agencies in responding to Plaintiff's FOIA requests. (*See* Order of Apr. 20, 2006 [Dkt. #31].) During the hearing, however, the Parties reached an agreement whereby certain agencies would conclude their document searches by certain specified dates. (*See id.*)

### *Events Following The April 19 Hearing*

By letter dated May 1, 2006, DOD-OFOI notified Plaintiff's counsel that the agency had concluded its search for responsive documents and that no additional documents would be produced. (*See* Third Declaration of James F. Segroves Ex. 1.A (Aug. 11, 2006) ("Third Segroves Decl.") (copy attached as Ex. 1).) Troubled by the fact that additional TALON reports had not been disclosed, on May 13, 2006, undersigned counsel for Plaintiff sent opposing counsel a letter seeking confirmation that an adequate search for documents had been conducted by DOD-OFOI. (*See* Letter from James F. Segroves to Samuel C. Kaplan (May 13, 2006) (copy attached as Ex. 5 to Defs.' Mem.).) In relevant part, this letter read:

> As you may remember, item II.1.D of SLDN's [FOIA] request asked for "[a]ny and all documents concerning DOD's surveillance of meetings involving LGBT organizations, which include the following: (i) a February

10

2005 protest at New York University involving the LGBT organization
known as 'OUTlaw'; and (ii) an April 2005 demonstration at the University
of California-Santa Cruz." SLDN's FOIA request defined "LGBT
organizations" as "organizations representing the interests of lesbians, gay
men, bisexuals and/or transgendered people." SLDN provided two specific
examples in its FOIA request because press reports at the time indicated
that information regarding these particular protests had been retained in
DOD's [TALON] database. More specifically, MSNBC.com had posted
what purported to be an eight-page excerpt from a DOD spreadsheet listing
recent additions to the TALON database. . . .

By cover letter dated April 3, 2006, DOD-OFOI produced three, three-page
TALON reports responsive to SLDN's FOIA request. In addition to
producing TALON reports related to the specific protests listed in SLDN's
FOIA request, DOD-OFOI produced one TALON report related to a protest
on the campus of the University of California at Berkeley. To date,
however, we have received no additional TALON reports, which is
particularly troubling given that the eight-page excerpt posted on
MSNBC.com suggests that TALON reports exist for several additional
protests against military recruiters that may very well be responsive to
SLDN's FOIA request. In particular, the excerpt listed two separate
protests at [SUNY Albany], one of which occurred in March of 2005, the
other in April of that same year.

(*Id.* at 1-2 (citations omitted).)

On May 17, 2006, counsel for Defendants responded by asserting that TALON

reports did not constitute "surveillance," stating:

DOD has conducted a search reasonably calculated to uncover all
documents responsive to your request. As an initial matter, your request
does not call for all TALON reports that reference LGBT organizations.
Instead, as you note, the request seeks documents related to "surveillance"
of the meetings or communications of LGBT groups. TALON reports in
no way reflect "surveillance" of meetings or communications, within any
reasonable understanding of the word "surveillance." *See, e.g.*, Webster's
Ninth New Collegiate Dictionary (1990) (defining surveillance as "close
watch kept over someone or something (as by a detective)"). The reports
on the UC Santa Cruz and NYU protests, for example, were not even based
upon observations of the protests, but instead were based on information
received via the Internet stating that the events were upcoming. Likewise,
the MSNBC list to which you refer states that the report on the Albany

11

> protest preceded the actual even by several days.  Further, the TALON
> reports that involve observations of actual public events in no constitute
> keeping "close watch" on an organization.

