UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                       )
SERVICEMEMBERS LEGAL DEFENSE           )
NETWORK,                               )
                                       )
        Plaintiff,                     )
                                       )
        v.                             )    06-cv-200 (RMC)
                                       )
DEPARTMENT OF DEFENSE,                 )
*et al.*                               )
                                       )
        Defendants.                    )
_____ )

**REPLY TO OPPOSITION TO MOTION FOR SUMMARY JUDGMENT OF
DEFENDANTS THE UNITED STATES DEPARTMENT OF JUSTICE AND UNITED
STATES DEPARTMENT OF DEFENSE**

**INTRODUCTION**

    Plaintiff offers no legitimate basis for opposing defendants' motion for summary judgment. Its assertion that the Department of Defense ("DOD") has "narrowly construed" plaintiff's request ignores DOD's repeated statements that, notwithstanding the plain language of plaintiff's request, DOD has responded to the request as if it called for TALON reports concerning gay and lesbian groups. Its assertion that DOD's declaration is inadequately detailed, rests on unavailing quibbles that ignore the nature of its own request and DOD's search. And its assertion that the FBI's search was inadequate, based on the alleged "significant involvement" of local Joint Terrorism Task Force offices in the TALON program, is wrong for various reasons, including but not limited to the fact that the FBI has no obligation to search its field offices when,

as here, the request does not specifically call for it. Defendants are therefore entitled to summary judgment.

## I.     DOD IS ENTITLED TO SUMMARY JUDGMENT

Plaintiff's opposition asserts that DOD is not entitled to summary judgment because DOD's declaration lacks sufficient detail and because DOD purportedly "narrowly construed" plaintiff's request. Memorandum of Points and Authorities in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") at 16-23. Neither contention has merit.

### A.     DOD'S DECLARATION ESTABLISHES THE ADEQUACY OF ITS SEARCH

DOD's search was adequate because it was reasonably calculated to find all documents responsive to plaintiff's requests. Most importantly, after reformulating plaintiff's request to encompass the TALON program, see section I(B), *infra*, the Counterintelligence Field Activity ("CIFA"), which is responsible for the TALON program, searched the TALON database using a variety of search terms that were reasonably calculated to locate the documents in the database that were related to gay and lesbian groups. *See* Memorandum in Support of Defendants' Motion for Summary Judgment ("Def. Mem."), Ex. 3, Third Declaration of William T. Kammer ("Third Kammer Dec.") at ¶ 9. CIFA also searched its shared file network and all e-mail and documents in its communications office. *Id*. at ¶ 4. In addition, the Office of the Under Secretary of Defense for Intelligence ("USD(I)") searched its files and located various documents as a result of the search. *Id*. at ¶¶ 5, 8.

Plaintiff does not challenge the search terms selected to search the TALON database, or otherwise identify any defect in DOD's search. Instead, it complains that the affidavits should have contained additional detail without any attention to whether the absent detail really calls

into question the adequacy of the search. *See* Pl. Opp. at 20. For example, plaintiff asserts that the declaration is inadequate because it did not specify the search terms used in CIFA's initial search of the TALON database. *Id*. This contention makes no sense given that plaintiff does not (and could not reasonably) question the search terms used in CIFA's second search of the TALON database. Because the second search was indisputably adequate, the first search of the TALON database is irrelevant to determining whether CIFA's overall search was adequate.

In a similar vein, plaintiff asserts that DOD's declaration was insufficient because it did not specify the "search terms" used by the Office of the Under Secretary of Defense for Intelligence or "what files were 'searched' (*e.g.*, paper and electronic, emails, etc.)." Pl. Opp. at 20. The searches, however, were calibrated to the type of documents that each office was likely to have. *See Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (reasonableness of each search depends upon the facts of each case). CIFA was likely to have documents responsive to plaintiff's requests (once DOD reformulated plaintiff's requests to include TALON reports), including requests 1-6, because it supervised the TALON program and maintained the TALON database; DOD's declaration thus identified the search terms used by CIFA to search the database. *See* Def. Mem, Ex. 3, Third Kammer Dec. at ¶ 9; *see also* Ex. 1, Fifth Declaration of William T. Kammer ("Fifth Kammer Dec.") at ¶ 3.

