# EXHIBIT 4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILE COPY

PHILIP PRESCOTT,

    Plaintiff,

v.                                     Civ. Action No. 00-0187 (TPJ)

DEPARTMENT OF JUSTICE,

    Defendant.

FILED

AUG 1 0 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION AND ORDER

Pending before the Court is defendant's motion to dismiss or for summary judgment, which plaintiff, proceeding *pro se*, has opposed. Upon consideration of the parties' submissions and the entire record, the Court will grant defendant's motion in part and deny it in part.

### I. BACKGROUND

In this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, plaintiff, a federal prisoner, seeks records pertaining to himself. He requested Bureau of Prisons ("BOP") records by letter dated April 18, 1999, and Federal Bureau of Investigation ("FBI") records by letter dated December 21, 1999. The BOP located 235 pages of responsive records, two pages of which it referred to the Drug Enforcement Administration ("DEA") for processing. By letter dated May 26, 1999, the BOP released 113 pages-- 68 pages in their entirety and 45 pages with redactions. It withheld 122 pages in their entirety. Defendant's Exhibit B. Following an administrative appeal, the BOP released an additional 19 pages, three in their entirety, by letter dated December 8, 1999. By letter dated February 25, 2000, the FBI released all of the 79 responsive records it had located, but with redactions. By letter dated May 30, 2000, the DEA re-

released its two referred pages after determining that some of the information withheld in its first release in December 1999 could be disclosed. Defendant's Exhibit E. On December 11, 2000, plaintiff voluntarily dismissed claims against the DEA. Defendant asserts various FOIA exemptions discussed below to justify its withholding of information. Plaintiff challenges defendant's reliance on the FOIA exemptions and the FBI's search for records.

## II. DISCUSSION

The Court may award summary judgment solely on the basis of information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981); see also Vaughn v. Rosen, 484 F.2d 820, 826 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974). An agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978), cert. denied, 445 U.S. 927 (1980) (internal citation and quotation omitted); see also Maydak v. Department of Justice, 218 F.3d 760, 764 (D.C. Cir. 2000) (government has the burden of proving each claimed FOIA exemption).

*Federal Bureau of Investigation*

<u>Responsive Records</u>

The FBI withheld portions of 79 pages of responsive records under Exemptions 3 and 7(C), 7(D), 7(E) and 7(F). Plaintiff does not dispute, and therefore concedes, the FBI's

2

application of Exemption 3. Exemption 7 of the FOIA protects from disclosure "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records" would cause one of six enumerated harms. 5 U.S.C. § 552 (b)(7). The Court first finds that the responsive records satisfy the threshold law enforcement requirement as they were part of an FBI "file concern[ing] an investigation of plaintiff for reportedly heading a large drug trafficking organization, having access to machine guns and grenades, and threatening local police officers. . . . During the course of the investigation, plaintiff was arrested for an attempted robbery in which a handgun was used." Declaration of Scott A. Hodes ("Hodes Decl.") ¶ 10.[1]

Exemption 7(C) protects from disclosure information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552 (b)(7)(C). FBI applied this exemption to names and other identifying information of third-party individuals. Plaintiff does not dispute the redaction of such information, which, in any event, has been consistently affirmed by the courts, absent an overriding public interest in disclosure. See Perrone v. FBI, 908 F. Supp. 24, 26 (D.D.C. 1995) (internal citations omitted).

Exemption 7(D) of the FOIA protects from disclosure those records or information compiled for law enforcement purposes that

> could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information compiled by a criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source.

5 U.S.C. § 552 (b)7(D). To invoke Exemption 7(D), an agency must show either that a source

---

[1] Pursuant to the Order of September 14, 2000, Exhibit D of the Hodes Declaration was maintained under seal for a period of 180 days. Plaintiff has not moved to continue the seal; therefore, the seal will be lifted and Exhibit D will be placed in the public record.

