UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SERVICEMEMBERS LEGAL DEFENSE NETWORK, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 06-200 (RMC) ) |
| DEPARTMENT OF DEFENSE AND DEPARTMENT OF JUSTICE, | ) ) ) ) ) |
| Defendants. | ) ) |

**MEMORANDUM OPINION**

The Servicemembers Legal Defense Network ("SLDN") filed this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Department of Defense ("DOD") and the Department of Justice ("DOJ") (collectively, "Defendants"). SLDN seeks release of government records relating to the alleged government surveillance of individuals and groups opposed to the government policy on gays and lesbians in the military, known as the "Don't Ask, Don't Tell" policy. Defendants have filed a motion for summary judgment, contending that they conducted an adequate search and have released all material that is not exempt from disclosure under 5 U.S.C. § 552(b). SLDN contends that DOD and DOJ did not fully and adequately process SLDN's FOIA requests. Because Defendants have submitted sworn declarations documenting an adequate record search, the Court will grant their motion for summary judgment.

**I. BACKGROUND FACTS**

SLDN is a non-profit public interest organization dedicated to ending discrimination against gay and lesbian United States military personnel. SLDN disseminates information and

provides legal services. It describes itself as an "organization dedicated to ending discrimination against and harassment of military personnel affected by 'Don't Ask, Don't Tell.'" *See* http://www.sldn.org (last visited Jan. 10, 2007).

On January 5, 2006, SLDN submitted FOIA requests to DOD, to DOD's component the Counterintelligence Field Activity ("CIFA"), and to the Federal Bureau of Investigation ("FBI"), a component of DOJ. Pl.'s Mot. for Prelim. Inj. ("Pl.'s PI Mot."), Ex. 25, Decl. of Christopher Wolf ("Wolf Decl."). SLDN requested documents concerning the purported government "surveillance of meetings involving people and/or organizations discussing, considering or stating opposition to 'Don't Ask, Don't Tell'" and for documents concerning "surveillance of meetings involving LGBT organizations," i.e., organizations that represent the interests of lesbians, gay men, bisexuals and/or transgendered people. Wolf Decl., Ex. A (FOIA request to CIFA), Ex. B (FOIA request to DOD), and Ex. G (FOIA request to the FBI). "Meetings" was defined to include "demonstrations or rallies." *Id.*[1]

SLDN believed that such surveillance had taken place because of various press reports, especially a December 13, 2005, NBC Nightly News report. Pl.'s Opp. at 3. This report was posted on the MSNBC.com website the next day. *See* Pl.'s PI Mot., Ex. 3, Lisa Meyers, *Is the Pentagon Spying on Americans?*, MSNBC.com, Dec. 14, 2005. According to the report, DOD directed CIFA to establish and maintain a domestic law enforcement database that would include information related to potential terrorist threats. For this purpose, DOD implemented a new

---

[1] In addition to the "surveillance" documents, SLDN requested documents related to a proposal written by the Commission on the Intelligence Capabilities of the United States Regarding Weapons of Mass Destruction, informally known as the "Silverman-Robb Commission." SLDN does not challenge the response to its FOIA request for these documents. Pl.'s Mem. of P. & A. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Opp.") at 4 n.2.

reporting mechanism called a Threat and Local Observation Notice report (a "TALON" report).[2] *Id*. The news report stated that NBC had received a DOD document describing surveillance of anti-war and counter-military-recruitment groups by CIFA. This 400-page document listed "suspicious incidents," including protests of the military's "Don't Ask, Don't Tell" policy at New York University, The State University of New York at Albany, and the University of California at Santa Cruz. *Id*. Subsequently, the New York Times reported that the FBI also had conducted surveillance of activist groups within the United States. *See* Pl.'s PI Mot., Ex. 11, Eric Lichtblau, *FBI Watched Activist Groups, New Files Show*, N.Y. Times, Dec. 20, 2005.

SLDN requested expedited processing, but DOD denied the request. Defs.' Mem. in Supp. of Mot. for Summ. J. ("Defs.' Mem."), Ex. 3, Third Decl. of William Kammer ("Third Kammer Decl.") ¶ 3. SLDN was "frustrated" by DOD's denial of expedited processing and by the slowness of the FBI's response, so it filed this lawsuit alleging FOIA violations on February 6, 2006. Pl.'s Opp. at 7. In the meantime, Defendants searched for documents.