(*See* Letter from Samuel C. Kaplan to James F. Segroves 1-2 (May 17, 2006) (copy

attached as Ex. 6 to Defs.' Mem.).)  Counsel for Defendants then asserted that instead of

requiring Plaintiff to litigate the issue, DOD-OFOI had searched the TALON database for

reports related to LGBT groups and had discovered four additional TALON reports, two

of which related to protests at SUNY Albany.  (*See id.* at 2.)  By cover letter dated June

15, 2006, DOD-OFOI transmitted the additional TALON reports referenced in defense

counsel's May 17 letter, which included two reports related to protests at SUNY Albany

and a report related to a protest at William Patterson University of New Jersey.  (*See*

Third Segroves Decl. Ex. 1.B.)  Like their predecessors, the additional TALON reports

contained redacted information next to the "source," "coordinating agencies" and

"persons briefed locally" fields.  (*See id.*)

    In a good-faith effort to narrow the issues for resolution by this Court, counsel for

the Parties later conferred about Defendants' decision to redact information in certain

documents under 5 U.S.C. § 552(b).  Following these discussions, the redaction of

information in the "source," "coordinating agencies" and "persons briefed locally" fields

of the TALON reports remained the only area of disagreement between the Parties on the

issue of whether information had been properly withheld pursuant to § 552(b).  (*See* E-

mails Between James F. Segroves and Samuel C. Kaplan (June 20, 2006) (copy attached

as Ex. 7 to Defs.' Mem.).)

### *Events Following The Filing Of Defendants' Motion For Summary Judgment*

Defendants filed their Motion for Summary Judgment on June 28, 2006.  In

Defendants' supporting memorandum of points and authorities, opposing counsel stated

that there was a distinct possibility that the "source," "coordinating agencies" and

"persons briefed locally" information found on the TALON reports would be disclosed.

(*See* Defs.' Mem. at 1, 11-12.)  Opposing counsel asserted that the agency that had

originally requested that the information be redacted, Immigration and Customs

Enforcement, had withdrawn its request.  (*See id.* at 11-12.)  However, Immigration and

Customs Enforcement had referred the matter to the FBI for its opinion as to whether it

believed information relating to "source," "coordinating agencies" and "persons briefed

locally" on the TALON reports had to be redacted.  (*See id.* at 12.)

On July 3, 2006, DOD-OFOI faxed to Plaintiff's counsel versions of the

previously produced TALON reports in which the "source," "coordinating agencies" and

"persons briefed locally" fields were unredacted.  (*See* Third Segroves Decl. Ex. 1.C.)

All of the TALON reports contained the same "source" information, which read: "A

SPECIAL AGENT OF THE FEDERAL PROTECTIVE SERVICE, U.S.

DEPARTMENT OF HOMELAND SECURITY.  SOURCE IS RELIABLE."  More

importantly for present purposes, the unredacted "coordinating agencies" and "persons

briefed locally" fields revealed for the first time that certain FBI-affiliated groups had

been actively involved in the TALON program.  For example, the unredacted version of

the NYU TALON report listed the "JTTF New York" as a "coordinating agency" and as

a "person briefed locally."  According to the Government Accountability Office, Joint

13

Terrorism Task Forces ("JTTFs") constitute teams of FBI agents, local and state law

enforcement officials, and other federal agents whose mission it is to investigate and

prevent acts of terrorism.  Gov't Accountability Office, *Investigations of Terrorist*

*Financing, Money Laundering, and Other Financial Crimes* 3, Rep. No. GAO-04-464R

(Feb. 20, 2004); *see also* Gov't Accountability Office, *Homeland Security: Management*

*Challenges Facing Federal Leadership* 25, GAO-03-260 (Dec. 20, 2002) (noting there

are JTTFs in each of the FBI's 56 main field offices); *Am. Civil Liberties Union v. FBI*,

429 F. Supp. 2d 179, 194 (D.D.C. 2006) (ordering FBI to release JTTF-related

documents in response to FOIA request).  JTTFs based in San Francisco and Atlanta

were also listed among the other TALON reports as being "coordinating agencies" and

"persons briefed locally."  (*See, e.g.*, Third Segroves Decl. Ex. 1.C (UC-Berkley TALON

report listing "JTTF San Francisco" as a "coordinating agency" and a "person briefed

locally" and listing "JTTF Atlanta" in the "from" field).)

## STANDARD OF REVIEW

Summary judgment is only appropriate when "the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "genuine issue" is one that, if

resolved, could establish an element of a claim or defense and, therefore, affect the

outcome of the action.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To

determine what facts are "material," a court must look to the substantive law on which

each claim rests.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Moreover, in ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See id.* at 252.