By contrast, USD(I) was unlikely to have documents related to Request Nos. 1-6 because TALON reports were the product of decentralized reporting to a database managed by CIFA. *Id*. at ¶ 3. USD(I) was tasked to search for documents responsive to Requests 7-10, which, for the most part, call for specifically identified documents that DOD produced. *See* Exhibits to Plaintiff's Motion for a Preliminary Injunction, Ex. 25B, Request Nos. 7-10; Ex. 1, Fifth

3

Kammer Dec. at ¶ 3. The complaint that USD(I)'s search was not described in as great a detail as CIFA's, Pl. Opp. at 20, thus disregards the fact that a complicated search was not required to locate the documents that USD(I) was likely to have. It was hardly necessary to describe the "search terms" used to identify specifically requested documents when the agency located and produced the requested documents.

Nonetheless, paragraphs 3-5 of Exhibit 1 to this reply provide additional details about USD(I)'s search that foreclose any contention that the search was inadequate. The declaration confirms that USD(I) was not likely to have documents about "surveillance" of gay and lesbian groups; instead, the purpose of USD(I)'s search was to locate the specifically requested documents in Requests 7-10 and documents related thereto. Ex. 1, Fifth Kammer Dec. at ¶ 3. To this end, USD(I) examined the files in the Counterintelligence Directorate's electronic central files repository, which contains all work accomplished by the Directorate. *Id*. at ¶ 4. In addition, the officer responsible for the search searched a hard-copy file of all TALON-related documents, which had been assembled in response to public discussion by individuals who are knowledgeable about the program. *Id*. at ¶ 5. Those who assembled the file were already familiar with the documents that existed regarding the program and also consulted with knowledgeable individuals in various offices, including CIFA. *Id*. The search located the specific documents identified as well as related documents. *Id*.[1]

---

[1] In assembling information concerning USD(I)'s search, USD(I) realized that DOD had not accounted, in its prior responses to plaintiff, for five pages of attachments that have been withheld pursuant to Exemptions (b)(3) and (5). Those documents accompanied a previously released document that had been submitted to the Under Secretary of Defense for Intelligence. Ex. 1, Fifth Kammer Dec. at ¶ 6; Ex. 2, Declaration of John M. Smith at ¶ 4. The attached declaration of John M. Smith makes clear that the documents were properly withheld. *Id*. at ¶¶ 4-9.

### B. DOD DID NOT "NARROWLY CONSTRUE" PLAINTIFF'S REQUEST

Plaintiff's other objection to DOD's search is misguided for two reasons. To begin with, DOD has twice explained – and now states for a third time – that it has treated plaintiff's request as if it called for all TALON reports relating to gay and lesbian groups, even though the request did not merit such consideration. *See* Def. Mem., Ex. 6 at 2 ("rather than require SLDN to file another FOIA request and/or spend unnecessary time litigating the question, DOD is willing to treat your request as if it had called for all TALON reports related to meetings or communications involving all LGBT groups"); *see also id*., Ex. 3, Third Kammer Dec. at ¶ 9 (confirming that DOD responded to plaintiff's request in this way). Plaintiff's argument inexplicably ignores this accommodation and does not address the search terms that DOD used to search the TALON database. *See* Pl. Mem. at 21-23. Thus, even assuming that the word "surveillance" could credibly be read to encompass the TALON program, DOD's search was adequate.

While the foregoing alone establishes the error of this argument, it also bears emphasis that plaintiff's request, fairly read, did not call for TALON reports because, as explained in DOD's May 17, 2006, letter to the plaintiff, *see* Def. Mem., Ex. 6 at 1-2, the reports at issue do not reflect "surveillance." *See also* Pl. Opp., Exs. 1B-C. To the contrary, the reports consist of (1) notification that there were to be protests at certain universities where military personnel were to be present, based on mass e-mails sent out in advance of the protest, and (2) reports of disruptions of military recruiting that occurred at public protests at sites where military recruiting was taking place. *See id*. at Exs. 1B-C. What plaintiff refers to as "hairsplitting semantics" is better characterized as heeding the plain language of a request. Indeed, other than weakly

5

terming defendants' assertion that such reports are not "surveillance" as "questionable," and citing other definitions of surveillance that also do not encompass the TALON program, plaintiff does not even attempt to argue that such reports could reasonably be viewed as "surveillance." While agencies must liberally construe FOIA requests, the agency is also "bound to read" the request "as drafted, not as either agency officials *or the requester* might wish it was drafted." *Gallace v. Dept' of Agriculture*, No. 03-5141, 2003 WL 22318866, *1 (D.C. Cir. Sept. 30, 2003) (per curiam) (internal quotation marks, citation, and brackets omitted) (emphasis added). DOD was therefore not obligated to read the word "surveillance" to encompass documents that do not reflect surveillance under any reasonable meaning of the term. Even if defendants had not accommodated plaintiff's unjustifiably broad construction of its request, defendants' search would have been adequate.[2]