3

provided the information to the agency under express assurances of confidentiality or that the circumstances support an inference of confidentiality. U.S. Department of Justice v. Landano, 508 U.S. 165, 179-81 (1993). When determining the latter, the proper inquiry is "whether the particular source spoke with an understanding that the communication would remain confidential." Id. at 172. The government is not entitled to a presumption that all sources supplying information in the course of a criminal investigation are confidential sources. An implied grant of confidentiality may be inferred, however, from the circumstances surrounding the imparting of the information, including the nature of the criminal investigation and the informant's relationship to the target. Id; see also Computer Professionals for Social Responsibility v. United States Secret Service, 72 F.3d 897, 905-06 (D.C. Cir. 1996).

FBI invokes this exemption, in conjunction with Exemption 7(C), to withhold identities of and information provided by third-party individuals, including a cooperating witness, under an asserted implied grant of confidentiality. Hodes Decl. ¶¶ 30-32. Defendant avers that individuals "provided information about plaintiff and/or his criminal activities. . . . Each of these individuals protected had a specific personal or business relationship with plaintiff. Plaintiff was investigated for possession and distribution of major quantities of narcotics as well as possession of extremely violent weapons including machine guns and grenades . . . . If identified, these individuals may have [ ] reasonable fears of reprisal . . . ." Hodes Decl. ¶ 30. The circumstances surrounding the imparting of information in this case are closely akin to those the D.C. Circuit has identified as "generic" circumstances "in which an implied assurance of confidentiality fairly can be inferred." Mays v. Drug Enforcement Administration, 234 F.3d 1324, 1330-31 (D.C. Cir. 2000). Carving out a category of cases in which source confidentiality appears to be automatic,

4

the circuit court stated, "we have no doubt that a source of information about a conspiracy to distribute cocaine typically faces a sufficient threat of retaliation that the information he provides should be treated as implicitly confidential." Id at 1331. The responsive records document "an investigation of plaintiff for reportedly heading a large drug trafficking organization . . . ." Hodes Decl. ¶ 10. Discerning no significant difference between this case and Mays, the Court finds that the FBI properly justified its withholdings under Exemption 7(D) based on an implied grant of confidentiality.

Exemption 7(E) protects from disclosure law enforcement records that "would disclose techniques and procedures for law enforcement investigation . . . or would disclose guidelines for law enforcement investigations . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). The FBI redacted information contained on form FD-515 that rates the effectiveness of investigative techniques. Disclosure of such information "would assist a potential criminal in correlating the use of a particular investigative technique with its corresponding effectiveness . . . and consequently, could enable him to employ countermeasures to neutralize those techniques." Hodes Decl. ¶ 34. This Court has previously affirmed defendant's justification for withholding such information under Exemption 7(E). See Putnam v. U.S. Dep't of Justice, 873 F. Supp. 705, 717 (D.D.C. 1995); see also Perrone v. FBI, 908 F. Supp. 24, 28 (D.D.C. 1995); Pray v. Dep't of Justice, 902 F. Supp. 1, 4 (D.D.C. 1995), aff'd in relevant part, 1996 WL 734142 (D.C. Cir. 1996).

The FBI withheld names and identifying information under Exemption 7(F). Because Exemption 7(C) justifies withholding the same information, the Court will not discuss Exemption 7(F), but finds the FBI's reliance on that exemption equally appropriate.

5

Adequacy of the FBI's Search

Where the adequacy of an agency's search for documents under FOIA is challenged, "the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." Weisberg v. United States Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The agency prevails on a motion for summary judgment only where it shows "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents." Weisberg v. United States Department of Justice, 705 F.2d 1344, 1351 (D.C. Cir. 1983). For purposes of this showing, the agency "may rely upon affidavits . . . . as long as they are relatively detailed and nonconclusory and . . . submitted in good faith." Id. (citations and quotations omitted). The required level of detail "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched . . . ." Oglesby v. United States Department of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990); accord Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 326 (D.C. Cir. 1999).