On February 8, 2006, the FBI notified SLDN that it was searching its records. Wolf Decl., Exs. M-O. The FBI divided SLDN's FOIA request into three subject areas: (1) "Don't Ask, Don't Tell"; (2) the February 2005 protest at New York University organized by a group called "OUTlaw"; and (3) the April 2005 demonstration at the University of California at Santa Cruz. Defs.' Mem., Ex. 2, Second Decl. of David Hardy ¶ 8 ("Second Hardy Decl."). With respect to the

---

[2] "The TALON system is designed to report anomalies, observations that are suspicious against the steady state context, and immediate indicators of potential threats to DoD [sic] personnel and/or resources. TALON reports are raw, non-validated information, which may or may not be related to an actual threat, and by their very nature, may be fragmented and incomplete." Pl.'s Opp., Ex. 1, Third Declaration of James Segroves ("Third Segroves Decl."), Ex. 1A, Memo regarding "Collection, Reporting, and Analysis of Terrorist Threats to DoD Within the United States."

first topic, the FBI searched the terms "Don't Ask, Don't Tell," "Servicemembers Legal Defense Network," and "SLDN." *Id*. ¶ 27. The terms the FBI searched included "OUTlaw," "homosexual," "protest," and "New York University" to look for information regarding the second topic. *Id*. ¶ 28. And to search the third topic, the FBI searched for "University of California," "demonstration," and "homosexual." *Id*. ¶ 29. No responsive documents were found. *Id*. ¶¶ 27-29.

The Department of Defense Office of Freedom of Information ("DOD-OFOI") processes FOIA requests for documents in the possession and control of the Office of the Secretary of Defense, including the Office of the Under Secretary of Defense for Intelligence ("USD(I)"), as well as CIFA. Third Kammer Decl. ¶¶ 1-2. DOD-OFOI tasked CIFA, which is responsible for DOD's TALON program, to search the TALON database, TALON documents that had been removed from the database, its shared file network, and all email and documents in its communications office. Third Kammer Decl. ¶ 4. The CIFA search resulted in finding: 1) three TALON reports; 2) a January 26, 2006, letter concerning the TALON program; and 3) an October 24, 2005, memo concerning "Mission Tasking Authority." *Id*. ¶ 6. These documents, with certain redactions, were released to SLDN on April 3, 2006. *Id*. ¶ 7. On May 1, 2006, four more documents were provided to SLDN: 1) a December 19, 2005 letter concerning the TALON system; 2) a January 13, 2006 memo regarding "Retention and Use of Information for the TALON System"; 3) a memo concerning "Collection, Reporting, and Analysis of Terrorist Threats to DoD [sic] Within the United States"; and 4) a memo concerning the TALON/Cornerstone database. *Id*. ¶ 8.

SLDN inquired why TALON reports for certain events were not included in the production of documents. *Id*. ¶ 9. DOD explained that SLDN had requested documents relating to "surveillance" of meetings and communications regarding LGBT groups, and that DOD did not view

the TALON program as "surveillance."[3] *Id*. Even so, DOD agreed to treat SLDN's request as one for all TALON reports related to meetings or communications involving LGBT groups. Thus, CIFA searched for reports using the terms "Albany," "discrimination," "discrim," "Don't Ask, Don't Tell," "gay," "homosexual," "lesbian," "LGBT," and "sexual." *Id*. This search resulted in the discovery of five TALON reports, which were redacted and produced. *Id*. ¶¶ 9-10.

DOD-OFOI also requested that USD(I) search its files. *Id*. ¶¶ 5 & 8. USD(I) searched "all electronic files within the USD(I) Counterintelligence Directorate central repository" and a hard copy file of all TALON-related documents. Reply, Ex. 1, Fifth Declaration of William Kammer ("Fifth Kammer Decl.") ¶¶ 4-5. "This search located the documents that SLDN's request had specifically identified, as well as related documents." *Id*. ¶ 5 (citing Third Kammer Decl. ¶¶ 5, 7, & 8).