In asking for summary judgment in the FOIA context, an agency must "demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)). This demanding standard is consistent with the long-established congressional purpose of open government embodied in FOIA. *See id.* at 325 (citing *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)). The burden of persuasion as to the reasonableness of a search falls on the agency. *McGhee v. CIA*, 697 F.2d 1095, 1101 (D.C. Cir. 1983).

Any declarations submitted by an agency describing its search for documents must be "relatively detailed and non-conclusory." *SafeCard Servs.*, *Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch*, *Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). The D.C. Circuit has held that a "reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Conclusory statements that the agency has reviewed the relevant files are insufficient to

support summary judgment. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980) (finding agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the plaintiff] to challenge the procedures utilized" are insufficient to award summary judgment).

If the record "leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt*, 897 F.2d at 542. Moreover, a court can order an agency to conduct of more thorough search for documents if it determines that the agency's initial search was inadequate. *See, e.g.*, *Jackson v. U.S. Attorney's Office, Dist. of N.J.*, 362 F. Supp. 2d 39, 42-43 (D.D.C. 2005).

## ARGUMENT

As shown below, Defendants have fallen far short of meeting their burden of proving beyond material doubt that CIFA, DOD-OFOI and the FBI conducted searches reasonably calculated to uncover all documents responsive to Plaintiff's FOIA requests. As a result, this Court should deny Defendants' Motion for Summary Judgment.

**I.    DEFENDANT DOD HAS FAILED TO MEET ITS BURDEN OF PROVING BEYOND MATERIAL DOUBT THAT CIFA AND DOD-OFOI CONDUCTED SEARCHES REASONABLY CALCULATED TO UNCOVER ALL DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUESTS**

### A.    Defendant DOD's Supporting Declaration Is Inadequate As A Matter Of Law

Defendant DOD has produced the Third Declaration of William T. Kammer in an effort to meet its burden of proving that CIFA and DOD-OFOI conducted searches

reasonably calculated to uncover all documents responsive to Plaintiff's FOIA requests. (*See* Ex. 4 to Defs.' Mem.)  Because his declaration contains an insufficient amount of detail, Defendant DOD has failed to meet its burden, thereby precluding summary judgment in favor of the agency.

According to his five-page declaration, Mr. Kammer is chief of DOD-OFOI and is responsible for implementing Defendant DOD's FOIA program.  (*Id.* ¶ 1.)  Mr. Kammer's declaration also explains that DOD-OFOI processes FOIA requests seeking information from the Office of the Secretary of Defense (*id.*), of which CIFA is a component (*id.* ¶ 2).  After establishing these preliminary matters, Mr. Kammer's declaration proceeds to describe the searches for documents responsive to Plaintiff's FOIA requests.  In describing CIFA's initial search for documents, Mr. Kammer states:

> CIFA conducted a thorough search for documents responsive to plaintiff's request.  Specifically, CIFA has conducted a computer search of the Cornerstone database, which is the repository of TALON reports, for records responsive to this request.  By that time, however, CIFA had removed the reports related to protests from the database . . . .  Accordingly, CIFA has also conducted a search of the TALON reports that had been removed from Cornerstone.  In addition, CIFA personnel searched all other files that could reasonably be expected to have documents responsive to plaintiff's request, including searches of all e-mail and documents in its communications office.  In addition, CIFA conducted manual searches of its shared file networking using search criteria that were based upon the FOIA request.
>
> . . .
>
> The CIFA search resulted in the finding of three three-page TALON reports.  While 'surveillance' is not an accurate term to describe these reports (or indeed, the TALON program as a whole), CIFA treated these documents as responsive because plaintiff's entire request had identified two of the events addressed in those reports in its request.

(*Id.* ¶¶ 4, 6.)  After describing the exchange of correspondence between counsel for the Parties regarding the adequacy of DOD-OFOI's initial search for documents, Mr. Kammer's declaration later states that CIFA searched for TALON reports containing the following terms: "Albany," "discrim," "don't ask don't tel," "gay," "homosexual," "lesbian," "LGBT," and "sexual."  (*Id.* ¶ 9.)