As a final note, to the extent that plaintiff intended its request to encompass TALON reports such as those produced to plaintiff, its phrasing was more than inapt – it was deliberately inflammatory. Whether intended to inflate the press or political significance of the request or, even more inappropriate, to obtain an implicit concession that the TALON program entailed something that it did not – *i.e.*, "surveillance" of protesters – plaintiff's decision to use inappropriate, politically-loaded terminology did not alter DOD's obligation to respond to the request according to its plain meaning. Nor was DOD obligated to reformulate political rhetoric

---

[2] Plaintiff's reliance on *LaCedrea v. EOUSA*, 317 F.3d 345 (D.C. Cir. 2003), is misplaced both because the government in this case did not ultimately adopt the construction that plaintiff criticizes and because such a construction, had the government adopted it, would have been justified by the plain language of the request. By contrast, in *LaCedrea*, the government construed the request at issue in a way that the plain language of the request did not allow – specifically, in response to a formulation calling for a set of documents and expressing special interest in a subset of such documents, the government searched only for the subset. *Id*. at 346-48.

as a FOIA request that called for responsive documents. The fact that DOD went beyond its obligation, and construed the request more broadly than it deserved, only further confirms that plaintiff's opposition has no merit.

## II.    DOJ IS ENTITLED TO SUMMARY JUDGMENT

In opposing DOJ's motion for summary judgment, plaintiff does not challenge the search conducted by the Office of Information and Privacy, but rather challenges only the FBI's search. *See* Pl. Opp. at 23-26. Its sole argument that the search was inadequate is its assertion that the record contains evidence "that the FBI was significantly involved in the TALON program," and that its failure to produce records means that the search was deficient. *Id*. at 23. There are various reasons why plaintiff is wrong.

*First*, plaintiff identifies no flaws in the search itself. Defendants' initial memorandum contained extensive explanation of the FBI Central Records System ("CRS") and identified the numerous search terms used to search the system, including the words "homosexual," "Don't Ask Don't Tell," the name of plaintiff's organization, and the specific protest locations identified by the defendants. Def. Mem., Ex. 3, Second Declaration of David M. Hardy at ¶¶ 24-32. Various courts have upheld the adequacy of such searches.[3] The FBI also went beyond the CRS search to search eight offices for records related to the Silberman-Robb Commission. *Id*. at ¶¶ 32-33. Plaintiff does not identify additional search terms that the FBI should have used, or

---

[3] *See*, *e.g.*, *Antonelli v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 04-1180, 2006 WL 367893 at *7 (D.D.C. Feb. 16, 2006) ("The Court is convinced from defendant's description of the CRS, *see* 2 Hardy Decl. ¶¶ 89-93, that a search of that system was reasonably calculated to locate responsive records."); *Gonzalez v. Bureau of Alcohol, Tobacco, and Firearms*, No. 04-2281, 2005 WL 3201009 at *5 (D.D.C. Nov. 9, 2005) (upholding the reasonableness of an FBI search of the CRS system); *Master v. FBI*, 926 F. Supp. 193, 196-97 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (same).

otherwise explain why the search was inadequate.  Instead, plaintiff bases its argument purely on purported evidence of FBI involvement in the TALON program and the fact that the FBI did not have documents responsive to plaintiff's requests.  Pl. Opp. at 23-26.  Plaintiff thus ignores the well-established principle that the failure to uncover relevant documents does not by itself establish a search's inadequacy, absent some identified deficiency in the search.[4]  This deficiency is particularly pronounced in this case given that the records of offices of the Joint Terrorism Task Force – the references to which in the TALON reports are the sole basis for plaintiff's claim of inadequacy – are part of CRS.  *See* Ex. 3, Third Declaration of David M. Hardy at ¶3.  The FBI's search therefore encompassed JTTF-generated investigative-files.  *Id*.  Because the search was reasonably calculated to uncover all relevant documents, there is no basis for denying DOJ's motion.[5]

*Second*, plaintiff's basic factual premise is wrong.  The TALON reports that have been produced do not suggest that the FBI has overlooked a significant number of documents or, more precisely, that the FBI's search was somehow inadequate.  Putting aside the fact that the relevant TALON reports do not reflect "surveillance" and are therefore not responsive, the reports do not

---

[4] *See*, *e.g.*, *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995) (the failure to turn up a responsive document does not establish a search's inadequacy); *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (The issue in evaluating a FOIA request is whether the search conducted by the agency was adequate, not whether there might be documents responsive to the request); *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1982) ("a search is not unreasonable simply because it fails to produce all relevant material").