Plaintiff's challenge to the adequacy of the FBI's search is not based on the search conducted at FBI headquarters. Rather, it is based on the agency's failure to search files in FBI field offices plaintiff had identified in his request. In addition to his opposition, plaintiff has a motion pending to compel a search of those field offices located in New York, Connecticut, Florida and Maine. The FBI admits that it did not conduct a search of the field offices but asserts that it was not required to do so. Defendant asserts that it notified plaintiff in response to his request that under the FBI's FOIA regulations, plaintiff was required to "direct [his] requests to the appropriate field offices." Defendant's Reply at 2, but the exhibit to which defendant refers

6

does nothing of the sort. The only "Exhibit E" in the record is the DEA's letter releasing responsive records. Whether defendant notified plaintiff is irrelevant under the specific circumstances. Department of Justice FOIA regulations state in relevant part, "[i]n most cases, your FOIA request should be sent to a component's central FOIA office. *For records held by a field office of the Federal Bureau of Investigation (FBI) or the Immigration and Naturalization Service (INS), however, you must write directly to that FBI or INS field office address . . . ."* 28 C.F.R. § 16.3(a) (emphasis added). Under that regulation, FBI headquarters was not obligated to search field offices. The Court therefore cannot conclude that the FBI acted unreasonably or in bad faith by searching headquarter files only. Defendant's motion with respect to the FBI's search will be granted and plaintiff's motion to compel a search of FBI field offices will be denied. Plaintiff is free to submit FOIA requests to the respective field offices.

*Federal Bureau of Prisons*

Plaintiff challenges the BOP's application of Exemptions 5 and 7 to records withheld in part or in their entirety.

Exemption 5

Exemption 5 of the FOIA protects from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 522 (b)(5). This provision "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also FTC v. Grolier, Inc., 462 U.S. 19, 26 (1983); Burka v. U.S. Department of Health and Human Services, 87 F.3d 508, 516 (D. C. Cir. 1996); Martin v. Office of Special Counsel, 819 F.2d 1181, 1184 (D.C. Cir. 1987). The provision has

7

general reference to the rules of civil discovery under the Federal Rules of Civil Procedure, but, as applied to the government, has been held to recognize various so-called "governmental privileges," including the "deliberative process" privilege. EPA v. Mink, 410 U.S. 73, 89 (1973); Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

To qualify under deliberative process privilege, however, the withheld information must have been pre-decisional, i.e., "generated before the adoption of an agency policy" and deliberative, i.e., "reflects the give-and-take of the consultative process." Coastal States, 617 F.2d at 866. A pre-decisional document that "is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public" can lose its exempted status. Coastal States, 617 F.2d at 866. A reviewing court must consider such factors as whether the documents were composed by a subordinate for use by a superior who actually makes the decision and whether they purport to express the opinions or recommendations of the author alone or speak authoritatively for the agency. American Federal of Government Employees, Local 2782 v. United States Department of Commerce, 632 F. Supp. 1272, 1275-76 (D.D.C. 1986)(citing Coastal States, 617 F.2d at 868).

The BOP invokes Exemption 5 to justify withholding "intra-agency documents . . . identified to include pre-decisional opinions, conclusions and recommendations made by staff during deliberation on BOP policy . . . ." Declaration of Michael D. Tafelski ("Tafelski Decl.") ¶ 18. It avers that the information "was drafted by BOP staff or outside consultants and consists of information that was complied [sic] during an investigation or from an outside source and, if released, it could inhibit and affect the way staff communicate." Id. ¶ 17. The Court agrees with plaintiff that defendant's Exemption 5 justification is too vague and conclusory for the Court to

8

determine its propriety. The BOP's Vaughn index lists Exemption 5 along with various subsections of Exemption 7 as justification for withholding the same information without explaining how each exemption applies. "To justify summary judgment, a declaration must provide detailed and specific information demonstrating 'that material withheld is logically within the domain of the exemption claimed.'" Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 30 (D.C. Cir. 1998) (quoting King v. U.S. Department of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987)). Neither the BOP declaration nor the Vaughn index describes the records withheld under Exemption 5 with any detail from which the Court may conclude that they are protected under the deliberative process privilege or, for that matter, any other privilege. It is neither explained nor discernible how the withheld information figured into a deliberative process concerning that agency's policy or litigation. In sum, BOP's affidavit is, at best, "merely a 'categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure . . .'" PHE, Inc. v. Department of Justice, 983 F.2d 248, 250 (D.C. Cir. 1993) (quoting King v. U.S. Department of Justice, 830 F.2d at 224). Such evidence is "clearly inadequate" to support summary judgment. Id.