Defendants have filed a motion for summary judgment alleging that they have fully complied with their responsibilities under FOIA. SLDN objects, arguing that the FBI failed to conduct an adequate search, that the declarations submitted by DOD-OFOI lack the required specificity, and that DOD improperly limited its search by narrowly interpreting SLDN's FOIA request. While SLDN originally complained that numerous agencies and their components failed to adequately comply with SLDN's FOIA request, at this point SLDN contends only that the FBI and DOD-OFOI, on behalf of CIFA and USD(I), failed to fully and adequately process its FOIA requests.

---

[3] DOD indicated to SLDN that it interprets the word "surveillance" to mean a "close watch kept over someone." The TALON reports produced here consist of (1) notification that protests at universities were scheduled where military personnel were to be present and (2) reports of disruptions of military recruiting that occurred during public protests at military recruiting sites. Third Segroves Decl., Ex. 1B. DOD does not include notification of an upcoming event or observation of a public event within this definition of "surveillance." Defs.' Mem., Ex. 6, Letter dated May 17, 2006 from Samuel Kaplan.

*See e.g.*, Pl.'s Opp. at 4 n.1 (SLDN has dropped its claims against DOJ's Office of Information and Privacy and DOD's Defense Intelligence Agency).

## II.  LEGAL STANDARDS

Under Rule 56, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). Moreover, summary judgment is properly granted against a party that "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980). In a FOIA case, a court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly

[or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

### III.  ANALYSIS

####       A.  Reasonableness of Search Efforts

To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989); *United We Stand America, Inc. v. IRS*, 359 F.3d 595, 598 (D.C. Cir. 2004). Once the requested records have been produced, there is no longer a case or controversy and the FOIA action becomes moot. *See Armstrong v. Executive Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996); *Trueblood v. U.S. Dep't of the Treasury*, 943 F. Supp. 64, 67 (D.D.C. 1996).

The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). Before it can obtain summary judgment in a FOIA case, an agency must show, viewing the facts in the light most favorable to the requester, that it has conducted a search "reasonably calculated to uncover all relevant documents." *Id.* For the purposes of this showing, the agency may rely on affidavits, so long as they are submitted in good faith and are relatively detailed. *Weisburg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). The "agency's affidavits need not be precise but they must provide basic information on what records were searched, by whom, and in what manner." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 33 (D.D.C. 2002). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted).

The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Blanton v. U.S. Dep't of Justice,* 182 F. Supp. 2d 81, 84 (D.D.C. 2002); *see also Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) ("a search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request.").

### 1. Adequacy of the FBI's Search

SLDN contends that the FBI's search must have been inadequate because the FBI allegedly was involved in the TALON program and it did not locate any TALON reports or related documents. SLDN's claim that the FBI was involved in the TALON program is based on TALON reports provided by CIFA that identify Joint Terrorism Task Force ("JTTF") offices as being "persons briefed locally" and/or "coordinating agencies." Third Segroves Decl., Ex. 1C. JTTFs are staffed by FBI personnel who work "hand-in-hand with partners in law enforcement, intelligence, the military, and diplomatic circles." Reply, Ex. 3, Third Declaration of David Hardy ("Third Hardy Decl.") ¶ 3.

However, SLDN's speculation that documents *may* exist is not relevant to the inquiry. *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 67 n.13 (D.C. Cir. 1990) (hypothetical assertions that documents may exist are insufficient to raise a material question of fact); *see also SafeCard*, 926 F.2d at 1200 (presumption of good faith cannot be rebutted by purely speculative claims about the existence of other documents). Here, the FBI has shown that it conducted a reasonably adequate search, and SLDN has failed to identify any flaws in it. SLDN's belief that other documents may exist does not make the search inadequate. *See Meeropol*, 790 F.2d at 952-3 (simply because a search

fails to produce all relevant materials does not make the search inadequate).

Moreover, a "request for records maintained by a particular FBI field office must be submitted directly to that field office." 28 U.S.C. § 16.3(a). The FBI is not required to search its field offices when a requester has submitted its FOIA request only to FBI headquarters. *Ray v. FBI*, 441 F. Supp. 2d 27, 32 (D.D.C. 2006); *see also Kowalczyk v. DOJ*, 73 F.3d 386, 388-89 (D.C. Cir. 1996) (FBI search of headquarters reasonable when requester did not specifically request a search of field offices). Here, the FBI did not search its field offices because SLDN did not make such a request. Te FBI did search its JTTF records, however, as the JTTF records are part of the FBI Central Records System, and the FBI searched its Central Records. Third Hardy Decl. ¶ 3. This search was reasonable in light of SLDN's FOIA request.