Mr. Kammer's declaration also explains that Plaintiff's FOIA request was sent to the office of the Under Secretary of Defense for Intelligence ("USD(I)"), which is responsible for the "implementation, direction and guidance for DoD Counterintelligence collection reporting . . . ."  (*Id.* ¶ 5.)  According to Mr. Kammer, "USD(I) searched its files for documents responsive to plaintiff's request and located responsive documents . . . ."  (*Id.*)  However, Mr. Kammer's declaration does not describe what search terms were used by the USD(I), nor does it specify what "files" were searched (e.g., paper and electronic files, emails, etc.).

The jurisprudence of this circuit makes clear that an agency's declaration must be "reasonably detailed . . . setting forth the search terms and type of search performed . . . ." *Oglesby*, 920 F.2d at 68.  These requirements are crucial, as they afford a FOIA requester an opportunity to challenge the adequacy of the search and allow the district court to determine if the search was adequate in order to grant summary judgment.  *Id.*  For example, in *Citizens for Responsibility & Ethics in Washington v. National Indian Gaming Commission*, No. 05-0806 (RMC), 2006 WL 1371682 (D.D.C. May 17, 2006) (Collyer, J.), this Court addressed the adequacy of an agency's affidavits filed in support of a motion for summary judgment.  In that case, the National Indian Gaming

18

Commission ("NIGC") had received a FOIA request from a public interest group known

as Citizens for Responsibility and Ethics in Washington ("CREW") seeking documents

stemming from the Jack Abramoff lobbying scandal.  *See id.* at *1.  Two years earlier, the

NIGC, FBI and other federal agencies had formed a working group to "direct resources in

a more coordinated fashion into Indian gaming law enforcement matters."  *Id.*  After the

NIGC produced only fourteen documents in response to its FOIA request, CREW

challenged the adequacy of the NIGC's search, believing that the formation of a working

group with other federal agencies suggested that much more responsive documentation

existed.  *See id.*  In moving for summary judgment, the NIGC filed supporting affidavits

that explained:

> Each search request had the [FOIA] request letter appended to it.  NIGC
> employees are asked to search all files they consider likely to contain
> relevant material when given a FOIA search request.  Therefore, the files of
> the NIGC Commissioners, Office of General Counsel, Contracts Division,
> Enforcement Division, Field Officers, and Office of Congressional and
> Public Affairs were searched using the names provided in the [CREW]
> letter.  Employees of the Divisions and Offices that participated in the
> search were asked to search both their electronic and paper files.  The
> Commissioners' files were searched by their executive secretary.  The
> search taskers specifically provide: "While conducting your records search,
> please be certain to include a review of any electronic records (e.g. 'email')
> that may be responsive to this request."  This search included all offices and
> files reasonably calculated to uncover all relevant documents and
> responsive materials; thus, all files likely to contain responsive materials
> were searched.

*Id.*  In denying the agency's motion for summary judgment, however, this Court

concluded that the agency's affidavits failed to meet the standards set forth in *Oglesby*,

stating:

> There is no question of [NIGC's] good faith or that it performed a wide-
> ranging search into all NIGC offices. The difficulty is that "NIGC
> employees are asked to search all files *they* consider likely to contain
> relevant material when given a FOIA search request." Def.'s Reply, 2nd
> McCoy Decl. ¶ 6 (emphasis added). This description does not provide the
> requester or the Court with the reasonable detail that *Oglesby* requires, i.e.,
> information as to what methods were used by the NIGC employees to
> identify and search for records likely to contain relevant material. NIGC
> offices in twelve separate locations were involved, which means that at
> least twelve separate people had to decide individually what records should
> be searched. Whether each of them searched the same kinds of records or
> whether some performed one kind of search and others performed a
> different kind of search is unknown at this point in time. NIGC's search
> might have been adequate and it might not; all that can be said is that its
> description of its search is definitely inadequate.

*Id.* at *3.

In the case at bar, Mr. Kammer's declaration fails to specify the search terms used

in CIFA's initial search for documents and in the USD(I)'s search for documents. Not

only does a successful search "depend[] on the prudent selection of search terms"

(Second Hardy Decl. ¶ 23), failing to provide the search terms used prejudices Plaintiff's

ability to challenge the adequacy of the search and fails to provide this Court with the

information it needs to determine if these searches were adequate in order to grant

summary judgment, *Oglesby*, 920 F.2d at 68. In addition, Mr. Kammer's declaration

fails to provide any detail whatsoever as to what "files" were searched by the USD(I).