[5] For the same reason, plaintiffs' miscites *Valencia-Lucena v. United States Coast Guard*, *FOIA/PA*, 180 F.3d 321 (D.C. Cir. 1999).  That case does not stand for the principle that the failure to find particular documents by itself establishes a search's inadequacy.  *Id*. at 327.  To the contrary, the Court specifically recognized (citing cases from note 3) that the "adequacy of a search is separate from the question of whether the requested" documents are found.  *Id*. at 326.  As the full opinion makes clear, the evidence of overlooked documents was not the documents themselves but the failure to search particular areas where documents were likely to be located.  *Id*.

indicate that the FBI acted upon the information in the reports or that it was the source of the information. Instead, the source of the information in the reports is identified as "A Special Agent of the Federal Protective Service, U.S. Department of Homeland Security." *See* Pl. Opp., Ex. 1C at 2, 5, 7, 9, 12, 14, 17. Plaintiff's only suggestion of an FBI connection is that the reports identify individual JTTF offices as one of several local federal components that were "persons briefed locally" and/or "coordinating agencies." Such references do not call into doubt the adequacy of a search that, even plaintiff admits, would not otherwise have been questioned. Indeed, CIFA itself, which maintains the TALON database, conducted a full search that produced only a small number of reports.

*Third*, a "request for records maintained by a particular FBI field office must be submitted directly to that field office. 28 C.F.R. § 16.3(a). The FBI is not obligated to undertake a search of its field offices' records when a requester submits his request only to its headquarters."[6] *Ray v. FBI*, No. 05-0876, 2006 WL 2048376, *3 (D.D.C. July 24, 2006); *see also Piccolo v. EOUSA*, 93 Fed. Appx. 235, 236 (D.C. Cir. 2004) (a search of FBI headquarters but not field offices was appropriate under 28 C.F.R. § 16.3(a)); Ex. 4, *Prescott v. DOJ*, No. 00-0187 slip op. at 7 (D.D.C. Aug. 10, 2001) (under 28 C.F.R. § 16.3(a), a request to FBI headquarters did not obligate the FBI to search field offices); *see also Kowalczyk v. DOJ*, 73 F.3d 386, 388-89 (D.C. Cir. 1996) (FBI search of headquarters was reasonable where request did not alert FBI that the requester wanted records in a particular field office). Plaintiff's request did not specify that the FBI should search particular field offices, and the TALON reports cited by

---

[6] Knowledge of this provision may help explain why plaintiff does not attempt to identify any specific deficiency in the FBI's search.

plaintiff refer only to local offices of the Joint Terrorism Task Force. *See* Pl. PI Ex. 25G. 28 C.F.R. § 16.3(a) therefore forecloses plaintiff's argument that the FBI's search was inadequate because it did not uncover hypothetical documents in local JTTF offices. Further, as noted *supra* at 7, Joint Terrorism Task Force ("JTTF") documents are part of the FBI Central Records System, and so the CRS search described in the FBI's declaration encompassed those offices. *See* Ex. 3, Third Hardy Dec. at ¶ 3.

*Fourth*, as discussed *supra*, the TALON reports at issue in this case do not reflect surveillance of gay and lesbian groups. Because TALON reports do not reflect surveillance, the failure to find TALON-related documents cannot be evidence of an inadequate search. In short, plaintiff's argument is unavailing for a variety of reasons.

## CONCLUSION

For the foregoing reasons, defendants' motion should be granted.

Dated: September 1, 2006                           Respectfully submitted,

                                                   PETER D. KEISLER
                                                   Assistant Attorney General

                                                   KENNETH L. WAINSTEIN
                                                   United States Attorney

                                                   ELIZABETH J. SHAPIRO
                                                   Assistant Branch Director


                                                   /s/
                                                   SAMUEL C. KAPLAN (D.C. Bar No. 463350)
                                                   Trial Attorney
                                                   United States Department of Justice
                                                   Civil Division, Federal Programs Branch
                                                   P.O. Box 883, Rm. 7302

Washington, D.C. 20044
(202) 514-4686 phone
(202) 616-8202 fax
[samuel.kaplan@usdoj.gov](mailto:samuel.kaplan@usdoj.gov)
Attorneys for Defendants

Case 1:06-cv-00200-RMC     Document 39     Filed 09/01/2006     Page 11 of 11