Exemption 7

Under Exemption 7, an agency must prove that the withheld records were compiled for law enforcement purposes "before [withholding] requested documents on the basis of any of [that exemption's] subparts." Pratt v. Webster, 673 F.2d 408, 16 (D.C. Cir.1982). BOP avers that the responsive records, located in plaintiff's inmate central file, were compiled for law enforcement purposes simply because of its "law enforcement mission." See Tafelski Decl. ¶¶ 13-16. Our circuit court has established a stricter standard for satisfying the prerequisite. While agencies

9

that "specialize[] in law enforcement [are] entitled to deference. . . . [T]his court's 'deferential' standard of review is not, however, 'vacuous.' . . . If the [agency] relies on declarations to identify a law enforcement purpose underlying withheld documents, such declarations must establish a rational 'nexus between the investigation and one of the agency's law enforcement duties,' . . . and a connection between an 'individual or incident and a possible security risk or violation of federal law.' . . . If the declarations 'fail to supply facts' in sufficient detail to apply the Pratt rational nexus test, then a court may not grant summary judgment for the agency.'". Campbell v. U.S. Dep't of Justice, 164 F.3d at 32 (quoting Pratt v. Webster, 673 F.2d at 419) (other internal citations omitted).

BOP's declaration does not satisfy the Pratt rational nexus test. The BOP central inmate file consists of all information "concerning the day-to-day activities and events occurring during [an inmate's confinement]," Tafelski Decl. ¶ 14, and therefore could not possibly contain only "investigatory files." As noted in its declaration, the BOP is statutorily authorized to manage, house and provide "protection, instruction and discipline" to "all persons charged with or convicted of offenses against the United States." Tafelski Decl., n. 2 (quoting 18 U.S.C. § 4042). It therefore is questionable if the BOP is a law enforcement agency for purposes of FOIA deference. Nonetheless, the court in Pratt specifically rejected the idea that records maintained by a law enforcement agency, there the FBI, per se satisfy the threshold requirement. BOP's Vaughn index provides some support of a law enforcement purpose for certain documents, but not for all. The Court may reasonably imply a law enforcement purpose for documents described as investigative reports of possible illegal activity, e.g., document number 1 (plaintiff's altercation with another inmate) and document number 3 (plaintiff's escape with another

10

individual). It cannot make that leap, however, for such documents described only as "posted picture file," Vaughn index at 1, "Norwalk Hospital documents" and various letters, id at 3, "transfer request," id at 15, and "Escort Trip Authorization Form," id at 18. Even if BOP had satisfied the threshold requirement, it would not have prevailed on most of the asserted subparts.

BOP invokes Exemption 7(C) to justify withholding "names of other inmates, inmate register numbers and information about the criminal history of third parties." Tafelski Decl. ¶ 20. As previously discussed, the withholding of third-party identifying information under Exemption 7(C) has been routinely affirmed. See supra at 3.

BOP invokes Exemption 7(D) to justify withholding information provided by individuals under an express assurance of confidentiality. Tafelski Decl. ¶ 25. To prevail on this claim, BOP must provide some "probative evidence that the source[s] did in fact receive an express grant of confidentiality." Campbell v. U.S. Dep't of Justice, 164 F.3d at 34 (quoting Davin v. U.S. Dept. of Justice, 60 F.3d 1043, (3rd Cir. 1995)). "Such evidence can take a wide variety of forms, including notations on the face of a withheld document, the personal knowledge of an official familiar with the source, a statement by the source, or contemporaneous documents discussing practices or policies for dealing with the source or similarly situated sources." Id. BOP has not proffered any such evidence and therefore has not met its burden on this exemption.

BOP invokes Exemption 7(E) to justify withholding "information regarding investigative techniques and procedures because release . . . would allow individuals to learn these techniques and possibly use them . . . to avoid detection or assist individuals in [ ] criminal activities." Tafelski Decl. ¶ 28. Again, BOP has merely reiterated the statutory language. It has not

11

described the withheld information in either its declaration or <u>Vaughn</u> index with sufficient particularity for the Court to find proper application of this exemption.