### 2. Adequacy of DOD's Search

SLDN also complains that the Third Kammer Declaration submitted by DOD-OFOI lacks specificity because it does not indicate the terms used in the initial search for documents. Pl.'s Opp. at 20. To the contrary, the Third Kammer Declaration indicates that after its initial search, DOD agreed to comply with SLDN's request that it search the TALON reports. The Third Kammer Declaration specifies the terms CIFA used in this second revised search: "Albany," "discrimination," "discrim," "Don't Ask, Don't Tell," "gay," "homosexual," "lesbian," "LGBT," and "sexual." Third Kammer Decl. ¶ 9. Because CIFA conducted a second broader search that SLDN does not challenge as inadequate, the details of the first search are moot.

SLDN also contends that the Third Kammer Declaration did not specify which files were searched by USD(I). DOD-OFOI responded by submitting the Fifth Kammer Declaration, describing the files that were searched. Fifth Kammer Decl. ¶¶ 4-5. Because CIFA, not USD(I), was

responsible for the TALON database, it was not likely that USD(I) would have documents relating to "surveillance" of LGBT groups. *Id*. ¶ 3. Further, the reports collected came from around the country, not from USD(I). *Id*. Thus, USD(I) was tasked not with searching TALON reports (SLDN's Requests 1-6). Rather, USD(I) was tasked with searching for documents in SLDN's Requests 7-10. *Id*. ¶¶ 3-4. USD(I) searched "all electronic files within the USD(I) Counterintelligence Directorate central repository" and a hard copy file of all TALON-related documents. *Id*. ¶¶ 4-5. Because DOD now has described the files searched, the claim that the search was inadequate based on the failure to provide such an explanation is moot. Moreover, the declarations show that DOD conducted an adequate search because it searched those systems of records likely to possess the requested information. *Blanton,* 182 F. Supp. 2d at 84.

    B. Scope of DOD's Search

An agency is not required to undertake a search that is so broad as to be unduly burdensome. *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 1995). "[I]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome . . . [because] FOIA was not intended to reduce government agencies to full-time investigators on behalf of requesters." *Judicial Watch, Inc. v. Export-Import Bank,* 108 F. Supp. 2d 19, 27 (D.D.C. 2000) (quotation and citation omitted). An agency's search must be evaluated in light of the request made. The agency is "not obligated to look beyond the four corners of the request for leads to the location of responsive documents." *Kowalczyk ,* 73 F.3d at 389. If the search reveals a lead, the agency must pursue the lead only if the lead is both clear and certain. *Id*. At the same time, an agency is obligated to construe a FOIA request liberally. *LaCedra v. Executive Office for U.S. Attorneys*, 317 F.3d 345, 348 (D.C. Cir. 2003).

SLDN argues that DOD improperly limited its search by narrowly interpreting SLDN's FOIA request. Originally, DOD did not search for TALON reports because SLDN requested documents related to "surveillance" and DOD does not believe the TALON program constitutes surveillance. DOD contends that "surveillance" involves keeping a close watch over a person or organization, while the TALON program dealt with mere reporting of public events that were scheduled to occur or had occurred. Defs.' Mem., Ex. 6. SLDN disputes this characterization of the term "surveillance" and alleges that DOD should not have interpreted its request so narrowly.

SLDN's allegation that DOD narrowly interpreted its FOIA request is unavailing. While DOD originally construed SLDN's request narrowly, it subsequently agreed to accommodate SLDN and treated SLDN's request "as if it had called for all TALON reports related to meetings or communications involving LGBT groups." Third Kammer Decl. ¶ 9. In searching a second time, DOD interpreted SLDN's request in the broad manner that SLDN desired. DOD conducted a search reasonably calculated to uncover all relevant documents, even under SLDN's broad interpretation of its FOIA request.

## IV. CONCLUSION

The Court finds that DOD and DOJ conducted adequate searches for documents responsive to SLDN's FOIA requests. Accordingly, Defendants' motion for summary judgment [Dkt. #34] will be granted, and this case will be dismissed. A memorializing order accompanies this Memorandum Opinion.

Date:  January 12, 2007  _____/s/_____
ROSEMARY M. COLLYER
United States District Judge