(*Compare* Third Kammer Decl. ¶ 4 ("CIFA personnel searched all other files [besides the

Cornerstone database] that could reasonably be expected to have documents responsive

to plaintiff's request, including searches of all e-mail and documents in its

communications office."), *with id.* ¶ 5 ("USD(I) searched its files for documents

responsive to plaintiff's request . . . .").)

As a result of these shortcomings, Defendant DOD's supporting declaration is inadequate as a matter of law, thereby precluding summary judgment in favor of the agency. *See Oglesby*, 920 F.2d at 68; *CREW*, 2006 WL 1371682, at *3.

### B.    The Record Reflects That CIFA And DOD-OFOI Narrowly Construed Plaintiff's FOIA Request In Violation Of Well-Established Precedent

An agency "must be careful not to read [a] request so strictly that the requester is denied information the agency well knows exists in its files. . . .  To conclude otherwise would frustrate the central purpose of [FOIA]." *Hemenway v. Hughes*, 601 F. Supp. 1002, 1005 (D.D.C. 1985).  Therefore, under the law of this circuit, an agency is obligated to "construe a FOIA request liberally." *LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345, 347-48 (D.C. Cir. 2003) (quoting *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)).  Because the record in this case demonstrates that CIFA and DOD-OFOI narrowly construed Plaintiff's FOIA request in violation of the "liberally construe" standard, Defendant DOD has failed to meet its burden of proving beyond material doubt that CIFA and DOD-OFOI conducted searches reasonably calculated to uncover all documents responsive to Plaintiff's FOIA requests.

The D.C. Circuit's decision in *LaCedra* exemplifies the extent to which the "liberally construe" standard must be applied by federal agencies.  There, a federal inmate filed a FOIA request seeking a copy of "all documents pertaining to" his criminal prosecution.  *See* 317 F.3d at 346.  However, the inmate's FOIA request then stated that he was specifically interested in documents related to financial inducements offered to the government's chief witnesses and certain fingerprint evidence.  *See id.*  Having

received no response to his FOIA request after almost a year, the inmate filed suit in federal district court. *See id.* at 347. The agency subsequently moved for summary judgment after producing only fourteen pages of documents. *See id.* In support of its motion, the agency filed an affidavit that showed the agency had interpreted the inmate's FOIA request as only asking for documents related to financial inducements offered to the government's chief witnesses and fingerprint evidence. *See id.* The district court held that this interpretation was reasonable and granted the agency's motion. *See id.*

On appeal, the inmate argued that to the extent his request was ambiguous, the agency was obligate to construe his request liberally. *Id.* at 348. The court of appeals accepted this argument and reversed the district court's decision, noting that FOIA "requires federal agencies to grant 'any request for records which . . . reasonably describes such records . . .'" *Id.* at 347 (quoting 5 U.S.C. § 552(a)(3)(A)). According to the court of appeals, "[t]he drafter of a FOIA request might reasonably seek all of a certain set of documents while nonetheless evincing a heightened interest in a specific subset thereof." *Id.* at 348.

Similarly, Plaintiff's FOIA requests sent to CIFA and DOD-OFOI sought any and all documents in the recipient agency's possession or control concerning the "surveillance of meetings involving people and/or organizations discussing, considering or stating opposition to 'Don't Ask, Don't Tell.'" (Wolf Decl. Ex. A at 2, Ex. B at 2.) At the same time, Plaintiff's FOIA requests also expressed interest in certain specific events, namely a February 2005 protest at NYU and an April 2005 demonstration at UC-Santa Cruz. (*See* Wolf Decl. Ex. A at 3, Ex. B at 3.) However, the language of Mr. Kammer's

declaration indicates that CIFA and DOD-OFOI narrowly interpreted the term

"surveillance," which is contrary to the requirement that an agency must interpret a FOIA

request liberally in favor of disclosure.  *See LaCedra*, 317 F.3d at 347-48; *Nation*

*Magazine*, 71 F.3d at 890; *see also* Dep't of Justice, *FOIA Update*, vol. XVI, no. 3, at 3

(1995) (advising federal agencies that they must fairly interpret the terms of a FOIA

request in order to ensure that they do not unduly limit the number of records found),

*available at* http://www.usdoj.gov/oip/foia_updates/Vol_XVI_3/page3.htm.  Defendant

DOD repeatedly protests that TALON reports do not constitute "surveillance," a

questionable assertion given that the term can be reasonably interpreted to include

documents such as TALON reports that recount the activities of certain political groups.