Finally, BOP invokes Exemption 7(F). That exemption protects from disclosure information contained in law enforcement files that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552 (b)(7)(F). In general, this exemption has been interpreted to apply to names and identifying information of law enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester. <u>See Durham v. United States Department of Justice</u>, 829 F.Supp. 428, 434 (D.D.C 1993); <u>Public Employees for Environmental Responsibility (Peer), Rocky Mountain Chapter v. U.S. E.P.A.</u>, 978 F. Supp. 955, 961 (D. Colo. 1997) (and cases cited therein). In reviewing claims under Exemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm. <u>Albuquerque Pub. Co. v. U.S. Dep't of Justice</u>, 726 F. Supp. 851, 858 (D.D.C. 1989).

BOP asserts Exemption 7(F) to justify withholding information that "identifies plaintiff's separatees and/or plaintiff actions, all of which, could endanger the life or physical safety of any individual." Tafelski Decl. ¶ 29. BOP avers that inmates are separated by use of certain criteria, "including the fact that one inmate provided testimony against another . . . or otherwise provided information about another inmate to law enforcement authorities . . . [and] [a]n inmate may have exhibited aggressive or intimidating behavior toward another inmate or inmates." Tafelski Decl. ¶ 30. "If the identities of separatees become known, the individuals who are required to be separated from plaintiff may be subjected to embarrassment, retaliation, threats, harassment, or

12

other actions at the direction and discretion of the plaintiff, his friends, or his associates." Id. ¶ 31. In addition, BOP avers that disclosure of such information could disrupt institutional security. Assuming without deciding that the records were compiled for law enforcement purposes, the Court finds that defendant has properly justified withholding identifying information about separatees under Exemption 7(F). The Court is not persuaded without more description that information about "plaintiff actions" has been properly withheld.

Defendant has not met its burden with respect to withholding BOP records under Exemptions 5 and 7. Summary judgment on those records will be denied.

*Segregability of Records*

The FOIA requires disclosure of all nonexempt information. See Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d 1022, 1026-27 (D.C. Cir. 1999). Therefore, when records are withheld in their entirety, the district court has an "affirmative duty to consider . . . *sua sponte*," if not otherwise raised, whether nonexempt information could have been segregated and released. Id. at 1028. "The 'segregability' requirement applies to all documents and all exemptions in the FOIA." Krikorian v. Department of State, 984 F.2d 461, 466 (D.C. Cir. 1993) (quoting Center for Auto Safety v. EPA, 731 F.2d 16, 21 (D.C.Cir.1984)).

The BOP withheld 100 pages of responsive records in their entirety. It avers that it evaluated each page for segregability and "[w]here a document was withheld in its entirety, the BOP determined that no meaningful portions could reasonably be released without destroying the integrity of such document as a whole or of disclosing otherwise protected information." Tafelski Decl. ¶ 34. Because the BOP's justification for withholding entire records rests substantially on

13

unsupported exemptions, the Court cannot resolve the segregability question on the current record.

For the reasons stated above, it is

ORDERED that defendant's motion to dismiss or for summary judgment [# 25] is GRANTED in part and DENIED in part. Summary judgment is entered for defendant on all claims pertaining to the Federal Bureau of Investigation. In all other respects, the motion is denied without prejudice. It is

FURTHER ORDERED that plaintiff's motion to compel defendant to search certain FBI field offices [# 31] and his motion to order the identification of recipients of documents [# 32] are DENIED. It is

FURTHER ORDERED that within sixty (60) days from the filing date of this Memorandum Opinion and Order, defendant shall file a supplemental pleading addressing the Court's concerns and, if appropriate, renewing its motion for summary judgment and/or release to plaintiff all non-exempt information. It is

FURTHER ORDERED that the seal on Defendant's Exhibit D to the Declaration of Scott Hodes is LIFTED. The Clerk is directed to place that exhibit in the public record.

Date: 6/5/01

Thomas Penfield Jackson
U.S. District Judge

14