*See Webster's New World Dictionary* (1984) (defining "surveillance" to include "watch

kept over a person" and "supervision or inspection").  In any event, Defendant DOD's

hair-splitting game of semantics runs counter to established precedent, which requires

that an agency liberally construe a FOIA request.  As a result, this Court should deny

Defendant DOD's request for summary judgment.

## II.     DEFENDANT DOJ HAS FAILED TO MEET ITS BURDEN OF PROVING BEYOND MATERIAL DOUBT THAT THE FBI CONDUCTED A SEARCH REASONABLY CALCULATED TO UNCOVER ALL DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST

Summary judgment in favor of an agency is inappropriate if the record contains

"positive identification of overlooked materials," *Valencia-Lucena*, 180 F.3d at 326, or if

the record "leaves substantial doubt as to the sufficiency of [an agency's] search," *Truitt*,

897 F.2d at 542.  Because the record in this case evinces both of these infirmities,

Defendant DOJ has failed to meet its burden of proving beyond material doubt that the FBI conducted a search reasonably calculated to uncover all documents responsive to Plaintiff's FOIA request.  As a result, Defendant DOJ's request for summary judgment should also be denied.

Admittedly, on the day that Defendants filed their Motion for Summary Judgment, the record contained no indication of FBI involvement in the TALON program. However, that all changed five days later, when on July 3, 2006, DOD-OFOI released unredacted versions of the previously disclosed TALON reports, revealing for the first time that the FBI was significantly involved in the TALON program.  (*See* Third Segroves Decl. Ex. 1.C (TALON reports indicating that FBI-affiliated groups, known as "Joint Terrorism Task Forces" or "JTTFs," were among the "coordinating agencies" and "persons briefed locally").)

FBI involvement in the TALON program was also evidenced by the fact that the agency who initially requested that information be redacted on the TALON reports thought it necessary to obtain FBI approval before releasing the unredacted TALON reports to Plaintiff.  (*See* Third Kammer Decl. ¶ 11.)  Immigration and Customs Enforcement, a component agency within the Department of Homeland Security, had been the agency initially responsible for redacting information in the "source," "coordinating agencies" and "persons briefed locally" fields found on the TALON reports.  (*Id.*)  Once the Parties failed to reach an agreement as to whether this information could be withheld under FOIA, Immigration and Customs Enforcement reversed itself and determined that the information could be disclosed.  However, instead

of instructing DOD-OFOI to release unredacted versions of the previously disclosed

TALON reports, Immigration and Customs Enforcement concluded that FBI approval

was necessary. (*Id.*)

　　Despite the fact that the record now indicates significant FBI involvement in the

TALON program, and despite the fact that Plaintiff's FOIA request specifically asked for

documents related to surveillance "performed by non-FBI personnel (e.g., military

personnel or local law enforcement), *the products of which were forwarded to the FBI*"

(Wolf Decl. Ex. G at 2 n.1 (emphasis added)), the FBI has yet to produce a single

document responsive to Plaintiff's request for agency records related to the surveillance

of meetings involving LGBT organizations or organizations discussing, considering or

stating opposition to "Don't Ask, Don't Tell." It is important to note that in order to be

discoverable under FOIA, a record need not be created by the agency that receives the

FOIA request; records created by other agencies that are within the recipient agency's

possession or control are subject to disclosure as well. *U.S. Dep't of Justice v. Tax

Analysts*, 492 U.S. 136, 144-45 (1989).

　　It is Defendant DOJ that bears the burden of demonstrating beyond material doubt

that the FBI's search was reasonably calculated to uncover *all* relevant documents.

*Oglesby*, 920 F.2d at 68. Because the record (1) contains "positive identification of

overlooked materials," *Valencia-Lucena*, 180 F.3d at 326, and (2) "leaves substantial

doubt as to the sufficiency of [the FBI's] search," *Truitt*, 897 F.2d at 542, summary

judgment in favor of Defendant DOJ is wholly inappropriate at this time.[4]

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment should be

denied.  Moreover, the Court should issue an order directing CIFA, DOD-OFOI and the

FBI to conduct searches reasonably calculated to uncover *all* documents responsive to

Plaintiff's FOIA requests.  In accordance with Local Civil Rule 7(c), a proposed order to

this effect is attached hereto as Exhibit 2.

Dated: August 11, 2006                    Respectfully submitted,

                                          Christopher Wolf
                                          (D.C. Bar No. 335885)


                                          */s/ James F. Segroves*
                                          James F. Segroves
                                          (D.C. Bar No. 480360)
                                          Meredith C. Bailey
                                          (D.C. Bar No. 494476)
                                          PROSKAUER ROSE LLP
                                          1001 Pennsylvania Avenue, NW
                                          Suite 400 South
                                          Washington, DC 20004-2533
                                          202.416.6800
                                          202.416.6899 (fax)

                                          Jerry L. Dasti
                                          (Not Admitted in D.C.)
                                          PROSKAUER ROSE LLP

---

[4] The FBI's initial treatment of Plaintiff's FOIA request is also relevant to this Court's evaluation of the adequacy of the FBI's search for documents, as that treatment suggests an antipathy towards Plaintiff's FOIA request.  While not evidence of bad faith per se, the FBI initially returned Plaintiff's FOIA request in its entirety, claiming that it did not adequately describe the information sought—an indefensible position that was quickly withdrawn by the FBI once Plaintiff made clear that it understood what was required of a request under FOIA and that its original request easily satisfied all applicable standards.  (*See* First Segroves Decl. Ex. M.)

1585 Broadway
New York, NY 10036-8299
212.969.3000
212.969.2900 (fax)

*Attorneys for Plaintiff Servicemembers*
*Legal Defense Network*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

|                                            |     |                              |
| ------------------------------------------ | --- | ---------------------------- |
|                                            | )   |                              |
| SERVICEMEMBERS LEGAL                       | )   |                              |
| DEFENSE NETWORK,                           | )   |                              |
|                                            | )   |                              |
| Plaintiff,                                 | )   |                              |
|                                            | )   |                              |
| v.                                         | )   | Civil Action No. 06-200 (RMC) |
|                                            | )   |                              |
| DEPARTMENT OF DEFENSE, *et al.*,           | )   |                              |
|                                            | )   |                              |
| Defendants.                                | )   |                              |
|                                            | )   |                              |

---

**PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT
OF MATERIAL FACTS AS TO WHICH THERE IS NO GENERAL
<u>DISPUTE AND STATEMENT OF MATERIAL FACTS IN DISPUTE</u>**

Plaintiff Servicemembers Legal Defense Network, through undersigned counsel,

hereby responds to Defendants' Statement of Material Facts As to Which There Is No

Genuine Dispute and Defendants' Notice of Supplement to Rule 56.1 Statement of

Material Facts as to Which There Is No Dispute (collectively, "Defendants' Facts").

Pursuant to Local Civil Rules 7(h) and 56.1, Plaintiff also submits its Statement of Material

Facts In Dispute ("Plaintiff's Facts").

**PLAINTIFF'S RESPONSE TO DEFENDANTS' FACTS**

1.      Plaintiff does not dispute this statement.

2.      Plaintiff does not dispute this statement.

3.      Plaintiff has no information upon which to dispute this statement for

purposes of Defendants' Motion for Summary Judgment ("Defendants' Motion").

4.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

5.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

6.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

7.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

8.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

9.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

10.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

11.    Plaintiff disputes paragraph 11 of Defendants' Facts in so far as it implies that the Federal Bureau of Investigation ("FBI") has fully processed Plaintiff's request for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, by conducting an adequate search reasonably calculated to uncover all relevant documents.  (*See* Mem. of P. & A. in Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") at 23-26.)

12.    Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

13.    Plaintiff does not dispute this statement.

2

14.     Plaintiff does not dispute this statement.

15.     Plaintiff disputes paragraph 15 of Defendants' Facts in so far as it implies that the Counterintelligence Field Activity ("CIFA") and/or the Department of Defense Office of Freedom of Information ("DOD-OFOI") have fully processed Plaintiff's request for records under FOIA by conducting an adequate search reasonably calculated to uncover all relevant documents.  (*See id*. at 16-23.)  Plaintiff also disputes paragraph 15's assertion that Threat and Local Observation Notice reports ("TALON reports") do not reflect surveillance of the groups listed in said reports.  (*See id.* at 23.)

16.     Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

17.     Plaintiff disputes paragraph 17 of Defendants' Facts in so far as it implies that CIFA has fully processed Plaintiff's request for records under FOIA by conducting an adequate search reasonably calculated to uncover all relevant documents.  (*See id*. at 16-23.)

18.     Plaintiff disputes paragraph 18 of Defendants' Facts in so far as it implies that the Under Secretary of Defense for Intelligence has fully processed Plaintiff's request for records under FOIA by conducting an adequate search reasonably calculated to uncover all relevant documents.  (*See id*. at 20.)

19.     Plaintiff does not dispute this statement.

20.     Save for the fact that paragraph 20 of the Defendants' Facts repeats the assertion that TALON reports do no reflect surveillance of the groups listed in said reports, Plaintiff does not dispute this statement.

21.     Plaintiff disputes paragraph 21 of Defendants' Facts in so far as it implies that CIFA and/or DOD-OFOI have fully processed Plaintiff's request for records under FOIA by conducting an adequate search reasonably calculated to uncover all relevant documents.  (*See id*. at 16-23.)

22.     Plaintiff has no information upon which to dispute this statement for purposes of Defendants' Motion.

23.     Plaintiff does not dispute this statement.

24.     Plaintiff does not dispute this statement.[1]

## STATEMENT OF PLAINTIFF'S FACTS

1.     With respect to the searches already conducted by CIFA and DOD-OFOI in response to Plaintiff's FOIA requests, a material question of fact exists as to whether CIFA and DOD-OFOI have conducted adequate searches reasonably calculated to uncover all documents responsive to Plaintiff's FOIA requests.  Defendant DOD has submitted a supporting declaration on behalf of CIFA and DOD-OFOI that fails to provide sufficient information upon which to determine the adequacy of each agency's search for documents.  (*See id.* at 16-21.)

2.     With respect to the searches already conducted by the FBI in response to Plaintiff's FOIA request, a material question of fact exists as to whether the FBI conducted an adequate search reasonably calculated to uncover all documents responsive to Plaintiff's FOIA request.  Evidence recently added to the record indicates that FBI

---

[1] Paragraph 24 of Defendants' Fact was added by a supplemental pleading filed on July 5, 2006.  (*See* Defs.' Notice of Submission of Suppl. Decl. [Dkt. #35].)

personnel coordinated the collection of information through the use of TALON reports

and were briefed on the contents of TALON reports.  (*See* Third Segroves Decl. Ex. 1.C.)

To date, however, the FBI has produced no documentation relative to those activities.

Dated: August 11, 2006                              Respectfully submitted,

                                                    Christopher Wolf
                                                    (D.C. Bar No. 335885)


                                                    */s/ James F. Segroves*
                                                    James F. Segroves
                                                    (D.C. Bar No. 480360)
                                                    Meredith C. Bailey
                                                    (D.C. Bar No. 494476)
                                                    PROSKAUER ROSE LLP
                                                    1001 Pennsylvania Avenue, NW
                                                    Suite 400 South
                                                    Washington, DC 20004-2533
                                                    202.416.6800
                                                    202.416.6899 (fax)

                                                    Jerry L. Dasti
                                                    (Not Admitted in D.C.)
                                                    PROSKAUER ROSE LLP
                                                    1585 Broadway
                                                    New York, NY 10036-8299
                                                    212.969.3000
                                                    212.969.2900 (fax)

                                                    *Attorneys for Plaintiff Servicemembers*
                                                    *Legal Defense Network*